UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES | : |
| v. | : Crim. No. 21-85 (CRC) |
| JOHN STRAND | : |

**DEFENDANT'S REPLY TO GOVERNMENT'S
OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

Defendant, John Strand, through undersigned counsel, Stephen F. Brennwald, Brennwald & Robertson, and in reply to the government's opposition to defendant's motion to dismiss counts, states as follows:

*Summary of Arguments*

Defendant, John Strand, argues that the statute charging him with obstruction of an official proceeding, 18 U.S.C. §1512(c)(2), is a) unconstitutionally vague, and b) vague as applied. He further submits that c) subsection (c)(2) was not intended to address his alleged conduct. He also maintains that d) the statute, as applied to him, violates his First Amendment rights. Furthermore, he contends that e) the ceremonial nature of the vote certification (a mere counting of the votes) does not constitute an "official proceeding," as required by the statute.[1]

Mr. Strand also challenged the validity of counts 2 and 3 of the indictment.

In its opposition, the government argued that every judge except one agrees with its claim that Mr. Strand is properly charged in count 1. It also argues that the ceremonial vote count proceeding is an "official proceeding," and it maintains that counts 2 and 3 are properly charged.

Defendant will try not to be too repetitive in his Reply. However, because of the subject matter,

---

[1] Because a full explanation of defendant's contentions would require the preparation of a document exceeding usual page limits, defendant hereby adopts, and incorporates herein by reference, the following documents (all of which are easily located through the ECF system): *United States v. Garret Miller*, 21-CR-119 (CJN)(ECF No. 72 and No. 86)(Memorandum Opinions); *United States v. Thomas Caldwell*, 21-CR-28 (APM)(ECF No. 240 (pp. 4-22); ECF No. 278; ECF No. 288; ECF No. 382; ECF No. 386)(motions to dismiss §1512(c)(1) and §1752).

1

there may be some overlap in his arguments with his prior submission (ECF No. 78).

### *§1512(c)(2) is Not an Open-Ended, Unlimited, Catch-all Provision*

Defendant Strand is aware that this code section/subsection has been analyzed, dissected, examined, and otherwise studied and scrutinized ad nauseum by many judges on this Court.

After all is said and done, however, it seems that the best way to review this particular provision is not to burrow down, but to pull back, and take a look at §1512 from 30,000 feet.[2]

Such a view demonstrates several truths. First, the general sections each address a specific type of conduct by a defendant. Second, and because of the way the statute is constructed, it would be illogical to think that subsection (c)(2) was intended not only to modify subsection (c)(1), with which it is associated, but also subsections (a)(1), (a)(2), (b)(1), (b)(2), (b)(3), (d)(1), (d)(2), (d)(3), and (d)(4).

In other words, if subsection (c)(2) was intended to modify all parts of the entire law - sections (a) through (d) – there would have been no need to tuck it in the middle of section (c). Rather, it would have appeared as its own section, so that it was clear that it was intended to expand on every other section/subsection.

The way the government reads the particular subsection,[3] the rest of the law, as Judge Nichols pointed out, would have been unnecessary. Congress simply could have stated that whoever corruptly interfered, obstructed, impeded, etc. with an official proceeding would be guilty of obstruction of an official proceeding. That interference or obstruction or impediment could have taken the form of murder, threats, document destruction, and whatever a court deemed had "corruptly" had such an effect (to interfere, obstruct, etc.) an official proceeding. There would be no need to break down the specifics of what that conduct was.

But the law was written with specific purposes in mind, and as demonstrated below, when there

---

[2] Defendant submits that the analyses found in Judge Nichols' two decision in *United States v. Garrett* most rationally dissect the statute at hand, and defendant adopts that reasoning in this motion and reply. *See* fn. 1.
[3] When defendant refers to "sections," he is referring to parts "a" through "d" of 18 U.S.C. § 1512. When he uses the word "subsection," he is referring to the numbered parts of the sections.

2

appeared to be a gap in the law's reach, Congress amended it to include the section at issue.

A view from 30,000 feet, however, demonstrates that the first section ("a") addresses murder, attempted murder, and the use of physical force to interfere with an official proceeding. The second section ("b") addresses threats, intimidation, etc…. The third section ("c") deals with interference with documents and other physical evidence, even in very broad ways, including, according to caselaw, attempting to obstruct a proceeding by soliciting a false statement, *United States v. Lucas*, 499 F.3d 769, 780-81 (8th Cir. 2007); *United States v. Jefferson*, 751 F.3d 314, 321 (5th Cir. 2014)(intentional false statement to a court during a preliminary injunction hearing); Carson, 560 F. 3d 566, 584 (6th Cir. 2009) (false statement to a grand jury); United States v. Mintmire, 507 F.3d 1273, 1290 (11th Cir. 2007)(attempting to orchestrate grand jury witness's testimony by sending notes to an attorney who in turn "coached" the witness). Section ("d"), in turn, addresses various types of harassment.

The legislative history supports the foregoing reading. Section 1512(c)(2) was enacted as part of the Sarbanes-Oxley Act of 2002 ("SOX"). SOX was "[a]n Act to protect investors by improving the accuracy and reliability of corporate disclosures made pursuant to securities laws, and for other purposes." Sarbanes-Oxley Act of 2002, Pub. L. No. 107-204, 116 Stat. 745.

As the previous U.S. Attorney General described it, SOX "was prompted by Enron's massive accounting fraud and revelations that the company's outside auditor, Arthur Andersen, had systematically destroyed potentially incriminating documents." Mem. of William P. Barr, dated June 8, 2018 ("Barr Mem"), p. 5, available at: https://bit.ly/2RYVZ47. Upon a review of the statute's legislative history, the former Attorney General concluded that the plain purpose of §1512(c)(2) was a "loophole closer meant to address the fact that the existing section 1512(b) covers document destruction only where a defendant has induced another person to do it and does not address document destruction carried out by a defendant directly." *Id.*

The legislative history supports the former Attorney General's interpretation of § 1512(c)(2)'s purpose. A Senate Judiciary Committee report described SOX's purpose as "provid[ing] for criminal

prosecution and enhanced penalties of persons who defraud investors in publicly traded securities or alter or destroy evidence in certain Federal investigations." S. Rep. No. 107-146, at 2 (2002). The report states that the Corporate Fraud Accountability Act was designed to "clarify and close loopholes in the existing criminal laws relating to the destruction or fabrication of evidence and the preservation of financial and audit records." S. Rep. No. 107- 146, at 14-15. Section 1512(c) did not exist as part of the original proposal. S. 2010, 107th Cong. (2002). Rather, Senator Trent Lott introduced it as an amendment in July 2002. 148 Cong. Rec. S6542 (daily ed. July 10, 200). The Senator explained the purpose of adding § 1512(c), such that we do not have to guess or speculate as to its intent:

> [This section] would enact stronger laws against *document shredding*. Current law prohibits obstruction of justice by a defendant acting alone, but only if a proceeding is pending and a subpoena has been issued for the evidence that has been destroyed or altered . . . [T]his section would allow the government to charge obstruction against individuals who acted alone, even if the tampering took place prior to the issuance of a grand jury subpoena. I think this is something we need to make clear so we do not have a repeat of what we saw with the Enron matter earlier this year.
>
> *Id.* at S6545 (emphasis added).

Senator Orin Hatch explained that § 1512(c) would "close [] [the] loophole" created by the available obstruction statutes and hold criminally liable a person who, acting alone, destroys documents. *Id.* As the former attorney general summarized this history, "[t]he legislative history thus confirms that § 1512(c) was not intended as a sweeping provision supplanting wide swathes of obstruction law, but rather as a targeted gap-filler designed to strengthen prohibitions on the impairment of evidence." Barr Mem., p. 6.

Unlike § 1512(c), Section 1505 concerns obstruction of congressional proceedings "by threats or force." It provides criminal penalties for:

> Whoever corruptly, or by threats or force, or by any threatening letter or communication influences, obstructs, or impedes or endeavors to influence, obstruct, or impede the due and proper administration of the law under which any pending proceeding is being had before any department or agency of the United States, or the due and proper exercise of *the power of inquiry* under which

4

*any inquiry or investigation* is being had by either House, or any committee of either House or any joint committee of the Congress—

18 U.S.C. § 1505 (emphasis added).

The italicized portions of that section show that Congress limited the obstruction-of-

Congress offense to a specific kind of congressional "proceeding": those pursuant to Congress's "power of inquiry," which are "inquir[ies] or investigation[s]." § 1505. The legislative history of § 1505 shows that it was designed to prevent obstruction of only those proceedings held pursuant to Congress's investigative power. *Poindexter*, 951 F.2d at 380-81. Section 241, the predecessor of § 1505, was passed in 1940 to bar witness tampering before Congress. As the D.C. Circuit summarized the legislative history: "The Senate and House Reports and the floor debates concerning [§ 1505's predecessor] . . . state that the 'proposed legislation simply extends the protection now provided by law for witnesses in Court proceedings to witnesses in proceedings before either House of Congress or committees of either House (or joint committees).'" 951 F.2d at 381 (quoting .R. Rep. No. 1143, 76th Cong., 1st Sess. 1 (1939); S. Rep. No. 1135, 76th Cong., 1st Sess. 1 (1939)).

The foregoing analysis clearly demarcates the intent and purpose of the relevant statute, and unmistakably shows that the law's intent was to prevent financial shenaningans. It is a far cry from Enron to the Capitol, indeed, it is a bridge (or several) too far.

### *The Certification Vote Was a Ceremonial Proceeding*

Count 1, charging Strand with a violation of § 1512(c)(2), rests on the legal theory that he obstructed, impeded and interfered with the joint session of Congress on January 6, which the indictment characterizes as an "official proceeding" under that statute. Because the joint session's Electoral College vote count did not exercise Congress's implied power of investigation in aid of legislation but instead formalized the result of the 2020 U.S. Presidential election, the joint session did not constitute an "official proceeding" as that term has been construed in every reported §1512(c)(2) case on the subject.

5

It is settled law that proceedings held pursuant to Congress's legislative power under the Constitution exhibit legal characteristics different from those held under its implied and auxiliary power of investigation. *See, e.g.*, *Trump v. Mazars United States*, 940 F.3d 710, 719-23 (D.C. Cir. 2019) (outlining history of Congress's power to investigate in aid of legislation). In its earliest decision to draw a formal distinction between the legislative and investigative powers, the Supreme Court held that the House of Representatives had exceeded its investigatory authority by opening an inquiry into the bankruptcy proceedings of a firm in which the United States had invested money. *Kilbourn v. Thompson*, 103 U.S. 168 (1881). The Court held that Congress's sole route to a remedy in the bankruptcy proceeding was "by a resort to a court of justice" *id.* at 183, because the House's investigation "could result in no valid legislation." *Id.* at 195.

Later, in *McGrain v. Daugherty*, the Court found that Congress properly issued a subpoena for bank records relevant to the Senate's investigation into the Department of Justice because "the subject to be investigated was . . . [p]lainly [a] subject . . . on which legislation could be had." 273 U.S. 136, 176 (1927). Cases involving defendants' attempts to interfere with Congress's auxiliary investigative power have always included actions that prevent, or are designed to prevent, Congress from hearing evidence and making factual findings: refusals to answer congressional committees' requests, *United States v. Rumley*, 345 U.S. 41, 42 (1953); refusals to testify at congressional hearings, *Barenblatt v. United States*, 360 U.S. 109 (1959); and obstructing proceedings by making false statements to a congressional inquiry, *United States v. Poindexter*, 951 F.2d 369 (D.C. Cir. 1991).

All of these cases have indisputably involved alleged inference with Congress's exercise of its investigative power. That Congress intended to limit congressional obstruction prosecutions to acts interfering with its investigative power is seen in the text and structure of Chapter 73 of title 18, concerning "Obstruction of Justice." As noted above, although the Indictment charges Strand with a violation of § 1512(c)(2), it is § 1505 that criminalizes obstruction of congressional proceedings "by threats or force." 18 U.S.C. § 1505. The government did not use that more appropriate statute here for a simple reason.

Section 1505 *explicitly* requires that the obstructed proceeding be an "inquiry or investigation . . . being had by either House, or any committee of either House or any joint committee of the Congress." § 1505. Attempts by the government to charge defendants with violations of § 1512(c) outside the context of a judicial or quasi-judicial proceeding have uniformly failed. In *United States v. Ermoian*, 752 F.3d 1165 (9th Cir. 2013), for example, the government argued that an FBI investigation qualified as an "official proceeding" under § 1515. The Ninth Circuit rejected that argument. *See id.* at 752 F.3d at 1169-70. The court of appeals determined that the specifically legal definition of "proceeding"— associated with formal appearances before a tribunal — was the right one for several reasons. First, "the descriptor 'official' indicates a sense of formality normally associated with legal proceedings." *Id.* at 1170. Second, the word "proceeding" in § 1515(a)(1) is "surrounded with other words that contemplate a legal usage of the term, including 'judge or court,' 'federal grand jury' 'Congress,' and 'federal government agency.'" *Id*. Third, legal dictionaries define "proceeding" as "'a word much used to express the *business done in courts*.'" *Id.* (quoting Black's Law Dictionary 1241 (8th ed. 2004)) (emphasis original). Fourth, the "use of the preposition 'before' suggests an appearance in front of [a body] sitting as a tribunal." *Id.* at 1171. Fifth, "Section 1512 refers to 'prevent[ing] the attendance or testimony of any person in an official proceeding'; 'prevent[ing] the production of a record, document, or other object, in an official proceeding'; and 'be[ing] absent from an official proceeding to which that person has been summoned by legal process.' 18 U.S.C. § 1512(a)(1)(A)-(B), (a)(2)(B)(iv).

The use of the terms 'attendance,' 'testimony,' 'production,' and 'summon[]' when describing an official proceeding strongly implies that some formal hearing before a tribunal is contemplated." *Id.* at 1172. Every single one of those factors applies to the phrase "a proceeding before the Congress." 18 U.S.C. § 1515(a)(1)(B). As the Indictment itself alleges, there was no hearing before a tribunal on January 6, but rather a formaliz[ation of] the result of the 2020 U.S. Presidential election. The joint session on January 6 was not an exercise of Congress's investigatory power. 167 Cong. Rec. H79, 105-06, 108, 111 (2021); 167 Cong. Rec. S16, 25, 32 (2021). For all of these reasons, Count One fails to state that Strand committed offenses under § 1512(c). Therefore, this count should be dismissed with prejudice.

7

### *If the Government's Interpretation of § 1512(c) is Applied, it is Unconstitutionally Vague as to John Strand*

A criminal statute is unconstitutionally vague if it "fails to give ordinary people fair notice of the conduct it punishes, or [is] so standardless that it invites arbitrary enforcement." *United States v. Bronstein*, 849 F.3d 1101, 1106 (D.C. Cir. 2017) (quoting *Johnson v. United States*, 576 U.S. 591, 595 (2015)); *see also Nat'l Ass'n of Mfrs. v. Taylor*, 582 F.2d 1, 23 (D.C. Cir. 2009) (noting that criminal statute must "'provide adequate notice to a person of ordinary intelligence that his contemplated conduct is illegal'") (quoting *Buckley v. Valeo*, 424 U.S. 1, 77 (1976)). "[T]he touchstone is whether the statute, either standing alone or as construed, made it reasonably clear at the relevant time that the defendant's conduct was criminal." *United States v. Lanier*, 520 U.S. 259, 67 (1997).

"The void-for-vagueness doctrine . . . guarantees that ordinary people have 'fair notice' of the conduct a statute proscribes. And the doctrine guards against arbitrary or discriminatory law enforcement by insisting that a statute provide standards to govern the actions of police officers, prosecutors, juries and judges." *Sessions v. Dimaya*, 138 S. Ct. 1204, 1212 (2018) (citing *Kolender v. Lawson*, 461 U.S. 352, 358 (1983)). In addition, if the law at issue "interferes with the right of free speech or of association, a more stringent vagueness test [] appl[ies]." *Hoffman Estates v. Flipside*, *Hoffman Estates*, 455 U.S. 489, 500 (1982) (citing *Papachristou v. City of Jacksonville*, 405 U.S. 156 (1972)).

Vagueness challenges are either facial or as-applied. "'[T]he distinction between facial and as-applied challenges . . . goes to the breadth of the remedy employed by the Court, not what must be pleaded by the complaint.'" *Edwards v. District of Columbia*, 755 F.3d 886, 1001 (D.C. Cir. 2014) (quoting *Citizens United v. FEC*, 558 U.S. 310, 331 (2010)). If the government's novel interpretation of § 1512(c)(2) is applied here, it is unconstitutionally vague for the following reasons:

### *§ 1512(c) Does Not Provide Fair Notice That "Official Proceedings" Includes Proceedings Unrelated to the Administration of Justice*

As indicated above, § 1512(c)(2) has never been used to prosecute a defendant for the obstruction

8

of an "official proceeding" unrelated to the administration of justice, i.e., a proceeding not charged with

hearing evidence and making factual findings. Moreover, there is no notice, much less fair notice, in § 1512(c)(2) or in any statute in Chapter 73 that a person may be held criminally liable for interference with a proceeding that does not resemble a legal tribunal. Accordingly, the government's interpretation of § 1512(c)(2) here is void-for-vagueness as applied to Strand.  In this case, the void-for-vagueness doctrine's function of guarding against arbitrary or discriminatory law enforcement is worth elaborating. As Justice Gorsuch explained in a *Sessions v. Dimaya* concurrence,

> "vague laws invite arbitrary power. Before the Revolution, the crime of treason in English law was so capaciously construed that the mere expression of disfavored opinions could invite transportation or death. The founders cited the crown's abuse of 'pretended' crimes . . .as one of their reasons for revolution. . . Today's vague laws may not be as invidious, but they can invite the exercise of arbitrary power all the same—by leaving the people in the dark about what the law demands and allowing prosecutors and courts to make it up."

138 S. Ct. at 1223-24.

Justice Gorsuch gave some early, original examples of statutes that failed to provide fair notice and thus led to arbitrary enforcement:  Blackstone illustrated the point with a case involving a statute that made "stealing sheep, or other cattle" a felony. 1 Blackstone 88 (emphasis deleted). Because the term "cattle" embraced a good deal more then than it does now (including wild animals, no less), the court held the statute failed to provide adequate notice about what it did and did not cover—and so the court treated the term "cattle" as a nullity. *Ibid.* All of which, Blackstone added, had the salutary effect of inducing the legislature to reenter the field and make itself clear by passing a new law extending the statute to "bulls, cows, oxen," and more "by name." . . .

This tradition of courts refusing to apply vague statutes finds parallels in early American practice as well. In *The Enterprise*, 8 F. Cas. 732, F. Cas. No. 4499 (No. 4,499) (CC NY 1810), for example, Justice Livingston found that a statute setting the circumstances in which a ship may enter a port during an embargo was too vague to be applied, concluding that "the court had better pass" the statutory terms by "as unintelligible and useless" rather than "put on them, at great uncertainty, a very harsh signification, and one which the legislature may never have designed." *Id.,* at 735. In *United States* v. *Sharp*, 27 F. Cas.

1041, F. Cas. No. 16264 (No. 16,264) (CC Pa. 1815), Justice Washington confronted a statute which prohibited seamen from making a "revolt." *Id.*, at 1043. But he was unable to determine the meaning of this provision "by any authority . . . either in the common, admiralty, or civil law." *Ibid*. As a result, he declined to "recommend to the jury, to find the prisoners guilty of making, or endeavouring to make a revolt, however strong the evidence may be." *Ibid.* Nor was the concern with vague laws confined to the most serious offenses like capital crimes. Courts refused to apply vague laws in criminal cases involving relatively modest penalties. *See, e.g., McJunkins* v. *State*, 10 Ind. 140, 145 (1858). 138 S. Ct. at 1226.

The concern about vagueness-enabled arbitrary enforcement is manifested here. It takes two forms, which might be called specific and general arbitrariness. At a general level, the government's enforcement of § 1512(c)(2) against Strand is arbitrary because, prior to January 6, it had never prosecuted a violation of that statute by alleging obstruction of a congressional proceeding that was not held pursuant to Congress's investigatory power. Accordingly, the government's election to put a new interpretation on the statute for a select group of related cases raises questions about discriminatory law enforcement.

Those questions are only underlined by the patently political nature of the circumstances of the offense, as well as the criminalization of Strand's First Amendment rights to political speech, assembly, and to petition the government for a redress of grievances. U.S. Const. amend I; *Hoffman Estates v. Flipside*, 455 U.S. 489, 500 (1982) (stricter scrutiny of vague statutes in the context of activities protected by the First Amendment). Perhaps more serious is the specific arbitrariness here.

The government has charged more than 800 people with federal crimes related to the January 6 protests. Many, if not most, of those defendants allegedly entered the Capitol Building. Yet many, if not most, of those people have not been charged under § 1512(c)(2), even though the government alleges all the defendants had the same object: to stop the Electoral College vote count. The explanation for why the government chose to prosecute Strand under § 1512(c)(2), and not so many others, is not apparent from the Indictment.

10

In any event, insofar as count 1 alleges that Strand obstructed a type of "official proceeding" nowhere identified in §§ 1512(c)(2) and 1515, it must be dismissed under the Due Process Clause of the Fifth Amendment.

### *The Government's Interpretation of "Corruptly" Fails this Circuit's* Poindexter *Test*

The first count in the indictment contends that John Strand allegedly obstructed Congress on January 6 by "entering and remaining in the United States Capitol without authority and committing an act of civil disorder and engaging in disorderly and disruptive conduct." ECF No. 13.

If that is what the government contends constitutes obstruction of justice under the statute, that construction is void-for-vagueness as § 1512(c)(2) provides no notice of that interpretation, which would also invite arbitrary and discriminatory law enforcement. In *United States v. Poindexter*, a former national security advisor was charged under § 1505 for obstructing a congressional investigation into the Iran/Contra Affair. 951 F.2d 369, 371 (D.C. Cir. 1991). In that case, the defendant's obstruction consisted of lying to or misleading Members of the House and Senate Intelligence Committees about U.S. shipments of missiles to Iran. *Id.* at 372. The relevant passage of § 1505 provided "Whoever corruptly influences, obstructs, or impedes or endeavors to influence, obstruct or impede the due and proper exercise of the power of inquiry under which any inquiry or investigation is being had by either House, or any committee of either House . . .shall be [punished]." The court held that Poindexter's lying to Congress, while a violation of § 1001, was not an obstruction offense under § 1505.

The D.C. Circuit first determined that two forms of vagueness existed in the adverb "corruptly." First, the court observed that the verb "corrupt" "may be used transitively ('A corrupts B,' i.e., 'A causes B to act corruptly') or intransitively ('A corrupts,' i.e., 'A becomes corrupt, depraved, impure, etc.')." 951 F.2d at 379. It also found that § 1505's adverb "corruptly" could take on either a transitive or intransitive meaning. The court decided that § 1505 "favor[ed] the transitive reading." *Id.* Second, the court found that "corruptly" was also vague in the sense that "[r]eading 'corruptly' to prohibit one from influencing another to act 'immorally' or 'improperly' provides no more guidance than does reading it to prohibit one from

11

acting 'immorally' or 'improperly' oneself." *Id.* Accordingly, to avoid unconstitutional vagueness, the court construed § 1505 "to include only 'corrupting' another person by influencing him to violate his legal duty." *Id.* The court further found that even that definition of "corruptly" may suffer from unconstitutional vagueness where the defendant's purpose is not "to obtain an improper advantage for himself or someone else. . ." *Id.* at 385. The court gave this example of activity the adverb "corruptly" may not cover without vagueness problems:

> [S]omeone who influences another to violate his legal duty [but] to cause the enactment of legislation that would afford no particular benefit to him or anyone connected to him. Or, as the Chief Judge instanced at the oral argument of this case, there "would be some purposes that would be corrupt and some that wouldn't be . . . Suppose the [defendant acted] to protect the historical reputation of some historical figure that has been dead for 20 years and he decides that he doesn't want to mar that person's reputation."

*Poindexter*, 951 F.2d at 386.

As indicated above, following *Poindexter,* Congress amended § 1515 to clarify that "[a]s used *in Section 1505*, the term 'corruptly' means acting with an improper purpose, personally or by influencing another, including making a false or misleading statement, or withholding, concealing, altering or destroying a document or other information." § 1515(b) (emphasis added).

However, Congress did not amend § 1515 to define "corruptly" as used in § 1512. In addition, the phrase "improper purpose" was held unconstitutionally vague in *Poindexter*. 951 F.2d at 379 ("Words like 'depraved,' 'evil,' 'immoral,' 'wicked,' and 'improper' are no more specific—indeed they may be less specific—than 'corrupt.'"). Here, the indictment's construction of § 1512(c)'s adverb "corruptly" fails this Circuit's *Poindexter* test. It does not allege that Strand obstructed the January 6 joint session "to obtain an improper advantage for himself or someone else. . ." *Poindexter*, 951 F.2d at 386. Instead, it contends he allegedly obstructed the session simply by being inside the Capitol and "committing an act of civil disorder and engaging in disorderly and disruptive conduct."

That vague description of what defendant supposedly did hardly apprise him, nor would it apprise

12

anyone else, of the dangers of entering into the Capitol and walking around parts of the building (and at

one point, filming Dr. Simone Gold as she gave a speech having nothing to do with the Stop the Steal rally). Such an interpretation of § 1512(c) is unconstitutionally vague because it leaves to judges and prosecutors to decide which actions are to be criminalized on an ad hoc basis. *See Dimaya*, 138 S. Ct. at 1223-24. Accordingly, Count One should be dismissed as it rests on an unconstitutionally vague interpretation of "corruptly."

### *The Rule of Lenity Dictates That Any Ambiguities in § 1512(c)(2) be Resolved in Mr. Strand's favor*

Even if § 1512(c)(2) is not unconstitutionally vague as applied to Strand, any ambiguities in the statute should be resolved in his favor under the rule of lenity. Under that principle, "where text, structure, and history fail to establish that the government's position is unambiguously correct," courts must "apply the rule of lenity and resolve the ambiguity in [the defendant's] favor." *United States v. Granderson*, 511 U.S. 39, 54 (1994). "When interpreting a criminal statute, we do not play the part of a mindreader." *United States v. Santos*, 553 U.S. 507, 515 (2008) (Scalia, J.).

"In our seminal rule-of-lenity decision, Chief Justice Marshall rejected the impulse to speculate regarding a dubious congressional intent. 'Probability is not a guide which a court, in construing a penal statute, can safely take.'" *Id.* (quoting *United States v. Wiltberger*, 18 U.S. 76 (1820)). Here, even if the Court decides that the government's interpretation of § 1512(c)(2) is correct—i.e., that "official proceedings" of Congress include those which are not held pursuant to its investigatory power, that § 1512(c)(2) applies outside the context of document destruction, and that "corruptly" includes a disinterested but mistaken purpose — it is not unambiguously so. That is shown by the lack of any case law supporting the government's interpretations, by the legislative history which tells against those interpretations, and by the text and structure not just of § 1512(c), but of all sections of Chapter 73. Because the government's interpretations are not unambiguously correct, the Court must resolve any ambiguities in Strand's favor by dismissing Count One. *Granderson*, 511 U.S. at 54; *Santos*, 553 U.S. at 515.

### *The Government's Novel Construction Principle of the Due Process Clause Would Operate as an ex post facto Law*

Because no court has construed § 1512(c)(2) as the government does in this case, to apply that novel construction against Strand in this case would violate the novel construction principle of the Due Process Clause of the Fifth Amendment. The Supreme Court has held that the novel construction principle is similar to an *ex post facto* law which has been described as one "that makes an action done before the passing of the law, and which was innocent when done, criminal; and punishes such action." *Bouie v. City of Columbia*, 378 U.S. 347, 353 (1964).

"[A]n unforeseen judicial enlargement of a criminal statute, applied retroactively, operates precisely as an *ex post facto* law, such as Art. I, § 10, of the Constitution forbids." *Id.* If a "legislature is barred by the *Ex Post Facto* Clause from passing such a law, it must follow that a [court] is barred by the Due Process Clause from achieving precisely the same result by judicial construction." *Id.* *Bouie* also concerned a trespass case that gave every indication of being politically motivated. The 1964 case involved a combination drugstore and restaurant in South Carolina. The restaurant would not serve Black Americans. Two Black college students took seats in the restaurant. After they entered, an employee hung up a "no trespass" sign. The store manager called the police, who asked the students to leave. When they refused, they were arrested and charged with trespass. The students were tried and convicted, with the State Supreme Court upholding the trespass convictions.

The Supreme Court reversed, based on the novel construction principle of the Due Process Clause. It reasoned that the South Carolina Supreme Court's construction of the trespass statute was effectively an *ex post facto* law. By its terms, the state statute merely prohibited "*entry* upon the lands of another . . . after notice from the owner . . prohibiting such entry. . ." 378 U.S. at 355 (emphasis added). However, there "was nothing in the statute to indicate that it also prohibited the different act of remaining on the premises after being asked to leave. Petitioners did not violate the statute as it was written; they received no notice before entering either the drugstore or the restaurant department." *Id.* Finally, "the interpretation given the statute by the South Carolina Supreme Court . . . ha[d] not the slightest support in prior South

14

Carolina decisions." *Id*. at 356. So too here. Strand did not "violate the statute as it was written." *Bouie*, 378 U.S. at 355.

Section 1512 prohibits obstruction of "official proceedings" which all courts have construed to mean proceedings before a tribunal that mimic a court of law. There is "nothing in the statute to indicate that it also prohibited the different act," *Bouie*, 378 U.S. at 355, of interfering with proceedings that do not hear evidence or find facts. "The interpretation given the statute by the [government] . . . has not the slightest support in prior [§ 1512] decisions." *Id*. Accordingly, the novel construction principle requires rejection of the government's interpretation, which would operate as an *ex post facto* law in violation of the Due Process Clause of the Fifth Amendment.

### *The Indictment's Application of § 1512(c)(2) is Invalid Under the First Amendment, as Applied to Strand*

While he cannot be completely sure, Strand expects the government to argue that his activities on January 6 were motivated by his political views about the 2020 election. Insofar as the § 1512(c)(2) charge characterizes an alleged protest *per se* as obstruction of congressional proceedings, it represents an unconstitutional application of the statute.

To prevail on an as-applied challenge under the First Amendment, Strand must merely show that § 1512(c)(2) is being unconstitutionally applied as to the specific protected activity for which he is charged. *Edwards v. Dist. of Columbia*, 755 F.3d 996, 1001 (D.C. Cir. 2014). The first question is whether Strand's alleged conduct was "expressive." *Texas v. Johnson*, 491 U.S. 397, 404 (1989). "[T]o bring the First Amendment into play," Strand must merely show "[a]n intent to convey a particularized message was present" and "the likelihood . . . that the message would be understood by those who viewed it." *Id*. Next, the court assesses whether the challenged statute is related in any way to the suppression of free expression. If so, and if the law is content-neutral, the court must subject the statute to intermediate scrutiny. *Edwards*, 755F.3d at 1002.

15

Under that standard, the statute is constitutionally applied only if (1) "it is within the constitutional power of the government"; (2) "it furthers an important or substantial governmental interest"; (3) "the governmental interest is unrelated to the suppression of free expression"; and (4) "the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest." *United States v. O'Brien*, 391 U.S. 367, 377 (1968).

Here, there is no argument that the conduct charged under § 1512(c)(2), if the government will claim it was political, was protected expression. The entire thrust of the § 1512(c)(2) offense is that Strand and others protested at the Capitol concerning the results of the 2020 presential election. That is the very core of the First Amendment. *See*, *e.g.*, *Johnson*, 491 U.S. at 404 (flag burning expressive); *Tinker v. Des Moines Ind. Comm. School. Dist.*, 393 U.S. 503, 505 (1969) (students wearing black armbands to protest war is expressive); *Brown v. Louisiana*, 383 U.S. 131, 141-142 (1966) (sit-in to protest segregation expressive); *United States v. Grace*, 461 U.S. 171 (1983) (picketing is expressive). *See also Snyder v. Phelps*, 562 U.S. 443, 444 (2011) ("A statement's arguably inappropriate or controversial character . . . is irrelevant to the question [of] whether it deals with a matter of public concern.").

Similarly, there is no argument that § 1512(c)(2)'s application here is unrelated to the suppression of expression, assembly and the petitioning of the government for a redress of grievances. Again, the thrust of the obstruction claim is that Strand and others intended to affect the actions of Congress. The indictment's obstruction claim is not *limited* to any alleged intent to *enter* the Capitol and to affect congressional action, but includes a claim that he engaged in civil disorder and disorderly and disruptive conduct. Yet all that Mr. Strand did, according to the indictment, is enter the Capitol and walk around various areas for 48 minutes. These acts could be construed as an act of protest.

Accordingly, § 1512(c)(2) is here "related to the suppression of free expression." *See*, *e.g.*, *United States v. Caputo*, 201 F. Supp. 3d 65, 71 (D.D.C. 2016) (restricted area statute "related to the suppression of free expression" where charged defendant jumped White House fence to protest executive action). Accordingly, under an intermediate scrutiny test, the Court applies the *O'Brien* factors to determine the

constitutionality of § 1512(c)(2)'s application here. The following two factors show that the statute's application here is patently unconstitutional: (1) the government's interest *is* related to the suppression of free expression; and (2) the incidental restriction on First Amendment freedoms *is* greater than is essential to the furtherance of that interest. *O'Brien*, 391 U.S. at 377.

### *Counts Two and Three*

Defendant, with respect to the arguments raised regarding Counts 2 and 3, submits on the record already presented.

### *Conclusion*

Defendant submits that it is beyond question that, had he been given a copy of §1512(c)(2) to read before entering the Capitol, and asked to determine whether his entry into the building would constitute obstruction of an official proceeding, he would not have been puzzled by its meaning, but would have thought that the language couldn't possibly apply to him.  He would have been wrong, according to the government.

As has been pointed out elsewhere, judges in this courthouse, save one, have said that Mr. Strand should have known that entry into the building would violate that subsection.  Of course, not all of the judges in this courthouse have used the same reasoning to arrive at their conclusions regarding the issues raised in the dismissal motions on which they have ruled.  *See United States v. Garret Miller*, 21-CR-119, ECF No. 86 at fn. 1.  That should shed a great deal of light on the ambiguity of this statute.  And if judges cannot agree on the meaning or interpretation of the statute, it is too much to conclude that someone like Mr. Strand was given fair notice that entry into the Capitol on January 6, 2021, would constitute a violation of the law.

WHEREFORE, for that reason, as well for all of the other reasons stated or referenced (in footnotes and elsewhere), defendant moves to dismiss Counts 1, 2, and 3.

Respectfully submitted,

*Stephen F. Brennwald*

_____
Stephen F. Brennwald, Esq.
Bar No. 398319
Brennwald & Robertson, LLP
922 Pennsylvania Avenue, SE
Washington, D.C. 20003
(301) 928-7727
(202) 544-7626 (facsimile)
sfbrennwald@cs.com

CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that a copy of the foregoing motion was sent by ECF, this 9th day of August, 2022, to all parties of record.

*Stephen F. Brennwald*

Stephen F. Brennwald