UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **CASE NO. 21-CR-85-CRC-1** |
| v. | : | |
| **JOHN STRAND,** | : | |
| | : | |
| **Defendant.** | : | |

### GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR RECUSAL

Defendant John Strand seeks the Court's disqualification pursuant to 28 U.S.C. § 455 based on purported interactions between the Court and Strand's former co-defendant, Simone Gold, approximately 30 years ago. Strand has failed to show any basis upon which the Court's "impartiality might reasonably be questioned." Consequently, the disqualification motion has the whiff of judge shopping. Further, disqualification at this late juncture, in which the Court has already granted defense counsel one postponement of trial, is contrary to the public interest in a speedy trial in this case. The motion should be denied.

**I.    There Is No Basis to Question the Court's Impartiality as to Gold**

Strand's motion is predicated on the Court's alleged bias against Strand's former co-defendant Simone Gold, purportedly arising from vaguely described interactions between Gold and Your Honor during law school approximately 30 years ago. The motion fails for multiple, independent reasons: the purported interactions are trivial; Gold herself knowingly declined to seek recusal; the Court's impartiality toward Gold is manifest from the record of her case; and Strand's allegations related to the circumstances of his motion are not credible.

1

> a. *The Purported Interactions between Gold and the Court Are Trivial*

Gold describes two fleeting interactions between her and the Your Honor approximately 30 years ago. These trivial interactions fall far short of those that might impact the impartiality of a federal judge presiding over a criminal trial. A judge must recuse himself where "a reasonable person, knowing all the circumstances, would expect that the judge would have actual knowledge of his interest or bias in the case." *Sao Paulo State of the Federative Republic of Braz. v. Am. Tobacco Co.*, 535 U.S. 229, 233 (2002). No reasonable person would expect the Court to be biased based on the minimal interactions from long ago alleged by Gold.

> b. *The Court Provided Gold and Strand with Ample Opportunity to Seek Recusal and They Both Declined to Do So*

Even if recusal could be warranted based on the type of old, minimal interactions that Gold alleges—which the Government disputes—the record makes clear that Gold herself did not believe that to be the case. At the arraignment of Strand and Gold on February 25, 2021, the Court stated the following:

> First of all, let's start off with a housekeeping matter. It has come to my attention that Dr. Gold and I attended the same law school during overlapping years. I don't believe that I met her acquaintance at the time except perhaps in passing, and as far as I know, I have not seen or spoken to her in the 30-some-odd years since then. I don't believe that that's a basis for my disqualification from this case, but if Ms. Gold *or any other party*, for that matter, disagrees, you should feel free to file a motion.
>
> I will not be offended in the least, and I would likely favorably entertain a request to transfer this case to another judge. *All that I ask is that you file any such motion by the time of our next status conference, which I suspect we will schedule at the end of this proceeding, so that I don't invest too much time and energy in the case.* Fair enough?

Ex. A, Transcript, *United States v. Gold,* 21 Cr. 85 (Feb. 25, 2021) (emphasis added).

Gold was represented at the arraignment by attorneys Kira West and Dickson Young, who represented her throughout all the proceedings in her case, including her guilty plea and sentencing. Strand was represented at the arraignment by Stephen Brennwald, who remains his

attorney today. As Strand concedes, neither defendant requested a recusal during the arraignment, neither defendant filed a written request after the arraignment, and neither defendant raised the issue at the next conference, which was held more than two months later, on April 28, 2021.

Gold falsely states, in a sworn affidavit, that she "had to quickly decide what to do. I was not next to my attorneys, and it was quick." The public record shows, however, that the Court provided Gold, Strand, and their attorneys with ample opportunity——more than two months—to decide whether to seek a recusal, and they chose not to do so. Gold and Strand thus made a knowing choice not to seek recusal, over a period of months in which they were represented by counsel. That decision severely undercuts the credibility of Strand's belated claim that Gold had interactions with the Court in law school that could cause any judicial bias.

### c. Gold's Allegation that the Court Exhibited Bias in Sentencing Gold to a Guidelines Sentence Is Meritless

Strand and Gold assert that the Court is biased against Gold because the Court sentenced her to 60 days imprisonment for knowingly entering the Capitol Building on January 6, 2021, without lawful authority to do so. ECF 74. The sentence, however, is within the range prescribed by the Sentencing Guidelines for Gold's offense, which was zero to six months. Further, the sentence is lower than the 90-day sentence advocated for by the Government——and it is significantly lower than the sentence of 180 days imprisonment recommended by the Court's own Probation Office.

A sentence within the Sentencing Guidelines—which is even below the mid-point of the guidelines range—is not a demonstration of bias: it is a demonstration of the defendant being treated in the manner recommend by Congress. *See United States v. Lowe*, 106 F.3d 1498, 1504 (10th Cir. 1997) (holding that the defendant did not show judicial bias where "the sentence imposed was proper according to principles in the Sentencing Guidelines"); *see also United States*

*v. Dorcely*, 454 F.3d 366, 376 (D.C. Cir. 2006) ("a sentence within a properly calculated Guidelines range is entitled to a rebuttable presumption of reasonableness").

The Court's sentence of Gold to 60 days' incarceration for violating 18 U.S.C. § 1752(a)(1) was not only below the midpoint of the Guidelines range, it also was less than or only slightly below sentences handed down by other judges in this district to other defendants convicted of the same offense. For instance, Judge Lamberth sentenced Kelly O'Brien, 21-cr-633, to 90 days' incarceration; Judge Sullivan sentenced James Bonet, 21-cr-121, to 90 days' incarceration; Judge Walton sentenced William Tryon, 21-cr-420, to 50 days' incarceration; and Chief Judge Howell sentenced Blake Reed to 42 days intermittent confinement for violating 18 U.S.C. § 1752(a)(1).

Moreover, the Court properly determined that there were significant aggravating factors present in Gold's case, including her educational background that should have caused her to know better than to unlawfully enter the Capitol, and the fact that Gold caused America's Frontline Doctors to fundraise off her criminal case.

In sum, the Court's conduct in presiding over Gold's case cannot reasonably cause its impartiality to be questioned, and recusal is therefore unwarranted under 28 U.S.C. § 455.

> d. *Strand's Contention that Gold Did Not Previously Disclose her "Interactions" with the Court Beggars Belief*

To get around the undisputable fact that he was given a clear opportunity to seek the Court's recusal at the case's outset, Strand contends that he was not aware of Gold's purported interactions with the Court in law school until after Gold's sentencing. This contention is absurd.

Gold and Strand were living together at the time they were arrested. They worked together at "America's Frontline Doctors," an organization led by Gold. Strand told friends and relatives that he and Gold were romantically involved. They travelled from Los Angeles to Florida together in advance of January 6, 2021; they travelled from Florida to Washington, D.C. together for the

events of January 6, 2021; they were consistently by each other's side on January 6, 2021; and after being arrested and charged in this case, they both moved from Los Angeles to Florida together, where they have resided ever since. Gold recently told her Probation Officer that Strand was her boyfriend. It is simply not credible that Gold would conceal from her boyfriend, colleague, and co-defendant any purportedly significant information about the judge who was presiding over their joint criminal case. (Notably, Gold says nothing in her affidavit about when she told Strand about the purported law school interactions with the Court at issue.)

Section 455 requires recusal only where the Court's impartiality might *reasonably* be questioned. 28 U.S.C. § 455. "[A]ll would agree that a high threshold is required to satisfy this standard." *Liteky v. United States*, 510 U.S. 540, 558 (1994) (J. Kennedy, concurring in the judgment). Strand's explanation for why he is making this motion now, however, cannot reasonably be credited. Strand's allegations thus fail to meet the "high threshold" requiring recusal, and Strand's motion should be denied accordingly. *See, e.g., Singer v. Wackenhut Corr. Corp.,* No. CIV 99-1091 PK/RLP, 2000 WL 36740016, at *3 (D.N.M. June 28, 2000) (rejecting plaintiff's allegation of judicial bias as "not reasonable").

## II. There Is Even Less Basis to Question the Court's Impartiality as to Strand

In addition to all the fatal flaws described above, Strand's motion fails for the separate reason that the upcoming trial involves only Strand, not Gold. Strand has not alleged that he and the Court have had any extrajudicial interaction, ever. Gold's flimsy contention that the Court was biased against her because of two fleeting interactions thirty years ago becomes even flimsier, and hopelessly so, when Strand attempts to extend the Court's alleged bias to him.

Strand attempts to bolster his motion by alleging that Gold, who was by his side throughout their participation in the Capitol Riot on January 6, 2021, is likely to testify in his defense. Strand faces charges of corruptly obstructing the Congressional certification of the 2020 Presidential

Election and aiding and abetting others in doing so (18 U.S.C. §§ 1512(c)(2)) and 2); entering the Capitol without lawful authority to do so (18 U.S.C. § 1752(a)(1)); and three other misdemeanors arising from his role in the Capitol Riot.  It is difficult to fathom how Gold's testimony could possibly be helpful Strand where Gold has admitted to the following facts in connection with her guilty plea:

- "[A]ll proceedings of the United States Congress, including the joint session, were effectively suspended until shortly after 8:00 p.m. the same day [January 6, 2021]."

- "In light of the dangerous circumstances caused by the unlawful entry to the U.S. Capitol, including the danger posed by individuals who had entered the U.S. Capitol without any security screening or weapons check, Congressional proceedings could not resume until after every unauthorized occupant had left the U.S. Capitol, and the building had been confirmed secured."

- "On January 6, GOLD and Strand entered the restricted area around the U.S. Capitol and stood with a crowd outside of the East Rotunda door.  Directly in front of GOLD and Strand a law enforcement officer was assaulted and dragged to the ground. Shortly after, at approximately 2:27 p.m., GOLD and Strand breached the East Rotunda doors as part of a crowd and entered the U.S. Capitol."

- "At approximately 2:55 p.m. GOLD began to give a speech in Statuary Hall where she stated her opposition to the COVID-19 vaccine mandates and government-imposed lockdowns.  Strand recorded GOLD on her phone while she gave her speech. Multiple law enforcement officers had to intervene before GOLD stopped giving her speech, and GOLD and Strand left Statuary Hall."

ECF 58.  Strand's contention that Gold is likely to testify at his trial thus appears to be a mere ploy to bolster his motion. Regardless, "[r]arely does a judge's mere acquaintance with a party or witness justify recusal."  *United States v. Kehlbeck*, 766 F. Supp. 707, 711 (S.D. Ind. 1990) (citing cases).

### III.     Delaying the Trial Is Contrary to the Public Interest

If granted, Strand's recusal motion—filed nearly eighteen months after his case was assigned to this Court—would almost certainly require postponement of trial in this case.  Trial is scheduled to commence on September 19, 2022.  The generally busy trial calendars in this District make it unlikely that the matter could be reassigned without causing additional, and potentially

6

substantial, delay. The Court has already indulged one defense motion to delay the trial that had been scheduled for July 18, 2022. ECF 76. Further delay on the grounds of a meritless, belated recusal motion is antagonistic to the public interest. Strand's motion should thus be denied.

## CONCLUSION

For the foregoing reasons, and any additional reasons as may be cited at any hearing on this motion, the government respectfully requests that this Court deny the Motion in its entirety.

<div style="margin-left: 2em;">

Respectfully submitted,
MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052


By:        /s/ *April H. Ayers-Perez*
APRIL H. AYERS-PEREZ
Assistant U.S. Attorney, Detailee
TX Bar No.: 24090975
11204 McPherson Road, Suite 100A
Laredo, Texas 78045
April.Ayers-Perez@usdoj.gov
(956) 754-0946

JASON M. MANNING
Trial Attorney, Detailee
NY Bar No.: 4578068
1400 New York Avenue NW
Washington, D.C. 20005
Jason.Manning@usdoj.gov
(202) 514-6256

</div>