**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA**, | |
| v. | Case No. 21-cr-00085 (CRC) |
| **JOHN HERBERT STRAND**, | |
| Defendant. | |

**OPINION AND ORDER**

The government alleges that Defendant John Herbert Strand unlawfully trespassed on Capitol grounds on January 6, 2021 and obstructed Congress's certification of the 2020 presidential election results. He faces a five-count indictment and has moved to dismiss the first three charges: one for obstruction of an official proceeding in violation of 18 U.S.C. § 1512(c)(2), and another two under 18 U.S.C. § 1752(a)(1) and (2) for entering and remaining in and engaging in disorderly conduct within the Capitol. This Court has already addressed and rejected several of the legal arguments that Strand advances, and it finds persuasive the opinions of fellow judges in this district who have thoughtfully considered the remaining arguments. The Court will therefore deny the motion.

**I.    Background**

In the 2020 presidential election, Americans elected Joseph Biden as President. Their votes, however, "actually go toward selecting members of the Electoral College, whom each State appoints based on the popular returns. Those few 'electors' then choose the President," Chiafalo v. Washington, 140 S. Ct. 2316, 2319 (2020), although throughout American history, they have been "trusty transmitters of" the people's votes. Id. at 2326.

These electoral votes are then "transmit[ted] sealed" to Congress to be counted and certified. U.S. Const., amend. XII. The Constitution says that the Vice President, acting as

President of the Senate, "shall, in the presence of the Senate and House of Representatives, open all the certificates and the votes [of the Electoral College] shall then be counted"; "[t]he person having the greatest number of votes for President," assuming he or she has a majority, "shall be the President." Id.; see also U.S. Const. art. II, § 1, cl. 3. A law called the Electoral Count Act of 1887 provides more structure for how disputes regarding electoral votes are handled by Congress. That law also sets the date and time for Congress to conduct this task: "the sixth day of January" at "1 o'clock in the afternoon." 3 U.S.C. § 15.

So, on January 6, 2021, at approximately 1:00 p.m., the United States House of Representatives and Senate convened for a Joint Session of Congress at the U.S. Capitol building to certify the Electoral College vote count for the 2020 presidential election. See Aff. In Supp. of Crim. Compl. ¶¶ 7–8, ECF No. 1-1.[1] Then-Vice President Mike Pence presided. Id. By 1:30 p.m., the House and Senate retired to separate chambers to resolve an objection to the votes. Id. ¶ 7. Around 2:00 p.m., a large crowd, which had gathered outside the Capitol, forced its way into the building. Id. ¶ 9. This breach caused members of the House and Senate, and Vice President Pence, to evacuate. Id. ¶ 10.

Generally, the Capitol building is secured 24 hours a day, with restrictions including permanent and temporary security barriers. Aff. ¶ 6. On January 6, 2021, the exterior plaza of the building was also closed to the public, and only certain authorized individuals were permitted inside. Id. As the mass of people gathered outside while the certification proceeded, the Capitol Police attempted to keep the crowd away from the building, but to no avail. Id. ¶ 8. The

---

[1] This background is drawn from the affidavit supporting the initial criminal complaint and arrest warrant in the case. The Court recognizes that Mr. Strand may dispute some of the facts presented.

occupation of the Capitol and its grounds suspended the Joint Session for about six hours, until after 8:00 p.m. Id. ¶ 10.

Mr. Strand, together with Dr. Simone Gold, came to the Capitol that day. See Aff. ¶¶ 20–22. Although it appears the two were together throughout the relevant time, only Strand is the focus here. There are several photographs and videos apparently depicting Strand both in and outside the Capitol building. See id. ¶¶ 12, 15–17, 20–22. In gaining access through the Rotunda door, he was part of a crowd that pushed past Capitol police officers guarding the entrance. Id. ¶¶ 21–22. Based on video footage, one of the officers appears to have been pulled down in the crowd, near where Strand was standing. Id. ¶ 21. Strand then entered and walked throughout the building. Id. ¶ 22. At about 2:58 p.m., Strand apparently recorded Gold as she gave a speech inside the Capitol. Id. ¶ 17. Strand also allegedly posted about his experience on Twitter, stating, "I am incredibly proud to be a patriot today, to stand up tall in defense of liberty & the Constitution, to support Trump & #MAGAforever, & to send the message: WE ARE NEVER CONCEDING A STOLEN ELECTION." Id. ¶ 15; see also id. ¶ 13.

On January 8, 2021, a federal grand jury returned an indictment against Strand and Gold, listing five offenses.[2] See Indictment, ECF No. 13. Gold has since pled guilty to a single Class A misdemeanor count and was sentenced. Strand, however, has apparently rejected the government's plea offer and has filed a motion to dismiss counts one through three of the indictment: obstruction of an official proceeding in violation of 18 U.S.C. § 1512(c)(2) (count one); entering and remaining in a restricted building or grounds in violation of 18 U.S.C.

---

[2] The government later filed a motion to strike references to the "Vice President-elect" in counts two and three of the indictment, see Mot. Strike, ECF No. 55, which the Court granted. See Order (Mar. 1, 2022), ECF No. 56.

§ 1752(a)(1) (count two); and disorderly and disruptive conduct in a restricted building or grounds in violation of 18 U.S.C. § 1752(a)(2) (count three).  See generally Mot. Dismiss, ECF No. 78.  The government filed an opposition.  See generally Opp'n, ECF No. 82.  Strand's trial is scheduled for September 19, 2022.

## II. Legal Standards

A criminal defendant "may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1).  Pretrial motions may challenge "a defect in the indictment," including "lack of specificity" and "failure to state an offense." Fed. R. Crim. P. 12(b)(3)(B)(iii), (v).  Because pretrial dismissal of an indictment "'directly encroaches upon the fundamental role of the grand jury,' dismissal is granted only in unusual circumstances." United States v. Ballestas, 795 F.3d 138, 148 (D.C. Cir. 2015) (quoting Whitehouse v. U.S. Dist. Ct., 53 F.3d 1349, 1360 (1st Cir. 1995)).  An indictment requires only "a plain, concise, and definite written statement of the essential facts constituting the offense charged," Fed. R. Crim. P. 7(c), in order "to inform the defendant of the nature of the accusation against him." Ballestas, 795 F.3d at 148–49 (quoting United States v. Hitt, 249 F.3d 1010, 1016 (D.C. Cir. 2001)).  The Court "assumes the truth of those factual allegations." Id. at 149.  "The operative question is whether the allegations, if proven, would be sufficient to permit a jury to find that the crimes charged were committed." United States v. Sanford, Ltd., 859 F. Supp. 2d 102, 107 (D.D.C. 2012) (citing United States v. Bowdoin, 770 F. Supp. 2d 142, 146 (D.D.C. 2011)).

## III. Analysis

This case involves a similar array of offenses charged in the many other cases arising out of the events of January 6th.  See generally United States v. Robertson ("Robertson II"), No. 21-

cr-34 (CRC), 2022 WL 2438546, at *2 n.1 (D.D.C. July 5, 2022) (Cooper, J.) (collecting cases). The legal arguments raised here are also highly similar.

### A. Count One: Obstruction of An Official Proceeding

Starting with count one, 18 U.S.C. § 1512(c) imposes criminal sanctions against anyone who "corruptly . . . alters, destroys, mutilates, or conceals a record, document, or other object . . . with the intent to impair the object's integrity or availability for use in an official proceeding," (subsection (c)(1)) or as relevant here (under (c)(2)), "obstructs, influences, or impedes any official proceeding, or attempts to do so." The term "official proceeding" includes within its meaning, "a proceeding before the Congress." § 1515(a)(1)(B). This Court has already rejected challenges to this charge, Robertson II, 2022 WL 2438546, at *1–4; United States v. Robertson ("Robertson I"), —— F. Supp. 3d ——, 2022 WL 969546, at *3–7 (D.D.C. Feb. 25, 2022), and Strand's motion does not raise any new grounds warranting a different outcome. The Court fully adheres to its prior reasoning and directs the parties to those opinions.

As a brief summary, Strand first contends that Congress's certification of the election results does not constitute an "official proceeding" under § 1512(c)(2). Yet, "'[t]he plain, obvious and common sense' meaning of" official proceeding "reaches the Certification of the Electoral College vote." Robertson II, 2022 WL 2438546, at *2 (citation omitted); United States v. Caldwell, —— F. Supp. 3d ——, 2021 WL 6062718, at *8 (D.D.C. Dec. 20, 2021). The certification "has many trappings familiar from other types of proceedings," United States v. Mostofsky, —— F. Supp. 3d ——, 2021 WL 6049891, at *10 (D.D.C. Dec. 21, 2021), and can be quasi-adjudicative in nature, as the Congressional Record from the day illustrates. Robertson I, 2022 WL 969546, at *4 (citing 167 Cong. Rec. H75, S13 (daily ed. Jan. 6, 2021) (House and Senate Sections)). Strand attempts to add the same "extra requirements for an 'official

5

proceeding'" as defendants in other cases have, but those requirements "are absent from § 1515(a)(1)(B)." See id. (quoting United States v. Sandlin, ⸺ F.Supp.3d ⸺, 2021 WL 5865006, at *4 (D.D.C. Dec. 10, 2021)). Thus, the certification is an official proceeding.

Strand next argues that the term "corruptly" is unconstitutionally vague, both facially and as applied here. This argument fails, too. "The statute is properly narrowed by imposing this mens rea element, which requires 'acting with consciousness of wrongdoing.'" Robertson II, 2022 WL 2438546, at *2 (citing Caldwell, 2021 WL 6062718, at *8–11); Sandlin, 2021 WL 5865006, at *11–14 ("unlawfully, and with the intent to obstruct"). And Strand's conduct, as alleged in the statement of facts and indictment, "is sufficient to state an offense" based on the statutory language. See Mostofsky, 2021 WL 6049891, at *11. The government alleges that Strand was part of a crowd that pushed past Capitol police and offers several photos depicting Strand inside the Capitol building. Aff. ¶¶ 12, 15–17, 20–22. The government further points to Strand's social media post indicating that he was there to stand up against and "never conced[e]" what he believed to be a stolen election. Id. ¶ 15 (capitalization removed); see Wisconsin v. Mitchell, 508 U.S. 476, 489 (1993) ("The First Amendment . . . does not prohibit the evidentiary use of speech to establish the elements of a crime or to prove motive or intent."). These alleged actions are "plainly covered by the statute." See Sandlin, 2021 WL 5865006, at *10.

Strand's as-applied argument based on the certification having been "stopped" at the time he entered also misses the point. The certification was suspended precisely because a crowd of people broke into the Capitol. As a result, the proceeding obviously could not have resumed had individuals continued to flood into the building. Strand's alleged conduct arguably played a role in obstructing, impeding, or influencing a proceeding before Congress.

6

Finally, Strand urges the Court to follow the reasoning in United States v. Miller, ___ F. Supp. 3d ___, 2022 WL 823070, at *3–15 (D.D.C. Mar. 7, 2022), which imposes a requirement that a defendant charged with violating § 1512(c) take action with respect to a document, record, or other object. This Court, however, has followed "the heavy weight of authority" rejecting Miller. See Robertson II, 2022 WL 2438546, at *3–4. "Naturally read, subsection (c)(1) is about the alteration of evidence and hindering its use in an official proceeding; subsection (c)(2) is about 'otherwise'—meaning in a different way than what's provided in (c)(1) —hindering the official proceeding itself." Id. at *3; United States v. Montgomery, ___ F. Supp. 3d ___, 2021 WL 6134591, at *12 (D.D.C. Dec. 28, 2021) (explaining that the word "otherwise" simply "signals a shift in emphasis, from actions directed at evidence to actions directed at the official proceeding itself"). Miller starts with the rule of lenity and focuses heavily (too heavily) on the word "otherwise." See, e.g., Montgomery, 2021 WL 6134591, at *11–12. By contrast, the majority interpretation in this district starts with the text and ordinary meaning, and, as a result, "both recognize[s] a link between" subsections (c)(1) and (c)(2) and gives "meaning to the word 'otherwise.'" See United States v. Reffitt, ___ F. Supp. 3d ___, 2022 WL 1404247, at *8 (D.D.C. May 4, 2022); Robertson II, 2022 WL 2438546, at *3–4. In short, an indictment on this charge need not allege that a defendant took an action with respect to a document, record, or other object.

B. Counts Two and Three: 18 U.S.C. § 1752(a)(1) and (2)

Next, Strand contests counts two and three, charging him with "knowingly enter[ing] or remain[ing]," 18 U.S.C. § 1752(a)(1), and "engag[ing] in disorderly or disruptive conduct," § 1752(a)(2), in a restricted building and grounds. See Indictment at 2. The term "'restricted buildings or grounds' means any posted, cordoned off, or otherwise restricted area . . . of a

building or grounds where the President or other person protected by the Secret Service is or will be temporarily visiting." § 1752(c)(1)(B). Strand asserts that the Secret Service must designate a "restricted area," and that the indictment improperly fails to allege that element of the offense. He also contends that then-Vice President Pence was not "temporarily visiting" the Capitol on January 6, 2021. The Court disagrees on both fronts.

As to the first argument, the statute "plainly does not require that the Secret Service be the entity to restrict or cordon off a particular area." See Mostofsky, 2021 WL 6049891, at *13. The "only reference" to the Secret Service in § 1752(c) is to its "protectees." See United States v. Griffin, 549 F. Supp. 3d 49, 55 (D.D.C. 2021). Indeed, "[t]he statute's focus is on *where* a defendant enters, not *who* does the restricting." United States v. Nordean, ⸺ F. Supp. 3d ⸺, 2021 WL 6134595, at *18 (D.D.C. Dec. 28, 2021); Griffin, 549 F. Supp. 3d at 54. "This flexible approach reflects the various . . . ways an area may be restricted . . . depending on where the protectee happens to be and the security threats he faces." Griffin, 549 F. Supp. 3d at 54. It also "reflects the reality that" the Secret Service "invariably relies on other law enforcement agencies for support," including the Capitol police "when, as here, the Vice President executes his duties as President of the Senate." Id. Section 1752 does not mandate which specific agency "must do the restricting." Id. at 55.

Strand gestures at legislative and statutory history in an attempt to "bolster" his interpretation. See Mot. Dismiss at 17–18. But the Court agrees with Judge McFadden's observation that there is not much to gather from this history. See Griffin, 549 F. Supp. 3d at 55–56. And even if Strand were right about Congress's intent in prior versions of § 1752, the Court will not "reconstitute" older provisions "that Congress has jettisoned." Id. at 56; United States v. McHugh, Crim. A. No. 21-453 (JDB), 2022 WL 296304, at *20 (D.D.C. Feb. 1, 2022).

Strand's assertion that Vice President Pence was not "temporarily visiting" the Capitol on January 6, 2021 falls short as well. "Temporary," as Strand says, means "lasting for a time only." See Mot. Dismiss at 19 (quoting Black's Law Dictionary (11th ed. 2019)). He defines "visiting" in its adjective form as "invited to join or attend an institution for a limited time," see id.,[3] but he does not grapple with the definitions of the word as a transitive verb—how it is used in the statute—as surveyed by other courts. See, e.g., McHugh, 2022 WL 296304, at *20; United States v. Puma, ––– F. Supp. 3d –––, 2022 WL 823079, at *16–18 (D.D.C. Mar. 19, 2022); United States v. Andries, Crim. A. No. 21-93 (RC), 2022 WL 768684, at *16–17 (D.D.C. Mar. 14, 2022). Those courts have "arrive[d] at a meaning in line with the intuitions of English speakers: someone is 'temporarily visiting' a location if they have gone there for a particular purpose, be it 'business, pleasure, or sight-seeing,' and for a limited time, which could be 'brief' or 'extended' while nonetheless remaining 'temporary.'" See McHugh, 2022 WL 296304, at *20 (canvassing dictionary definitions).

Applying that same "commonsense definition," this Court reaches the same "commonsense conclusion" that "the Vice President was 'temporarily visiting' the Capitol" that day. See McHugh, 2022 WL 296304, at *21. The Vice President went to the Capitol for a particular business purpose—to "carry[] out his constitutionally assigned role in the electoral count proceeding; he intended to and did stay there only for a limited time." Andries, 2022 WL 768684, at *16. And, contrary to Strand's argument, the Capitol building "is not the Vice President's regular workplace," so his trip there was not "analogous to a regular commute to the office." Puma, 2022 WL 823079, at *18 (quoting McHugh, 2022 WL 296304, at *22). Rather,

---

[3] See Visiting, Merriam-Webster, available at https://www.merriam-webster.com/dictionary/visiting. For example, a "visiting professor" or "the visiting team."

9

"the Vice President is principally an executive officer who spends little time at the Capitol." McHugh, 2022 WL 296304, at *22. This understanding is akin to a "CEO of an international corporation who normally works from headquarters in New York, but who maintains an office for her occasional use at the firm's satellite location in London"—when visiting the satellite office, very formally speaking, she is at a place of employment but is still "temporarily visiting." See Andries, 2022 WL 768684, at *16.

In sum, counts two and three of the indictment state an offense.

## IV. Conclusion

For these reasons, it is hereby

**ORDERED** that [78] John Strand's Motion to Dismiss is **DENIED**.

**SO ORDERED**.

_____
CHRISTOPHER R. COOPER
United States District Judge

Date: August 17, 2022