UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **CASE NO. 21-CR-85-CRC-1** |
| v. | : | |
| **JOHN STRAND,** | : | |
| | : | |
| Defendant. | : | |

## GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO CONTINUE

The Government, through undersigned counsel, hereby opposes Defendant John Strand's motion to continue trial. Strand previously obtained a 60-day continuance of his July 18, 2022, trial date based on his counsel's alleged difficulties in finding support staff and repairing his computer (Minute Entry, June 23, 2022). Strand recently tried and failed to obtain a further delay of trial through a meritless recusal motion (ECF 90). Strand now tries once more to postpone his trial based on the incredible claim that he will be prejudiced at trial by the purported unavailability of his girlfriend and former co-defendant, Simone Gold (ECF 91, hereinafter, "Def's Mot.").

The notion that Gold could provide credible testimony favorable to Strand is preposterous: Gold is currently incarcerated following her guilty plea to one of the same crimes that Strand is charged (ECF 13, 57, 74, 75). Moreover, Strand has not described what specific favorable testimony Gold would provide, nor has he made any effort to obtain her testimony by seeking a trial subpoena. Strand's groundless delay tactic, if successful, would undermine the public interest in a speedy trial and prejudice the many witnesses who have been preparing based on the current trial date. The Court should deny Strand's motion and proceed with the trial scheduled for September 19, 2022.

1

## PROCEDURAL HISTORY

The procedural history of this case is characterized by Strand's repeated attempts to delay his trial, long after he has received discovery.

The Government arrested Strand on complaint on January 13, 2021 (ECF 1). A grand jury indicted Strand on the instant charges on February 5, 2021 (ECF 13). By July 14, 2021, the Government had substantially completed production of discovery materials specific to Strand, including certain communications from Strand and a dozen videos from inside the Capitol (ECF 37-1). The Government extended plea offers to Strand and his co-defendant Gold on or about December 3, 2021. At a status conference on February 8, 2022, Gold indicated her intention to plead guilty, and Strand was granted a continuance to consider the Government's plea offer. On February 10, 2022, the Court set a trial date of July 18, 2022 (ECF 52). On March 11, 2022, Strand announced he would proceed to trial (Minute Entry, March 11, 2022).

On June 7, 2022, Strand moved to continue the trial date. (ECF 62.) Defense counsel asserted that he had experienced difficulties identifying a paralegal or investigator who could assist him in reviewing discovery, and he requested a continuance of five months. *Id.* The Court held a motion conference, in which it denied the motion as filed but stated, in essence, that it would consider a future request that specifically identified the reasons the defendant could not adequately be prepared for trial on July 18 and sought a commensurate postponement. *See* Minute Entry, June 9, 2022. On June 22, 2022, defense counsel requested a status conference to make a renewed continuance motion arising principally from computer issues that he had experienced. Ex. A, Email from Stephen Brennwald, Esq., dated June 22, 2022. The Court granted the request and continued the trial until September 19, 2022. (ECF 76.)

On August 9, 2022, Strand moved the Court to disqualify itself based on purported interactions between the Court and Strand's co-defendant Gold more than 30 years ago. (ECF 85.) Strand's motion was made nearly 18 months after the Court disclosed to the parties that it had attended law school with Gold. The motion, if granted, would almost certainly have delayed trial. (ECF 87.)

The Court noted that Strand was given two months following his arraignment to make a disqualification motion but declined to do so. (ECF 90.) The Court held, *inter alia*, that "the time to raise any potential conflicts is long overdue." *Id.* Further, the Court stated that Strand's contention that he had only recently learned of the purported facts giving rise to the Court's alleged conflict "strains credulity," and that Strand's motion "smacks of gamesmanship." *Id.* Thus, on August 17, 2022, the Court denied the motion. *Id.*

Ten days later, Strand made the instant motion to continue. Strand contends that "[b]ecause Dr. Gold will not be released until the end of the week of trial, by which time trial will likely have concluded, defendant will be deprived of the Constitution's guarantee of the 'compulsory process for obtaining witnesses in his favor.'" Def's Mot. at ¶ 6. Strand further contends that it would not be enough to delay trial until after Gold is released from prison on or about September 23, 2022; rather, Strand contends that "even once Dr. Gold is released from prison, undersigned counsel will need some time to discuss her testimony and review a great deal of evidence with her."[1] *Id.* at ¶ 11. Notably, defense counsel asserts that he has not had sufficient time to review evidence with Gold, even though Strand and Gold were co-defendants beginning in January 2021,

---

[1] Gold pleaded guilty on March 3, 2022, and she was sentenced on June 16, 2022. Defense counsel raised for the first time his concerns related to Gold's incarceration more than a month after Gold's sentencing, on July 26, 2022. Def's Mot. at ¶ 7.

3

and even though Gold's incarceration was clearly foreseeable since she indicated her intention to plead guilty in February 2022.

## LEGAL STANDARD

To obtain continuance of a trial, the movant must show good cause, and the continuance must be consistent with the defendant's due process and constitutional speedy trial rights. *See United States v. Nordean*, Cr. No. 21-175 (TJK), 2022 WL 2292062, *1 (D.D.C. June 24, 2022).

Strand's motion for continuance is predicated on the alleged potential infringement of his right to compulsory process if the trial is held while Gold is incarcerated. To obtain compulsory process, a defendant must show that a witness's testimony would be favorable. The Supreme Court has established "that the Sixth Amendment does not by its terms grant to a criminal defendant the right to secure the attendance and testimony of any and all witnesses: it guarantees him 'compulsory process for obtaining *witnesses in his favor*.'" *United States v. Valenzuela-Bernal*, 458 U.S. 858, 867 (1982) (quoting U.S. Const., Amdt. 6; (emphasis added to the amendment in the original decision)). The Court further explained:

> That the Sixth Amendment does not guarantee criminal defendants the right to compel the attendance of any and all witnesses is reflected in the Federal Rules of Criminal Procedure. Rule 17(b) requires the Government to subpoena witnesses on behalf of indigent defendants, but only "upon a satisfactory showing ... that the presence of the witness is necessary to an adequate defense."

*Id.* at 867, n. 7 (citing Fed. R. Crim. P. 17(b)).

In *Valenzuela-Bernal*, the Court rejected the defendant's argument that his Sixth Amendment right to compulsory process was violated when the Government deported two purported defense witnesses before trial. The Court held that the defendant could not establish a Sixth Amendment violation "without making some plausible explanation of the assistance he would have received from the testimony of the deported witnesses." *Id.* at 871; *see also Bardoff*

4

*v. United States*, 628 A.2d 86, 93 (D.C. 1993) (holding that "the trial court properly may refuse to compel the testimony of a witness subpoenaed by a defendant" where "[t]here is nothing in the record indicating that the missing testimony was necessary to an adequate defense, or would have been either favorable, material or exculpatory").

Further, a defendant is responsible for exercising his right to subpoena and present witnesses at an appropriate time and in a manner that is consistent with the procedures of the court.  *See Davis v. United States,* 735 A.2d 467, 472 (D.C. 1999).

## ARGUMENT

Defendant Strand's motion contains nothing but a conclusory assertion that Gold's testimony would aid his defense.  But Gold's testimony would likely undermine, not further, Strand's defense: Gold pleaded guilty to one of the crimes that Strand must defend, and in doing so, she acknowledged a series of facts that would be inculpatory to many of the charges facing Strand.  Moreover, Gold's testimony regarding Strand's intent would be severely limited by the hearsay rule, and bias would color any testimony by Gold because of their romantic relationship.  Strand therefore has fallen far short of the requisite plausible showing that Gold could provide favorable testimony, and thus Strand has not shown good cause to further delay trial.

**I.  Strand's Threadbare Motion Fails to Make the Requisite Showing that Gold Could Provide Favorable Testimony**

The entirety of Strand's "showing" that Gold would provide favorable testimony is this:

> Defendant proffers that Dr. Gold's testimony will be critical to his defense, for reasons that are obvious. To state the obvious, however, Dr. Gold was with defendant both before, during, and after the pair's presence in and around the U.S. Capitol, and she can testify to all matters that concern Mr. Strand's defense.

Def's Mot. ¶ 9.  There is nothing obvious, however, as to how a witness *who has admitted to committing one of the very same crimes as the defendant, while together with the defendant* could

5

provide testimony that is both non-perjurious and favorable. Strand's paper-thin assertion fails to even approach the showing required to obtain a subpoena pursuant to Rule 17, let alone to make out a constitutional violation.[2] Because Strand has not made any showing as to how Gold can provide any favorable testimony, there is no basis for the Court to facilitate her testimony by continuing trial.

A comparison of *Harris v. United States*, 834 A.2d 106, 124 (D.C. 2003) and *Valenzuela-Bernal* is instructive. In *Harris,* the defendant Michael Harris was convicted at trial of killing James Monroe. *Harris,* 834 A.2d at 111. Harris's trial defense was that he acted in self-defense because he feared that Monroe and his nephew Donald Monroe were trying to kill him. *Id.* On appeal, Harris alleged a Sixth Amendment violation arising from the court's refusal to subpoena a witness named Drummond. *Id.* Drummond had testified in the grand jury that he saw Donald Monroe drive by on the night when Harris had previously been shot, which was probative of Harris's defense that the Monroes had previously tried to kill him (and were continuing to do so at the time Harris killed James Monroe). *Id.* The appellate court held that the trial court abused its discretion in not compelling Drummond's testimony under the circumstances, in which "the defendant has alleged facts that, if true, demonstrate the necessity of the witness's testimony." *Id.* at 125.

In contrast, the defendant in *Valenzuela-Bernal* did not show the necessity of the testimony at issue. There, the defendant was accused of illegally transporting a Mexican national named Romero-Morales from Mexico to the United States. *Valenzuela-Bernal,* 458 U.S. at 860. The defendant alleged a Sixth Amendment violation arising from the Government's pre-trial

---

[2] As set forth *supra,* Rule 17(b) provides: "Upon a defendant's *ex parte* application, the court must order that a subpoena be issued for a named witness if the defendant shows an inability to pay the witness's fees *and the necessity of the witness's presence for an adequate defense*." Fed. R. Crim. P. 17(b) (emphasis added).

6

deportation of two purportedly favorable witnesses, whom the defendant had transported from Mexico into the United States at the same time as he transported Romero-Morales. The defendant "made no effort to explain what material, favorable evidence the deported passengers would have provided for his defense." *Id.* at 874. The Court thus held that the defendant failed to establish a constitutional violation. *Id.*

Strand has not proffered any specific witness testimony supporting a specific defense comparable to that articulated in *Harris*. Rather, Strand's conclusory assertion that Gold "can testify to all matters that concern Mr. Strand's defense" is no better than the general assertion rejected by the Supreme Court in *Valenzuela-Bernal*. It should be similarly rejected here. *Valenzuela-Bernal,* 458 U.S. at 874; *see also Bardoff*, 628 A.2d at 92–93.

## II. Gold Cannot Provide Favorable—Let Alone Exculpatory—Testimony

Not only has Strand failed to carry his burden to show how Gold's testimony would be favorable, but common sense indicates that, to the contrary, it would be damning. Gold admitted in her guilty plea many of the facts that the Government must prove against Strand. Moreover, Gold cannot testify to any favorable statement that Strand purportedly made because of the hearsay rule, and any admissible testimony she could offer would have severe credibility issues.

### a. Gold's Testimony Would Be Cabined by Her Guilty Plea

Strand faces charges of corruptly obstructing the Congressional certification of the 2020 Presidential Election and aiding and abetting others in doing so (18 U.S.C. §§ 1512(c)(2)) and 2); entering the Capitol without lawful authority to do so (18 U.S.C. § 1752(a)(1)); and three other misdemeanors arising from his role in the Capitol Riot. It is difficult to fathom how Gold's

testimony could possibly be helpful Strand where Gold has admitted to the following facts in connection with her guilty plea:

- [On January 6, 2021], "temporary and permanent barricades were in place around the exterior of the U.S. Capitol building, and U.S. Capitol Police were present and attempting to keep the crowd away from the Capitol building and the proceedings underway inside."

- "At approximately 2:00 p.m., certain individuals in the crowd forced their way through, up, and over the barricades, and officers of the U.S. Capitol Police, and the crowd advanced to the exterior façade of the building. The crowd was not lawfully authorized to enter or remain in the building and, prior to entering the building, no members of the crowd submitted to security screenings or weapons checks by U.S. Capitol Police Officers or other authorized security officials."

- "[A]ll proceedings of the United States Congress, including the joint session, were effectively suspended until shortly after 8:00 p.m. the same day [January 6, 2021]."

- "In light of the dangerous circumstances caused by the unlawful entry to the U.S. Capitol, including the danger posed by individuals who had entered the U.S. Capitol without any security screening or weapons check, Congressional proceedings could not resume until after every unauthorized occupant had left the U.S. Capitol, and the building had been confirmed secured."

- "On January 6, GOLD and Strand entered the restricted area around the U.S. Capitol and stood with a crowd outside of the East Rotunda door. Directly in front of GOLD and Strand a law enforcement officer was assaulted and dragged to the ground. Shortly after, at approximately 2:27 p.m., GOLD and Strand breached the East Rotunda doors as part of a crowd and entered the U.S. Capitol."

- "At approximately 2:55 p.m. GOLD began to give a speech in Statuary Hall where she stated her opposition to the COVID-19 vaccine mandates and government-imposed lockdowns. Strand recorded GOLD on her phone while she gave her speech. Multiple law enforcement officers had to intervene before GOLD stopped giving her speech, and GOLD and Strand left Statuary Hall."

- "When defendant entered the U.S. Capitol Building on January 6, it was a restricted building. The defendant knew at the time she entered the U.S. Capitol Building that she did not have lawful authority to enter the building."

ECF 58.

Gold, in her written plea agreement, acknowledged "voluntarily and of [her] own free will" that these facts are all "true and accurate." ECF 58, p. 5; ECF 57, p. 12. She further adopted these facts during her guilty plea allocution. Gold's testimony would thereby establish nearly all the

elements necessary to prove that Strand—who was with Gold "before, during, and after the pair's presence in and around the U.S. Capitol," Def's Mot. at ¶ 9—committed the four misdemeanor charges against him, and of the obstruction felony as well. Such testimony would not be in Strand's favor, and therefore it does not implicate the Sixth Amendment's compulsory process clause. U.S. Const., Amdt. 6 (only guaranteeing a criminal defendant "compulsory process for obtaining witnesses *in his favor*'") (emphasis added).

Alternatively, Gold could disavow at trial the statements set forth above, even though she agreed to them in pleading guilty and obtaining the benefits of her plea agreement. She would thereby expose herself to potential perjury charges and a breach of the agreement by which the Government dismissed a felony charge against her. If Gold intended to take such a consequential step, Strand could be expected to have made a proffer in that regard in his motion—which he has not done.[3]

### b. *Gold's Testimony Would Be Constrained by the Hearsay Rule*

Gold's ability to provide favorable testimony is further limited by the rules against hearsay, which would preclude Gold from testifying to any statement made by Strand. Fed. R. Evid., Art. VIII. Gold could therefore only testify to Strand's actions. That testimony would be largely redundant: Strand's relevant actions were captured on dozens of surveillance cameras within the Capitol and other video that the Government intends to introduce as trial. *Cf. United States v.*

---

[3] The Court should reject any argument by Strand that he cannot proffer Gold's anticipated trial testimony with more specificity because of her incarceration. Strand and Gold were co-defendants for more than a year before she was incarcerated and, regardless, federal prisons routinely allow inmates to meet their attorneys and make phone calls.

*Harris*, 433 F. App'x 383, 386 (6th Cir. 2011) (holding that the district court would not have abused its discretion in quashing subpoenas seeking testimony that was irrelevant or duplicative).

In particular, one critical issue at trial in relation to the charge that Strand obstructed an official proceeding in violation of 18 U.S.C. § 1512(c)(2), will be whether Strand intended, at least in part, to obstruct the certification of the 2020 Presidential election when entering and remaining in the U.S. Capitol on January 6, 2021. It is difficult to see how Gold could testify to her knowledge of Strand's intent without violating the hearsay rule—and Strand certainly has made no showing otherwise.

In short, Strand has not specifically proffered that Gold will provide any favorable, admissible testimony related to any viable defense, nor can the Government imagine any scenario in which Gold could do so. Strand thus has not shown that Gold's alleged unavailability constitutes good cause to continue the trial.

      c. *Any Purportedly Favorable and Admissible Testimony by Gold Would Not Be Credible*

Gold's persuasiveness to the jury would be severely limited by her romantic and professional relationships to Strand. Evidence of these facts would be admissible: "[a]lthough extrinsic evidence is not admissible to impeach a witness's general credibility, it is admissible to show bias." *United States v. Bagcho*, 151 F. Supp. 3d 60, 72 (D.D.C. 2015), *aff'd*, 923 F.3d 1131 (D.C. Cir. 2019). The Government would thereby show the jury that Gold has a strong bias and motive to fabricate testimony. *See, e.g., Coleman v. Lemke*, 739 F.3d 342, 352 (7th Cir. 2014) (holding that "girlfriend was mother of petitioner's child and thus had a probable bias in petitioner's favor"); *Nelson v. Varano*, No. CIV. 11-7257, 2015 WL 1134124, at *18 (E.D. Pa. Mar. 12, 2015) ("Alibi testimony from Petitioner's girlfriend would have been neither credible nor helpful to Petitioner because she would be obviously biased."). Moreover, any testimony by Gold

that contradicted the statements in her plea agreement would be readily impeached. *Cf. United States v. Fabricius*, No. 95-CR-190 (RSP), 1996 WL 705888, at *2 (N.D.N.Y. Dec. 3, 1996) (holding that "the government clearly can use the statements in Fabricius' plea agreement for impeachment purposes").

Further, the record in the case demonstrates how easily Gold's self-serving false statements are undercut: in a sworn affidavit submitted in support of Strand's disqualification motion, Gold stated that when the Court raised the recusal issue at the arraignment, Gold "had to quickly decide what to do. I was not next to my attorneys, and it was quick." (ECF 85-1.) The transcript of the proceeding, however, squarely proved that Gold was given months to make her decision. The Court thus held that Gold's allegation was clearly contradicted by the record. (ECF 90, p. 4.)

In sum, even if Gold could offer relevant, admissible, testimony, it would be wholly lacking in credibility.[4]

### III.     Strand Has Not Exercised Diligence in Pursuing Gold's Testimony

In addition to the amply sufficient reasons set forth above, Strand's motion should also be denied because Strand has made no effort to secure Gold's testimony at trial through a trial subpoena. Rule 17(b) provides that the court shall issue subpoenas for any witness whose presence is necessary for an adequate defense. Fed. R. Crim. P. 17(b). Thus, if Strand believed that Gold's testimony was indeed necessary for his defense, the remedy available to him is to diligently seek

---

[4] Moreover, if Gold were to testify, the Government could also impeach her testimony with evidence of her reputation for having a character for untruthfulness pursuant to Federal Rule of Evidence 608(a). Although the Government does not often avail itself of that rule, the Government also is not often presented with a defense witness whose reputation for mendacity is as well-established as that of Gold. *See, e.g.,* Ex. B, Geoff Brumfiel, NPR, "This Doctor Spread False Information About COVID. She Still Kept Her Medical License" (Sept. 14, 2021) ("[L]ast month, Dr. Simone Gold stood before a crowd at a conservative church in Thousand Oaks, Calif., and delivered a talk riddled with misinformation"); Ex. C, Reuters, "Fact check: COVID-19 vaccines will not make people test positive for the disease" (Jan. 21, 2021) ("A 56-minute video in which a doctor [Gold] claims to tell 'the truth about CV19 vaccine' contains various misleading claims, including that vaccines will make people test positive for COVID-19, thereby artificially increasing the number of new cases; that the disease was renamed as part of a cover-up; and that there are proven effective treatments for COVID-19 that the media is ignoring.").

a subpoena; Strand has not provided any reason to believe that the Bureau of Prisons would not honor a trial subpoena and produce Gold for trial testimony.

Strand, however, never moved the Court to issue such a subpoena, even though Gold's incarceration became clearly foreseeable when she pleaded guilty on March 3, 2022, and it became a certainty when she was sentenced on June 16, 2022—more than two months ago. Strand's lack of diligence in pursuing Gold's testimony provides an additional, independent reason to deny the motion. *See Johnson v. Knowles*, No. CIVS-08-2995GEBCHS, 2010 WL 1493480, at *5 (E.D. Cal. Apr. 14, 2010) (holding that "when a continuance is sought to secure the attendance of a witness, the defendant must establish he had exercised due diligence to secure the witness's attendance"); *United States v. Diaz*, No. CR 07-0701 LH, 2009 WL 10704914, at *5 (D.N.M. Apr. 16, 2009) (holding that "the Motion for Rule 17(c) Subpoenas well could be denied as waived, due to Defendant's complete failure to exercise due diligence").

### IV. Delaying the Trial Would Be Contrary to the Public Interest

Strand's failure to show that Gold would provide admissible, favorable testimony means that postponing Strand's trial for months would serve no legitimate purpose. Worse yet, delay based on the fanciful notion that Gold's testimony could meaningfully aid Strand's defense would be antagonistic to the public interest in a speedy trial. The Supreme Court, in addressing the Speedy Trial Act, has been unequivocal about the public interest in speedy trial, stating: "If the Act were designed solely to protect a defendant's right to a speedy trial, it would make sense to allow a defendant to waive the application of the Act. *But the Act was designed with the public interest firmly in mind.*" *Zedner v. United States*, 547 U.S. 489, 500–01 (2006) (emphasis added).

Strand has been represented by appointed counsel for 18 months. He received substantially all his discovery months ago. He has had ample time to prepare his defense to relatively discrete charges. The Court has already indulged one defense motion to delay the trial that had been

scheduled for July 18, 2022.  ECF 76.   Enough is enough.  Strand has not shown good cause to postpone the trial yet again, and his motion should be denied.

## CONCLUSION

For the foregoing reasons, and any additional reasons as may be cited at any hearing on this motion, the Government respectfully requests that this Court deny the Motion in its entirety.

Respectfully submitted,
MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:    /s/ *Jason M. Manning*
JASON M. MANNING
Trial Attorney, Detailee
NY Bar No.: 4578068
1400 New York Avenue NW
Washington, D.C. 20005
Jason.Manning@usdoj.gov
(202) 514-6256

APRIL H. AYERS-PEREZ
Assistant U.S. Attorney, Detailee
TX Bar No.: 24090975
11204 McPherson Road, Suite 100A
Laredo, Texas 78045
April.Ayers-Perez@usdoj.gov
(956) 754-0946