UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | 21-CR-85 (CRC) |
| | : | |
| **JOHN STRAND** | : | |
| | : | |
| **Defendant.** | : | |

### UNITED STATES' MOTION *IN LIMINE* TO PRECLUDE CERTAIN TESTIMONY

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, hereby submits the following motion *in limine* to preclude testimony related to (1) the Government's dismissal of Counts I, III, IV, and V in the indictment as to Strand's former co-defendant, Simone Gold, in connection with her guilty plea to Count II; (2) Gold's opinions about Covid-19; and (3) hearsay statements by Strand.

Any testimony by Gold about the charges the Government dismissed as part of her plea agreement would be irrelevant to the issues in controversy in defendant's case. Any testimony by Gold about her opinions related to Covid-19 would be similarly irrelevant to the charged crimes. Thus, any such evidence is properly excluded because it would confuse the issues, mislead the jury, cause undue delay, and waste time. Finally, any testimony by Gold describing out of court statements made by Strand would squarely constitute inadmissible hearsay, and such testimony should be excluded as well.

The Government recognizes that the Court's motions deadline has passed. There is good cause, however, to submit this otherwise untimely motion because it arises from defense counsel's recent (and unexpected) representation that Gold may testify at trial. As described further below, any truthful and admissible testimony provided by Gold would likely incriminate rather than

exculpate Strand. It thus appears likely that Strand and Gold seek Gold's testimony to elicit irrelevant and inadmissible testimony. The Government submits this motion *in limine* so that the Court may establish clear guardrails related to Gold's prospective testimony before trial.

Further, if Strand does call Gold to testify, the Government also requests that the Court inquire of Strand on the record as to whether his choice to offer Gold's testimony is knowing, intelligent, voluntary, and follows satisfactory advice of counsel.

## FACTUAL AND PROCEDURAL BACKGROUND

*I.   The Charges and Plea Offers*

Strand and his former co-defendant Gold were indicted for five crimes allegedly committed during the riot at the United States Capitol on January 6, 2021: violations of 18 U.S.C. §§ 1512(c)(2), 2 (Obstruction of an Official Proceeding); 18 U.S.C. § 1752(a)(l) (Entering and Remaining in a Restricted Building or Grounds); 18 U.S.C. § 1752(a)(2) (Disorderly and Disruptive Conduct in a Restricted Building or Grounds); 40 U.S.C. § 5104(e)(2)(D) (Disorderly Conduct in a Capitol Building); and 40 U.S.C. § 5104(e)(2)(G) (Parading, Demonstrating, or Picketing in a Capitol Building). (ECF 13.) Strand and Gold were each offered an opportunity to plead guilty to Count II in exchange for the dismissal of the remaining counts. Gold accepted the offer, pleaded guilty, and, by the time of trial, will have completed her prison sentence. Strand declined the offer, and his trial will begin on September 19, 2022.

*II.   Gold's Sworn Admissions in Her Plea Agreement*

Gold admitted to the following facts in connection with her guilty plea:

- [On January 6, 2021], "temporary and permanent barricades were in place around the exterior of the U.S. Capitol building, and U.S. Capitol Police were present and attempting to keep the crowd away from the Capitol building and the proceedings underway inside."

2

- "At approximately 2:00 p.m., certain individuals in the crowd forced their way through, up, and over the barricades, and officers of the U.S. Capitol Police, and the crowd advanced to the exterior façade of the building. The crowd was not lawfully authorized to enter or remain in the building and, prior to entering the building, no members of the crowd submitted to security screenings or weapons checks by U.S. Capitol Police Officers or other authorized security officials."

- "[A]ll proceedings of the United States Congress, including the joint session, were effectively suspended until shortly after 8:00 p.m. the same day [January 6, 2021]."

- "In light of the dangerous circumstances caused by the unlawful entry to the U.S. Capitol, including the danger posed by individuals who had entered the U.S. Capitol without any security screening or weapons check, Congressional proceedings could not resume until after every unauthorized occupant had left the U.S. Capitol, and the building had been confirmed secured."

- "On January 6, GOLD and Strand entered the restricted area around the U.S. Capitol and stood with a crowd outside of the East Rotunda door. Directly in front of GOLD and Strand a law enforcement officer was assaulted and dragged to the ground. Shortly after, at approximately 2:27 p.m., GOLD and Strand breached the East Rotunda doors as part of a crowd and entered the U.S. Capitol."

- "At approximately 2:55 p.m. GOLD began to give a speech in Statuary Hall where she stated her opposition to the COVID-19 vaccine mandates and government-imposed lockdowns. Strand recorded GOLD on her phone while she gave her speech. Multiple law enforcement officers had to intervene before GOLD stopped giving her speech, and GOLD and Strand left Statuary Hall."

- "When defendant entered the U.S. Capitol Building on January 6, it was a restricted building. The defendant knew at the time she entered the U.S. Capitol Building that she did not have lawful authority to enter the building."

(ECF 58 (¶¶ 4 - 12).)

In her written plea agreement, Gold acknowledged "voluntarily and of [her] own free will" that these facts are all "true and accurate." ECF 58, p. 5; ECF 57, p. 12. She further adopted these facts during her guilty plea allocution.

    III.    *Strand's Recent Motions Predicated on Gold's Potential Trial Testimony*

On August 9, 2022, Strand filed a recusal motion in which he suggested that Gold could testify at trial. (ECF 85.) On August 17, 2022, the Court denied the motion. (ECF 90.) On

August 27, 2022, Strand moved to postpone the trial on account of the potential prejudice caused by Gold's incarceration and purported unavailability to testify. (ECF 91.) Strand provided only a short, vague proffer of the content of Gold's expected trial testimony:

> Defendant proffers that Dr. Gold's testimony will be critical to his defense, for reasons that are obvious. To state the obvious, however, Dr. Gold was with defendant both before, during, and after the pair's presence in and around the U.S. Capitol, and she can testify to all matters that concern Mr. Strand's defense.

*Id.* The Court denied the motion, ordering Strand to seek a trial subpoena if he wanted to procure Gold's testimony. (Minute Order, August 30, 2022.) Strand subsequently confirmed that Gold would be released from prison before trial rather than after, and thus she is available to testify without a trial subpoena if she and Strand so wish.

## ARGUMENT

Gold's testimony, as cabined by her sworn plea agreement, effectively would establish nearly all the elements necessary to prove that Strand—who was with Gold "before, during, and after the pair's presence in and around the U.S. Capitol," (ECF 91 at ¶ 9)—committed the four misdemeanor charges against him. It would establish nearly all the elements of the obstruction felony as well. Such testimony would not be in Strand's favor, and defense counsel has not identified any plausible testimony by Gold that would be admissible and favorable. Accordingly, the Government moves *in limine* to ensure that Gold's testimony is not offered to introduce inadmissible evidence or further an improper purpose. The Government further moves *in limine* to ensure that any choice by Strand to offer this testimony does not give rise to a subsequent collateral attack if Strand is convicted.

> I.   *Testimony related to the Government's Dismissal of Gold's Felony Obstruction Charge Is Inadmissible*

Strand's motion to dismiss Count I for legal insufficiency has been denied. (ECF 88.) Testimony about the Government's dismissal of Count I as to Gold, however, could be used to misleadingly suggest to the jury that the charge is somehow deficient or inappropriate as to Strand. This testimony would not relate to any fact the Government must prove at Strand's trial or to any affirmative defense. It would thus be irrelevant to the jury's duty as the finder of fact in Strand's trial, and it would also likely confuse the jury and waste time.

Federal Rule of Evidence 401 defines "[r]elevant evidence" as "evidence having any tendency to make the existence of any fact that is ***of consequence to the determination of the action*** more probable or less probable than it would be without the evidence." Fed. R. Evid. 401 (emphasis added); *see also United States v. Becton*, 601 F.3d 588, 594 (D.C. Cir. 2010). The Government's exercise of discretion to dismiss certain counts against Gold in her plea agreement simply has no bearing whatsoever on any factual issue before the jury, and evidence of that discretion is inadmissible. Fed. R. Evid. 402 ("Irrelevant evidence is not admissible").

Further, as a factual matter, Strand cannot contend that he is being treated disproportionately in comparison to Gold because he received the same plea offer and rejected it. Regardless, as a matter of law, the prosecutor's exercise of discretion is not a matter for the jury's consideration. The Supreme Court has held, "so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his

discretion."[1]  *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978).   In any event, the introduction of any such evidence or argument should be precluded because any probative value of such evidence is substantially outweighed by the dangers of unfair prejudice, confusing the issues, misleading the jury, undue delay, and wasting time.   Fed. R. Evid. 403.

> II.   The Government Should Be Permitted to Impeach Gold with a Redacted Plea Agreement and Statement of Facts, as well as Evidence of Bias

Any testimony by Gold that contradicts any of the sworn statements in either her plea agreement or the related sworn statement of facts would be subject to impeachment with those documents and with Gold's admissions in court.   Cf. *United States v. Fabricius*, No. 95-CR-190 (RSP), 1996 WL 705888, at *2 (N.D.N.Y. Dec. 3, 1996) (holding that "the government clearly can use the statements in Fabricius' plea agreement for impeachment purposes").   The Government requests authorization to use redacted versions of Gold's plea agreement and statement of facts for this purpose.   Attached as Exhibits A and B are versions of those documents in which the proposed redacted information, which encompasses all references to the offense to which Gold pleaded guilty and the offenses that the Government dismissed, have been highlighted in yellow.   *See* Ex. A, B.

Moreover, Gold's romantic and professional relationships to Strand are relevant to whether her testimony is colored by bias.   Thus, if Gold testifies, the Government should also be permitted to introduce evidence of these facts: "[a]lthough extrinsic evidence is not admissible to impeach a witness's general credibility, it is admissible to show bias."   *United States v. Bagcho*, 151 F. Supp. 3d 60, 72 (D.D.C. 2015), *aff'd*, 923 F.3d 1131 (D.C. Cir. 2019).

---

[1]   A prosecutor's discretion, of course, is nevertheless "subject to constitutional constraints." *United States v. Batchelder*, 442 U.S. 114, 125 (1979).

      *III.    Gold Should Not Be Permitted to Testify to Irrelevant Opinions about Covid-19*

The Government also moves to preclude testimony by Gold that would be offered for the purpose of furthering Gold's aims rather than advancing any legitimate defense of Strand. Gold leads an organization, America's Frontline Doctors ("AFLDS"), that describes itself as an advocacy group that "combat[s] those who push political and economic agendas at the expense of science and quality healthcare solutions." Gold used her illegal entry into the Capitol as an opportunity to promote AFLDS: as set forth above, Gold admits that she gave a recorded speech about Covid-19 while unlawfully inside the Capitol. Gold then capitalized on her subsequent criminal prosecution to attract publicity and raise more than $400,000 for AFLDS, as the Government described in its sentencing submission. (ECF 68 (showing that AFLDS has raised more than $430,000 for purported legal costs for Gold).) The opinions that Gold and AFLDS espouse related to Covid-19 and various other policy and political issues, however, are not relevant to any factual issue for the jury. Moreover, the introduction of irrelevant testimony by Gold on these issues would risk confusing the jury and wasting time. Any such testimony should be excluded pursuant to Rules 402 and 403.

      *IV.    Gold Should Not Be Permitted to Testify to Any of Strand's Out-of-Court Statements*

Strand cannot use Gold's testimony to introduce evidence of his own out-of-court statements. One critical issue at trial in relation to the charge that Strand obstructed an official proceeding in violation of 18 U.S.C. § 1512(c)(2) will be whether Strand intended, at least in part, to obstruct the certification of the 2020 Presidential election when entering and remaining in the U.S. Capitol on January 6, 2021. The rule against hearsay prohibits Gold from testifying about statements made by others when those statements are offered for their truth. Fed. R. Evid. 801,

802. Any testimony by Gold as to any statement Strand made about his intentions on January 6, 2021—or any other testimony by Gold describing any other statement of Strand's that is introduced for its purported truth—should be excluded. *Id.*

> V.  The Court Should Ensure that Strand's Choice to Call Gold to Testify Is Knowing, Intelligent, Voluntary, and based on Satisfactory Advice of Counsel

Gold has admitted under oath that she committed one of the crimes that Strand is charged with, and she did so while they were side by side. Her sworn admissions also bear on many, if not most, of the elements the Government must prove in the other four charges. Although one could imagine scenarios in which a convicted defendant could sensibly testify on behalf of a co-defendant, a decision to call Gold to testify in Strand's defense nevertheless would be highly unusual. The Government therefore requests that the Court conduct a colloquy with the defendant before Gold testifies to ensure that he is making a knowing, intelligent, and voluntary decision, and that he is doing so after having received satisfactory advice from his counsel.[2]

## CONCLUSION

WHEREFORE, the Government respectfully requests that this Court grant the motion *in limine* and preclude the defendant from introducing any testimony from Gold, or related evidence or argument, concerning the following:

(1) the Government's dismissal of Counts I, III, IV, and V as to Strand's former co-defendant, Simone Gold, in connection with her guilty plea to Count II;

(2) Gold's opinions about Covid-19; and

(3) hearsay statements by Strand;

---

[2] To be clear, the Government does not question the competence or good faith of Strand's counsel. Rather, the Government requests this colloquy to ensure that, in the event Strand is convicted, the conviction is not vulnerable to appeal or collateral attack based on Strand's choice to elicit Gold's testimony.

and

WHEREFORE, the Government respectfully requests that this Court grant the motion *in limine* and permit the Government to impeach Gold with redacted versions of her plea agreement and statement of facts, and to impeach Gold with intrinsic evidence of bias;

and

WHEREFORE, the Government respectfully requests that this Court inquire of Strand on the record before any testimony by Gold to ascertain whether Strand's decision to call Gold to testify is knowing, intelligent, voluntary, and made following satisfactory advice of counsel.

        Respectfully submitted,

        MATTHEW M. GRAVES
        UNITED STATES ATTORNEY
        D.C. Bar No. 481052

By:       /s/ *Jason M. Manning*
        JASON M. MANNING
        Trial Attorney, Detailee
        NY Bar No.: 4578068
        1400 New York Avenue NW
        Washington, D.C. 20005
        Jason.Manning@usdoj.gov
        (202) 514-6256

        APRIL H. AYERS-PEREZ
        Assistant U.S. Attorney, Detailee
        TX Bar No.: 24090975
        11204 McPherson Road, Suite 100A
        Laredo, Texas 78045
        April.Ayers-Perez@usdoj.gov
        (956) 754-0946