```
1                 IN THE UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA
2
     - - - - - - - - - - - - - - - x
3    THE UNITED STATES OF AMERICA,
                                          Criminal Action No.
4                   Plaintiff,           1:21-cr-00085-CRC
                                         Monday, September 19, 2022
5    vs.                                 10:02 a.m.

6    JOHN HERBERT STRAND,

7                   Defendant.
     - - - - - - - - - - - - - - - x
8

9    _____

10                    TRANSCRIPT OF JURY TRIAL
          HELD BEFORE THE HONORABLE CHRISTOPHER R. COOPER
11                  UNITED STATES DISTRICT JUDGE
     _____
     APPEARANCES:
12   For the United States:        APRIL HOLLY AYERS-PEREZ, ESQ.
                                    U.S. ATTORNEYS OFFICE
13                                  Southern District of Texas
                                    11204 McPherson Road
14                                  Suite 100a
                                    Laredo, TX 78045
15                                  (956) 723-6523

16                                  JASON MANNING, ESQ.
                                    DOJ-CRM
17                                  1400 New York Avenue NW
                                    Washington, DC 20005
18                                  (202) 514-6256
                                    jason.manning@usdoj.gov
19
     For the Defendant:            STEPHEN F. BRENNWALD, ESQ.
20                                  BRENNWALD & ROBERTSON, LLP
                                    922 Pennsylvania Avenue, SE
21                                  Washington, DC 20003
                                    (301) 928-7727
22
     Court Reporter:               Lisa A. Moreira, RDR, CRR
23                                  Official Court Reporter
                                    U.S. Courthouse, Room 6718
24                                  333 Constitution Avenue, NW
                                    Washington, DC  20001
25                                  (202) 354-3187
```

```
 1                        P R O C E E D I N G S
 2              THE COURTROOM DEPUTY:  Your Honor, we're on the
 3    record for Criminal Case 21-85, Defendant 1, United States
 4    of America vs. John Herbert Strand.
 5              Counsel, please approach the lectern and identify
 6    yourselves for the record.
 7              MS. AYERS-PEREZ:  Good morning, Your Honor; April
 8    Ayers-Perez and Jason Manning for the government.
 9              THE COURT:  Okay.  Good morning.
10              MR. BRENNWALD:  Good morning, Your Honor; Steve
11    Brennwald for Mr. Strand, who is present.
12              THE COURT:  Good morning, Mr. Brennwald.
13              Good morning, Mr. Strand.
14              MR. BRENNWALD:  If I could just note for the
15    record, Your Honor, at 8:11 Mr. Strand swabbed himself with
16    his Lucira Rapid PCR -- or maybe not Rapid PCR, but COVID
17    test.  I observed him do it.  We waited 30 minutes.  It was
18    negative.  I took a picture on my phone.  He was negative.
19              THE COURT:  Great.  Thank you.
20              All right.  Before we bring the panel in,
21    Ms. Perez, would you like to pick the first alternate, and,
22    Mr. Brennwald, would you like to pick the second alternate
23    seat.
24              (Pause)
25              THE COURT:  All right.  Ms. Jenkins, these red
```

1     labels on the seats are no longer operative, so we should

2     probably take those off, don't you think?

3                    THE COURTROOM DEPUTY:  Yes.

4                    THE COURT:  So, Ms. Jenkins, 1 through 7 will be

5     on the lower row, left to right; 8 through 14 will be on the

6     top row, left to right.

7                    All right.  We're ready for the panel.

8                    (Venire enters courtroom)

9                    THE COURTROOM DEPUTY:  Your Honor, the panel is

10    seated.

11                   THE COURT:  All right.  Please be seated,

12    everyone.

13                   Good morning, ladies and gentlemen.

14                   VENIRE IN UNISON:  Good morning.

15                   THE COURT:  Welcome to the United States District

16    Court for the District of Columbia.  My name is Christopher

17    Cooper, and I will be presiding over this trial.

18                   Thank you very much for your service.  Thank you

19    very much for your patience.  We had an unusually large

20    number of jury panels this morning; so I know that it took a

21    little bit longer than it usually does, but just bear with

22    us.  These folks are doing everything that they can to make

23    it an as efficient and effective process today as possible.

24                   Just to orient you a little bit, you've met

25    Ms. Jenkins.  She's our courtroom deputy.  She makes sure

1    that the trains run on time and that I don't screw anything

2    up.

3         Ms. Moreira is our court reporter, and she's

4    taking down everything that is said in the courtroom today.

5         You'll see some of my staff and court staff over

6    on the left, and we will meet the parties to this case in

7    just a minute.

8         This is a criminal case entitled *United States vs.*

9    *John Strand*.  It arises out of the defendant's conduct at

10   the U.S. Capitol on January 6, 2021.  At the time of the

11   conduct in question, Mr. Strand resided in Los Angeles,

12   California.

13        The government has charged Mr. Strand with five

14   crimes relating to Congress's meeting at the United States

15   Capitol on January 6th to certify the Electoral College vote

16   for president.

17        First, Mr. Strand is charged with obstructing an

18   official proceeding for allegedly interfering with

19   Congress's meeting and aiding and abetting the obstruction

20   of that proceeding.

21        Second, he is charged with entering and remaining

22   in a restricted building or grounds.

23        Third, he is charged with disorderly and

24   disruptive conduct in a restricted building or grounds.

25        Fourth, he is charged with disorderly conduct in a

1    Capitol building.

2         And fifth, he is charged with parading,

3    demonstrating, or picketing inside a Capitol building.

4         Mr. Strand has pleaded not guilty to each of those

5    five counts.

6         The purpose of this morning's session is to

7    select a jury that will be fair and impartial and will give

8    Mr. Strand a fair trial in this case.

9         So the way that we will pick that jury is each of

10   you should have an index card -- does everyone have an index

11   card? -- and a pen, and I'm going to ask you a series of yes

12   or no questions.  If your answer to any of the questions is

13   yes, write the question number on your card.  Do not write

14   yes or no.  Do not explain your answer.  Just write the

15   question number on the card, if your answer to the

16   particular question is yes.  And there are going to be, I

17   believe, about 42 questions that I'm going to ask you.

18        We're then going to collect your cards, and we'll

19   have some of you -- we'll excuse some of you to come back

20   later, but then we'll start questioning folks one by one

21   regarding the answers that each one of you provided on your

22   card.  We'll do that at the witness stand.  And I may ask

23   you some follow-up questions.  The lawyers may also ask you

24   some follow-up questions.  All right?

25        But before we ask you those questions, we need

1    each of you to stand, raise your right hand, and to take an

2    oath.

3                    (Venire sworn)

4                    THE COURT:  All right.  So the first question is:

5                    Based on my conversations with the lawyers I

6    expect the trial in this case to last through the end of

7    this week.  The typical trial day lasts from 9:30 to 5:00

8    with a 15-minute break in the morning, 15-minute break in

9    the afternoon, and about an-hour-and-15-minute break for

10   lunch.  Do any of you have difficulty with hearing, seeing,

11   understanding the English language, or is there anything

12   else which would impair your ability to sit as a juror and

13   devote your full attention to this trial given the schedule

14   that I've just described?

15                   If there's anything that would prohibit you from

16   being a juror based on the schedule I've described, please

17   write 1 on your card.

18                   Question 2:  Apart from your general knowledge of

19   the events of January 6, 2021, do you know or have you heard

20   or read anything, or watched any videos, about Mr. Strand's

21   alleged activities that day?

22                   If you've read or heard or seen anything about

23   Mr. Strand's activities, write 2 on your card.

24                   Mr. Strand worked for an organization named

25   America's Frontline Doctors.  Have you ever read any

 1    articles or seen any media regarding that organization?  If

 2    yes, write 3 on your card.

 3              And if anyone has any questions about the

 4    questions, feel free to raise your hand, and I will try to

 5    clarify.

 6              Question 4:  Do you or anyone -- yes.

 7              Your pen's not working?  Let's give this young

 8    lady a new pen.

 9              All set?  Okay.

10              Question 4:  Do you or anyone you are close to

11    live or work in the area of the Capitol building located on

12    First Street, Southeast, in Washington, D.C.?

13              PROSPECTIVE JUROR:  Could you repeat that, please.

14              THE COURT:  Do you or anyone you are close to live

15    or work in the area of the Capitol building on First Street,

16    Southeast, in Washington, D.C.?  Or are you otherwise

17    familiar with this area other than just knowing where the

18    Capitol is?  If yes, write 4 on your card.

19              Question 5:  Were you near the Capitol on January

20    6, 2021?

21              At this stage I will ask counsel for the

22    government to introduce themselves and their team.  And feel

23    free to remove your mask when doing so.

24              MS. AYERS-PEREZ:  Thank you, Your Honor.

25              My name is Assistant U.S. Attorney April Ayers-

1    Perez.  I'm joined by my co-counsel, Trial Attorney Jason

2    Manning.  We are joined by paralegal Shirine Rouhi and FBI

3    Special Agent Eric Turner.

4           THE COURT:  Okay.  Question 6, do you know or know

5    of Ms. Ayers-Perez, Mr. Manning, or anyone else on the

6    government's trial team?  If yes, write 6 on your card.

7           All right.  I'll now ask defense counsel to

8    introduce himself, the defendant, and his co-counsel.

9           MR. BRENNWALD:  Good morning, ladies and

10   gentlemen.  My name is Stephen Brennwald.  My office is

11   about a mile from here on Capitol Hill.

12          Along with me is Ms. Sameera Ali.  She normally

13   practices in Fairfax but is gracing us with her presence.

14          And then we have Mr. John Strand, who, as the

15   judge told you earlier, used to live in Los Angeles and has

16   since moved to Naples, Florida.

17          THE COURT:  Question 7:  Do you know or know of

18   Mr. Strand or his attorneys, Mr. Brennwald or Ms. Ali?  If

19   yes, write 7 on your card.

20          Question 8:  Please take a minute to look at your

21   other jurors as well as the Court and the courthouse's

22   staff.  Do you know or recognize any other potential jurors

23   or courthouse staff?  If yes, write 8 on your card.

24          Question 9:  During the presentation of evidence

25   you may hear testimony from or about the following persons:

1    Carneysha Mendoza, Kyle Jones, Elizabeth Glavey, Joshua

2    Pollitt, Nelson Vargas, Joseph Pitts, Austin McGoff,

3    Benjamin Brockwell, and Special Agent Eric Turner.  These

4    folks are not -- will not necessarily testify, but they may

5    give testimony or you may hear about their names during the

6    trial.  Do you know any of these prospective witnesses?

7          If you know any of them, write 9 on your card and

8    just note the name of the witness who you think you might

9    know.

10          Okay.  I've already asked this, but if you could

11   take a look at courthouse staff.  Do you know me or a member

12   of courthouse staff, including other members of the

13   courthouse staff that you may have met earlier this morning?

14   If so, please write 10 on your card.

15          Question 11:  If you are selected for this jury, I

16   will instruct you that your job is to determine whether the

17   defendant committed the charged offenses beyond a reasonable

18   doubt based on the evidence presented and that you are not

19   to consider the potential punishment the defendant could

20   receive if he is found guilty.  Would you have any

21   difficulty or hesitation following that instruction?  If

22   yes, write 11 on your card.

23          12:  The government has the burden of proving

24   Mr. Strand guilty beyond a reasonable doubt, and he is

25   presumed to be innocent unless and until the government

1    meets that burden.  The burden of proof never shifts to the

2    defendant.  Would you have any difficulty or hesitation with

3    respecting this allocation of the burden of proof?  If yes,

4    write 12 on your card.

5         13:  Because Mr. Strand is presumed innocent, he

6    need not testify nor offer any evidence at trial.  Do you

7    think his decision not to testify, to call witnesses, or to

8    put on any evidence would make you think it is more likely

9    that he is guilty?  If yes, write 13 on your card.

10        14:  Mr. Strand has been charged by an indictment

11   in this case.  An indictment is not evidence of a crime.  It

12   merely initiates a criminal case and is the formal way of

13   presenting the charges.  Would the fact that an indictment

14   charged Mr. Strand with a crime lead you to believe that he

15   is guilty or make it difficult for you to apply the

16   presumption of innocence?  If so, write 14 on your card.

17        If you are selected as a juror, I will instruct

18   you to avoid all media coverage, including radio,

19   television, podcasts, and social media, and not to use the

20   Internet with regard to this case for any purpose.  That is,

21   you will be forbidden from reading anything about the case,

22   listening to radio and podcasts about the case, watching TV

23   news or anything on the Internet about the case, Googling or

24   blogging or Tweeting or using any other social media in

25   regards to the case, or reading or posting any comments

 1    about the case.  Do you have any reservations or concerns

 2    about your ability or willingness to follow that

 3    instruction?  If yes, write 15 on your card.

 4         Question 16:  As I said, Mr. Strand has been

 5    charged with crimes relating to Congress's meeting at the

 6    United States Capitol on January 6th to certify the

 7    Electoral College vote for president.  Is there anything

 8    about the nature of these allegations that would prevent you

 9    from being neutral and fair in evaluating the evidence

10    regarding Mr. Strand particularly?

11         If there's anything about the events of January

12    6th that would make it difficult for you to be fair and

13    impartial with respect to Mr. Strand, write 16 on your card.

14         17:  Do you or does someone you know have any

15    direct or indirect connection to the events at the U.S.

16    Capitol on January 6, 2021?

17         Question 18:  Have you ever watched video of what

18    happened at the Capitol on January 6th, on the news,

19    Internet, or social media?

20         PROSPECTIVE JUROR:  What number?

21         THE COURT:  That is 18.

22         No. 19:  Have you ever watched video or read any

23    articles about Dr. Simone Gold in relation to January 6,

24    2021, or otherwise on the news, Internet, or social media?

25         Question 20:  Based on what you may have seen or

1    heard about Mr. Strand or Dr. Gold, have you formed any

2    opinions about Mr. Strand's guilt or innocence?

3            21:  Have you watched any portion of the TV

4    coverage of hearings by the January 6th Committee in the

5    House of Representatives?  If yes, write 21 on your card.

6            Do you have such strong feelings about the events

7    of January 6th or those who have been charged with crimes

8    for their participation in those events that it would be

9    difficult for you to follow the Court's instructions and

10   render a fair and impartial verdict if you are chosen as a

11   juror?  If yes, write 22 on your card.

12           23:  Under certain circumstances, the government

13   can obtain authorization from a judge to search a premises

14   or electronic media to obtain evidence like emails, text

15   messages, video recordings, letters, financial information,

16   and other materials or information.  I will instruct you

17   that any evidence that is presented to you at trial was

18   obtained legally and you can consider it.  Do you have any

19   concerns about your ability to follow that instruction?  If

20   yes, write 23 on your card.

21           24:  Do you think that your political views, or

22   those of your significant other, would affect your ability

23   to serve as a fair and impartial juror in this case?  If

24   yes, write 24.

25           The following handful of questions relate to you,

1    members of your immediate family, and your close personal

2    friends.  And when I say "members of your immediate family,"

3    I mean those members of your family that you are -- you live

4    with, you are close with.  It's not your second cousin from

5    Peoria, okay?

6              25:  Has any member of that group ever been

7    arrested or charged for any offense other than a traffic

8    offense?

9              26:  Has any member of that group ever served as a

10   witness in any judicial proceeding?

11             27:  Has any member of that group been the victim

12   of a criminal offense?

13             28:  Has any member of that group ever worked in

14   any aspect of the legal field as, for example, a lawyer,

15   prosecutor, criminal defense attorney, legal secretary,

16   legal assistant, court reporter, investigator, law clerk,

17   judge, or any similar profession?

18             PROSPECTIVE JUROR:  I have a question.

19             THE COURT:  So that we can pick it up, we're going

20   to give you a microphone.

21             PROSPECTIVE JUROR:  I'm sorry.

22             THE COURT:  Speak loudly.  It's not for me; it's

23   for the court reporter.

24             PROSPECTIVE JUROR:  And it's really very simple.

25   I was just wondering whether this is about us and our family

1    or only our family members?

2              THE COURT:  You or your family members, but only

3    close family members.

4              PROSPECTIVE JUROR:  Thank you.

5              THE COURT:  I like the simple questions.

6              Question 29:  Has any member of that group ever

7    applied for employment with, were employed by, or received

8    training by any local, state, or federal law enforcement

9    agency, including a prosecutor's office, the FBI, Homeland

10   Security, the Secret Service, Park Police, Capitol Police,

11   local police, or a courthouse?

12             So if you or any member of your immediate family

13   or very close friends have ever been employed by or sought

14   employment with any law enforcement agency; if yes, write 29

15   on your card.

16             30:  Has any member of that group ever served in

17   the military?

18             31:  Has any member of that group ever been a

19   party to or involved in any legal action or dispute with an

20   agency of the United States, or had any interest in such a

21   legal action or dispute or its outcome?  So if any member of

22   that group has had a dispute with a federal agency or an

23   interest in any dispute with a federal agency, write 31 on

24   your card.

25             32:  Has any member of that group been the subject

1    of an investigation by a government agency, or do you or any

2    of your close family members or friends have any case

3    pending in federal or state court?

4           Okay.  And these next questions just relate to you

5    personally as opposed to the preceding group.

6           Have you ever had any legal training or law course

7    or ever worked in a law office?  So any legal training or

8    prior work experience in a law office, write 33 on your

9    card.

10          PROSPECTIVE JUROR:  Judge, I was a lobbyist for a

11   law office, but I had no legal -- I did no legal work and

12   had no connection with any of the legal.  Is that considered

13   yes or no?

14          THE COURT:  So you probably worked in a law

15   office, so just write --

16          PROSPECTIVE JUROR:  I worked in a law office, yes.

17          THE COURT:  Yes, so write down the number of that

18   question.

19          Question 34:  Have you had an experience -- a

20   prior experience as a juror either on a trial jury or a

21   grand jury that would affect your ability to be fair in this

22   case?  So if you've had prior jury experience that you think

23   would somehow affect your ability to be fair in this case,

24   please write 34 on your card.

25          35:  Have you had any contact or any dispute with

1    a department or agency of the United States government that

2    was not handled to your satisfaction?  If so, write 35.

3              36:  Do you have any opinions or beliefs

4    concerning law enforcement in general or specifically the

5    Metropolitan Police Department, the Capitol Police

6    Department, or the U.S. Attorney's Office that would affect

7    your ability to evaluate the evidence fairly and impartially

8    in this case?

9              37:  Several of the witnesses in this case will be

10   law enforcement officers.  I will instruct you that the

11   testimony of a law enforcement officer is to receive no

12   greater or no lesser consideration simply because that

13   witness is a law enforcement officer.  Would you have

14   difficulty following that instruction?

15             Okay.  Home stretch.

16             Question 38:  Do you have any moral, religious, or

17   ethical beliefs that prevent you from sitting in judgment of

18   another person?  If so, write 38.

19             39:  Do you have any health problems that would

20   interfere with your ability to sit as a juror in this case?

21   This would include any medication that makes you drowsy or

22   makes it difficult for you to remain alert during these

23   proceedings and also includes any problems with your hearing

24   or your eyesight.  If yes, 39.

25             Question 40:  The Court has taken a number of

1    precautions with respect to COVID-19.  You'll see the

2    Plexiglas.  Obviously folks are masked, or if they're not

3    masked, they have presented a negative COVID test.  Despite

4    these measures, is there any reason that serving on a jury

5    during the pandemic would make it difficult for you to

6    fulfill your duties as a juror?  If so, write 40 on your

7    card.

8              I expect the presentation of evidence in the case,

9    if everything goes as planned, probably to wrap up Thursday

10   or Friday, but no later.  Once the jury gets the case, it

11   will be up to the jury to decide how long to deliberate.  I

12   cannot tell you how long deliberations will be because

13   obviously that is determined by the jury itself.  Would

14   serving as a juror in this case be an extreme hardship to

15   you?

16             And when I say "extreme hardship," I recognize

17   that jury service is inconvenient for everyone.  I'll also

18   say that if you are excused based on an extreme hardship,

19   you will likely be placed back in the pool and will be

20   called back for a trial in the not-so-distant future.  So

21   extreme hardship is something that distinguishes you from

22   the normal inconvenience of being away from work or family

23   to serve on a jury.

24             But if you do believe you have an extreme

25   hardship, please write 41 on your card, and we can discuss

```
 1    it.
 2            The last question, 42, is what I call a catch-all
 3    question.  Is there any reason that I have not asked you
 4    about that would make it difficult for you to sit as a fair
 5    and impartial juror in this case or would make it difficult
 6    for you to accept and follow my instructions on the law?
 7            All right.  Anything else that I've not mentioned
 8    that you would want to bring to my attention, please write
 9    42 on your card.
10            All right.  Ms. Jenkins reminds me that I
11    neglected to tell you that on the upper right-hand corner of
12    your card please write your juror number, and that's the
13    number on your badge.
14            MR. BRENNWALD:  Can we have a second, please?
15            (Pause)
16            THE COURT:  All right.  Ladies and gentlemen, with
17    respect to Question 9, which was the list of potential
18    witnesses that you may or may not hear from in the case,
19    there are a few more names that I'd like to give you:
20    Pastor Rob McCoy, Bishop Leon Benjamin, and Taylor -- say
21    the last name, Mr. Brennwald.
22            MR. BRENNWALD:  It's Mesple with an accent in
23    French, so it's Taylor Mesple.
24            THE COURT:  If you recognize any of those folks,
25    write down No. 9 on your card and indicate who it is you
```

 1    think you may know.

 2                   (Pause)

 3                   THE COURT:  I understand there's been a request to

 4    repeat Questions 18 and 27.

 5                   Question 18:  Have you ever watched video of what

 6    happened at the U.S. Capitol on January 6th on the news,

 7    Internet, or social media?

 8                   And I suspect many of you will answer yes to that

 9    question.  We will question you further at the bench

10    regarding the extent of your having watched those videos and

11    anything you might remember about them, including whether

12    you've seen any video of the defendant.

13                   And Question 27:  Have you, any close family

14    member -- or excuse me -- you, any member of your immediate

15    family, or any close friend been the victim of a crime?

16                   Any other questions?

17                   All right.  Ms. Jenkins, could you collect

18    everyone's cards, please.

19                   (Pause)

20                   (The following is a bench conference held

21                    outside the hearing of the gallery)

22                   THE COURT:  So, Counsel if you're comfortable

23    doing so, you can remove your masks as well, okay?  It's up

24    to you.

25                   (This is the end of the bench conference)

```
1                    (Pause)
2              THE COURT:  Okay.  Ladies and gentlemen, I try not
3    to have people waiting around, if it's not necessary.  This
4    process necessarily takes a fair amount of time.  I hope --
5    we got started a little late, and I really hope to complete
6    it by the end of the day, but I don't want folks just
7    waiting around for nothing.
8              So what I'd like to do is have everyone in the
9    jury box stay.  I believe the folks in the first row on my
10   right were towards the end of the line, so let's have the
11   folks in the second, third, and fourth rows on my right
12   remain seated, okay?
13             Everyone else, which means everyone on the left
14   side of the courtroom as well as the front row and I believe
15   the rear row on the back, is excused until let's say 2:30,
16   okay?  You may leave the courthouse.  You can go to work, if
17   you work closely.  You can go shopping.  You can go to
18   lunch.  You can do whatever it is you'd like, but come back
19   at 2:30 and be ready to go.
20             And it's very important that you not discuss the
21   case with anyone, that you not do any research about the
22   case on the Internet, on social media, and that you not
23   Tweet about the case.
24             It is very tempting to call your loved ones and
25   say, "Wow, you know, I just got impanelled as a potential
```

1    juror on this particular case."  Please do not do that,

2    okay?  Mr. Strand is entitled to a trial based simply on the

3    evidence that is presented in this case rather than any

4    independent research that jurors might conduct or anything

5    that they hear in the press or from their family or from

6    their friends, and that's incredibly important.  So I'm

7    willing to let you go, but in exchange you've got to promise

8    me not to discuss the case or do any research about the

9    case.

10            So those folks who we don't need right now, you're

11   excused, and come back and be ready to go at 2:30.

12            (Remaining venire exit courtroom)

13            THE COURT:  Okay.  And, ladies and gentlemen, just

14   so that you know what's going on, we're now going to bring

15   individuals up in the order in which you came into the

16   courtroom for individual voir dire.  It usually doesn't take

17   too long.  We'll keep the rest of you in a holding pattern

18   outside, and we'll bring you up individually to take the

19   witness stand.  Okay?

20            Thank you for your patience, and same

21   instructions:  no discussions about the case, no research

22   about the case.

23            (Remaining venire exit courtroom)

24            THE COURT:  Okay.  Have a seat.

25            All right.  Counsel, while they're out, just in

1    terms of sort of goal posts, all right, you know, obviously

2    virtually everyone will have heard of the events.  Everyone

3    will have, you know, viewed video footage, et cetera.  You

4    know, just knowing something about it or having, you know, a

5    view about it in general is not going to get anybody off,

6    all right?  So don't bother to pursue those lines, and I'll

7    cut you off, if necessary.

8            I mean, the questions will be whether they're able

9    to give Mr. Strand a fair trial and put aside whatever it is

10   they've seen or, you know, whatever conclusions that they've

11   drawn.  All right?

12           MR. BRENNWALD:  While we're waiting, Your Honor,

13   there's a juror who knows me.  I've known her for years.  I

14   guess we will get to her when we get to her, but...

15           THE COURT:  Does that cut for or against you,

16   Mr. Brennwald?

17           MR. BRENNWALD:  Against me, I'm sure.  Knowing me

18   is not to want to know me.

19           THE COURT:  We're off the record.

20           (Discussion off the record)

21           THE COURTROOM DEPUTY:  Juror No. 1736.

22           THE COURT:  Good morning.

23           PROSPECTIVE JUROR NO. 1736:  Good morning.

24           THE COURT:  You should feel free to take your mask

25   off, if you're comfortable doing so.

```
 1              All right.  So you're a public school teacher,
 2     right?
 3              PROSPECTIVE JUROR NO. 1736:  Yes.
 4              THE COURT:  What do you teach?
 5              PROSPECTIVE JUROR NO. 1736:  I teach art.
 6              THE COURT:  What grade?
 7              PROSPECTIVE JUROR NO. 1736:  Pre-K3 all the way to
 8     fifth grade.
 9              THE COURT:  Okay.  Which school?
10              PROSPECTIVE JUROR NO. 1736:  I'm at Seaton
11     Elementary right now.
12              THE COURT:  All right.  So you answered yes to 18.
13     You obviously watched video of the events of January 6th.
14     Was it just when it happened, or have you watched videos
15     more recently?
16              PROSPECTIVE JUROR NO. 1736:  I have watched just
17     occasionally when it's on the local news.
18              THE COURT:  Okay.  And you watched some of the
19     January 6th hearings in the House?
20              PROSPECTIVE JUROR NO. 1736:  I did.  I believe I
21     mostly saw a few minutes of summaries.  I didn't actually,
22     you know, tune in and listen to a lot of the trial.
23              THE COURT:  And you say you think -- 24, you think
24     your political views could affect your ability to be a fair
25     and impartial juror?
```

1    PROSPECTIVE JUROR NO. 1736:  I'd like to think I'm

2    fair, but I understand my bias as well.

3    THE COURT:  All right.  Well, tell me a little bit

4    more about that.  I mean, obviously people have strong

5    feelings about January 6th one way or the other.  Lots of

6    people were here that day.

7    Mr. Strand is being charged for the behavior,

8    the conduct, that the government alleges he particularly

9    engaged in.  How do you think -- and I want you to be honest

10   with me -- how do you think your political views would

11   affect your ability to follow my instructions and give this

12   fellow a fair trial?

13   PROSPECTIVE JUROR NO. 1736:  I do believe I would

14   follow your instructions to the best of my ability, and I do

15   understand that not everyone who was present necessarily

16   broke laws.

17   So I don't know.  I think I can be impartial, but

18   I also feel strongly that the act in general as a group of

19   people was questionable.

20   THE COURT:  All right.  So I sense a little

21   hesitancy in your voice.

22   PROSPECTIVE JUROR NO. 1736:  Yes.

23   THE COURT:  Is that fair?

24   PROSPECTIVE JUROR NO. 1736:  Yes.

25   THE COURT:  Okay.  Thank you very much.  You can

1    go back to the pool, okay?

2              PROSPECTIVE JUROR NO. 1736:  Thank you.

3              THE COURT:  Okay.  The Court will strike for cause

4    Juror 1736 because of her answers with respect to her

5    political views.

6              THE COURTROOM DEPUTY:  Your Honor, Juror No. 124.

7              THE COURT:  Step right up, ma'am, and feel free to

8    remove your mask, if you're comfortable doing so.

9              PROSPECTIVE JUROR NO. 0124:  Thank you.

10             THE COURT:  It says you're a consultant and

11   fundraiser with something called Trendency.  Tell us what

12   Trendency is.

13             PROSPECTIVE JUROR NO. 0124:  Trendency is in

14   longitudinal market research, so it's like not a moment in

15   time.  We mostly work on advocacy organizations and

16   progressive causes.  So it's basically research.

17             THE COURT:  Okay.  You answered yes to a number of

18   questions, including 24, "Do you think your political views

19   or those of your significant others might affect your

20   ability to serve as a fair and impartial juror in this

21   case?"  Why did you answer yes to that question?

22             PROSPECTIVE JUROR NO. 0124:  Well, my husband and

23   I have -- so Trendency belong s to both of us, as does

24   Lincoln Park Strategies.  We've worked -- my husband before

25   me -- as political consultants for a number of years.  My

1  husband worked for the Kerry campaign.  He worked for Obama.

2  He worked for a number of progressive causes and just feels

3  very strongly about democracy and the democratic process.

4           THE COURT:  Okay.  Well, this case is not about

5  who won the 2020 election.  It's not about what the

6  consequences were of January 6th.  The case is about what

7  Mr. Strand did or did not do and whether that conduct

8  constitutes a criminal offense.

9           And so the bottom line question is -- you know,

10  obviously many people have strong feelings one way or the

11  other about January 6th, and the question is, can you put

12  those aside and give this fellow a fair trial just based on

13  the evidence?

14           And I want you to be honest with me.

15           PROSPECTIVE JUROR NO. 0124:  I can do that.

16           THE COURT:  And are you pretty darn confident you

17  could do that?

18           PROSPECTIVE JUROR NO. 0124:  Yes, I am.

19           THE COURT:  Okay.  There are a few other

20  questions.

21           You live near the Capitol?

22           PROSPECTIVE JUROR NO. 0124:  I do.  I've lived on

23  Capitol Hill the past 20 years.

24           THE COURT:  Were you at home that day?

25           PROSPECTIVE JUROR NO. 0124:  I was not.

```
 1              THE COURT:  You were not?

 2              PROSPECTIVE JUROR NO. 0124:  We were away.

 3    Although my parents also live on the Hill, and they were

 4    home.

 5              THE COURT:  Did they observe any of the events, or

 6    were they just --

 7              PROSPECTIVE JUROR NO. 0124:  My parents live on

 8    Fourth Street, so they live quite close, and my dad likes to

 9    look and see what's going on, against better wishes.  But

10    everybody was safe.

11              THE COURT:  Okay.  And you've obviously watched

12    video of what took place.  You say you've seen at least some

13    of the January 6th hearings in the House.  Have you actively

14    followed it, or have you just observed as a --

15              PROSPECTIVE JUROR NO. 0124:  I would say -- I

16    would say like of the people I know in D.C., I'm probably a

17    more active follower than others.

18              THE COURT:  Okay.

19              PROSPECTIVE JUROR NO. 0124:  But I don't -- D.C.

20    is a weird place, so I don't know.

21              THE COURT:  Right.  And, again, you will see -- if

22    you were a juror, you would see videos of that day that

23    focus on Mr. Strand and perhaps other things that were going

24    on that are relevant to his case.  Do you think you could

25    put aside other videos that you've seen of what other people
```

```
1    were doing and focus on giving him your full consideration,

2    or not?

3              PROSPECTIVE JUROR NO. 0124:  Yes, I think so.

4              THE COURT:  Okay.

5              All right.  Either you or someone close to you

6    have been employed with law enforcement?

7              PROSPECTIVE JUROR NO. 0124:  Yes.  Well, that was

8    close friends and family, yes.  So I have a number of close

9    friends who work in the Secret Service.

10             THE COURT:  Okay.  Anyone with Capitol Police or

11   MPD?

12             PROSPECTIVE JUROR NO. 0124:  No, not Capitol

13   Police or MPD.

14             THE COURT:  And someone in that group has served

15   in the military as well?

16             PROSPECTIVE JUROR NO. 0124:  My father was in the

17   Navy for 30 years.

18             THE COURT:  Okay.  Do you think that your friends'

19   service in law enforcement or your father's service in the

20   Navy would affect your ability to follow my instructions and

21   be fair to Mr. Strand?

22             PROSPECTIVE JUROR NO. 0124:  No.

23             THE COURT:  Okay.

24             Ms. Ayers-Perez.

25             MS. AYERS-PEREZ:  I have no follow-up questions,
```

1    Your Honor.

2              THE COURT:  Mr. Brennwald?

3              MR. BRENNWALD:  Do you want us to stay here?

4              THE COURT:  Come to the podium.

5              MR. BRENNWALD:  Okay.  Good morning, ma'am.

6              PROSPECTIVE JUROR NO. 0124:  Good morning.

7              MR. BRENNWALD:  You said you think so, when the

8    judge asked you if you could be fair.  I know it's

9    impossible to know for sure what you'll feel like when you

10   watch everything, but is it fair to say that you were

11   strongly affected on a visceral level when you watched what

12   happened on January 6th?

13             PROSPECTIVE JUROR NO. 0124:  On the day of January

14   6th, yes, because my friends and family live on Capitol

15   Hill, and, you know, my mom texting was blowing up.  People

16   were in the building that live in my neighborhood.  So, you

17   know...

18             MR. BRENNWALD:  Right.

19             PROSPECTIVE JUROR NO. 0124:  We live here.

20             MR. BRENNWALD:  I get it.  I get it.

21             PROSPECTIVE JUROR NO. 0124:  I -- you know, I

22   think so.  I think it's -- everybody should get a fair

23   trial.  But we live here.  We're human people who live in

24   this city.

25             MR. BRENNWALD:  So do you think that if you were

1    on trial yourself in a case like this and someone who felt

2    very differently was judging you, you'd think that you could

3    be the kind of juror that they would want?

4              PROSPECTIVE JUROR NO. 0124:  I think so.  You said

5    I don't know -- I think so, yes.

6              I mean, I don't -- I don't know what you want me

7    to say.  What's the right thing to say?  This is how I feel.

8              THE COURT:  Well, I don't want you to say what you

9    think's the right thing to say.

10             PROSPECTIVE JUROR NO. 0124:  Yes.

11             THE COURT:  I want you to be honest and say --

12             PROSPECTIVE JUROR NO. 0124:  So I didn't just

13   think that I would right now tear up a little bit when I was

14   talking about January 6th, but I did.

15             THE COURT:  Okay.

16             PROSPECTIVE JUROR NO. 0124:  So...

17             THE COURT:  All right.  Thank you for your

18   answers.

19             MR. BRENNWALD:  Thank you.  I appreciate it.

20             THE COURT:  You can go back to the courtroom.

21             PROSPECTIVE JUROR NO. 0124:  Thank you.  I

22   appreciate it.

23             THE COURT:  All right.  Mr. Brennwald, do you want

24   to make a motion?

25             MR. BRENNWALD:  I would move to strike for cause,

1    Your Honor.  I literally asked her two questions, and she

2    started to cry.

3            And I don't fault her for feeling that way at all.

4    I just don't think that's the kind of juror that we need in

5    a case like this who can be fair.

6            She kept saying she thinks so, but we need more

7    than thinking.  We need someone who is confident.

8            THE COURT:  Okay.

9            MR. BRENNWALD:  My -- I know the Court observed

10   her.  My observation of her was that, you know, she was

11   pausing before she answered, and then she sort of forced

12   herself to say yes, she could be fair.  She even told the

13   Court she didn't know what the right answer was.

14           That concerns me.  The answer should be what you

15   think, not what you want people to say.

16           So for all those reasons I'd ask that she be

17   stricken for cause.

18           THE COURT:  Ms. Ayers-Perez?

19           MS. AYERS-PEREZ:  She did say in the

20   beginning that she could be fair.  She said that a couple

21   of times, Your Honor.  I don't think at any point she

22   said she couldn't be fair.  In fact, I know there was

23   some hesitation, but she maintained that she could be fair

24   throughout the questioning by Your Honor and by

25   Mr. Brennwald.

```
 1              THE COURT:  All right.  The Court will sustain the
 2    defense's challenge to 124.  Based on her emotional
 3    reaction, I'm not confident that she would be able to be
 4    fully fair.  So she is stricken for cause.
 5              MR. BRENNWALD:  Can I ask the Court?  Is the Court
 6    going to take a five- or ten-minute break at some point
 7    before the lunch break?  Are we going to go through lunch?
 8    I don't want to -- I'm fine.  I just haven't eaten all day.
 9    I was just going to try to sneakily eat a banana when
10    nobody's looking.
11              THE COURT:  Eat your banana.
12              There's so many panels today that I may take lunch
13    early.  Get them out at, say, noon or so so that they can
14    get down there, and we can get back, and maybe they can beat
15    the rush.
16              (Off the record)
17              THE COURTROOM DEPUTY:  Your Honor, Juror No. 1405.
18              THE COURT:  Good morning.
19              PROSPECTIVE JUROR NO. 1405:  Good morning.
20              THE COURT:  You can take your mask off, if you'd
21    like.
22              How are you feeling this morning?  Thank you for
23    your service.
24              Are you working, ma'am?
25              PROSPECTIVE JUROR NO. 1405:  Yes.
```

```
 1                THE COURT:  What do you do?

 2                PROSPECTIVE JUROR NO. 1405:  I'm an application

 3    and placement assessment specialist for Carlos Rosari

 4    School.

 5                THE COURT:  For a high school?

 6                PROSPECTIVE JUROR NO. 1405:  It's an adult

 7    education.

 8                THE COURT:  Okay.

 9                MR. BRENNWALD:  It's a little bit hard to hear.

10                THE COURT:  If you could move a little bit closer

11    to the microphone.  Thank you.

12                All right.  You answered yes to Question 18.  You

13    watched some video of what happened on January 6th.

14                PROSPECTIVE JUROR NO. 1405:  Just what the news

15    had.

16                THE COURT:  And did you watch it back when it

17    happened, or have you watched video more recently?

18                PROSPECTIVE JUROR NO. 1405:  It was when it

19    happened.

20                THE COURT:  Okay.  But you haven't followed it

21    very closely?

22                PROSPECTIVE JUROR NO. 1405:  No, not really.

23                THE COURT:  Okay.  So when I said that this case

24    involves January 6th, did anything come to mind?

25                PROSPECTIVE JUROR NO. 1405:  No.  Actually I was
```

```
 1     trying to remember if I heard some faces to the names, but
 2     no, I don't recall.
 3               THE COURT:  Okay.  And do you have a significant
 4     other?
 5               PROSPECTIVE JUROR NO. 1405:  No.
 6               THE COURT:  No.  And I don't ask because it's
 7     personal.  Just we have to -- if you do, then we want to
 8     know a little bit about them, too, okay?
 9               Ms. Ayers-Perez.
10               MS. AYERS-PEREZ:  Ms. Coreas, I know you just
11     answered this, but I couldn't hear all of that.  What do you
12     do for a living?
13               PROSPECTIVE JUROR NO. 1405:  I'm an application
14     and placement assessment specialist.
15               MS. AYERS-PEREZ:  Okay.  That was my only
16     question, Your Honor.
17               THE COURT:  Okay.  Mr. Brennwald?
18               MR. BRENNWALD:  I'm old and I can't hear real
19     well.  So you're an application and...
20               PROSPECTIVE JUROR NO. 1405:  Placement assessment
21     specialist.
22               MR. BRENNWALD:  For...?  Students in the school?
23               PROSPECTIVE JUROR NO. 1405:  Yes.
24               MR. BRENNWALD:  What level?
25               PROSPECTIVE JUROR NO. 1405:  It's adult education.
```

 1     It's for like English As a Second Language, and also we have

 2     different career trainings.  Basically I'm the one that

 3     makes sure we have the enrollment numbers for registration

 4     time.

 5              MR. BRENNWALD:  Okay.  The judge asked you about

 6     watching the January 6th events as they happened, and you

 7     said you did see them as they happened on TV.

 8              PROSPECTIVE JUROR NO. 1405:  I saw the videos that

 9     the news were quoting in it.

10              But that was back then.  I really haven't followed

11     up anything.

12              MR. BRENNWALD:  So you haven't watched any of the

13     hearings that Congress had about January 6th?

14              PROSPECTIVE JUROR NO. 1405:  No.

15              MR. BRENNWALD:  Okay.  Do you have any strong

16     feelings about January 6th and what happened at the Capitol

17     that day?

18              PROSPECTIVE JUROR NO. 1405:  No.

19              MR. BRENNWALD:  Okay.  Do you ever walk by the

20     Capitol or spend time around the Capitol building?

21              PROSPECTIVE JUROR NO. 1405:  I used to work at the

22     Library of Congress, but that was probably in 2007.

23              MR. BRENNWALD:  Okay.

24              PROSPECTIVE JUROR NO. 1405:  Around that time I

25     was there for five years, and that's -- and then, because I

1    was a contractor, they finish, and that's when I went to

2    work for the school.

3              MR. BRENNWALD:  Have you followed any other trials

4    of anybody accused of January 6th in the news or write about

5    people who were going to trial?

6              PROSPECTIVE JUROR NO. 1405:  No.

7              MR. BRENNWALD:  All right.  Okay.  Thank you very

8    much.

9              THE COURT:  Thank you, ma'am.  You can go back to

10   the other courtroom.

11             Okay.  Any challenges to 1405?

12             MS. AYERS-PEREZ:  No, Your Honor.

13             MR. BRENNWALD:  No, Your Honor.

14             THE COURT:  She's qualified.

15             All right.  Mr. Brennwald, I know you want to

16   explore, but don't ask her questions that she's already

17   said -- she didn't answer yes to, all right?

18             MR. BRENNWALD:  So can we assume, just to keep our

19   notes straight, that she could be placed in Juror No. 1's

20   seat at the beginning?  Is that how it's going to work since

21   she's the first qualified juror?

22             THE COURT:  That's correct.

23             Well, we'll bring everyone back in before I excuse

24   them, so she would still be in the third seat, but I will

25   excuse 1 and 2.

```
 1                    We'll go through it.
 2                    MR. BRENNWALD:  Okay.
 3                    THE COURTROOM DEPUTY:  1261.
 4                    THE COURT:  All right.  Step right up, sir, and
 5      remove your mask, if you're comfortable.
 6                    All right.  It says here you work for Lidl USA.
 7                    PROSPECTIVE JUROR NO. 1261:  Yes.
 8                    THE COURT:  And what is that?
 9                    PROSPECTIVE JUROR NO. 1261:  It's a German grocery
10      chain.
11                    THE COURT:  And do you have a significant other?
12                    PROSPECTIVE JUROR NO. 1261:  I do.
13                    THE COURT:  And what do they do?
14                    PROSPECTIVE JUROR NO. 1261:  He is the assistant
15      general counsel for the OGC counsel.
16                    THE COURT:  All right.  And are you from D.C.
17      originally?
18                    PROSPECTIVE JUROR NO. 1261:  I'm from Boston.
19                    THE COURT:  How long have you been here?
20                    PROSPECTIVE JUROR NO. 1261:  Going on six years
21      now.
22                    THE COURT:  And have you been with Lidl the whole
23      time?
24                    PROSPECTIVE JUROR NO. 1261:  Two years.  Those
25      were recent.
```

```
1              THE COURT:  What did you do before then?

2              PROSPECTIVE JUROR NO. 1261:  I've worked in

3     restaurants.  Kind of done everything.

4              THE COURT:  You've answered yes to a few of my

5     questions starting with No. 4.  You live on Capitol Hill.

6              PROSPECTIVE JUROR NO. 1261:  I don't.  It was more

7     in regards to his position.

8              THE COURT:  Okay.  Was he on Capitol Hill on

9     January 6th?

10             PROSPECTIVE JUROR NO. 1261:  He was not.  He works

11    at city hall but was remote at the time.

12             THE COURT:  Okay.  And you've obviously watched

13    video of January 6th.  Just at the time, or have you

14    followed the story since then?

15             PROSPECTIVE JUROR NO. 1261:  Not super intensely,

16    but, you know, it comes up often, and there are clips here

17    and there on the news.

18             THE COURT:  Would you describe yourself as an

19    occasional follower or an active follower of the news about

20    January 6th?

21             PROSPECTIVE JUROR NO. 1261:  More so occasional.

22             THE COURT:  28, either you or an immediate family

23    member or friend worked in the legal field.  Is that your

24    significant other?

25             PROSPECTIVE JUROR NO. 1261:  Correct.
```

```
 1                    THE COURT:  Okay.  Anyone else?
 2                    PROSPECTIVE JUROR NO. 1261:  Immediate family, no.
 3                    THE COURT:  Okay.  And is some member of that
 4      group employed with law enforcement?
 5                    PROSPECTIVE JUROR NO. 1261:  Not employed.  He's
 6      applied for various positions with the FBI, but no traction
 7      on that.
 8                    THE COURT:  Okay.  And, again, this is your
 9      significant other?
10                    PROSPECTIVE JUROR NO. 1261:  Correct.
11                    THE COURT:  And does he have an application
12      currently pending with the FBI?
13                    PROSPECTIVE JUROR NO. 1261:  Not that I'm aware
14      of.
15                    THE COURT:  Or any other law enforcement agency?
16                    PROSPECTIVE JUROR NO. 1261:  Not that I'm aware
17      of.
18                    THE COURT:  Okay.  Ms. Perez.
19                    MS. AYERS-PEREZ:  I have no follow-up questions.
20                    THE COURT:  Mr. Brennwald.
21                    MR. BRENNWALD:  Good morning.
22                    PROSPECTIVE JUROR NO. 1261:  Good morning.
23                    MR. BRENNWALD:  As an occasional follower of the
24      January 6th news, have you developed any strong feelings one
25      way or the other about what happened that day?
```

```
 1              PROSPECTIVE JUROR NO. 1261:  I have some feelings.

 2      I don't think I would say strong.

 3              MR. BRENNWALD:  All right.  So you think that you

 4      could judge this case fairly despite what you've seen, read,

 5      heard, talked to people about?

 6              PROSPECTIVE JUROR NO. 1261:  I believe so.

 7              MR. BRENNWALD:  Okay.  Thank you, sir.

 8              THE COURT:  Thank you.  You can go back to the

 9      other courtroom.

10              All right.  Any challenge to 1261?

11              MS. AYERS-PEREZ:  None from the government, Your

12      Honor.

13              MR. BRENNWALD:  Your Honor, I would just note that

14      his partner works for the D.C. attorney as an assistant

15      Attorney General for the D.C. Council, and that gives us

16      pause.

17              THE COURT:  Do you have a challenge or not?

18              MR. BRENNWALD:  Yes, Your Honor.

19              THE COURT:  Okay.  Overruled.  1261 is qualified.

20              THE COURTROOM DEPUTY:  Your Honor, Juror No. 186.

21              THE COURT:  Good morning, sir.

22              PROSPECTIVE JUROR NO. 0186:  Good morning.

23              THE COURT:  Thank you for your service.

24              PROSPECTIVE JUROR NO. 0186:  Absolutely.

25              THE COURT:  You can remove your mask, if you'd
```

```
 1    like.

 2              PROSPECTIVE JUROR NO. 0186:  Thank you.

 3              THE COURT:  All right.  You work for the EPA; is

 4    that right?

 5              PROSPECTIVE JUROR NO. 0186:  Yes, I do.

 6              THE COURT:  And you do budgeting?

 7              PROSPECTIVE JUROR NO. 0186:  Yes, I do.

 8              THE COURT:  Okay.  And do you have a significant

 9    other?

10              PROSPECTIVE JUROR NO. 0186:  Yes, I do.

11              THE COURT:  And what do they do?

12              PROSPECTIVE JUROR NO. 0186:  She's a merchandise

13    planner for a retail company.

14              THE COURT:  Okay.  And are you from D.C.

15    originally?

16              PROSPECTIVE JUROR NO. 0186:  No.  I'm from San

17    Antonio, Texas.

18              THE COURT:  What brought you to D.C.?  This job?

19              PROSPECTIVE JUROR NO. 0186:  Well, I went to

20    school in Baltimore, and after that I came to D.C. for work.

21              THE COURT:  Okay.  You answered yes to a few of my

22    questions starting with 18, which you're not alone.  You've

23    seen videos of January 6th.

24              PROSPECTIVE JUROR NO. 0186:  Yes.

25              THE COURT:  Have you followed it since it
```

1    happened, or just at the time?

2              PROSPECTIVE JUROR NO. 0186:  Yes, I watched it

3    live as it unfolded, and I've followed it since.

4              THE COURT:  Okay.  And frequent follower?

5    Occasional follower?

6              PROSPECTIVE JUROR NO. 0186:  Frequent.

7              THE COURT:  Frequent.  And you answered yes to --

8    I'm not sure if it's 20 or 21.

9              PROSPECTIVE JUROR NO. 0186:  I believe it was 21.

10             THE COURT:  21, the January 6th hearings in the

11   House.

12             PROSPECTIVE JUROR NO. 0186:  Yes, yes.

13             THE COURT:  You followed those?

14             PROSPECTIVE JUROR NO. 0186:  Yes, yes.

15             THE COURT:  And based on following the story and

16   the hearings -- you know, lots of people have strong

17   feelings about January 6th one way or the other.  Based

18   on what you've seen or heard or the hearings, have you

19   formed strong feelings about what happened, and would

20   those -- and if so, would those feelings prevent you from

21   giving Mr. Strand a fair trial?  And I want you to be honest

22   with me.

23             PROSPECTIVE JUROR NO. 0186:  Yes.  I have very

24   strong feelings about January 6th.

25             I also don't know the defendant, and I believe

1    that the government has a job to do.  But I have very strong

2    feelings about that day.

3              THE COURT:  And you believe the government has...?

4              PROSPECTIVE JUROR NO. 0186:  A job to do, if they

5    are seeking a conviction of the defendant.

6              THE COURT:  Okay.  And do you think the fact that

7    they charged the defendant makes it more likely that he is

8    guilty, or the fact that he has been charged -- and we asked

9    a question similar to that -- would that prevent you from

10   putting the government to their proof to make sure that they

11   prove the case beyond a reasonable doubt?

12             PROSPECTIVE JUROR NO. 0186:  I don't believe an

13   indictment is a conviction.  The government has a job to do,

14   if they're seeking a conviction.

15             THE COURT:  Okay.  Either you or someone close to

16   you has been a victim of a crime?

17             PROSPECTIVE JUROR NO. 0186:  Yes.  I believe it

18   was April 2014, my wife and I were mugged in Dupont Circle.

19             THE COURT:  Okay.  Was the perpetrator

20   apprehended?

21             PROSPECTIVE JUROR NO. 0186:  No, not to our

22   knowledge.  Perpetrators.

23             THE COURT:  Okay.

24             PROSPECTIVE JUROR NO. 0186:  Not to my knowledge.

25             THE COURT:  Is there anything about how the police

```
1   handled that case --

2              PROSPECTIVE JUROR NO. 0186:  No.

3              THE COURT:  -- that gives you concern?

4              PROSPECTIVE JUROR NO. 0186:  It was a bunch of

5   kids.  Ran away.

6              THE COURT:  And finally, you've had legal training

7   of some sort?

8              PROSPECTIVE JUROR NO. 0186:  Yes, of some sort.  I

9   took a contracts law in undergrad; I took an environmental

10  law course as part of grad school training; and I've also

11  had various trainings in parts of the Clean Waters Act and

12  Administrative Procedures Act as part of work.

13             THE COURT:  Okay.  I could use your help on a

14  number of those things.  But nothing criminal related

15  though; is that right?

16             PROSPECTIVE JUROR NO. 0186:  No, nothing criminal.

17  Sorry, I didn't hear you.

18             THE COURT:  Ms. Ayers-Perez.

19             MS. AYERS-PEREZ:  Good morning, Mr. Highsmith.

20             PROSPECTIVE JUROR NO. 0186:  Good morning.

21             MS. AYERS-PEREZ:  So just a quick question

22  following up on what Judge Cooper said.  You're going to get

23  instructions -- should you be seated in the jury, you'll get

24  instructions at the end.  You can only make a decision based

25  on the evidence presented to you.  And you would make that
```

 1    decision based only on that?

 2              PROSPECTIVE JUROR NO. 1086:  Yes.

 3              MS. AYERS-PEREZ:  And not anything you've seen or

 4    heard in the last 19 months?

 5              PROSPECTIVE JUROR NO. 0186:  Nothing.

 6              MS. AYERS-PEREZ:  Okay.  That's all I have, Your

 7    Honor.

 8              THE COURT:  Mr. Brennwald.

 9              MR. BRENNWALD:  Good morning, sir.

10              PROSPECTIVE JUROR NO. 0186:  Good morning.

11              MR. BRENNWALD:  So we're just getting through this

12    process at the beginning.  I'm not sure what I'm going to

13    get in trouble for asking or not so I'm going to try to keep

14    it in bounds.  But if I get yelled at, you'll know why.

15              My question is, do you feel that the people who

16    were inside the Capitol must be guilty of something?

17              PROSPECTIVE JUROR NO. 0186:  Not if the evidence

18    doesn't show.

19              MR. BRENNWALD:  Okay.  You seem like someone who

20    is going to try to look at A, B, C, D, and make a decision.

21    Is that fair about you?

22              PROSPECTIVE JUROR NO. 0186:  Yes, yes.

23              MR. BRENNWALD:  Okay.  Thank you, sir.

24              THE COURT:  Okay.  You can go back to the other

25    courtroom.

```
 1                Okay.  Any challenge to 186?

 2                MS. AYERS-PEREZ:  Nothing from the government,

 3      Your Honor.

 4                MR. BRENNWALD:  Your Honor, just for the record I

 5      would note that, you know, in my view, in my experience,

 6      anybody who is following things frequently and closely,

 7      especially the January 6th hearings, is someone who has very

 8      visceral personal feelings about what happened and wants to

 9      see what else is next and what other evidence is presented

10      and to confirm their bias.  So I would move to strike for

11      cause.

12                THE COURT:  Okay.  Overruled.  186 is qualified.

13                THE COURTROOM DEPUTY:  Your Honor, Juror No. 879.

14                THE COURT:  All right.  Step right up, sir.

15                PROSPECTIVE JUROR NO. 0879:  Good morning.

16                THE COURT:  Mr. Cortez; is that right?

17                PROSPECTIVE JUROR NO. 0879:  Yes.

18                THE COURT:  You can remove your mask, if you'd

19      like.

20                PROSPECTIVE JUROR NO. 0879:  Thank you.

21                THE COURT:  So you're a broker with Compass?

22                PROSPECTIVE JUROR NO. 0879:  Sorry?

23                THE COURT:  You're a broker with Compass?

24                PROSPECTIVE JUROR NO. 0879:  No, I work in the

25      finance department for Compass.
```

```
 1                    THE COURT:  In the finance department.  How long
 2     have you been doing that?
 3                    PROSPECTIVE JUROR NO. 0879:  Since September.
 4                    THE COURT:  Okay.  What were you doing before
 5     that?
 6                    PROSPECTIVE JUROR NO. 0879:  I used to work for
 7     the transactional operations of another real estate firm in
 8     D.C.
 9                    THE COURT:  Okay.  So you've been in real estate
10     your whole career?
11                    PROSPECTIVE JUROR NO. 0879:  Twenty-something
12     years.
13                    THE COURT:  Do you have a significant other?
14                    PROSPECTIVE JUROR NO. 0879:  I do, husband.
15                    THE COURT:  What does he do?
16                    PROSPECTIVE JUROR NO. 0879:  He works for the
17     planning commission in Montgomery County.  He's a planner.
18     He's an urban planner.
19                    THE COURT:  Okay.
20                    PROSPECTIVE JUROR NO. 0879:  Montgomery County.
21                    THE COURT:  Montgomery County?
22                    All right.  You answered yes to a number of my
23     questions.  Question 8, obviously you've seen video of
24     January 6th.
25                    PROSPECTIVE JUROR NO. 0879:  I have.
```

```
 1              THE COURT:  Was that just at the time that it
 2      happened, or have you followed the story since then?
 3              PROSPECTIVE JUROR NO. 0879:  I have followed the
 4      story.
 5              THE COURT:  Both?
 6              PROSPECTIVE JUROR NO. 0879:  Yes, both.
 7              THE COURT:  Okay.
 8              PROSPECTIVE JUROR NO. 0879:  The day of and I
 9      follow the story.
10              THE COURT:  All right.
11              PROSPECTIVE JUROR NO. 0879:  I watched the
12      hearings.
13              THE COURT:  And would you say you're an active
14      follower or an occasional follower of that particular story?
15              PROSPECTIVE JUROR NO. 0879:  I think it's a
16      concern for the country so I've been following whenever I
17      see the news on it.
18              THE COURT:  Okay.  So obviously we're just here
19      for Mr. Strand's trial and to assess what he did that day.
20      Do you think in doing that you could put aside other video
21      footage that you may have seen in the past?
22              PROSPECTIVE JUROR NO. 0879:  Of course, yes.
23              THE COURT:  Okay.  You answered yes to 8.  You
24      think you might know another juror, a potential juror.
25              PROSPECTIVE JUROR NO. 0879:  Well, I've been here
```

```
1    now for a week.  I think last week, Thursday.  So I've seen

2    other faces.

3              It's not like I know them by name, but I've --

4              THE COURT:  Okay.  But you don't know anyone who

5    was in the courtroom this morning?

6              PROSPECTIVE JUROR NO. 0879:  Oh, no.

7              THE COURT:  Okay.

8              PROSPECTIVE JUROR NO. 0879:  Meaning, like I said,

9    knowing them -- these people?  No.

10             THE COURT:  Previously.

11             PROSPECTIVE JUROR NO. 0879:  But I see their faces

12   because we have been around.

13             THE COURT:  Understood.

14             And is that the same for anyone on my staff or me?

15             PROSPECTIVE JUROR NO. 0879:  Yes, downstairs.

16             THE COURT:  Okay.  But you didn't know any of

17   those folks previously?

18             PROSPECTIVE JUROR NO. 0879:  No, never seen them.

19             THE COURT:  Okay.  And you or your close friend or

20   immediate family member has been a victim of a crime.

21             PROSPECTIVE JUROR NO. 0879:  Yes.  My father.

22             THE COURT:  Go into whatever details you feel

23   comfortable.

24             PROSPECTIVE JUROR NO. 0879:  Of course.  Many

25   years ago -- this is over 20 years ago -- he used to have a
```

1   liquor store.  This is in Venezuela, South America.  And he

2   was bound and --

3           THE COURT:  Okay.  That's fine.

4           PROSPECTIVE JUROR NO. 0879:  Yes.

5           THE COURT:  You know, many people have feelings

6   about January 6th.  Some of those feelings are strong on one

7   side or the other.  Do you think you could put those -- any

8   feelings you have about it aside and give Mr. Strand a fair

9   trial in this case?

10          PROSPECTIVE JUROR NO. 0879:  Absolutely I do.

11          THE COURT:  Okay.  Ms. Ayers-Perez.

12          MS. AYERS-PEREZ:  I have no follow-up, Your Honor.

13          THE COURT:  Mr. Brennwald.

14          MR. BRENNWALD:  Good morning, sir.  How are you?

15          PROSPECTIVE JUROR NO. 0879:  Hello.

16          MR. BRENNWALD:  So you followed this closely

17  because you, as you said, cared about the country and you

18  have concerns about the country?

19          PROSPECTIVE JUROR NO. 0879:  Yes.

20          MR. BRENNWALD:  Do you feel like anybody who was

21  inside the Capitol on that day, on January 6th as part of

22  this group of people, must be guilty of something?

23          PROSPECTIVE JUROR NO. 0879:  Not guilty of

24  something, but they were in the Capitol.

25          MR. BRENNWALD:  Okay.  Which means what to you?

```
 1                    PROSPECTIVE JUROR NO. 0879:  I don't know.  That's
 2        why we're here for, right?
 3                    MR. BRENNWALD:  Okay.  Thank you.
 4                    THE COURT:  You're excused.  You can go back to
 5        the courtroom.  Thank you.
 6                    All right.  Any challenge to 879?
 7                    MS. AYERS-PEREZ:  No challenge from the
 8        government, Your Honor.
 9                    MR. BRENNWALD:  Your Honor, I would move to strike
10        for cause.  It seems like anybody who is following it
11        closely is doing so for a reason.
12                    Again, he talks about concerns for his country,
13        which I completely understand.
14                    The impression at the defense table from everyone
15        is he's ready to convict him right now.  I know all the
16        jurors know what to say.  I get that.  I'm not trying to
17        impugn somebody's character, but he's ready to convict, if
18        he had a chance.
19                    THE COURT:  Well, feel free to use one of your
20        peremptories --
21                    MR. BRENNWALD:  Yes, Your Honor.
22                    THE COURT:  -- but your cause strike is overruled.
23                    MR. BRENNWALD:  Yes, Your Honor.
24                    THE COURT:  879 is qualified.
25                    THE COURTROOM DEPUTY:  Your Honor, Juror No.
```

```
 1    1789 -- I'm sorry, 1375.  My apologies.
 2              THE COURT:  Come on up, sir.
 3              Okay.  Step right up.  You can slip your mask off,
 4    if you'd like.
 5              PROSPECTIVE JUROR NO. 1375:  Oh.
 6              THE COURT:  You are James Clipper, right?
 7              PROSPECTIVE JUROR NO. 1375:  Yes.
 8              THE COURT:  All right.  Thank you for your
 9    service.  Good to meet you.
10              It says here you're a contractor with Axiologic
11    Solutions.  Tell me what that is.
12              PROSPECTIVE JUROR NO. 1375:  So I work for NGA as
13    a contractor.  I am in the acquisitions department.  I have
14    worked for the White House, everywhere, but -- sorry,
15    Axiologic is a contractor for NGA.
16              THE COURT:  And what is NGA?
17              PROSPECTIVE JUROR NO. 1375:  NGA is the National
18    Geospatial Intelligence Agency.
19              THE COURT:  Okay.  Have you worked as a contractor
20    for any other federal government agency?
21              PROSPECTIVE JUROR NO. 1375:  Yes.
22              THE COURT:  Any law enforcement agency?  FBI?  The
23    Justice Department?
24              PROSPECTIVE JUROR NO. 1375:  No.
25              THE COURT:  Anything along those lines?
```

```
 1                    PROSPECTIVE JUROR NO. 1375:  Uh-uh.

 2                    THE COURT:  No?  Done any work at the Capitol?

 3                    PROSPECTIVE JUROR NO. 1375:  I've worked at the

 4       White House, at the -- not Treasury Department, but...

 5                    THE COURT:  All right.  And do you have a

 6       significant other?

 7                    PROSPECTIVE JUROR NO. 1375:  No.

 8                    THE COURT:  So was this your first job out of

 9       school?

10                    PROSPECTIVE JUROR NO. 1375:  No.  I'm sorry,

11       Department of State was my first job out of college.

12                    THE COURT:  Okay.  What did you do at the

13       Department of State?

14                    PROSPECTIVE JUROR NO. 1375:  I worked on the EHR

15       project to help the vets.  That's as much as I can --

16                    THE COURT:  Okay.  Come a little closer to the

17       microphone so the court reporter can pick you up.

18                    PROSPECTIVE JUROR NO. 1375:  That's as much as I

19       can go into detail at the unclass level.

20                    THE COURT:  I understand.

21                    All right.  You answered yes to Question 18.

22       You've watched video of what happened on January 6th.

23                    PROSPECTIVE JUROR NO. 1375:  The news.

24                    THE COURT:  The news.  And was that just when it

25       happened, or have you followed that story since?
```

```
 1                    PROSPECTIVE JUROR NO. 1375:  Just when it
 2         happened.
 3                    THE COURT:  Okay.  And have you not followed the
 4         story or --
 5                    PROSPECTIVE JUROR NO. 1375:  I don't have time.
 6                    THE COURT:  That's fine.  That's fine.
 7                    All right.  Ms. Ayers-Perez.
 8                    Let me ask you this:  When you heard me describe
 9         the case earlier this morning and I said this is a case
10         about January 6th, did anything come to mind in particular?
11                    PROSPECTIVE JUROR NO. 1375:  No.  Not really.
12                    I mean, okay, the only thing that came to mind, if
13         I'm being honest, is that, you know, it's the United States,
14         and that's the -- you know, that's the area.  So that was
15         it.
16                    Otherwise it wasn't anything of any, oh, you know,
17         be biased or something like that.
18                    THE COURT:  Okay.
19                    MR. BRENNWALD:  Your Honor, I couldn't hear that
20         answer.
21                    THE COURT:  I'll tell you what, why don't you
22         repeat that slowly and clearly in the microphone so that
23         people can pick it up, okay?
24                    PROSPECTIVE JUROR NO. 1375:  Oh.
25                    THE COURT:  What was your reaction?
```

```
1              PROSPECTIVE JUROR NO. 1375:  When you said the
2    events, I didn't have any bias towards the events that
3    happened.  I just said well, you know, hey, he needs a fair
4    trial, so...
5              THE COURT:  Okay.
6              Ms. Ayers-Perez.
7              MS. AYERS-PEREZ:  Good morning.  I just want to
8    confirm.  So when you say that -- you're going to hear some
9    evidence.  You'll just make the decision based on the
10   evidence that you get presented during the trial?
11             PROSPECTIVE JUROR NO. 1375:  Yes.
12             MS. AYERS-PEREZ:  And nothing about what you saw
13   or heard on January 6th or around it will affect that?
14             PROSPECTIVE JUROR NO. 1375:  No.  None of the
15   other events will affect it.
16             MS. AYERS-PEREZ:  I have no further questions,
17   Your Honor.
18             MR. BRENNWALD:  Good morning, sir.
19             PROSPECTIVE JUROR NO. 1375:  Good morning.
20             MR. BRENNWALD:  Do you have strong feelings about
21   what happened on January 6th?
22             PROSPECTIVE JUROR NO. 1375:  No.
23             MR. BRENNWALD:  Do you feel like people who were
24   inside the Capitol must be guilty of some crime because they
25   were inside the Capitol that day?
```

```
 1              PROSPECTIVE JUROR NO. 1375:  No.

 2              I mean, well, so my only thing predicated to the

 3    events is that since I work in cleared communities, I know

 4    how much security is of pertinence to everyone, and that's

 5    the only thing that arised in my mind, was that, you know,

 6    hey, we're dealing with some big documents that we would

 7    like to keep private.

 8              MR. BRENNWALD:  So you're worried about people

 9    coming in and breaking in and maybe destroying or hurting

10    documents?

11              PROSPECTIVE JUROR NO. 1375:  Yes, because those

12    documents are simply used on a daily basis to make pertinent

13    decisions.

14              So that's the only thing, like, oh, hopefully

15    there were no classified materials on the desk.

16              MR. BRENNWALD:  Okay.  All right.

17              PROSPECTIVE JUROR NO. 1375:  Hopefully I answered

18    your question.  I'm sorry.

19              MR. BRENNWALD:  All right.  Thank you.

20              THE COURT:  Okay.  Thank you, sir.  You can step

21    down.

22              All right.  Any challenge?

23              MS. AYERS-PEREZ:  None from the government, Your

24    Honor.

25              THE COURT:  Mr. Brennwald.
```

```
 1                    MR. BRENNWALD:  No, Your Honor.

 2                    THE COURT:  Okay.  1375 is qualified.

 3                    MR. BRENNWALD:  I know that surprised you.  You

 4      had to hear it twice.

 5                    THE COURTROOM DEPUTY:  Your Honor, Juror No. 1789.

 6                    THE COURT:  All right.  Step right up, sir.

 7      Mr. O'Neill?

 8                    PROSPECTIVE JUROR NO. 1789:  Yes.

 9                    THE COURT:  Feel free to slip your mask off, if

10      you'd like.

11                    PROSPECTIVE JUROR NO. 1789:  Okay.

12                    THE COURT:  All right.  You work at the IFC?

13                    PROSPECTIVE JUROR NO. 1789:  Yes, I do.

14                    THE COURT:  And how long have you been there?

15                    PROSPECTIVE JUROR NO. 1789:  22 years.

16                    THE COURT:  Okay.  And what are your basic role --

17      what's your role?

18                    PROSPECTIVE JUROR NO. 1789:  Communications,

19      knowledge, learning.

20                    THE COURT:  Okay.  And do you have a significant

21      other?

22                    PROSPECTIVE JUROR NO. 1789:  Yes, I do.

23                    THE COURT:  And what does he or she do?

24                    PROSPECTIVE JUROR NO. 1789:  Currently he's a

25      landscaper.
```

```
1              THE COURT:  All right.  Are you from D.C.

2     originally?

3              PROSPECTIVE JUROR NO. 1789:  No.  I've been in

4     D.C. for 30 years.

5              THE COURT:  Where are you from?

6              PROSPECTIVE JUROR NO. 1789:  Massachusetts.

7              THE COURT:  All right.  You answered yes to a few

8     questions.  No. 4, you or someone you know live on Capitol

9     Hill.

10             PROSPECTIVE JUROR NO. 1789:  I live on Capitol

11    Hill, North Capitol Hill.

12             THE COURT:  Okay.  Were you home on the 6th?

13             PROSPECTIVE JUROR NO. 1789:  Yes, I was.

14             THE COURT:  Did you observe any of the events at

15    the Capitol personally?

16             PROSPECTIVE JUROR NO. 1789:  I watched TV with the

17    events all afternoon.

18             THE COURT:  Okay.  And speaking of television,

19    you've obviously watched video of what occurred.

20             PROSPECTIVE JUROR NO. 1789:  Yes.

21             THE COURT:  Was that just at the time, or have you

22    followed the story?

23             PROSPECTIVE JUROR NO. 1789:  At the time and

24    followed stories.

25             THE COURT:  You have followed the story?
```

1           PROSPECTIVE JUROR NO. 1789:  Not this story but

2    stories about January 6th.

3           THE COURT:  Okay.  And would you consider yourself

4    an active follower or an occasional follower?

5           PROSPECTIVE JUROR NO. 1789:  I'd say I'm an active

6    follower.

7           THE COURT:  Okay.  And you've watched the January

8    6th hearings on television?

9           PROSPECTIVE JUROR NO. 1789:  Yes.

10          THE COURT:  Now, there's a lot of video.  There

11   were a lot of people involved.  You're going to -- if you

12   were on the jury, you would see video in this case that's

13   relevant to Mr. Strand's case.  Do you think you would be

14   able to set aside video that you've seen generally or people

15   that you've seen generally who may have been involved and

16   focus on simply the video and the evidence that's presented

17   here?

18          PROSPECTIVE JUROR NO. 1789:  Yes, I believe so.

19          THE COURT:  Okay.  And you're pretty confident

20   about that?

21          PROSPECTIVE JUROR NO. 1789:  Yes.

22          THE COURT:  So you or an immediate family member

23   or a friend have been arrested or charged with a crime?

24          PROSPECTIVE JUROR NO. 1789:  Significant other.

25          THE COURT:  Okay.

```
 1                   PROSPECTIVE JUROR NO. 1789:  Years ago.
 2                   THE COURT:  Okay.  And is there anything about how
 3        that case was handled or how he was treated that might give
 4        you pause or concern about law enforcement or prosecutors or
 5        anything like that?
 6                   PROSPECTIVE JUROR NO. 1789:  No.
 7                   THE COURT:  Anything about how -- well, strike
 8        that.
 9                   And someone in that group has served in the
10        military?
11                   PROSPECTIVE JUROR NO. 1789:  My father.
12                   THE COURT:  Okay.  Same question, anything about
13        your father's military service give you concern about being
14        a fair and impartial juror in this case?
15                   PROSPECTIVE JUROR NO. 1789:  No.
16                   THE COURT:  All right.  Ms. Ayers-Perez?
17                   MS. AYERS-PEREZ:  I have no follow-up, Your Honor.
18                   THE COURT:  Mr. Brennwald.
19                   MR. BRENNWALD:  Good morning, sir.
20                   PROSPECTIVE JUROR NO. 1789:  Hello.
21                   MR. BRENNWALD:  Do you feel that anyone who went
22        inside the Capitol building that day at that time period
23        must be guilty of some crime based on what you've seen in
24        the January 6th hearings?
25                   PROSPECTIVE JUROR NO. 1789:  Yes.
```

1    MR. BRENNWALD:  Okay.  Do you feel like you were

2  personally affected?  I know you weren't attacked, but like

3  as a resident, especially on Capitol Hill, were you --

4    PROSPECTIVE JUROR NO. 1789:  I guess it was more

5  being in shock about what was happening that day, especially

6  when I saw clouds of smoke coming up from the Capitol.  I

7  really thought it was on fire at one point.

8    So I was concerned about a loved one who was

9  working across town and that they didn't get home soon

10  enough; but yes, I was concerned about what happened that

11  day.

12    MR. BRENNWALD:  Okay.  Nobody's saying you

13  shouldn't have been.  I'm just asking.

14    PROSPECTIVE JUROR NO. 1789:  Yes.

15    MR. BRENNWALD:  Okay.  Thank you.

16    THE COURT:  All right, sir.  You answered yes to

17  Mr. Brennwald's question about believing that anyone in the

18  Capitol is likely to be guilty of some crime.

19    Now, obviously you do not know the elements of the

20  crime that Mr. Strand or anyone else is charged with.  You

21  don't know what potential defenses there might be to the --

22    PROSPECTIVE JUROR NO. 1789:  Correct.

23    THE COURT:  -- conduct that day.

24    Having heard me instruct you on the elements and

25  hearing the defenses and hearing the arguments that each

1    side makes, would you be able to make an unbiased decision

2    as to whether Mr. Strand was guilty beyond a reasonable

3    doubt based on that information?

4              PROSPECTIVE JUROR NO. 1789:  Yes.

5              THE COURT:  Okay.  Thank you.

6              PROSPECTIVE JUROR NO. 1789:  You're welcome.

7              THE COURT:  You can step down.

8              Okay.  Any challenge?

9              MS. AYERS-PEREZ:  No challenge from the

10   government, Your Honor.  I understand he had the answer to

11   Mr. Brennwald's question, but I think in your follow-up he

12   explained that he can follow the rules of the Court, Your

13   Honor.

14             THE COURT:  Mr. Brennwald.

15             MR. BRENNWALD:  We'll move to strike for cause

16   given his answer.  I know the Court asked him the follow-up

17   question, but his gut reaction was that anybody who went

18   inside the building that day is guilty.  He starts out with

19   that presumption in his mind, and I guess, unless the

20   government somehow fails to live up to what he thinks, he'll

21   convict, and that's not how it should be.

22             THE COURT:  Okay.  I'm going to overrule that.  He

23   is qualified.

24             But, Mr. Brennwald, that's why I didn't ask the

25   question, because it's not dispositive of anything.  It may

```
 1    be a natural, you know, initial reaction.

 2            But there are other questions that the Court did

 3    ask that go to things like such strong feelings or ability

 4    to follow the instructions, et cetera, that track the

 5    questions that I asked him.

 6            And so, you know, if -- we're going to take up a

 7    lot of time if we have to go through that colloquy for every

 8    single person.  That's why I left the question off.

 9            MR. BRENNWALD:  I understand, Your Honor.  My

10    concern is that --

11            THE COURT:  I understand.

12            MR. BRENNWALD:  It helps me gauge who I'm dealing

13    with so...  I've tried to keep it short.

14            THE COURTROOM DEPUTY:  Your Honor, Juror No. 1734.

15            THE COURT:  All right.  Step right up, sir.  Good

16    morning.

17            PROSPECTIVE JUROR NO. 1734:  Good morning.

18            THE COURT:  Feel free to take your mask off.

19            PROSPECTIVE JUROR NO. 1734:  Okay.

20            THE COURT:  And speak into the microphone.

21            PROSPECTIVE JUROR NO. 1734:  Will do.

22            THE COURT:  You are Mr. Leiwant; is that right?

23            PROSPECTIVE JUROR NO. 1734:  Yes.

24            THE COURT:  And you're an attorney with the IRS?

25            PROSPECTIVE JUROR NO. 1734:  Yes.
```

```
 1                THE COURT:  All right.  How long have you been

 2       doing that?

 3                PROSPECTIVE JUROR NO. 1734:  I actually start on

 4       Monday.

 5                THE COURT:  You start on Monday.  Next Monday?

 6                PROSPECTIVE JUROR NO. 1734:  Yes.

 7                THE COURT:  Okay.  And what were you doing before

 8       that?

 9                PROSPECTIVE JUROR NO. 1734:  I was at Georgetown

10       University Law Center.

11                THE COURT:  Okay.  Congratulations on the new job.

12                PROSPECTIVE JUROR NO. 1734:  Thank you.

13                THE COURT:  So you answered yes to 41, which is

14       the extreme hardship question.  Does that relate to your new

15       position?

16                PROSPECTIVE JUROR NO. 1734:  Yes.  I also -- I

17       didn't actually know if this counted as an extreme hardship,

18       but I'm scheduled to take the New York law exam on Thursday,

19       which is part of the bar.

20                THE COURT:  This Thursday?

21                PROSPECTIVE JUROR NO. 1734:  Yes.

22                THE COURT:  Okay.  And what's the New York -- is

23       that the state part of the bar exam?

24                PROSPECTIVE JUROR NO. 1734:  Yes.

25                THE COURT:  Okay.  And that's up in New York, or
```

```
 1    is it virtual?

 2              PROSPECTIVE JUROR NO. 1734:  It's virtual, sorry.

 3              THE COURT:  Okay.

 4              All right.  You can step down.

 5              PROSPECTIVE JUROR NO. 1734:  Okay.

 6              THE COURT:  Good luck.

 7              PROSPECTIVE JUROR NO. 1734:  Thank you.

 8              THE COURT:  Okay.  The Court will strike for cause

 9    1734 because of his bar exam.

10              THE COURTROOM DEPUTY:  Your Honor, Juror No. 682.

11              THE COURT:  Good morning, sir.  You're Mr. Decker?

12              PROSPECTIVE JUROR NO. 0682:  Yes.

13              THE COURT:  Okay.  Feel free to remove your mask,

14    if you'd like.

15              It says here you're the COO of Analytics Company,

16    Big League Advance.  Tell us what that is.

17              PROSPECTIVE JUROR NO. 0682:  We're a data

18    analytics and investment company.

19              THE COURT:  Okay.  And why is it called the Big

20    League Advance?

21              PROSPECTIVE JUROR:  We actually changed the name

22    just last week to Big League Advantage, but it's -- we

23    provide upfront cash payments to minor league baseball

24    players for a percentage of their future earnings; so we got

25    rid of "Advance" because it's not technically an advance.
```

1    If they don't make it, they don't owe us anything back.

2              THE COURT:  So you answered yes to a number of

3    questions, including 41, which is the hardship question.

4    Why do you believe you have an extreme hardship?

5              PROSPECTIVE JUROR NO. 0682:  I don't have an

6    extreme, but next Monday -- it's just doctor stuff.  I just

7    have a specialist that I had been waiting for and I want to

8    go see that I have next Monday at 9:00, so hopefully we'll

9    be done by then.

10             THE COURT:  Okay.  And if for some reason we

11   weren't done -- two questions -- could you postpone that

12   appointment; and two, how long would that appointment last?

13             PROSPECTIVE JUROR:  It's an initial one.  It's

14   9:00 a.m.  I don't believe it would be very long.  And it's

15   right at MedStar, not far away.

16             So that was the only thing.

17             THE COURT:  Okay.  Do you have a significant

18   other?

19             PROSPECTIVE JUROR NO. 0682:  I do.

20             THE COURT:  And what do they do?

21             PROSPECTIVE JUROR NO. 0682:  She is a speech

22   pathologist in a charter school here in D.C.

23             THE COURT:  All right.  You answered yes to a few

24   more questions.

25             No. 8, you think you might know another

1    potential juror.

2              PROSPECTIVE JUROR NO. 0682:  Yes.  One of the --

3    he was one of the very last ones in here.  He's our

4    commercial real estate agent that we're using to find office

5    space right now.

6              THE COURT:  Okay.  The reason we ask that question

7    is because if two people who know each other are on the same

8    jury, one might have undue influence over the other.  Would

9    that situation apply to this person?

10             PROSPECTIVE JUROR NO. 0682:  No.

11             THE COURT:  Okay.  You've obviously watched video

12   of 9/11 -- I'm sorry, of January 6th.

13             PROSPECTIVE JUROR NO. 0682:  Yes.

14             THE COURT:  Just at the time or have you followed

15   the story generally since then?

16             PROSPECTIVE JUROR NO. 0682:  I mean, to the point

17   that I loosely follow the news and check the news, but not

18   a -- you know, watching what's his name, the HBO guy, on

19   Sunday nights.  But not -- yes, I'm not actively following

20   it as much as just it's out there, Twitter and things.

21             THE COURT:  Okay.  If you were on this jury, you

22   would see video of events that relate to the defendant here.

23   Would you be able to put aside other stuff, other videos of

24   other people that you've seen --

25             PROSPECTIVE JUROR NO. 0682:  Yes.

1          THE COURT:  -- about January 6th?

2          Okay.  Either you, a member of your immediate

3    family, or a close friend has been a witness in a judicial

4    proceeding.

5          PROSPECTIVE JUROR NO. 0682:  My wife was on a

6    trial back when we lived in Boston in 2014.

7          THE COURT:  Okay.  She was a witness in a trial?

8          PROSPECTIVE JUROR NO. 0682:  Sorry, she was a

9    juror.

10          THE COURT:  She was a juror.

11          PROSPECTIVE JUROR NO. 0682:  Yes.

12          THE COURT:  Okay.  Have you ever been a juror?

13          PROSPECTIVE JUROR NO. 0682:  I have not.

14          THE COURT:  Either you or an immediate family

15    member or close friend has worked in the legal profession in

16    some way.

17          PROSPECTIVE JUROR NO. 0682:  My brother-in-law's a

18    lawyer.

19          THE COURT:  Brother-in-law?

20          PROSPECTIVE JUROR NO. 0682:  Yes.

21          THE COURT:  What type of law does he practice?

22          PROSPECTIVE JUROR NO. 0682:  He works with unions,

23    so like he worked down here with the International

24    Association of Firefighters.

25          He now lives in Boston.  I don't know exactly what

```
 1        type of union he's working for now.
 2                    THE COURT:  Okay.  Does he do any criminal work?
 3                    PROSPECTIVE JUROR NO. 0682:  No.
 4                    THE COURT:  And someone in that group has either
 5        worked for or applied for work with a law -- federal law
 6        enforcement agency.
 7                    PROSPECTIVE JUROR NO. 0682:  Yes.  I didn't know
 8        if  it applied.  My best friend was -- he was in the Navy,
 9        but he was military police.
10                    THE COURT:  Okay.  And is that the person who
11        served in the military?
12                    PROSPECTIVE JUROR NO. 0682:  Yes.
13                    THE COURT:  All right.  Ms. Ayers-Perez.
14                    MS. AYERS-PEREZ:  Good morning.
15                    PROSPECTIVE JUROR NO. 0682:  Good morning.
16                    MS. AYERS-PEREZ:  So you're going to be -- if you
17        were going to be impanelled on this jury, you would receive
18        instructions at the end telling you that you can make a
19        decision based upon the information you've received here in
20        court.  You can do that?
21                    PROSPECTIVE JUROR NO. 0682:  Yes.
22                    MS. AYERS-PEREZ:  Okay.  And nothing you've seen
23        or heard on HBO or January 6th or the days since then would
24        have any effect on that?
25                    PROSPECTIVE JUROR NO. 0682:  No.
```

```
 1              MS. AYERS-PEREZ:  And you can put that aside and
 2    make a decision based only on what's happening here this
 3    week?
 4              PROSPECTIVE JUROR NO. 0682:  Yes.
 5              MS. AYERS-PEREZ:  Okay.  I have no other
 6    questions, Your Honor.
 7              MR. BRENNWALD:  Good morning, Mr. Decker.
 8              PROSPECTIVE JUROR NO. 0682:  Good morning.
 9              MR. BRENNWALD:  There will be some witnesses for
10    the government who are law enforcement officers, and they'll
11    talk about what they went through that day.  And you were
12    saying, I think, one of your best friends was in law
13    enforcement.
14              Do you think you'll be able to put that aside and
15    decide the case based on the evidence without the -- let me
16    strike all that.
17              Do you feel like you have a law enforcement bias
18    in any way because of your friendships?
19              PROSPECTIVE JUROR NO. 0682:  No.
20              MR. BRENNWALD:  Okay.  Do you believe that anybody
21    who went inside the building that day on January 6th must be
22    guilty of a crime?
23              PROSPECTIVE JUROR NO. 0682:  No.
24              MR. BRENNWALD:  Have you followed the -- I know
25    you said -- I was having a hard time hearing you earlier.
```

1    Did you say that you don't follow these events to the point

2    where you'd lose sleep?

3              PROSPECTIVE JUROR NO. 0682:  No.

4              MR. BRENNWALD:  Is that what you said?

5              PROSPECTIVE JUROR NO. 0682:  Correct.

6              MR. BRENNWALD:  Okay.  Do you have strong feelings

7    about the events of that day?

8              PROSPECTIVE JUROR NO. 0682:  I mean, I have some

9    feelings about the events of that day.

10             MR. BRENNWALD:  All right.  And despite that, you

11   feel like you could look at each individual person based on

12   what the government presents and make a decision based on

13   what the judge tells you?

14             PROSPECTIVE JUROR NO. 0682:  Yes.  I feel there

15   were a lot of people who came here that day --

16             MR. BRENNWALD:  Okay.

17             PROSPECTIVE JUROR NO. 0682:  -- not intending to,

18   you know, commit a crime or do anything of the sort.

19             MR. BRENNWALD:  Okay.  All right.  Thank you, sir.

20             THE COURT:  All right.  Thank you, sir.  You can

21   go back to the other courtroom.

22             PROSPECTIVE JUROR NO. 0682:  That's to come back

23   at 2:30?

24             THE COURT:  No, stay put.  We'll break for lunch

25   and give you further instructions, okay?

```
 1                    PROSPECTIVE JUROR NO. 0682:  All right.

 2                    THE COURT:  All right.  Any challenge?

 3                    MS. AYERS-PEREZ:  No challenge from the

 4      government, Your Honor.

 5                    MR. BRENNWALD:  No challenge from the defense.

 6                    THE COURT:  682 is qualified.

 7                    THE COURTROOM DEPUTY:  Your Honor, Juror No. 1901.

 8                    THE COURT:  Step right up, ma'am, and feel free to

 9      slip your mask off, if you'd like.

10                    All right.  Ms. Raphael.

11                    PROSPECTIVE JUROR NO. 1901:  Yes, Your Honor.

12                    THE COURT:  You're a freelance musician.  What do

13      you play?

14                    PROSPECTIVE JUROR NO. 1901:  I play piccolo and

15      flute.  I was with the U.S. Army Field Band for 26 years,

16      and freelance -- I've been freelancing since I retired.

17                    THE COURT:  Okay.  And do you have a significant

18      other?

19                    PROSPECTIVE JUROR NO. 1901:  Excuse me?

20                    THE COURT:  Do you have a significant other?

21                    PROSPECTIVE JUROR NO. 1901:  I do not.

22                    THE COURT:  Okay.  And I don't ask to get into

23      your personal life, but we would like to know what he or she

24      does in those situations.  So that's the only reason I ask

25      that question.
```

```
 1              All right.  You answered yes to a number of
 2      questions.  Why don't we start with --
 3              PROSPECTIVE JUROR NO. 1901:  Oh, there's one --
 4      there's another one I should have answered yes to.  The
 5      lawyer for the -- for Mr. Strand, we do recognize each other
 6      from the neighborhood.  We don't know each other well, but I
 7      do recognize him.
 8              THE COURT:  Okay.  You walk your dog with him
 9      maybe?
10              PROSPECTIVE JUROR NO. 1901:  Excuse me?
11              THE COURT:  Do you walk your dog sometimes
12      together?
13              PROSPECTIVE JUROR NO. 1901:  No.  We have seen
14      each other walking dogs within the neighborhood.  That's
15      about it.
16              THE COURT:  Okay.  Well, let's start with 22.
17              You say that you have such strong feelings about
18      January 6th that you might not be able to follow the Court's
19      instruction and render a fair and impartial verdict.  Why
20      did you answer yes to that question?
21              PROSPECTIVE JUROR NO. 1901:  I do -- as much as I
22      would -- I would really like to serve on this trial, but I
23      do feel very strongly about it, and I feel like our democ --
24      it was a real blow to the potential future of our democracy
25      and that it could possibly happen again.
```

1          THE COURT:  Okay.

2          PROSPECTIVE JUROR NO. 1901:  It was a very

3     frightening time.

4          THE COURT:  All right.  So obviously lots of

5     people participated.  They may have come to D.C. for

6     different reasons and did different things.  Do those

7     overall feelings about the event generally make it hard --

8     do you think it will make it hard for you to give Mr. Strand

9     a fair trial?  And I want you to be honest about that.

10          PROSPECTIVE JUROR NO. 1901:  I think so.  It

11     might.

12          THE COURT:  Okay.  All right.  You can step down.

13     You can go back to the courtroom.

14          PROSPECTIVE JUROR NO. 1901:  Thank you.

15          THE COURT:  Okay.  The Court will grant -- or,

16     excuse me, the Court will strike 1901 for cause based on her

17     inability to set aside her feelings generally about January

18     6th.

19          THE COURTROOM DEPUTY:  Your Honor, Juror No. 1195.

20          THE COURT:  Step right up, sir.

21          Good morning.

22          PROSPECTIVE JUROR NO. 1195:  Good morning.

23          THE COURT:  You can slip your mask off, if you'd

24     like.

25          PROSPECTIVE JUROR NO. 1195:  Yes, Your Honor.

 1              THE COURT:  All right.  You're Mr. Murphy.  You

 2     work for a nonprofit; is that right?

 3              PROSPECTIVE JUROR NO. 1195:  That's correct.

 4              THE COURT:  Tell us a little bit about that.

 5              PROSPECTIVE JUROR NO. 1195:  I work for the

 6     National Alliance For Homelessness.  We research policy and

 7     best practices and advocate for federal investment in

 8     housing -- affordable housing solutions to homelessness.

 9              THE COURT:  Okay.  How long have you been doing

10     that?

11              PROSPECTIVE JUROR NO. 1901:  That specific job,

12     for five years.  That sector, for ten.

13              THE COURT:  And do you have a significant other?

14              PROSPECTIVE JUROR NO. 1901:  I do.

15              THE COURT:  And what do they do?

16              PROSPECTIVE JUROR NO. 1901:  She is a video editor

17     for *National Geographic*.

18              THE COURT:  Okay.  Has she worked on any editing

19     projects involving January 6th, to your knowledge?

20              PROSPECTIVE JUROR NO. 1901:  Not to the best of my

21     knowledge, no.

22              THE COURT:  Okay.

23              All right.  You've answered yes to a few of the

24     questions.  You've obviously watched at least some video of

25     what happened in the Capitol, and you've watched coverage of

1   the January 6th House Committee.  Would you describe

2   yourself as an active follower of that general story or

3   occasional follower?

4           PROSPECTIVE JUROR NO. 1901:  I would say I've

5   actively followed it.  I consume an enormous amount of media

6   for my job, so I've found myself rather invested in that.

7           THE COURT:  Okay.  And if you were a juror in this

8   case, you would see videos related to Mr. Strand's alleged

9   involvement.  Do you think that you would be able to put

10  aside the videos that you've seen generally involving other

11  people or things that don't relate to his specific conduct?

12          PROSPECTIVE JUROR NO. 1901:  I would do my best to

13  make sure of that.

14          THE COURT:  And how confident are you that you

15  would be able to do that?

16          PROSPECTIVE JUROR NO. 1901:  I'm very confident.

17          THE COURT:  Okay.  And either you, an immediate

18  family member, or a close friend has been a victim of a

19  crime.

20          PROSPECTIVE JUROR NO. 1901:  Yes.  I offered that

21  in transparency, but nothing that has ever gone to trial.

22  Nothing more than a police report.

23          THE COURT:  Okay.  So nothing about that incident

24  would affect your ability or willingness to serve on a

25  criminal jury?

1            PROSPECTIVE JUROR NO. 1901:  I don't think so, no.

2            THE COURT:  All right.  Ms. Ayers-Perez.

3            MS. AYERS-PEREZ:  Good morning.

4            PROSPECTIVE JUROR NO. 1901:  Good morning.

5            MS. AYERS-PEREZ:  Just to follow up on what you

6    said, you would hear a lot of information over the course of

7    the week, and you'd receive instructions from Judge Cooper

8    at the end that you have to make a decision based only on

9    that information you've received.  Can you do that?

10           PROSPECTIVE JUROR NO. 1901:  I can do that.

11           MS. AYERS-PEREZ:  Okay.  And nothing about what

12   you've heard in the last 19 or so months, that wouldn't

13   affect it or come into your thinking; is that right?

14           PROSPECTIVE JUROR NO. 1901:  I would -- I would

15   make decisions based upon what was presented in the Court.

16           MS. AYERS-PEREZ:  Okay.  That's all I have, Your

17   Honor.

18           THE COURT:  Mr. Brennwald.

19           MR. BRENNWALD:  No questions, Your Honor.  Thank

20   you.

21           THE COURT:  All right, sir.  You can go back to

22   the courtroom.

23           PROSPECTIVE JUROR NO. 1901:  Thank you, Your

24   Honor.

25           THE COURT:  Lisa, how are we doing?

```
 1                THE COURT REPORTER:  I'm fine.

 2                THE COURT:  Let's see if we can get two more, and

 3      then we'll go to lunch.  Does that work for you?

 4                MR. BRENNWALD:  Yes, Your Honor.

 5                Can I ask the Court a question?

 6                THE COURT:  Sure.

 7                MR. BRENNWALD:  As jurors are qualified, will they

 8      be seated in alternate seats anyway, or will they be seated

 9      in a nonalternate seat, and then we'll take other jurors for

10      the alternates?

11                I just want to make sure I know how that works.

12                THE COURT:  So you will -- when you exercise your

13      peremptories, you will know who is in the alternate seats.

14                MR. BRENNWALD:  Okay.

15                THE COURT:  And you should strike against the

16      other jurors, not the alternates.

17                MR. BRENNWALD:  I just want to make sure.

18                THE COURT:  And then we'll do a separate round.

19                MR. BRENNWALD:  I was writing down names and

20      numbers on my chart of 1 through 14, but that might not

21      hold, is what you're saying?  I'm just wondering if the last

22      juror, for instance --

23                THE COURT:  Well, the first 14 qualified will be

24      the first 14 jurors.

25                MR. BRENNWALD:  Okay.  That answers my question.
```

```
 1          Thank you.

 2                    THE COURTROOM DEPUTY:  Your Honor, are you ready?

 3                    THE COURT:  Yes.

 4                    THE COURTROOM DEPUTY:  Juror No. 1241.

 5                    THE COURT:  Step right up, ma'am.  Good morning.

 6                    PROSPECTIVE JUROR NO. 1241:  Good morning.

 7                    THE COURT:  You can slip your mask off, if you'd

 8          like.  And you're Ms. Fields; is that right?

 9                    PROSPECTIVE JUROR NO. 1241:  Yes.

10                    THE COURT:  Okay.  It says on my sheet here that

11          you are self-employed; is that right?

12                    PROSPECTIVE JUROR NO. 1241:  Yes.

13                    THE COURT:  What do you do?

14                    PROSPECTIVE JUROR NO. 1241:  I make T-shirts and

15          mugs and like custom imprints, custom designs.

16                    THE COURT:  And how long have you been doing that?

17                    PROSPECTIVE JUROR NO. 1241:  Consistently, about

18          two years; but I've been doing like craft-type stuff for

19          maybe 20 years or so.

20                    THE COURT:  How is business?

21                    PROSPECTIVE JUROR NO. 1241:  Right now I have a

22          lot going on, but it's been slow.  But like this week and

23          last week I've been getting a lot of calls.

24                    THE COURT:  Do you have a significant other?

25                    PROSPECTIVE JUROR NO. 1241:  I do not.
```

 1                    THE COURT:  Okay.

 2              All right.  You answered yes to a number of my

 3    questions.  You've obviously watched video of what happened

 4    on January 6th, and you say you've seen TV coverage of the

 5    January 6th hearings in the house.

 6                    PROSPECTIVE JUROR NO. 1241:  Yes.

 7                    THE COURT:  Would you consider yourself an active

 8    follower of that story or an occasional follower?

 9                    PROSPECTIVE JUROR NO. 1241:  Occasional.

10                    THE COURT:  Okay.  If you were a juror in this

11    case, you would see video footage related to Mr. Strand's

12    alleged conduct.

13                    PROSPECTIVE JUROR NO. 1241:  Uh-huh.

14                    THE COURT:  Do you think that you would be able to

15    consider only that video as opposed to what you may have

16    seen in the past in deciding his guilt or innocence?

17                    PROSPECTIVE JUROR NO. 1241:  I think so.

18                    THE COURT:  Okay.  And how confident are you of

19    that?

20                    PROSPECTIVE JUROR NO. 1241:  Well, I'm -- if

21    that's the only thing we're talking about, then that's the

22    only, I guess, evidence I can use.  The other stuff I might

23    not even remember.

24                    THE COURT:  Okay.  And if I tell you you can only

25    use that evidence in making your decision, would you be able

```
 1     to follow that instruction?

 2                 PROSPECTIVE JUROR NO. 1241:  Yes.

 3                 THE COURT:  Okay.  You know someone who's worked

 4     in the legal profession somehow?

 5                 PROSPECTIVE JUROR NO. 1241:  Yes.  My cousin was a

 6     police officer.  She's retired, but she is working with the

 7     Marshals right now.

 8                 THE COURT:  The Marshals?

 9                 PROSPECTIVE JUROR NO. 1241:  Yes.

10                 THE COURT:  Was she an MPD police officer before?

11                 PROSPECTIVE JUROR NO. 1241:  She was.

12                 THE COURT:  I'm sorry, your sister?

13                 PROSPECTIVE JUROR NO. 1241:  My cousin.

14                 THE COURT:  Cousin.

15                 PROSPECTIVE JUROR NO. 1241:  Yes.

16                 THE COURT:  And you will likely hear, if you were

17     a juror, testimony from police officers, including

18     potentially MPD officers.  Would you be able to consider

19     their testimony just like any other testimony even though

20     your cousin is a former police officer?

21                 PROSPECTIVE JUROR NO. 1241:  Yes.

22                 THE COURT:  Okay.  You will -- you may also hear

23     testimony that law enforcement officers were assaulted that

24     day by people other than Mr. Strand, or, you know, you may

25     hear testimony about their experiences that day.  Do you
```

```
1     think your cousin's service as a police officer would

2     influence how you assessed that testimony?

3               PROSPECTIVE JUROR NO. 1241:  Somewhat, yes.

4               THE COURT:  How so?

5               PROSPECTIVE JUROR NO. 12441:  Because it's more

6     personal to me because that was -- she was a family -- I'm

7     sorry, she is a family member, and, you know, that kind of

8     hits home.

9               THE COURT:  And despite that, would you be able to

10    put that aside and make a decision based on the evidence

11    regarding Mr. Strand, or do you think you would have trouble

12    doing that?

13              PROSPECTIVE JUROR NO. 1241:  I'm not sure.

14              THE COURT:  Okay.  Ms. Ayers-Perez.

15              MS. AYERS-PEREZ:  I have no follow-up questions,

16    Your Honor.

17              THE COURT:  All right.

18              Actually, ma'am, you can go back to the courtroom,

19    okay?

20              PROSPECTIVE JUROR NO. 1241:  All right.

21              MR. BRENNWALD:  Could I ask the question?

22              THE COURT:  No.

23              Okay.  The Court will strike for cause 1241 based

24    on her testimony about her connection to law enforcement and

25    her relationship with her cousin.
```

```
1          MR. BRENNWALD:  And just for the record, I
2    would note that I was going to ask her if the fact that
3    Mr. Strand was not charged with any assaultive charges
4    against a police officer, whether that would change her mind
5    about whether she could be fair?
6          THE COURT:  Do you want to rehabilitate her?  Do
7    you want her, or you don't want her?
8          MR. BRENNWALD:  I do.
9          THE COURT:  You want her?
10          MR. BRENNWALD:  Yes.
11          THE COURT:  Let's bring her back.
12          MR. BRENNWALD:  I mean, the standard at this point
13    is are they reasonably fair.  That's pretty much what we're
14    dealing with.
15          THE COURT:  I apologize, Mr. Brennwald.  I thought
16    you wouldn't want her based on her answers about law
17    enforcement.
18          MR. BRENNWALD:  No, I understand, Your Honor.
19          THE COURTROOM DEPUTY:  Your Honor, she's gone.
20          THE COURT:  Where did she go?
21          THE COURTROOM DEPUTY:  I'm not sure.
22          THE COURT:  Okay.  Well, we'll bring her back
23    later.
24          THE COURTROOM DEPUTY:  Your Honor, Juror No. 1645.
25          THE COURT:  Step right up, ma'am.
```

```
 1                    Step right up here, ma'am.
 2                    PROSPECTIVE JUROR NO. 1645:  Okay.  All right.
 3      Thank you.
 4                    THE COURT:  And Ms. Jenkins.
 5                    (Pause)
 6                    THE COURT:  You can take your mask off, if you'd
 7      like.
 8                    All right.  Good afternoon, ma'am.
 9                    PROSPECTIVE JUROR NO. 1645:  Good afternoon.
10                    THE COURT:  How are you feeling today?
11                    PROSPECTIVE JUROR NO. 1645:  I'm feeling okay.
12                    THE COURT:  You're feeling all right?
13                    PROSPECTIVE JUROR NO. 1645:  Yes.
14                    THE COURT:  Good.  Don't be nervous, all right?
15                    PROSPECTIVE JUROR NO. 1645:  Okay.
16                    THE COURT:  And you're Ms. Penny; is that right?
17                    PROSPECTIVE JUROR NO. 1645:  Yes.
18                    THE COURT:  And it doesn't say on your form.  Are
19      you employed right now?
20                    PROSPECTIVE JUROR NO. 1645:  Yes, I am.
21                    THE COURT:  What do you do?
22                    PROSPECTIVE JUROR NO. 1645:  I work with the
23      Department of Defense.  I'm a security manager.
24                    THE COURT:  Okay.  At the Pentagon?
25                    PROSPECTIVE JUROR NO. 1645:  Yes.
```

```
 1              THE COURT:  How long have you been doing that?
 2              PROSPECTIVE JUROR NO. 1645:  I've been working for
 3     38 years.
 4              THE COURT:  You're too young to have been working
 5     for 38 years.
 6              PROSPECTIVE JUROR NO. 1645:  No, I'm old.
 7              THE COURT:  Don't say that.
 8              And do you have a significant other?
 9              PROSPECTIVE JUROR NO. 1645:  I'm single.
10              THE COURT:  Okay.  All right.  You answered yes to
11     a couple of questions.  You've obviously seen videos of
12     January 6th before.
13              PROSPECTIVE JUROR NO. 1645:  Correct, yes.
14              THE COURT:  Okay.  And have you ever seen any
15     videos or read anything about that gentleman in particular?
16              PROSPECTIVE JUROR NO. 1645:  What gentleman?
17              THE COURT:  Mr. Strand, the defendant in the case.
18              PROSPECTIVE JUROR NO. 1645:  No.
19              THE COURT:  No.
20              PROSPECTIVE JUROR NO. 1645:  Uh-uh.
21              THE COURT:  Okay.  Have you ever heard that name
22     before?
23              PROSPECTIVE JUROR NO. 1645:  No.
24              THE COURT:  You also answered a question either
25     you or a member of your family or friend has been arrested
```

1      for an offense.

2                  PROSPECTIVE JUROR NO. 1645:  Yes.

3                  THE COURT:  Tell me generally about that.

4                  PROSPECTIVE JUROR NO. 1645:  My brother.

5                  THE COURT:  Uh-huh.

6                  PROSPECTIVE JUROR NO. 1645:  Probation and I think

7      like marijuana, drugs, I think.

8                  THE COURT:  Okay.  Is there anything about your

9      brother's case that would affect your ability to or make you

10     feel one way or another towards law enforcement?

11                 PROSPECTIVE JUROR NO. 1645:  No.

12                 THE COURT:  No.  What about the way his case was

13     handled?  Was his case handled fairly, as far as you know?

14                 PROSPECTIVE JUROR NO. 1645:  Yes.  I think it was,

15     yes.

16                 THE COURT:  So are you a security guard, or do you

17     supervise other people?  Tell us a little bit more about

18     your current job.

19                 PROSPECTIVE JUROR NO. 1645:  No, I am security

20     manager with the Department of Defense; and what I do, I do

21     background checks and I do also badges.

22                 THE COURT:  Okay.

23                 PROSPECTIVE JUROR NO. 1645:  So when someone comes

24     to the Pentagon, I have to approve their badges.  I have to

25     do the background check and see how far this clearance was

1    approved.

2              THE COURT:  Okay.  But you're not involved in

3    physical security of the building or anything like that?

4              PROSPECTIVE JUROR NO. 1645:  No, I'm not.

5              THE COURT:  Okay.  So when you were here with the

6    big group and I said this case involves January 6th, did you

7    have any initial impressions one way or the other?

8              PROSPECTIVE JUROR NO. 1645:  What do you mean,

9    initial impressions?

10             THE COURT:  What did you think when I said that?

11             PROSPECTIVE JUROR NO. 1645:  I don't really know.

12   Are you asking me how I felt about it?

13             THE COURT:  When you learned what this case was

14   about, I mean, did you say, wow, I really want to be on this

15   jury, or I don't want to be on this jury, or that would be

16   terrible to be on this jury?

17             PROSPECTIVE JUROR NO. 1645:  No, I just felt

18   normal.

19             THE COURT:  All right.  That's fine.

20             PROSPECTIVE JUROR NO. 1645:  Normal feeling.

21             THE COURT:  Ms. Ayers-Perez.

22             MS. AYERS-PEREZ:  I have no follow-up, Your Honor.

23             THE COURT:  Mr. Brennwald.

24             MR. BRENNWALD:  No follow-up, Your Honor.  Thank

25   you.

1          THE COURT:  Ms. Penny, you can go back to the

2     other courtroom.

3          PROSPECTIVE JUROR NO. 1645:  All right.  Thank

4     you.

5          THE COURT:  Thank you very much.

6          All right.  Any challenge?

7          MS. AYERS-PEREZ:  None from the government, Your

8     Honor.

9          MR. BRENNWALD:  None from the defense.

10          THE COURT:  1645 is qualified.

11          All right.  Counsel, we're going to take our lunch

12     break, and let's reconvene at 1:15.

13          So we stumbled out of the blocks a little bit, but

14     I think we're making decent progress.  Okay, we're adjourned

15     until 1:15.

16          (Lunch recess taken)

17

18

19

20

21

22

23

24

25

```
 1              A F T E R N O O N   S E S S I O N

 2              MR. BRENNWALD:  Just briefly, Your Honor,

 3     there's -- I think I mentioned earlier Susan Krieger, who

 4     is -- she's not a lawyer anymore, but she has a law degree,

 5     and it would be helpful for us if she could just maybe sit

 6     there and go over the selection.  She's not going to be

 7     involved in any other way, just another head to work with

 8     us.

 9              But if the Court would prefer that she not be

10     here, that's fine, too.

11              THE COURT:  I thought you were describing Ms. Ali

12     before at the pretrial.

13              MR. BRENNWALD:  Ms. Ali is obviously the brains of

14     the operation.  We just have another person who I've been

15     working with over the weekend.

16              So it's up to you.  It's not critical, but it

17     would just be helpful given the situation.

18              But it's not a life-or-death situation.  She

19     wasn't here earlier because we were packed, but now that

20     there's nobody here it seems like it would be less

21     intrusive.

22              But it's up to the Court.  It's certainly not an

23     appellate issue.

24              THE COURT:  Well, the reason that we introduce you

25     folks is to make sure that the jurors don't know anyone, and
```

```
 1    they haven't had an opportunity to meet her, and we've now
 2    qualified nine people.
 3              MR. BRENNWALD:  Right.
 4              THE COURT:  And, you know, your team's supposed to
 5    be here at the start or not, you know.
 6              MR. BRENNWALD:  That's fine, Your Honor.
 7              THE COURT:  All right.
 8              MR. BRENNWALD:  She's from LA, so I don't think
 9    anybody knows her, but I understand.
10              THE COURT:  All right.  We've only qualified nine.
11    It will be touch and go whether we're going to finish today.
12    If we get to 34, I may just excuse everybody else and bring
13    back the qualified jurors tomorrow, and we'll do the
14    peremptories tomorrow.  We'll see how it goes though.
15              THE COURTROOM DEPUTY:  Your Honor, are you ready?
16              THE COURT:  Yes.
17              THE COURTROOM DEPUTY:  Juror No. 0640.
18              THE COURT:  Good afternoon, sir.
19              PROSPECTIVE JUROR NO. 0640:  Good afternoon.
20              THE COURT:  You can slip your mask off, if you'd
21    like.
22              PROSPECTIVE JUROR NO. 0640:  Of course.
23              THE COURT:  All right.  Thank you for your
24    service.
25              PROSPECTIVE JUROR NO. 0640:  You're welcome.
```

```
1            THE COURT:  It says here you're a folk life

2     specialist with the Sandy Spring Museum.

3            PROSPECTIVE JUROR NO. 0640:  Yes.

4            THE COURT:  Tell us a little bit more about that.

5            PROSPECTIVE JUROR NO. 0640:  So I direct the

6     traditional arts program for Montgomery County, and its run

7     out of Sandy Spring Museum.

8            THE COURT:  Great.  Do you have a significant

9     other?

10            PROSPECTIVE JUROR NO. 0640:  I do.

11            THE COURT:  And what do they do?

12            PROSPECTIVE JUROR NO. 0640:  I have -- my wife,

13     Tanya, works for the National Endowment For Democracy.

14            THE COURT:  Okay.  And remind me what the National

15     Endowment For Democracy is.

16            PROSPECTIVE JUROR NO. 0640:  They're a nonprofit

17     here in D.C. that provides funding to organizations working

18     all over the world who are looking to strengthen democratic

19     projects, free media, what have you.

20            THE COURT:  Okay.  You've answered yes to a few of

21     my questions beginning with No. 4.  You live or work on

22     Capitol Hill.

23            PROSPECTIVE JUROR NO. 0640:  Yes, I live in

24     Capitol Hill on Independence Avenue between 12th and 13th

25     Street.
```

```
 1              THE COURT:  Okay.  Were you home on January 6th?

 2              PROSPECTIVE JUROR NO. 0640:  I was.

 3              THE COURT:  Did you personally observe any of the

 4    events?

 5              PROSPECTIVE JUROR NO. 0640:  No.  I had

 6    participants in the events who were parked outside of my

 7    house, but I didn't observe the events firsthand.

 8              THE COURT:  Okay.  And did you interact with any

 9    of the participants who were parked outside your house?

10              PROSPECTIVE JUROR NO. 0640:  No.

11              THE COURT:  You think you might know another

12    potential juror.

13              PROSPECTIVE JUROR NO. 0640:  A neighbor of mine is

14    on the -- may be on the jury as well.

15              THE COURT:  Okay.  How well do you know that

16    person?

17              PROSPECTIVE JUROR NO. 0640:  I don't know their

18    names.  I've seen them in the neighborhood.  I've interacted

19    with their husband, but otherwise not well.

20              THE COURT:  Okay.  The reason we ask that question

21    is if there are two people who know each other on the same

22    jury, one could unduly influence --

23              PROSPECTIVE JUROR NO. 0640:  We don't communicate,

24    so...  I know them by face only.

25              THE COURT:  Okay.  And you've obviously watched
```

 1    video of the events of January 6th.  You've followed the

 2    House Select Committee hearings.

 3              Would you describe yourself as an active follower

 4    of the January 6th events or an occasional follower?

 5              PROSPECTIVE JUROR NO. 0640:  Informed follower, I

 6    might say.  Not spending all my time on it, but certainly

 7    want to know what's going on near my home.

 8              THE COURT:  Okay.  I know there's been lots of

 9    video.  If you were a juror, you would see video that

10    relates to Mr. Strand and the charges against him.  Would

11    you be able to set aside video that you've seen or accounts

12    that you've read of other people or other conduct that day?

13              PROSPECTIVE JUROR NO. 0640:  Yes.

14              THE COURT:  And finally 33, you've had legal

15    training of some sort?

16              PROSPECTIVE JUROR NO. 0640:  I worked as a Spanish

17    language translator for a law office for about a week in

18    South Carolina.

19              THE COURT:  Okay.  It was that bad, huh?

20              PROSPECTIVE JUROR NO. 0640:  It was great.  I

21    enjoyed it.

22              THE COURT:  All right.  Ms. Ayers-Perez.

23              MS. AYERS-PEREZ:  I have no follow-up, Your Honor.

24              THE COURT:  Mr. Brennwald.

25              MR. BRENNWALD:  Would it be quicker if I just

```
1    stayed here, Your Honor?

2              THE COURT:  Sure.  That's fine.

3              MR. BRENNWALD:  I'm happy to come up, but --

4              THE COURT:  That's fine, but just make sure you

5    have the mic on and talk into it.

6              MR. BRENNWALD:  Yes, Your Honor.

7              Good afternoon, Mr. Peach.

8              PROSPECTIVE JUROR NO. 0640:  Good afternoon.

9              MR. BRENNWALD:  Did you feel emotionally impacted

10   by what you saw on January 6th being a Capitol Hill

11   resident?

12             PROSPECTIVE JUROR NO. 0640:  I would say yes.

13             MR. BRENNWALD:  Okay.  Do you feel that anyone who

14   went into the building on that day must be guilty of some

15   crime?

16             PROSPECTIVE JUROR NO. 0640:  I'm not -- I don't

17   have legal training.  I don't know what the law is.

18             I've heard what the claims are.  I assume that

19   someone would have a legitimate reason and motivation for

20   doing that.  I don't know the law so I'd rather just hear

21   the case and hear what --

22             MR. BRENNWALD:  Okay.

23             PROSPECTIVE JUROR NO. 0640:  -- what the -- I'd

24   rather hear the case.

25             MR. BRENNWALD:  Fair enough.  Thank you, sir.
```

```
 1                    PROSPECTIVE JUROR NO. 0640:  Yes.

 2                    THE COURT:  Okay.  You can go back to the other

 3         courtroom.

 4                    MR. BRENNWALD:  Oh, Your Honor -- Mr. Peach.

 5         Mr. Peach, I'm sorry.  Sorry about that.

 6                    PROSPECTIVE JUROR NO. 0640:  No problem.

 7                    MR. BRENNWALD:  So your wife works for the

 8         National Endowment For Democracy?

 9                    PROSPECTIVE JUROR NO. 0640:  Correct.

10                    MR. BRENNWALD:  So her foundation or her entity

11         tries to promote democracy around the world?

12                    PROSPECTIVE JUROR NO. 0640:  Yes.

13                    MR. BRENNWALD:  And -- okay.  And would that

14         fact -- and when you add that to what happened with our

15         democracy on that day, would that make it difficult for you

16         to be a fair juror in this case?

17                    PROSPECTIVE JUROR NO. 0640:  I don't think so.  I

18         think I'm able to separate those two things.

19                    MR. BRENNWALD:  Okay.  Thank you, sir.

20                    PROSPECTIVE JUROR NO. 0640:  You're welcome.

21                    MR. BRENNWALD:  I appreciate it.

22                    THE COURT:  Any challenge?

23                    MS. AYERS-PEREZ:  No challenge from the

24         government.

25                    MR. BRENNWALD:  No challenge from the defendant.
```

```
 1              THE COURT:  Okay.  640 is qualified.

 2              THE COURTROOM DEPUTY:  Your Honor, Juror No. 0384.

 3              THE COURT:  Good afternoon, ma'am.  Step right up.

 4              PROSPECTIVE JUROR NO. 0384:  Thank you.

 5              THE COURT:  And feel free to take off your mask,

 6      if you'd like.

 7              PROSPECTIVE JUROR NO. 0384:  Sure.

 8              THE COURT:  All right.  You're Ms. Bemis; is that

 9      correct?

10              PROSPECTIVE JUROR NO. 0384:  Bemis.

11              THE COURT:  Bemis, all right.

12              And you're a legal assistant at the Atkinson Law

13      Group?

14              PROSPECTIVE JUROR NO. 0384:  Correct.

15              THE COURT:  And what does the Atkinson Law Group

16      do?

17              PROSPECTIVE JUROR NO. 0384:  They're an employment

18      law firm, civil rights.

19              THE COURT:  So plaintiff's side?

20              PROSPECTIVE JUROR NO. 0384:  Yes.

21              THE COURT:  And how long have you been doing that?

22              PROSPECTIVE JUROR NO. 0384:  Nine years.

23              THE COURT:  And were you a legal assistant

24      somewhere else before?

25              PROSPECTIVE JUROR NO. 0384:  Yes.
```

```
 1                    THE COURT:  Do you have a significant other?

 2                    PROSPECTIVE JUROR NO. 0384:  Yes.

 3                    THE COURT:  And what do they do?

 4                    PROSPECTIVE JUROR NO. 0384:  He's a journalist.

 5                    THE COURT:  Okay.  Who does he work for?

 6                    PROSPECTIVE JUROR NO. 0384:  The Associated Press.

 7                    THE COURT:  Did he cover January 6th, by any

 8      chance?

 9                    PROSPECTIVE JUROR NO. 0384:  No.

10                    THE COURT:  What's his beat?

11                    PROSPECTIVE JUROR NO. 0384:  Health.

12                    THE COURT:  Health, okay.

13                    All right.  You answered yes to a few of my

14      questions.  You think you might know another potential

15      juror.

16                    PROSPECTIVE JUROR NO. 0384:  No, not a juror.

17                    THE COURT:  Okay.  Someone on my staff?

18                    PROSPECTIVE JUROR NO. 0384:  Just actually you,

19      Judge.

20                    THE COURT:  Oh, okay.  How do we know one another?

21                    PROSPECTIVE JUROR NO. 0384:  You were presiding in

22      a case at my firm, but that's it.

23                    THE COURT:  All right.  But no other personal

24      interactions besides that?

25                    PROSPECTIVE JUROR NO. 0384:  No.
```

```
 1              THE COURT:  All right.  How did I do?

 2              PROSPECTIVE JUROR NO. 0384:  It's still going.

 3              THE COURT:  You don't have to answer that.

 4              All right.  You've obviously watched video of

 5     January 6th.

 6              PROSPECTIVE JUROR NO. 0384:  Yes.

 7              THE COURT:  And you have followed the House

 8     January 6th hearings.

 9              PROSPECTIVE JUROR NO. 0384:  Yes.

10              THE COURT:  Okay.  If you were a juror in this

11     case, there will be video related to Mr. Strand and the

12     offenses with which he's been charged.  Do you think you

13     would be able to put aside any video or any stories you've

14     read about what happened that day apart from Mr. Strand's

15     case?

16              PROSPECTIVE JUROR NO. 0384:  Yes.

17              THE COURT:  Okay.  All right.  You obviously

18     work in the legal field yourself.  Any other close friends

19     that -- you obviously have acquaintances who are lawyers.

20              PROSPECTIVE JUROR NO. 0384:  Correct.

21              THE COURT:  Anyone work in criminal law that

22     you're close with?

23              PROSPECTIVE JUROR NO. 0384:  No.

24              THE COURT:  You or a close friend or immediate

25     family member may have been involved in a legal action or
```

 1    dispute with an agency of the United States.

 2              PROSPECTIVE JUROR NO. 0384:  I answered that in

 3    the affirmative since our firm handles mostly federal sector

 4    work.

 5              THE COURT:  Okay.  And you've had legal training,

 6    obviously.

 7              PROSPECTIVE JUROR NO. 0384:  Yes.

 8              THE COURT:  All right.  Ms. Ayers-Perez.

 9              MS. AYERS-PEREZ:  I have no follow-up questions,

10    Your Honor.

11              THE COURT:  Mr. Brennwald.

12              MR. BRENNWALD:  Thank you.

13              Good afternoon, ma'am.

14              PROSPECTIVE JUROR NO. 0384:  Hi.

15              MR. BRENNWALD:  Hi.  Did you feel emotionally

16    affected by what you saw on January 6th when it happened?

17              PROSPECTIVE JUROR NO. 0384:  Yes.

18              MR. BRENNWALD:  Do you feel that people who went

19    inside the Capitol that day must be guilty of some crime?

20              PROSPECTIVE JUROR NO. 0384:  Yes.

21              MR. BRENNWALD:  Okay.  What crime would that be?

22              PROSPECTIVE JUROR NO. 0384:  I'm not an attorney

23    so I...

24              MR. BRENNWALD:  I didn't mean that as a law school

25    question, sorry.

```
 1                 PROSPECTIVE JUROR NO. 0384:  Sure.

 2                 MR. BRENNWALD:  Do you have strong feelings about

 3     what happened that day and the people who are alleged to

 4     have been involved?

 5                 PROSPECTIVE JUROR NO. 0384:  Yes.

 6                 MR. BRENNWALD:  Okay.  Do you think that you could

 7     somehow put those feelings aside and look at just the

 8     evidence in this case, or do you feel that your emotional

 9     and intellectual involvement would be such that it would

10     make you question completely whether you could do this or

11     not?

12                 PROSPECTIVE JUROR NO. 0384:  I think I'd be able

13     to put it aside.

14                 MR. BRENNWALD:  Okay.  I appreciate that.

15                 Thank you so much.

16                 PROSPECTIVE JUROR NO. 0384:  You're welcome.

17                 THE COURT:  Any follow-up, Ms. Ayers-Perez?

18                 MS. AYERS-PEREZ:  No, Your Honor.

19                 THE COURT:  Okay.  Thank you, ma'am.  You can go

20     back to the big courtroom.

21                 PROSPECTIVE JUROR NO. 0384:  Thank you.

22                 THE COURT:  Okay.

23                 Okay.  Any challenge?

24                 MS. AYERS-PEREZ:  None from the government, Your

25     Honor.
```

```
 1            THE COURT:  Mr. Brennwald.
 2            MR. BRENNWALD:  We would -- a combination of her
 3   strong emotional feelings about the event and her clear
 4   answer that she feels everybody -- anybody who went in the
 5   building that day is guilty I think outweighs the likelihood
 6   that she would be able to put all that aside and just
 7   consider the facts in this case.
 8            THE COURT:  Okay.  She said that she would.  I
 9   thought that she was credible.  She said it without
10   hesitation.
11            So your objection's overruled.  384 is qualified.
12            THE COURTROOM DEPUTY:  Your Honor, Juror No. 1400.
13            THE COURT:  Okay.  Step right up, ma'am, and feel
14   free to remove your mask, if you'd like.
15            PROSPECTIVE JUROR NO. 1400:  Of course.
16            THE COURT:  Ms. Sternberg?
17            PROSPECTIVE JUROR NO. 1400:  Yes.
18            THE COURT:  All right.  It says here you are self-
19   employed.  Is that --
20            PROSPECTIVE JUROR NO. 1400:  I am.
21            THE COURT:  How do you employ yourself?
22            PROSPECTIVE JUROR NO. 1400:  Oh, well, get ready.
23   This is the first time you will have ever heard this.  I am
24   a swing dance instructor and promoter.
25            THE COURT:  How fun.
```

```
 1                PROSPECTIVE JUROR NO. 1400:  It is.  It really is.

 2                THE COURT:  Okay.  Did you ever go to Glen Echo?

 3                PROSPECTIVE JUROR NO. 1400:  I held a dance there

 4      on Saturday night.

 5                THE COURT:  Pretty school, huh?

 6                PROSPECTIVE JUROR NO. 1400:  Have I seen you

 7      there?

 8                THE COURT:  No.  As a spectator, perhaps.  Do you

 9      have a significant other?

10                PROSPECTIVE JUROR NO. 1400:  I do.

11                THE COURT:  And what do they do?

12                PROSPECTIVE JUROR NO. 1400:  I have a husband, and

13      he works at the Library of Congress.

14                THE COURT:  Okay.  Was he there on September --

15      excuse me, on January 6th?

16                PROSPECTIVE JUROR NO. 1400:  No.  We were at home.

17                THE COURT:  Okay.

18                All right.  You answered yes to a few questions.

19      First, you think you may know someone else on the jury

20      panel.

21                PROSPECTIVE JUROR NO. 1400:  No, I don't believe

22      so.

23                THE COURT:  Oh, I'm sorry, I'm sorry.  Wrong one.

24                You live or work near the Capitol.

25                PROSPECTIVE JUROR NO. 1400:  Oh, there was -- the
```

1   question was does anybody work or live near the Capitol, and

2   that was my husband, who is at the Library of Congress.

3            THE COURT:  Okay.  Was the Library of Congress

4   affected at all physically on January 6th?

5            PROSPECTIVE JUROR NO. 1400:  I don't believe so.

6            THE COURT:  Okay.  So the Library of Congress is

7   separate from the Capitol but obviously also part of the

8   Congress.  Have you talked to him about January 6th?

9            PROSPECTIVE JUROR NO. 1400:  Oh, good heavens,

10  yes.

11           THE COURT:  And we know we asked you about your

12  own views, but does he have such strong views about January

13  6th one way or the other that that might influence your

14  ability to be fair in this case?

15           PROSPECTIVE JUROR NO. 1400:  No.

16           THE COURT:  Are you sure about that?

17           PROSPECTIVE JUROR NO. 1400:  Yes.  He's very

18  closed mouth.

19           THE COURT:  Okay.  You've obviously seen videos of

20  the events of that day, and you say here you've also

21  followed the January 6th hearings.

22           PROSPECTIVE JUROR NO. 1400:  Uh-huh.

23           THE COURT:  Would you call yourself a frequent

24  follower of news about that?

25           PROSPECTIVE JUROR NO. 1400:  I watched every

1    minute of every hearing.

2              THE COURT:  Okay.  And so a couple of follow-up

3    questions.

4              You've obviously seen lots of video that does not

5    relate to Mr. Strand or the charges against him.  Would you

6    be able to put aside what you know about those other events

7    or related events regarding people other than Mr. Strand?

8    Would you be able to put that aside in assessing his guilt

9    or innocence?

10             PROSPECTIVE JUROR NO. 1400:  I can only say that I

11   fervently hope so.

12             THE COURT:  Okay.  And how confident is that hope?

13             PROSPECTIVE JUROR NO. 1400:  On a scale of 1 to

14   10, with 1 being not impartial at all and 10 extremely

15   partial, I think I would put myself at about a 2 or 3.

16             Was that backwards?  Do I have to explain that

17   again?  I know.

18             THE COURT:  So are you 90 percent confident that

19   you could be impartial, or are you only 10 percent?

20             PROSPECTIVE JUROR NO. 1400:  That's a better way

21   to put it.  I would put myself at 80 to 90 percent certain

22   that I can be impartial.

23             THE COURT:  Okay.  And --

24             PROSPECTIVE JUROR NO. 1400:  Sure.

25             THE COURT:  So, you know, people have strong

1    feelings about January 6th one way or the other.  It's

2    natural to have them.

3         Mr. Strand -- my job is to give Mr. Strand a fair

4    trial and for the jury to give Mr. Strand -- make sure that

5    we have a jury that will give him a fair trial based just on

6    the evidence.

7         PROSPECTIVE JUROR NO. 1400:  Correct.

8         THE COURT:  I don't know what his defenses are,

9    but it is important for everyone to consider them along with

10   the government's evidence and make sure that the government

11   bears its burden of proof; and, if it does not, to acquit

12   Mr. Strand.

13        If you listened to that evidence, do you think you

14   would be able to do that?

15        PROSPECTIVE JUROR NO. 1400:  I do.

16        THE COURT:  Okay.  Ms. Ayers-Perez.

17        MS. AYERS-PEREZ:  Your Honor, permission to follow

18   up from counsel table?

19        THE COURT:  Yes.

20        MS. AYERS-PEREZ:  Just a quick question, ma'am.

21   So at the end of this -- at the end of the trial -- you're

22   going to see a lot of evidence through the course of the

23   week, and this is -- this is very similar to what Judge

24   Cooper just asked you.  I just want to make sure that that

25   evidence is what you would use when you go back in the jury

1    room to decide whether or not Mr. Strand is guilty or not

2    guilty.

3              PROSPECTIVE JUROR NO. 1400:  Yes, I would.

4              MS. AYERS-PEREZ:  Okay.

5         I have no other questions, Your Honor.

6              MR. BRENNWALD:  Could we go on the phone for a

7    second, Your Honor?

8              (The following is a bench conference

9               held outside the hearing of the gallery)

10             MR. BRENNWALD:  So I didn't want to say this in

11   front of her.  It's kind of weird.  She actually gave me

12   weeks and weeks of dance lessons before my wedding.

13        I recognized the name when I saw it, and I was

14   curious because she said on Capitol Hill.  I said, well, she

15   lives on 34th street so I don't know why she's saying

16   Capitol Hill because I looked and, sure enough, she lives on

17   34th Street.  I've been to her house multiple times.

18        So that's a little bit awkward.  She may or may

19   not remember me, one student she's had, but --

20             THE COURT:  How would you like me to inquire?

21             MR. BRENNWALD:  That's why I'm raising it.  I

22   don't know.  I don't think it's appropriate for me to

23   question it.  It's kind of personal.  But if the Court has a

24   wise way of handling, I'll put it in your court.

25             THE COURT:  And how long ago were your lessons?

```
 1                    MR. BRENNWALD:  About 10 or 12 years ago.

 2                    THE COURT:  And when is the last time you were at

 3      her house?

 4                    MR. BRENNWALD:  About 10 or 12 years ago, probably

 5      2010 or 2011.

 6                    THE COURT:  And that was in connection with the

 7      lessons, or otherwise?

 8                    MR. BRENNWALD:  No, that was in connection with

 9      just the -- it was before the wedding.  We were doing a

10      pretty complicated dance with flips and everything.

11                    I just saw -- I recognized her name.

12                    MR. BRENNWALD:  Okay.

13                    (This is the end of the bench conference)

14                    THE COURT:  All right.  Are you sure you don't

15      know Mr. Brennwald?

16                    PROSPECTIVE JUROR NO. 1400:  I'm sorry, say it

17      again.

18                    THE COURT:  Are you sure you don't know

19      Mr. Brennwald?

20                    PROSPECTIVE JUROR NO. 1400:  I am, to the best of

21      my knowledge, yes.  I do not know him.

22                    THE COURT:  Okay.  You give a lot of dance

23      lessons?

24                    PROSPECTIVE JUROR NO. 1400:  I do.

25                    THE COURT:  How many people have you taught to
```

1     dance over the years?

2              PROSPECTIVE JUROR NO. 1400:  Oh, prepandemic we

3     taught approximately 4,000 people a year.

4              THE COURT:  Okay.

5              Anything else, Mr. Brennwald?

6              MR. BRENNWALD:  No, Your Honor.

7              THE COURT:  All right.  You can go back to the

8     other courtroom.

9              PROSPECTIVE JUROR NO. 1400:  Back to the waiting

10    area?

11             THE COURT:  Yes.

12             PROSPECTIVE JUROR NO. 1400:  Thank you.

13             THE COURT:  Any challenge?

14             MR. BRENNWALD:  Yes, Your Honor.  We'd move to

15    strike for cause.  The way she said it is she said that she

16    listens to every minute of every hearing.  She's clearly

17    very involved in the situation.  She -- at first, before the

18    Court asked the rehabilitative question, she indicated that

19    she would be 80 to 90 percent impartial; and then the Court

20    asked her some follow-up questions in which she gave the

21    Court the correct answer.

22             But we submit that the truth of how she sees it is

23    how she said it when she expressed that she would be a 2 or

24    3 on a scale of 1 to 10, and we submit that there's ample

25    reason to strike her for cause.

```
 1                 THE COURT:  Ms. Ayers-Perez?

 2                 MS. AYERS-PEREZ:  Your Honor, when it came to the

 3       scale of 1 to 10, I think she just had it in the reverse

 4       order, but I do think that her follow-up answers -- her

 5       answers to your follow-up questions, Your Honor,

 6       sufficiently rehabilitated her.

 7                 THE COURT:  Okay.  I agree.  I'll overrule your

 8       objection.  I did think she got the scale wrong.  She was

 9       clear that she thought she could be 80 to 90 percent fair,

10       and in response to counsel's questions, she clearly

11       indicated that she would follow the Court's instructions and

12       consider only the evidence before her.  So she is qualified.

13                 Mr. Brennwald, I knew you could do a song and

14       dance, but I didn't know it was literal.

15                 MR. BRENNWALD:  We actually had flips and a whole

16       bunch of things that you would never suspect.

17                 THE COURT:  All right.

18                 THE COURTROOM DEPUTY:  Your Honor, Juror No. 1881.

19                 THE COURT:  Step right up, sir.

20                 Good afternoon.

21                 PROSPECTIVE JUROR NO. 1881:  Good afternoon.

22                 THE COURT:  Feel free to take your mask off.

23                 PROSPECTIVE JUROR NO. 1881:  Oh, great.

24                 THE COURT:  You're Mr. Spruill?

25                 PROSPECTIVE JUROR NO. 1881:  That's correct.
```

```
 1              THE COURT:  And you work at Covington in IT.

 2              PROSPECTIVE JUROR NO. 1881:  Yes, that's correct.

 3              THE COURT:  How long have you been doing that?

 4              PROSPECTIVE JUROR NO. 1881:  11 years.

 5              THE COURT:  So I worked briefly at Covington a few

 6    years back.

 7              PROSPECTIVE JUROR NO. 1881:  Oh, really?

 8              THE COURT:  I don't recognize you.  Do you

 9    recognize me?

10              PROSPECTIVE JUROR NO. 1881:  I can't say that I

11    do.

12              THE COURT:  That's all right.

13              PROSPECTIVE JUROR NO. 1881:  Now I'm embarrassed.

14              THE COURT:  No, you shouldn't be.  It was a very

15    brief period of time in the D.C. office before you moved to

16    that new office.

17              PROSPECTIVE JUROR NO. 1881:  Oh, okay.  I was

18    there as well though.

19              THE COURT:  Do you have a significant other?

20              PROSPECTIVE JUROR NO. 1881:  Yes.

21              THE COURT:  And what do they do?

22              PROSPECTIVE JUROR NO. 1881:  My wife is a benefits

23    manager at a nonprofit.

24              THE COURT:  Okay.  What sort of nonprofit?

25              PROSPECTIVE JUROR NO. 1881:  They do research.
```

```
 1    They fund for research, funding for research.

 2              THE COURT:  Okay.

 3              All right.  You answered yes to a few questions.

 4    You've seen videos of January 6th, and you've followed the

 5    January 6th hearings; is that right?

 6              PROSPECTIVE JUROR NO. 1881:  Well, I haven't

 7    followed it, but I saw the -- the prime time that came on, I

 8    saw that one.

 9              THE COURT:  Okay.  And how closely have you

10    followed January 6th?

11              PROSPECTIVE JUROR NO. 1881:  I don't watch the

12    news, but that particular day it took over most channels so

13    I watched it.

14              THE COURT:  Got it.

15              PROSPECTIVE JUROR NO. 1881:  I consciously do not

16    watch the news.

17              THE COURT:  Move a little closer so the court

18    reporter can pick you up.

19              PROSPECTIVE JUROR NO. 1881:  Sure.

20              THE COURT:  You or somebody else you know has

21    served in the military.

22              PROSPECTIVE JUROR NO. 1881:  I have served in the

23    military as well as my brother.

24              THE COURT:  How long were you in the military?

25              PROSPECTIVE JUROR NO. 1881:  Three years, and my
```

1    brother was four -- well, about four or five years for my

2    brother.

3              THE COURT:  And which branches?

4              PROSPECTIVE JUROR NO. 1881:  I was Marine Corps.

5    My brother was Army.

6              THE COURT:  And you've had some legal training or

7    legal coursework?

8              PROSPECTIVE JUROR NO. 1881:  Well, I checked that

9    because I work at a law firm so I didn't know how that

10   applied.

11             THE COURT:  Got it.  Got it.

12             So when I told you this morning that this case

13   involved January 6th, did you have any initial impressions

14   about that?

15             PROSPECTIVE JUROR NO. 1881:  Other than I'm

16   familiar with the event, but that's about it.

17             THE COURT:  Okay.  Ms. Ayers-Perez.

18             MS. AYERS-PEREZ:  I have no follow-up questions,

19   Your Honor.

20             THE COURT:  Mr. Brennwald.

21             MR. BRENNWALD:  No follow-up.  Thank you.

22             THE COURT:  All right, sir.  Thank you very much.

23   Go back to the waiting room.

24             Okay.  Any challenge?

25             MS. AYERS-PEREZ:  No challenge from the

1    government, Your Honor.

2              MR. BRENNWALD:  No challenge, Your Honor, from the

3    defense.

4              THE COURT:  1881 is qualified.

5              THE COURTROOM DEPUTY:  Your Honor, Juror No. 1666.

6              THE COURT:  Lauren, can we -- give me one minute,

7    okay?

8              Counsel, what should we do with the next one?

9    Should we proceed, or no?

10             MR. BRENNWALD:  I don't think we should given his

11   place of employment.

12             THE COURT:  Ms. Ayers-Perez?

13             MS. AYERS-PEREZ:  I don't object to that, if you

14   want to just go ahead.

15             THE COURT:  Okay.  The Court will strike 1666 for

16   cause because he works at the Capitol.

17             MR. BRENNWALD:  Good catch.

18             THE COURTROOM DEPUTY:  Your Honor, Juror No. 0443.

19             THE COURT:  Step right up, ma'am.  Good afternoon.

20             PROSPECTIVE JUROR NO. 0443:  Good afternoon.

21             THE COURT:  How are you feeling?

22             PROSPECTIVE JUROR NO. 0443:  Good.  And you?

23             THE COURT:  I'm doing just fine.

24             PROSPECTIVE JUROR NO. 0443:  Great.

25             THE COURT:  You can take your mask off, if you'd

1   like.

2          So you work for the United Negro College Fund?

3          PROSPECTIVE JUROR NO. 0443:  Yes.

4          THE COURT:  How long have you been doing that?

5          PROSPECTIVE JUROR NO. 0443:  Three months.

6          THE COURT:  So far so good?

7          PROSPECTIVE JUROR NO. 0443:  So far so good.

8          THE COURT:  All right.  What did you do before

9   that?

10         PROSPECTIVE JUROR NO. 0443:  I worked for

11   GlaxoSmith & Kline.  I was a biopharmaceutical associate.

12         THE COURT:  So you did sales?

13         PROSPECTIVE JUROR NO. 0443:  No.

14         THE COURT:  No, you didn't.

15         PROSPECTIVE JUROR NO. 0443:  I prepared the

16   medicine for the vaccines and things like that.

17         THE COURT:  Great.

18         PROSPECTIVE JUROR NO. 0443:  Yes.

19         THE COURT:  And do you have a significant other?

20         PROSPECTIVE JUROR NO. 0443:  No.

21         THE COURT:  So you have a chemistry background?

22         PROSPECTIVE JUROR NO. 0443:  Biology.

23         THE COURT:  Where did you go to school?

24         PROSPECTIVE JUROR NO. 0443:  UDC.

25         THE COURT:  All right.  You answered yes to 18.

1    You've watched video of what happened on January 6th.

2              PROSPECTIVE JUROR NO. 0443:  Yes, the news.

3              THE COURT:  Was that back at the time it happened,

4    or have you followed the story since then?

5              PROSPECTIVE JUROR NO. 0443:  Back when it

6    happened.

7              THE COURT:  Okay.  And you don't really follow it

8    since then?

9              PROSPECTIVE JUROR NO. 0443:  No.

10             THE COURT:  Okay.  So when I described the case

11   this morning and said that it would be about January 6th,

12   did you have any reactions one way or the other when you

13   heard that?

14             PROSPECTIVE JUROR NO. 0443:  No, I didn't.

15             THE COURT:  Okay.  Ms. Ayers-Perez.

16             MS. AYERS-PEREZ:  I have no follow-up, Your Honor.

17             THE COURT:  Mr. Brennwald.

18             MR. BRENNWALD:  I'm sorry, one more time.

19             (The following is a bench conference

20              held outside the hearing of the jury)

21             MR. BRENNWALD:  Your Honor, as you know,

22   Ms. -- Dr. Gold, she's not antivaccine, but there's a lot of

23   capitalization of her company, her firm, as being

24   antivaccine, and this woman works preparing vaccines.  And

25   so I just think it's a very controlling mix of factors.

```
 1              And I can ask her about it, but I think that
 2      that's going to be a problem --
 3              THE COURT:  Why don't I ask her about.
 4              Ms. Ayers-Perez, the evidence of the speech will
 5      come in, right, and the content of the speech?
 6              MS. AYERS-PEREZ:  I do, and we will be introducing
 7      the speech, which does talk, in part, about COVID and
 8      vaccines and mandates, that she gave in Statuary Hall.
 9              THE COURT:  Okay.  I'll inquire, and you can
10      follow up, Mr. Brennwald.
11              MR. BRENNWALD:  Thank you.
12              (This is the end of the bench conference)
13              THE COURT:  All right.  Ma'am, you said that you
14      used to work at GSK, and you worked with certain vaccines;
15      is that right?
16              PROSPECTIVE JUROR NO. 0443:  Yes.
17              THE COURT:  Did you work on the COVID vaccines at
18      all?
19              PROSPECTIVE JUROR NO. 0443:  No.
20              THE COURT:  No?
21              PROSPECTIVE JUROR NO. 0443:  No.
22              THE COURT:  Do you know folks who work in the area
23      of the COVID vaccine?
24              PROSPECTIVE JUROR NO. 0443:  No.  GlaxoSmith &
25      Kline didn't cover COVID.
```

1          THE COURT:  If you were selected as a juror on

2     this case, there is likely to be evidence that Mr. Strand

3     was accompanied by someone who gave a speech at the Capitol

4     that dealt with vaccines and questioning the efficacy of the

5     COVID vaccine and vaccine mandates.

6          PROSPECTIVE JUROR NO. 0443:  Okay.

7          THE COURT:  All right.  Would that, do you

8     think -- and I want you to be honest with me -- bias you in

9     any way against Mr. Strand, if that were, you know,

10    something that he believed in or someone close to him

11    believed in?

12         PROSPECTIVE JUROR NO. 0443:  No, I would not be

13    biased.

14         THE COURT:  Okay.

15         MR. BRENNWALD:  I have no follow-up.  Thank you,

16    Judge.

17         THE COURT:  Thank you, ma'am.

18         All right.  Any challenge to 443?

19         MS. AYERS-PEREZ:  Not from the government, Your

20    Honor.

21         MR. BRENNWALD:  Not from the defense, Your Honor.

22         THE COURT:  Okay.  443 is qualified.

23         THE COURTROOM DEPUTY:  Your Honor, Juror No. 0767.

24         THE COURT:  Step right up, ma'am.  Good afternoon.

25         PROSPECTIVE JUROR NO. 0767:  Good afternoon.

```
 1                  THE COURT:  You're Ms. Wilson?

 2                  PROSPECTIVE JUROR NO. 0767:  Yes.

 3                  THE COURT:  All right.  Pleasure to meet you.

 4                  PROSPECTIVE JUROR NO. 0767:  Pleasure to meet you,

 5      too.

 6                  THE COURT:  You can slip your mask off, if you'd

 7      like.

 8                  All right.  It says here you're retired.

 9                  PROSPECTIVE JUROR NO. 0767:  Uh-huh.

10                  THE COURT:  You're too young to be retired.

11                  PROSPECTIVE JUROR NO. 0767:  I know.  I retired at

12      55.

13                  THE COURT:  What did you do?

14                  PROSPECTIVE JUROR NO. 0767:  School teacher.

15                  THE COURT:  You were a school teacher?

16                  PROSPECTIVE JUROR NO. 0767:  Teaching, uh-huh,

17      special needs --

18                  THE COURT:  She's got to pick us up so make sure I

19      finish before you start.

20                  PROSPECTIVE JUROR NO. 0767:  All right.

21                  THE COURT:  Tell us where you taught school.

22                  PROSPECTIVE JUROR NO. 0767:  Here in the District

23      of Columbia.  Payne Elementary was the third school that I

24      did the last 20 years of my service.

25                  THE COURT:  Okay.  And do you have a significant
```

 1     other?

 2                    PROSPECTIVE JUROR NO. 0767:  No.

 3                    THE COURT:  Okay.  Do you have kids?

 4                    PROSPECTIVE JUROR NO. 0767:  I have a daughter.

 5     She's grown.

 6                    THE COURT:  And what does she do?

 7                    PROSPECTIVE JUROR NO. 0767:  She's a manager of a

 8     Macy's in Chesapeake, Virginia.

 9                    THE COURT:  Okay.  You answered yes to a few of my

10     questions starting with No. 17.  You know someone that was

11     connected with January 6th somehow.

12                    PROSPECTIVE JUROR NO. 0767:  Oh, no.

13                    THE COURT:  No, okay.  I'll skip that one then.

14                    You've watched video of January 6th.

15                    PROSPECTIVE JUROR NO. 0767:  Well, I watched it on

16     the news, you know, on TV, but not like, you know, so

17     detailed, I mean, everything that was going on, right?

18                    THE COURT:  Right.  So you watched it when it

19     happened at the time.  Have you continued to watch news

20     stories?

21                    PROSPECTIVE JUROR NO. 0767:  Maybe about three or

22     four times, and that's about it.

23                    THE COURT:  Okay.  So you don't follow it that

24     closely?

25                    PROSPECTIVE JUROR NO. 0767:  No.

```
 1                    THE COURT:  Okay.

 2                    All right.  So either you or an immediate family

 3        member or a close friend has applied for or worked with law

 4        enforcement in some way, and you put down Secret Service.

 5                    PROSPECTIVE JUROR NO. 0767:  Yes.  I have a cousin

 6        who has retired from the Secret Service.

 7                    THE COURT:  Okay.  And also someone in that group

 8        has served in the military.

 9                    PROSPECTIVE JUROR NO. 0767:  Yes, go to my church.

10                    THE COURT:  Going back to your cousin in the

11        Secret Service.

12                    PROSPECTIVE JUROR NO. 0767:  Uh-huh.

13                    THE COURT:  There were folks from the Secret

14        Service present at the Capitol on January 6th.  I don't know

15        if you'll hear testimony from any of those folks today, but

16        is there anything about your relationship -- let me finish.

17        Is there anything about your relationship with your cousin

18        that would make it hard for you or make you biased towards

19        law enforcement officers?

20                    PROSPECTIVE JUROR NO. 0767:  No.  No.

21                    THE COURT:  No?

22                    PROSPECTIVE JUROR NO. 0767:  Uh-uh.

23                    THE COURT:  Okay.  How long has he been retired?

24                    PROSPECTIVE JUROR NO. 0767:  Five years.

25                    THE COURT:  And finally, you've had prior jury
```

1   service.

2                   PROSPECTIVE JUROR NO. 0767:  Uh-huh, yes.

3                   THE COURT:  How many times?

4                   PROSPECTIVE JUROR NO. 0767:  Twice.

5                   THE COURT:  Okay.

6                   PROSPECTIVE JUROR NO. 0767:  As far as one grand

7   jury.  I can't tell you the year, but I think it was in --

8   I'm just going to estimate -- maybe 2015, something there

9   around there.

10                  THE COURT:  Okay.

11                  PROSPECTIVE JUROR NO. 0767:  And then a one day/

12  one trial, yes, somewhere around in 2012 or something like

13  that.

14                  THE COURT:  And what kind of case was that?

15                  PROSPECTIVE JUROR NO. 0767:  One was like for

16  drugs.  It was drugs.

17                  And then I can't remember the other, but I know

18  the other one was a grand jury.  It was for like two weeks.

19                  THE COURT:  Right.

20                  PROSPECTIVE JUROR NO. 0767:  Right.

21                  THE COURT:  So on the one that went to trial --

22                  PROSPECTIVE JUROR NO. 0767:  Uh-huh.

23                  THE COURT:  -- did the jury reach a verdict?

24                  PROSPECTIVE JUROR NO. 0767:  Yes, we did.

25                  THE COURT:  And what was the verdict?

```
 1                    PROSPECTIVE JUROR NO. 0767:  He was not found

 2      guilty.

 3                    THE COURT:  Okay.  And were you the foreperson of

 4      that jury, by any chance?

 5                    PROSPECTIVE JUROR NO. 0767:  I was -- what you

 6      mean?

 7                    THE COURT:  The foreman, the foreperson?

 8                    PROSPECTIVE JUROR NO. 0767:  Yes, yes, yes.

 9                    THE COURT:  You --

10                    PROSPECTIVE JUROR NO. 0767:  I did -- I had not

11      guilty.

12                    THE COURT:  But the foreperson is the person that

13      kind of leads the --

14                    PROSPECTIVE JUROR NO. 0767:  Oh, I wasn't leading

15      the jury.  No, I did not lead the jury.

16                    THE COURT:  All right.  Is there anything about

17      that experience or your grand jury experience that makes you

18      less likely to want to be on another trial or that concerns

19      you about being on this trial?

20                    PROSPECTIVE JUROR NO. 0767:  No.

21                    THE COURT:  No, okay.

22                    Ms. Ayers-Perez.

23                    MS. AYERS-PEREZ:  I have no follow-up, Your Honor.

24                    THE COURT:  Mr. Brennwald.

25                    MR. BRENNWALD:  Ma'am, over here.
```

1     PROSPECTIVE JUROR NO. 0767:  Oh, hi.

2          MR. BRENNWALD:  Way over here.

3          PROSPECTIVE JUROR NO. 0767:  Yes.

4          MR. BRENNWALD:  Do you have any strong feelings

5     about what happened on January 6th yourself just from having

6     seen and heard about it, honestly?

7          PROSPECTIVE JUROR NO. 0767:  I have some feelings.

8     I don't know whether you could say that that is strong.  I

9     mean, I did see the impact that it had on the people, you

10    know, what occurred that day.

11         MR. BRENNWALD:  Right, okay.

12         PROSPECTIVE JUROR NO. 0767:  Does that make sense?

13         MR. BRENNWALD:  Yes, it makes sense.  Thank you so

14    much.  I appreciate it.

15         THE COURT:  Okay, ma'am.  You can step down and go

16    back to the waiting room.

17         PROSPECTIVE JUROR NO. 0767:  Okay, sure.

18         THE COURT:  Okay.  Any challenge?

19         MS. AYERS-PEREZ:  No challenge from the

20    government, Your Honor.

21         MR. BRENNWALD:  No challenge from the defense.

22         THE COURT:  All right.  767 is qualified.

23         THE COURTROOM DEPUTY:  Your Honor, Juror No. 2087.

24         THE COURT:  Okay.  Good afternoon, ma'am.

25         PROSPECTIVE JUROR NO. 2087:  Hi.

```
 1                    THE COURT:  Thank you for your patience.
 2                    PROSPECTIVE JUROR NO. 2087:  Sure.
 3                    THE COURT:  You can slip your mask off, if you'd
 4       like.
 5                    You're Ms. Hennes?
 6                    PROSPECTIVE JUROR NO. 2087:  Yes.
 7                    THE COURT:  Okay.  And you work at NIH?
 8                    PROSPECTIVE JUROR NO. 2087:  I do.
 9                    THE COURT:  And what do you do there?
10                    PROSPECTIVE JUROR NO. 2087:  I am a program
11       specialist in a policy office at the National Institute of
12       Diabetes and Digestive and Kidney Diseases.
13                    THE COURT:  Okay.  And you have a medical
14       background?
15                    PROSPECTIVE JUROR NO. 2087:  Political science.
16                    THE COURT:  Political science.
17                    Does your work at NIH touch vaccines at all?
18                    PROSPECTIVE JUROR NO. 2087:  Not typically, no.
19                    THE COURT:  Okay.  And how long have you been
20       doing that?
21                    PROSPECTIVE JUROR NO. 2087:  Since April of 2021.
22                    THE COURT:  Okay.  And you were in school before
23       that?
24                    PROSPECTIVE JUROR NO. 2087:  I was working at a
25       campaign consulting firm.
```

```
 1                    THE COURT:  Okay.

 2                    PROSPECTIVE JUROR NO. 2087:  And in school before

 3       that.

 4                    THE COURT:  Do you have a significant other?

 5                    PROSPECTIVE JUROR NO. 2087:  No.

 6                    THE COURT:  The campaign consulting firm, give me

 7       a couple of examples of campaigns that you all worked on.

 8                    PROSPECTIVE JUROR NO. 2087:  In the 2020 cycle, my

 9       clients included Jon Ossoff, Barbara Bollier, Gary Peters,

10       Chris Murphy, Kentucky Democratic Party; a couple of ballot

11       initiatives, Yes For Unit 5! in I think Oklahoma, Nebraska,

12       somewhere in the Midwest.

13                    THE COURT:  Okay.  Well, obviously January -- let

14       me start by saying, you know, this case does not -- we're

15       not here to decide who won the 2020 election or who should

16       have won the 2020 election, but obviously the events of

17       January 6th touch on politics.

18                    PROSPECTIVE JUROR NO. 2087:  Yes.

19                    THE COURT:  Do you think that your prior work for

20       it seems like mostly Democratic or progressive candidates --

21                    PROSPECTIVE JUROR NO. 2087:  Yes.

22                    THE COURT:  -- would affect your ability to be

23       fair given the political context in which these charges

24       arose?

25                    PROSPECTIVE JUROR NO. 2087:  I don't think so.  I
```

1     think as long as I'm given, you know, clear instructions on

2     the law and how to participate as a juror and presented with

3     evidence, then I should be fine.

4              THE COURT:  Okay.  And you would be prepared to do

5     that?

6              PROSPECTIVE JUROR NO. 2087:  Yes.

7              THE COURT:  All right.  Sorry, I just want to make

8     sure I have the right card here.

9              All right.  You answered yes to a few of my

10    questions.

11             PROSPECTIVE JUROR NO. 2087:  Yes.

12             THE COURT:  Let's start with 36, which is, do you

13    have any opinions concerning law enforcement in general or

14    some of the specific law enforcement units involved in this

15    case that would affect your ability to evaluate the evidence

16    fairly and impartially?  Why did you answer yes to that?

17             PROSPECTIVE JUROR NO. 2087:  I personally have

18    some questions as to the role of law enforcement in society.

19             That said, I do have a cousin I'm very close with

20    who is a police officer in the Charlotte Police Department,

21    and I'm familiar with the role that, you know, MPD played on

22    January 6th.  So, you know, I'm not coming into this knowing

23    nothing.

24             THE COURT:  Okay.  You're going to hear from, if

25    you were on the jury, a number of law enforcement witnesses,

1    including Capitol Police, MPD, maybe others.  Would you be

2    able to give that testimony the same weight -- no more, no

3    less --

4                    PROSPECTIVE JUROR NO. 2087:  Yes.

5                    THE COURT:  -- than the testimony of civilian

6    witnesses?

7                    PROSPECTIVE JUROR NO. 2087:  Yes.

8                    THE COURT:  And would you tend to disbelieve it

9    just because it was coming from law enforcement in light of

10   your concerns that you've expressed?

11                   PROSPECTIVE JUROR NO. 2087:  No.

12                   THE COURT:  Okay.  You or someone you know lives

13   on Capitol Hill or works on Capitol Hill.

14                   PROSPECTIVE JUROR NO. 2087:  I lived on the Hill

15   at the time.

16                   THE COURT:  Okay.

17                   PROSPECTIVE JUROR NO. 2087:  The cross streets

18   were 5th and Pennsylvania.

19                   THE COURT:  And were you home that day?

20                   PROSPECTIVE JUROR NO. 2087:  I was.

21                   THE COURT:  Did you go out and see what was going

22   on?

23                   PROSPECTIVE JUROR NO. 2087:  We watched out the

24   window a little bit, but we didn't leave the house.

25                   THE COURT:  Okay.

```
1              PROSPECTIVE JUROR NO. 2087:  Two of my roommates

2       who were living there at the time are still there.

3              My old office is on Pennsylvania Avenue.  My old

4       boss still lives in that area.

5              THE COURT:  Given that you lived in proximity to

6       the Capitol, did the events of January 6th have, you know,

7       an emotional effect on you that you think might make it hard

8       for you to be fair in a case involving a January 6th

9       defendant?

10             PROSPECTIVE JUROR NO. 2087:  I think that's an

11      interesting question.  I think at the time it was stressful.

12      My house was located in the outer safety perimeter between

13      January 6th and January 20th.

14             You know, that said, I don't think that there's

15      any residual impact from that time period that would affect

16      my ability to be a fair and impartial juror.

17             THE COURT:  Okay.

18             All right, Question 8.  You think you might know

19      one of the other members of the jury panel.

20             PROSPECTIVE JUROR NO. 2087:  I recognize three

21      jurors who were impanelled for selection alongside myself

22      this past Tuesday.

23             THE COURT:  Okay.  And were they in the courtroom

24      this morning?

25             PROSPECTIVE JUROR NO. 2087:  Yes.
```

```
1              THE COURT:  All right.

2              PROSPECTIVE JUROR NO. 2087:  I don't know any of

3    them personally beyond that.  I just recognized them from

4    last week.

5              THE COURT:  Okay.  So 17, you or someone you know

6    has a direct or indirect connection to the events of January

7    6th.  Is that just because you lived there, or another

8    reason?

9              PROSPECTIVE JUROR NO. 2087:  Yes.

10             THE COURT:  Okay.  And you've obviously seen

11   video.  You say you've followed the January 6th hearings.

12             PROSPECTIVE JUROR NO. 2087:  Yes.

13             THE COURT:  How closely would you say you have

14   followed the news story of January 6th?

15             PROSPECTIVE JUROR NO. 2087:  I'd say I am fairly

16   attuned to the news.  I have not watched all of the hearings

17   as they have happened.  Sometimes I have read recaps.

18             I'm not really a podcast person, but I read the

19   news.

20             THE COURT:  Uh-huh.  If you were on the jury, you

21   would see videos of the events related to Mr. Strand's

22   charges and his conduct.  Having seen all those other

23   videos, do you think you would be able to sort of put those

24   out of your mind and make a decision in this case based just

25   on the videos and other evidence that is presented in this
```

1    case?

2              PROSPECTIVE JUROR NO. 2087:  Yes, Your Honor, I

3    do.

4              THE COURT:  Okay.  You answered yes to 24, which

5    is, do you think that your political views or those of your

6    significant other would affect your ability to serve as a

7    fair and impartial juror?

8              We touched on that with respect to your

9    consultancy work.

10             PROSPECTIVE JUROR NO. 2087:  Yes.

11             THE COURT:  But why did you answer yes to that

12   question?

13             PROSPECTIVE JUROR NO. 2087:  Primarily because of

14   that.  I have some political campaign experience while I was

15   in undergrad as well that I figured was worth noting.

16             THE COURT:  So I guess the question is, how do you

17   think it will affect you in whether, in fact, you could be

18   fair and give this gentleman a fair trial?  And I want an

19   honest answer to that.

20             PROSPECTIVE JUROR NO. 2087:  Sure.  You know, I

21   think I can do a perfectly sufficient job separating my

22   personal and political beliefs from, you know, the evidence

23   that's presented here and, you know, the law that's

24   presented.  I just, you know, wanted it to be known to the

25   Court that I do have fairly strong convictions personally.

```
 1                THE COURT:  Ms. Ayers-Perez.

 2                MS. AYERS-PEREZ:  I have no follow-up, Your Honor.

 3                THE COURT:  Sorry, I have one more that I skipped

 4      over.

 5                You or a family member or close friend has been

 6      involved in a legal action or dispute with an agency of the

 7      U.S. government.

 8                PROSPECTIVE JUROR NO. 2087:  Dispute, no.  I

 9      have a very, very close friend here who is an attorney at

10      OCC so --

11                THE COURT:  The comptroller of the currency?

12                PROSPECTIVE JUROR NO. 2087:  Yes, sir.

13                THE COURT:  All right.  Mr. Brennwald, anything?

14                MR. BRENNWALD:  Yes, Your Honor.

15                Good afternoon, ma'am.

16                PROSPECTIVE JUROR NO. 2087:  Hi.

17                MR. BRENNWALD:  Make sure it's the afternoon.

18                Do you feel that anybody who went inside the

19      Capitol that day on January 6th must be guilty of some

20      crime?

21                PROSPECTIVE JUROR NO. 2087:  I'm not familiar

22      enough with the law to have an opinion on that.

23                MR. BRENNWALD:  Okay.  Is it fair to say that you

24      feel very strongly, though, about what you think about

25      January 6th and what happened that day?
```

1          PROSPECTIVE JUROR NO. 2087:  As a blanket

2     statement, probably yes.

3          MR. BRENNWALD:  Okay.  I realize you said you

4     believe you can be fair or that you would be fair.  If you

5     sit here for a second and roll around in your mind and think

6     about your experiences living on the Hill and friends who

7     lived on the Hill, your boss, and your work as a political

8     consultant, et cetera, do you really feel that your beliefs

9     wouldn't spill over somehow into your view of Mr. Strand and

10    the evidence?

11         PROSPECTIVE JUROR NO. 2087:  Consciously, I hope

12    that I would, you know, really firmly be able to, you know,

13    delineate everything that you just mentioned from the

14    proceedings in this courtroom.  If -- you know, I suppose I

15    recognize there, you know, is potential for unconscious

16    error on that part, but, you know, I still think that I, you

17    know, would be able to separate that out.

18              I suppose the final decision on that is up to you.

19         MR. BRENNWALD:  The final decision what?

20         PROSPECTIVE JUROR NO. 2087:  The final decision

21    on -- you know, I know as far as jury selection goes,

22    whether or not you feel that, you know, I have convincingly

23    conveyed that I can be an impartial juror is up to you.

24         MR. BRENNWALD:  Right, okay.  I appreciate your

25    honesty.

1          THE COURT:  Ms. Ayers-Perez, anything else?

2          MS. AYERS-PEREZ:  Just one other question.

3          At the end of this -- at the end of this trial

4     you'll get an instruction that you're supposed to make a

5     decision based upon what you hear this week.

6          PROSPECTIVE JUROR NO. 2087:  Yes.

7          MS. AYERS-PEREZ:  And so you're saying that

8     despite all of this background, that you can make that

9     decision solely on what you're going to hear here in court

10    or see here in court and the testimony of witnesses here in

11    court, and not what you've heard or know for the last 19 or

12    so months?

13         PROSPECTIVE JUROR NO. 2087:  I believe that I can.

14         MS. AYERS-PEREZ:  How sure are you in your belief

15    that you can?

16         PROSPECTIVE JUROR NO. 2087:  95 percent.

17         MS. AYERS-PEREZ:  Okay.

18         I have nothing else, Your Honor.

19         THE COURT:  Okay.  Thank you, ma'am.  You can go

20    back to the --

21         PROSPECTIVE JUROR NO. 2087:  Thank you.

22         THE COURT:  -- room.

23         All right.  Any challenge?

24         MS. AYERS-PEREZ:  No challenge from the

25    government.

1         MR. BRENNWALD:  Your Honor, we would move to

2    strike for cause.  She came across, at least to me, as being

3    quite emotional on the stand.  She -- I don't know if we

4    need a juror to say that they know 100 percent that they

5    could be fair.  I think we should hold them to that

6    standard.  I know that nobody can necessarily know, but she

7    didn't even say "I know I can."  She said 95 percent.

8         If I were in Mr. Strand's shoes listening to all

9    this, I'd be very nervous about my life being decided by

10   someone who is a political operative for one party, which is

11   the opposite of where he comes from, who has worked on the

12   campaigns for pretty much all Democratic candidates and who

13   came across as she did sitting in the chair.

14        It seemed like she was thinking hard about what

15   the correct answer was.  And I think she appears to want to

16   be on the jury, but I submit to the Court that this is -- we

17   have enough jurors.  We don't need to bring someone in with

18   all of this baggage, including her prior life on the Hill,

19   her boss's life.

20        She clearly was affected by that day, her boss,

21   and everybody else being around there.  So I'd ask the Court

22   to strike her for cause.

23        THE COURT:  Okay.  The Court will overrule your

24   objection.  I found her thoughtful, but not emotional, and

25   she clearly, I think, said she would also endeavor to be

1    fair in the case.

2           So feel free to use one of your peremptories, but

3    we will qualify her.

4           THE COURTROOM DEPUTY:  Your Honor, Juror No. 1289.

5           THE COURT:  Step right up, ma'am.

6           PROSPECTIVE JUROR NO. 1289:  Here?

7           THE COURT:  Right up here.  You've got the seat of

8    honor.  How are you this afternoon?

9           PROSPECTIVE JUROR NO. 1289:  Okay.

10          THE COURT:  And feel free to slide your mask off,

11   if you're comfortable.

12          PROSPECTIVE JUROR NO. 1289:  Oh, okay.

13          THE COURT:  All right.  Good afternoon.  Thank you

14   for your patience.  You're Ms. Drayton?

15          PROSPECTIVE JUROR NO. 1289:  Yes.

16          THE COURT:  All right.  It says here on my sheet

17   that you are retired.

18          PROSPECTIVE JUROR NO. 1289:  Yes.

19          THE COURT:  You're too young to be retired.

20          What did you do before you retired?

21          PROSPECTIVE JUROR NO. 1289:  I worked for the

22   Senate.

23          THE COURT:  For the Senate?

24          PROSPECTIVE JUROR NO. 1289:  Uh-huh.

25          THE COURT:  Who did you work for?

```
1           PROSPECTIVE JUROR NO. 1289:  Oh, God, I was up

2     there for about twenty-some years.  Several; Abourezk,

3     Melcher.  I started with Hughes in 1970, Harold Hughes from

4     Iowa; then Abourezk from South Dakota; and Melcher from

5     Montana; Pryor from Arkansas.

6           THE COURT:  Wow.  You've seen a lot.

7           PROSPECTIVE JUROR NO. 1289:  Yes.

8           THE COURT:  So obviously January 6th happened at

9     the Capitol.

10          PROSPECTIVE JUROR NO. 1289:  Yes.

11          THE COURT:  And including the Senate.  You didn't

12    say that you have such strong feelings about that that you

13    wouldn't be able to be fair.

14          PROSPECTIVE JUROR NO. 1289:  No, I can be fair.  I

15    mean, I don't have strong -- see, for one thing, me myself,

16    I don't watch news too much.

17          THE COURT:  Okay.

18          PROSPECTIVE JUROR NO. 1289:  Because it's -- very

19    seldom do I turn on the news because I used to watch the

20    news.  Now everything's bad.  So many killings and stuff

21    that I just -- I just don't watch it too much now.

22          THE COURT:  Right.

23          PROSPECTIVE JUROR NO. 1289:  But of course I did

24    watch the -- I did see of the breaking news about the -- you

25    know, what happened at the Capitol.  But that was just that
```

 1    one day, and I don't...

 2              THE COURT:  Okay.  How long ago did you retire?

 3              PROSPECTIVE JUROR NO. 1289:  I've been retired for

 4    about 15 years; 15, 16 years ago.

 5              THE COURT:  Have you been to the Senate or to the

 6    Capitol building in the last 15 years?

 7              PROSPECTIVE JUROR NO. 1289:  No, no.  When I left,

 8    I left.

 9              THE COURT:  Do you have any friends or former

10    colleagues who were working there on January 6th, to your

11    knowledge?

12              PROSPECTIVE JUROR NO. 1289:  No, no.

13              My sister used to be -- I answered yes to one of

14    them because my sister used to be a Capitol policeman, but

15    she's been retired now for about 10, 15 years, too.

16              THE COURT:  Okay.  And have you talked to your

17    sister about what happened on January 6th?

18              PROSPECTIVE JUROR NO. 1289:  No.

19              THE COURT:  No.

20              PROSPECTIVE JUROR NO. 1289:  No.  We don't talk

21    about that.

22              THE COURT:  Okay.  All right.  So you answered

23    only two of my questions yes.

24              One, you've seen footage.

25              PROSPECTIVE JUROR NO. 1289:  Yes.

```
 1                  THE COURT:  And, two, you know someone who worked
 2         for law enforcement.
 3                  PROSPECTIVE JUROR NO. 1289:  Yes.
 4                  THE COURT:  Is that your sister?
 5                  PROSPECTIVE JUROR NO. 1289:  That's my sister.
 6         She used to work there, but she's retired, too, you know.
 7                  THE COURT:  Ms. Ayers-Perez.
 8                  MS. AYERS-PEREZ:  I have no follow-up questions,
 9         Your Honor.
10                  THE COURT:  Mr. Brennwald.
11                  MR. BRENNWALD:  How are you, Ms. Drayton?
12                  PROSPECTIVE JUROR NO. 1289:  Oh, hi.  Okay.
13                  MR. BRENNWALD:  I'm hiding behind some Plexiglas
14         here.
15                  PROSPECTIVE JUROR NO. 1289:  Yes, okay.
16                  MR. BRENNWALD:  So you've not seen a lot of
17         coverage of this event, correct?
18                  PROSPECTIVE JUROR NO. 1289:  No.
19                  MR. BRENNWALD:  Okay.  And you don't watch the
20         news because you find it pretty troubling?
21                  PROSPECTIVE JUROR NO. 1289:  Yes, with the
22         killings and stuff.  I just don't watch too much news --
23                  MR. BRENNWALD:  I'm with you on that.
24                  PROSPECTIVE JUROR NO. 1289:  -- at all.  I like
25         the game shows.
```

```
 1              MR. BRENNWALD:  In this case you're going to see
 2     quite a few videos, if you are on the jury, that are going
 3     to be pretty loud; a lot of shouting, a lot of commotion,
 4     and a lot of yelling, pushing, things like that.  Do you
 5     think that the fact that you don't like watching that type
 6     of thing will cause you to look at this differently than --
 7              PROSPECTIVE JUROR NO. 1289:  No, no, not really,
 8     no.
 9              MR. BRENNWALD:  Okay.  Do you have any strong
10     feelings about January 6th and what happened that day?
11              PROSPECTIVE JUROR NO. 1289:  No.
12              MR. BRENNWALD:  Okay.  Thank you.
13              PROSPECTIVE JUROR NO. 1289:  I don't know anything
14     about it.
15              THE COURT:  You can go back to the waiting room.
16              PROSPECTIVE JUROR NO. 1289:  Oh, okay.
17              THE COURT:  Thank you.
18              I'm sorry, any challenges?
19              MS. AYERS-PEREZ:  No challenge from the
20     government, Your Honor.
21              THE COURT:  Mr. Brennwald?
22              MR. BRENNWALD:  No, Your Honor.
23              THE COURT:  1289 is qualified.
24              THE COURTROOM DEPUTY:  Are you ready, Your Honor?
25              THE COURT:  Yes.
```

```
 1                 THE COURTROOM DEPUTY:  Juror No. 1519.

 2                 THE COURT:  Okay.  Step right up, ma'am.  Good

 3      afternoon.  Thank you for your patience.

 4                 PROSPECTIVE JUROR NO. 1519:  Hello.  Good

 5      afternoon.

 6                 THE COURT:  You can slip your mask off, if you'd

 7      like --

 8                 PROSPECTIVE JUROR NO. 1519:  Okay.

 9                 THE COURT:  -- so we can see your face and hear

10      you.

11                 All right.  You're Ms. Dodson, correct?

12                 PROSPECTIVE JUROR NO. 1519:  Yes.

13                 THE COURT:  And it says that you -- it says you do

14      contracting.

15                 PROSPECTIVE JUROR NO. 1519:  Yes.

16                 THE COURT:  What kind of contracting?

17                 PROSPECTIVE JUROR NO. 1519:  Well, actually I'm

18      unemployed right now.

19                 THE COURT:  If you could pull yourself to the

20      microphone a little bit, okay.

21                 PROSPECTIVE JUROR NO. 1519:  Yes.  I'm unemployed

22      right now.  Actually, while we were on break, I got an email

23      saying that I was accepted to a training program.

24                 THE COURT:  Congratulations.

25                 PROSPECTIVE JUROR NO. 1519:  Thank you.
```

1          THE COURT:  What kind of training program?

2          PROSPECTIVE JUROR NO. 1519:  It's to find a job.

3          THE COURT:  Okay.

4          PROSPECTIVE JUROR NO. 1519:  Find more work

5    hopefully.

6          THE COURT:  Well, good luck on that.

7          PROSPECTIVE JUROR NO. 1519:  So contracting.  I do

8    contracting either in home health aid work or accounting

9    so...

10          THE COURT:  All right.

11          PROSPECTIVE JUROR NO. 1519:  A variety.

12          THE COURT:  Do you have a significant other?

13          PROSPECTIVE JUROR NO. 1519:  A significant other?

14          THE COURT:  A husband?  A wife?  A boyfriend?  A

15    girlfriend?

16          PROSPECTIVE JUROR NO. 1519:  Boyfriend, yes.  No

17    spouse.

18          THE COURT:  No spouse.  And what does your

19    boyfriend do?

20          PROSPECTIVE JUROR NO. 1519:  He does Uber.

21          THE COURT:  Oh, okay.

22          PROSPECTIVE JUROR NO. 1519:  Or driving, I should

23    say.

24          THE COURT:  You answered yes to a few of my

25    questions.

1          You've seen videos of January 6th, and you've

2     watched at least some of the congressional hearings.

3          PROSPECTIVE JUROR NO. 1519:  Yes.

4          THE COURT:  Do you follow January 6th, or have you

5     followed it closely or just occasionally?  How would you

6     describe it?

7          PROSPECTIVE JUROR NO. 1519:  No, I wouldn't

8     necessarily say I follow it.  I just kind of flipped through

9     the channels, and it was on.

10         THE COURT:  Okay.  And do you have strong feelings

11    one way or another about what happened on January 6th?

12         PROSPECTIVE JUROR NO. 1519:  No.

13         THE COURT:  All right.  27, either you or a member

14    of your immediate family or a close friend has been the

15    victim of a crime.

16         PROSPECTIVE JUROR NO. 1519:  Yes.

17         THE COURT:  Tell me about that.

18         PROSPECTIVE JUROR NO. 1519:  Actually, that was

19    myself.  I was actually attacked by someone.

20         THE COURT:  Okay.  And without going into any of

21    the details, is there anything about your experience,

22    including how it was handled by the police or by the

23    prosecutor's office or, you know, if you were represented by

24    a defense lawyer, is there anything about that experience

25    that makes you hesitate to be a juror in a criminal case?

```
 1                    PROSPECTIVE JUROR NO. 1519:  No.
 2                    THE COURT:  And either you or a close friend or
 3         immediate family member has worked in the legal profession.
 4                    PROSPECTIVE JUROR NO. 1519:  Oh, I'm sorry, I
 5         worked --
 6                    THE COURT:  I'm sorry, in a legal profession or
 7         law enforcement, one of those.
 8                    PROSPECTIVE JUROR NO. 1519:  No, not a legal
 9         profession.  I worked at a location that was affiliated with
10         law.
11                    THE COURT:  Okay.
12                    PROSPECTIVE JUROR NO. 1519:  But my job there was
13         the contracting accounting.
14                    THE COURT:  All right.  Ms. Ayers-Perez.
15                    MS. AYERS-PEREZ:  Good afternoon.  I'm over here.
16                    PROSPECTIVE JUROR NO. 1519:  Okay, sorry.
17                    MS. AYERS-PEREZ:  Congratulations on the new
18         training opportunity.
19                    PROSPECTIVE JUROR NO. 1519:  Thank you.
20                    MS. AYERS-PEREZ:  Is that something where you
21         would need to go anywhere this week or be unavailable this
22         week?
23                    PROSPECTIVE JUROR NO. 1519:  Actually it will be
24         from 1:00 to 4:00 starting tomorrow.
25                    MS. AYERS-PEREZ:  Okay.
```

```
 1              THE COURT:  So obviously, if you were to do that,
 2      you could not be on this jury.
 3              PROSPECTIVE JUROR NO. 1519:  Yes.
 4              THE COURT:  Is that something that you can
 5      postpone, or something that you would not want to postpone?
 6              PROSPECTIVE JUROR NO. 1519:  I would not want to
 7      postpone it.  It was actually supposed to be on the 26th --
 8      it was supposed to be on the 19th.  Then they postponed it
 9      to the 26th, so I was like okay, I'm going to be able to do
10      this.
11              THE COURT:  Okay.
12              PROSPECTIVE JUROR NO. 1519:  And then they said
13      oh, no, we want you to come on the 20th.  So I'll just go on
14      the 20th, if that's okay?
15              THE COURT:  Well, thank you for your answers, and
16      you can go back to the main courtroom, okay?
17              PROSPECTIVE JUROR NO. 1519:  Okay.  Thank you.
18              THE COURT:  Thank you.
19              All right.  The Court will strike her for cause
20      due to the conflict with her job training course.
21              THE COURTROOM DEPUTY:  Your Honor, Juror No. 0406.
22              THE COURT:  Good afternoon, ma'am.
23              PROSPECTIVE JUROR NO. 0406:  Good afternoon.
24              THE COURT:  Please step right up.  And you can
25      slip your mask off, if you'd like.  Thank you for your
```

1    service.

2              PROSPECTIVE JUROR NO. 0406:  You're welcome.

3              THE COURT:  Ms. Pickering, correct?

4              PROSPECTIVE JUROR NO. 0406:  Correct.

5              THE COURT:  All right.  It says you're retired; is

6    that right?

7              PROSPECTIVE JUROR NO. 0406:  Yes.

8              THE COURT:  And before you retired, what did you

9    do?

10             PROSPECTIVE JUROR NO. 0406:  I spent about 32

11   years working for the Federal Judicial Center and the

12   Administrative Office of the U.S. Courts.

13             THE COURT:  I know them well.

14             Did you work in the Thurgood Marshall Building?

15             PROSPECTIVE JUROR NO. 0406:  I did.

16             THE COURT:  All right.  And what did you do for

17   the AO and the FJC?

18             PROSPECTIVE JUROR NO. 0406:  Well, about the last

19   ten years I worked for the U.S. Judicial Conference

20   committee on information technology.

21             Before that I did different things around software

22   development.

23             THE COURT:  Do you have a significant other?

24             PROSPECTIVE JUROR NO. 0406:  No.

25             THE COURT:  From D.C.?

```
1              PROSPECTIVE JUROR NO. 0406:  Grew up in

2      Alexandria.

3              THE COURT:  Okay, great.

4              You answered yes to a couple of questions.  You've

5      obviously seen videos of January 6th, and you say you have

6      seen at least some of the January 6th Committee proceedings.

7              PROSPECTIVE JUROR NO. 0406:  Yes.

8              THE COURT:  Would you say you have followed

9      January 6th closely or occasionally or --

10             PROSPECTIVE JUROR NO. 0406:  I follow it closely.

11             THE COURT:  Okay.  Do you have strong feelings

12     about what happened on January 6th?

13             PROSPECTIVE JUROR NO. 0406:  Do I have strong

14     feelings?  Yes, yes.

15             THE COURT:  Okay.  Obviously that's not

16     surprising.  People have strong feelings one way or the

17     other.

18             Do you think any -- do you think that your

19     feelings about January 6th would keep you from being a fair

20     and impartial juror in this case?

21             PROSPECTIVE JUROR NO. 0406:  I don't.  I think the

22     larger political issues are separate from an individual and

23     the government making a case against that person.  Those are

24     two different things.

25             THE COURT:  Okay.  If you were a juror in this
```

```
 1    case, you would see lots of videos relating to Mr. Strand

 2    and the charges against him.  Do you think you could sort of

 3    put aside all of the other coverage that you've seen or read

 4    about involving other people in perhaps different parts of

 5    the Capitol and focus just on the evidence that's presented

 6    here in court?

 7            PROSPECTIVE JUROR NO. 0406:  Yes.

 8            THE COURT:  And either you or an immediate family

 9    member or a close friend has been the victim of a crime.

10    Without going into any details that you would prefer not to

11    go into, tell me about that.

12            And we ask that question to try to find out if

13    people's experience from that incident would make them

14    hesitant to be involved as a juror in a criminal trial.

15            PROSPECTIVE JUROR NO. 0406:  Oh.  Like a lot of

16    people that live in D.C., I've been mugged twice.  I don't

17    think it would impact -- I've been a juror on a criminal

18    trial before.  I don't think it came into it.

19            THE COURT:  Okay.  And were you dissatisfied at

20    all about how those cases were handled by the police or by

21    the U.S. Attorney's Office or perhaps by a defense lawyer

22    that you may have retained?

23            PROSPECTIVE JUROR NO. 0406:  Being a juror or

24    getting mugged?

25            THE COURT:  Getting mugged.
```

```
 1                    PROSPECTIVE JUROR NO. 0406:  No, I didn't have any

 2          problems.

 3                    THE COURT:  Okay.  Ms. Ayers-Perez.

 4                    MS. AYERS-PEREZ:  Did you say you had been a juror

 5          before?

 6                    PROSPECTIVE JUROR NO. 0406:  I have.

 7                    MS. AYERS-PEREZ:  Okay.  How many times?

 8                    PROSPECTIVE JUROR NO. 0406:  Three.

 9                    MS. AYERS-PEREZ:  Three.  When was the most recent

10          time?

11                    PROSPECTIVE JUROR NO. 0406:  2018.

12                    MS. AYERS-PEREZ:  Were these criminal or civil

13          cases?

14                    PROSPECTIVE JUROR NO. 0406:  Two were criminal;

15          one was civil.

16                    MS. AYERS-PEREZ:  Okay.  Was the 2018 criminal or

17          civil?

18                    PROSPECTIVE JUROR NO. 0406:  It was criminal.

19                    MS. AYERS-PEREZ:  What kind of case was it?

20                    PROSPECTIVE JUROR NO. 0406:  It was at D.C.

21          Superior Court, and it has to do -- it had to do with

22          possession of a weapon and resisting arrest.

23                    MS. AYERS-PEREZ:  Okay.  Was that a -- did you all

24          reach a verdict in that case?

25                    PROSPECTIVE JUROR NO. 0406:  We were hung.
```

```
1              MS. AYERS-PEREZ:  Okay.

2              PROSPECTIVE JUROR NO. 0406:  We didn't reach a

3     verdict, I guess.

4              MS. AYERS-PEREZ:  Okay.  I have no other

5     questions, Your Honor.

6              THE COURT:  Were you the foreperson of that jury,

7     by any chance?

8              PROSPECTIVE JUROR NO. 0406:  I was not.

9              THE COURT:  And any of the other juries, have you

10    ever been the foreperson?

11             PROSPECTIVE JUROR NO. 0406:  No.

12             THE COURT:  Mr. Brennwald.

13             MR. BRENNWALD:  Thank you, Your Honor.

14             Good afternoon, Ms. Pickering.  Can you see me

15    over here?  Most people can't see so -- over here.

16             Do you feel that anyone who went into the Capitol

17    building that day must be guilty of at least some crime?

18             PROSPECTIVE JUROR NO. 0406:  That anyone who went

19    into the Capitol building that day must be guilty of some --

20    no.

21             MR. BRENNWALD:  All right.  And why is that?

22             PROSPECTIVE JUROR NO. 0406:  There could be a lot

23    of reasons people went in.

24             MR. BRENNWALD:  Okay.

25             PROSPECTIVE JUROR NO. 0406:  And which person are
```

```
1    we talking about, you know?
2              MR. BRENNWALD:  Right, right, okay.
3              All right.  Thank you so much.
4              PROSPECTIVE JUROR NO. 0406:  Okay.
5              THE COURT:  You can step down.
6              PROSPECTIVE JUROR NO. 0406:  Thank you.
7              THE COURT:  Any challenges?
8              MS. AYERS-PEREZ:  No challenge from the
9    government, Your Honor.
10             MR. BRENNWALD:  The Court's indulgence.
11             (Pause)
12             MR. BRENNWALD:  No challenges, Your Honor.
13             THE COURT:  406 is qualified.
14             MR. BRENNWALD:  Are we up to 16 so far qualified?
15             MS. AYERS-PEREZ:  I have 18.
16             THE COURT:  18 by my count.
17             MR. BRENNWALD:  18, okay.
18             THE COURTROOM DEPUTY:  Are you ready, Your Honor?
19             THE COURT:  Yes.
20             THE COURTROOM DEPUTY:  Juror No. 0394.
21             THE COURT:  Step right up, ma'am.  Good afternoon.
22             Yes, right there.  Feel free to slip your mask
23   off, if you'd like.
24             All right.  Thank you for your patience.  Nice to
25   meet you.
```

```
 1                    PROSPECTIVE JUROR NO. 0394:  Nice to meet you.

 2                    THE COURT:  It says you're a public health analyst

 3        with HHS; is that right?

 4                    PROSPECTIVE JUROR NO. 0394:  Yes.

 5                    THE COURT:  How long have you been doing that?

 6                    PROSPECTIVE JUROR NO. 0394:  Two years in October.

 7                    THE COURT:  Okay.  And basically what areas do you

 8        work in?

 9                    PROSPECTIVE JUROR NO. 0394:  HIV.

10                    THE COURT:  I'm sorry?

11                    PROSPECTIVE JUROR NO. 0394:  HIV.

12                    THE COURT:  HIV.

13                    You work -- has your work touched on COVID or

14        vaccines at all?

15                    PROSPECTIVE JUROR NO. 0394:  Yes.  I managed the

16        COVID grant for about a year and a half.

17                    THE COURT:  Okay.  And you have a public health

18        background?

19                    PROSPECTIVE JUROR NO. 0394:  Yes.

20                    THE COURT:  Where did you go to school?

21                    PROSPECTIVE JUROR NO. 0394:  Undergrad or

22        graduate?

23                    THE COURT:  Both.

24                    PROSPECTIVE JUROR NO. 0394:  Undergrad I went to

25        Howard University, and for graduate school I went to George
```

1    Mason.

2              THE COURT:  Okay.  If you were a juror on this

3    case, you might hear testimony that Mr. Strand was in

4    Washington and came to the Capitol with someone who gave a

5    speech that was critical of the COVID vaccine and vaccine

6    mandates.  Given your work with HIV and vaccines and public

7    health generally, do you think that would affect your

8    ability to be fair?  In other words, would his views about

9    those subjects affect your ability to be fair in this case?

10             PROSPECTIVE JUROR NO. 0394:  Yes, likely.

11             THE COURT:  You think they would?

12             PROSPECTIVE JUROR NO. 0394:  Yes.

13             THE COURT:  Okay.  All right.  I don't have

14   anything further.  You can go back to the other courtroom.

15             PROSPECTIVE JUROR NO. 0394:  Okay.

16             THE COURT:  All right.  The Court will strike 394

17   for cause for the answers that she gave.

18             Counsel, we'll probably take a break at 3:00 for

19   15 minutes.

20             Is this the way they do it in Texas, Ms. Ayers-

21   Perez?

22             MS. AYERS-PEREZ:  It is not.

23             MR. BRENNWALD:  While we're waiting, I'd love to

24   hear the short version.

25             THE COURT:  I think that is the short version.

1          MS. AYERS-PEREZ:  We normally --

2          THE COURT:  It would have been done by now

3     probably.

4          MS. AYERS-PEREZ:  It's normally a half-day event,

5     although, when we have bigger cases, we tend to -- we tend

6     to do more.  But we normally just do a generalized voir dire

7     and not the individual as well.

8          THE COURT:  Okay.

9          MS. AYERS-PEREZ:  Although when we do, the judges

10    aren't used to it, and it becomes -- it becomes a multiday

11    event.  Sometimes when they do it that way it takes longer

12    than the trial.

13         THE COURT:  I've never -- except for one big case,

14    never gone more than a day.  This one might do it just

15    because we got started late.

16         MR. BRENNWALD:  I've actually heard stories of

17    lawyers in Maryland and the outlying counties of eastern

18    shore and western Maryland where judges will say, "Why don't

19    we put the first 12 in the box and say let's go."

20         THE COURT:  I'm not -- a lot of lawyers think that

21    way.

22         This is off the record.

23         (Discussion off the record)

24         THE COURT:  I think she's back.  We'll bring her

25    back.

```
 1                 MR. BRENNWALD:  Okay.  Thank you.

 2                 THE COURT:  We'll bring her back.

 3                 MR. BRENNWALD:  I'm already in the doghouse with

 4      the court reporter, and we haven't even gotten to openings

 5      yet.

 6                 THE COURT:  You're ahead of the game.

 7                 THE COURTROOM DEPUTY:  Your Honor, Juror No. 1424.

 8                 THE COURT:  Okay.  Step right up, ma'am.  And feel

 9      free to slip your mask off.  You're Ms. Jackson.

10                 PROSPECTIVE JUROR NO. 1424:  Yes.

11                 THE COURT:  How are you this afternoon?

12                 PROSPECTIVE JUROR NO. 1424:  All right.  And

13      yourself?

14                 THE COURT:  I'm doing fine.

15                 PROSPECTIVE JUROR NO. 1424:  Great.

16                 THE COURT:  Are you employed, ma'am?

17                 PROSPECTIVE JUROR NO. 1424:  No, sir.

18                 THE COURT:  No?

19                 PROSPECTIVE JUROR NO. 1424:  No, sir.

20                 THE COURT:  And when were you last employed?

21                 PROSPECTIVE JUROR NO. 1424:  Five years ago.

22                 THE COURT:  And what did you do when you were last

23      employed?

24                 PROSPECTIVE JUROR NO. 1424:  Real estate.  I was

25      working for a real estate agency.
```

```
 1                    THE COURT:  Okay.  And do you have a significant

 2        other?

 3                    PROSPECTIVE JUROR NO. 1424:  He's deceased.

 4                    THE COURT:  Deceased.  I'm sorry.

 5                    What did he do before he died?

 6                    PROSPECTIVE JUROR NO. 1424:  Construction.

 7                    THE COURT:  Construction.  So you answered yes to

 8        one of my questions, which you've seen video footage of

 9        January 6th.

10                    PROSPECTIVE JUROR NO. 1424:  Yes.

11                    THE COURT:  There were no other questions that you

12        had a yes answer to?

13                    PROSPECTIVE JUROR NO. 1424:  No, sir.

14                    THE COURT:  Okay.  And you understood all the

15        questions, right?

16                    PROSPECTIVE JUROR NO. 1424:  Yes, sir.

17                    THE COURT:  And when you say you saw video of

18        January 6th, was that back at the time, or have you

19        continued to follow it?

20                    PROSPECTIVE JUROR NO. 1424:  Back at the time.

21        Back at the -- during the --

22                    THE COURT:  When I said at the beginning that this

23        case was about January 6th, did you have any reactions one

24        way or the other?

25                    PROSPECTIVE JUROR NO. 1424:  No.  No, I figured
```

```
 1    eventually.

 2              THE COURT:  Have you had jury duty before?

 3              PROSPECTIVE JUROR NO. 1424:  Yes.

 4              THE COURT:  When was the last time you had jury

 5    duty, if you remember?

 6              PROSPECTIVE JUROR NO. 1424:  It was a murder

 7    trial, and it was about ten years ago.

 8              THE COURT:  And did you all reach a verdict?

 9              PROSPECTIVE JUROR NO. 1424:  Yes.

10              THE COURT:  And what was the verdict?

11              PROSPECTIVE JUROR NO. 1424:  Not guilty.

12              THE COURT:  Okay.  And were you the foreperson of

13    that --

14              PROSPECTIVE JUROR NO. 1424:  No, sir.

15              THE COURT:  -- jury?

16              PROSPECTIVE JUROR NO. 1424:  No, sir.

17              THE COURT:  Anything about that experience make

18    you hesitate to be on a criminal jury again?

19              PROSPECTIVE JUROR NO. 1424:  No.

20              THE COURT:  Okay.  Ms. Ayers-Perez.

21              MS. AYERS-PEREZ:  I have no follow-up questions,

22    Your Honor.

23              THE COURT:  Mr. Brennwald.

24              MR. BRENNWALD:  Thank you.

25              Ms. Jackson, over here.  Do you have strong
```

```
 1    feelings about what happened on January 6th at the Capitol?
 2              PROSPECTIVE JUROR NO. 1424:  No.
 3              MR. BRENNWALD:  Do you feel like people who went
 4    inside the building that day are probably guilty of
 5    something?
 6              PROSPECTIVE JUROR NO. 1424:  I assume the courts
 7    will decide.
 8              MR. BRENNWALD:  Uh-huh, okay.
 9              Okay.  Thank you so much, ma'am.
10              THE COURT:  All right.  Ma'am, you can go back to
11    the other courtroom.  Thank you very much for your service.
12              Any challenge?
13              MS. AYERS-PEREZ:  None from the government, Your
14    Honor.
15              MR. BRENNWALD:  None from the defense.
16              THE COURT:  Okay.  1424 is qualified.
17              THE COURTROOM DEPUTY:  Your Honor, Juror No. 0242.
18              THE COURT:  Step right up, ma'am.  Good afternoon.
19    Please have a seat, and you can take your mask off, if you'd
20    like.
21              You are Ms. Pathammavong?
22              PROSPECTIVE JUROR NO. 0242:  Yes, sir.
23              THE COURT:  Okay.  Nice to meet you.
24              PROSPECTIVE JUROR NO. 0242:  Thank you.
25              THE COURT:  And you say you work at BCDC?
```

```
 1              PROSPECTIVE JUROR NO. 0242:  Yes, sir.

 2              THE COURT:  Tell us what that is.

 3              PROSPECTIVE JUROR NO. 0242:  It's Bonchon.  It's a

 4    Korean restaurant in Navy Yard.

 5              THE COURT:  Navy Yard.  What's it called?

 6              PROSPECTIVE JUROR NO. 0242:  Bonchon.

 7              THE COURT:  And how long have you worked there?

 8              PROSPECTIVE JUROR NO. 0242:  Two years.

 9              THE COURT:  And are you in management or -- yes?

10    How's business.

11              PROSPECTIVE JUROR NO. 0242:  Busy and tough right

12    now.

13              THE COURT:  Yeah.  So you answered yes to a couple

14    of questions.  One is 40, which is the question about

15    serving during the COVID pandemic.  You have some concerns

16    about that?

17              PROSPECTIVE JUROR NO. 0242:  Yes, sir, because

18    with COVID and being sick and then people, you know, I've

19    worked being sick as well and then customers.  And then I

20    myself was sick a while back, too.

21              THE COURT:  Okay.  And how would that affect your

22    being on this jury with masks and Plexiglas and whatnot?

23              PROSPECTIVE JUROR NO. 0242:  Just the temperature.

24    Like yesterday -- today I almost didn't make it because --

25              THE COURT:  So you feel sick?
```

```
1              PROSPECTIVE JUROR NO. 0242:  Yes.

2              THE COURT:  Okay.

3              All right.  Well, we don't want to impose on you

4     at this time so we'll dismiss you back to the jury room,

5     okay?

6              PROSPECTIVE JUROR NO. 0242:  Okay.

7              THE COURT:  To the big courtroom.

8              PROSPECTIVE JUROR NO. 0242:  Thank you.

9              THE COURT:  Okay.  The Court will strike 242 for

10    cause.

11             THE COURTROOM DEPUTY:  Your Honor, Juror No. 0113.

12             THE COURT:  Okay.  Step right up, ma'am.

13             Okay.  Thanks for your patience.  Feel free to

14    remove your mask, if you'd like.

15             PROSPECTIVE JUROR NO. 0113:  Okay.  Thank you.

16             THE COURT:  And you're Ms. Sibley; is that right?

17             PROSPECTIVE JUROR NO. 0113:  Yes.

18             THE COURT:  Nice to meet you.

19             PROSPECTIVE JUROR NO 0113:  Nice to meet you, too.

20             THE COURT:  All right.  Are you employed, ma'am?

21             PROSPECTIVE JUROR NO 0113:  Yes.  I'm self-

22    employed.

23             THE COURT:  And what do you do?

24             PROSPECTIVE JUROR NO. 0113:  I'm a therapist and a

25    director of a family therapy practice.
```

```
 1                    THE COURT:  Great.  How long have you been doing
 2          that?
 3                    PROSPECTIVE JUROR NO 0113:  2004 to '8, depending
 4          on what starting point.
 5                    THE COURT:  And do you have a significant other?
 6                    PROSPECTIVE JUROR NO 0113:  Yes.
 7                    THE COURT:  And what do they do?
 8                    PROSPECTIVE JUROR NO 0113:  He's an engineer at
 9          profession, but unemployed right now.
10                    THE COURT:  Okay.  All right.  You answered yes to
11          a couple of my questions.  Let's start with 42, which is the
12          catch-all question.
13                    And you say pending lawsuit.  Tell us about that.
14                    PROSPECTIVE JUROR NO. 0113:  I think it's not
15          relevant, but I'm a registered agent of a holding company,
16          Sibley Luck, and just found out Friday that there's a
17          lawsuit filed by one of the subcontractors of the contractor
18          of a building that we're renovating.
19                    THE COURT:  Okay.  Lawsuits tend to take a long
20          time.
21                    PROSPECTIVE JUROR NO. 0113:  Right.
22                    THE COURT:  But to your knowledge, your presence
23          is not needed in that suit this week, or not?
24                    PROSPECTIVE JUROR NO. 0113:  No.  It's not until
25          December.
```

1          THE COURT:  Okay.  And you also answered yes to

2     19, which is you think you may have heard of Dr. Gold; is

3     that correct?

4          PROSPECTIVE JUROR NO. 0113:  Oh, maybe I

5     misunderstood.  It was the question about seeing any media

6     about January 6th, which was very minor news reporting.

7          THE COURT:  That was 18, okay.

8          PROSPECTIVE JUROR NO. 0113:  18, okay.

9          THE COURT:  Have you -- did you just see it back

10     at the time that it happened, or have you continued to

11     follow the story?

12          PROSPECTIVE JUROR NO. 0113:  No, I haven't really

13     followed it that much.

14          THE COURT:  Okay.  So when I described the case as

15     being related to January 6th, did you have any reaction one

16     way or the other about that?

17          PROSPECTIVE JUROR NO. 0113:  No, not really.

18          THE COURT:  Do you have strong feelings about

19     January 6th, either one side or the other?

20          PROSPECTIVE JUROR NO. 0113:  No, I don't think so.

21          THE COURT:  Okay.

22          Ms. Ayers-Perez.

23          MS. AYERS-PEREZ:  I have no further questions,

24     Your Honor.

25          THE COURT:  Mr. Brennwald.

```
1              MR. BRENNWALD:  Good afternoon, Ms. Sibley.

2              PROSPECTIVE JUROR NO. 0113:  Hi.

3              MR. BRENNWALD:  Hi.  You said you haven't followed

4    January 6th at all.  You haven't watched any of the January

5    6th hearings?

6              PROSPECTIVE JUROR NO. 0113:  I haven't watched any

7    of the hearings, no.

8              MR. BRENNWALD:  Okay.  Do you feel that anyone who

9    went into the Capitol building on January 6th must be

10   guilty?  Any of the people who were not working there,

11   people who kind of came in?

12             PROSPECTIVE JUROR NO. 0113:  No.

13             MR. BRENNWALD:  Okay.

14             That's all I have, Your Honor.  Thank you.

15             THE COURT:  All right.  Ma'am, you can step down

16   and go back to the other courtroom.

17             PROSPECTIVE JUROR NO. 0113:  Thank you.

18             THE COURT:  Thank you.

19             All right.  Any challenge to 113?

20             MS. AYERS-PEREZ:  No challenge from the

21   government.

22             MR. BRENNWALD:  No, Your Honor.

23             THE COURT:  All right.  113 is qualified.

24             THE COURTROOM DEPUTY:  Your Honor, Juror No. 1176.

25             THE COURT:  Good afternoon, ma'am.  Step right up,
```

```
1     and feel free to slide your mask off, if you wish.

2               You're Ms. Prybyl?

3               PROSPECTIVE JUROR NO. 1176:  Prybyl.

4               THE COURT:  Prybl.  Nice to meet you.

5               It says here you're not currently employed; is

6     that right?

7               PROSPECTIVE JUROR NO. 1176:  Correct.

8               THE COURT:  And where were you last employed?

9               PROSPECTIVE JUROR NO. 1176:  The Institute of

10    Peace.

11              THE COURT:  Okay.  And how long ago was that?

12              PROSPECTIVE JUROR NO. 1176:  September 2nd was my

13    last day.

14              THE COURT:  And are you from this area?

15              PROSPECTIVE JUROR NO. 1176:  I'm from Pittsburgh.

16              THE COURT:  Pittsburgh.  How long have you lived

17    in D.C.?

18              PROSPECTIVE JUROR NO. 1176:  Since the fall of

19    2020.

20              THE COURT:  Okay.  What brought you here?

21              PROSPECTIVE JUROR NO. 1176:  I was getting my

22    master's at American.

23              THE COURT:  In what?

24              PROSPECTIVE JUROR NO. 1176:  International peace

25    and conflict resolution.
```

```
 1                THE COURT:  Great.  And do you have a significant

 2       other?

 3                PROSPECTIVE JUROR NO. 1176:  I don't.

 4                THE COURT:  You answered yes to one of the

 5       questions, which is 18.  You've obviously seen video footage

 6       of January 6th.

 7                PROSPECTIVE JUROR NO. 1176:  Yes.

 8                THE COURT:  Was that back at the time, or have you

 9       continued to follow the --

10                PROSPECTIVE JUROR NO. 1176:  It was just the news

11       coverage day-of, watching as it was unfolding.

12                THE COURT:  Okay.  When I said at the outset that

13       this was a January 6th related case, did you have a reaction

14       one way or the other to that?

15                PROSPECTIVE JUROR NO. 1176:  I am definitely

16       biased, but not a strong reaction.

17                THE COURT:  Okay.  And what sort of bias do you

18       think you might have?

19                PROSPECTIVE JUROR NO. 1176:  Just that I disagree

20       with the people involved.

21                THE COURT:  Okay.  So obviously a lot of people

22       came to Washington.  They were involved in different

23       conduct, thought different things, were motivated by

24       different reasons.  Do you think you could put aside what

25       you think about January 6th generally and give this
```

1    gentleman a fair trial based on just the evidence that you

2    hear as a juror?

3              PROSPECTIVE JUROR NO. 1176:  I do.  I didn't pay

4    close attention to it, so my opinion is not very strong.

5              THE COURT:  Okay.  All right.

6              Ms. Ayers-Perez.

7              MS. AYERS-PEREZ:  I have no follow-up questions,

8    Your Honor.

9              THE COURT:  Mr. Brennwald.

10             MR. BRENNWALD:  Good afternoon, Ms. Prybyl.  Did I

11   say it right?

12             PROSPECTIVE JUROR NO. 1176:  Yes.

13             MR. BRENNWALD:  Okay.  In this case you're going

14   to see some pretty loud and agitated people in different

15   parts of the Capitol.  It's going to be pretty intense.  Do

16   you think that would in any way impact your ability to be

17   fair in this case?

18             PROSPECTIVE JUROR NO. 1176:  No.

19             MR. BRENNWALD:  Do you have any doubt about your

20   ability to be fair?  I mean, it's okay to have questions.

21   I'm just asking.

22             PROSPECTIVE JUROR NO. 1176:  No, I don't doubt my

23   ability to be fair.  I will be able to put aside what I've

24   seen and heard.

25             MR. BRENNWALD:  Okay.  Do you feel like anybody

```
1    who went into the Capitol building that day, other than

2    employees, is guilty of something?

3              PROSPECTIVE JUROR NO. 1176:  No, not necessarily.

4              MR. BRENNWALD:  Okay.  So you're willing to keep

5    an open mind and wait and see everything?

6              Okay.  Thank you.  That's all we can ask.

7              THE COURT:  Thank you.

8              PROSPECTIVE JUROR NO. 1176:  Thanks.

9              THE COURT:  All right.  Okay.  Any challenges?

10             MS. AYERS-PEREZ:  No challenges from the

11   government, Your Honor.

12             MR. BRENNWALD:  The Court's indulgence.

13             (Pause)

14             THE COURTROOM DEPUTY:  Your Honor, Juror No. --

15             THE COURT:  Hold on.

16             Mr. Brennwald?

17             MR. BRENNWALD:  No, Your Honor.

18             THE COURT:  1176 is qualified.

19             THE COURTROOM DEPUTY:  Juror No. 0449.

20             THE COURT:  Good afternoon, ma'am.

21             PROSPECTIVE JUROR NO. 0449:  Good afternoon.

22             THE COURT:  Thank you very much for your patience.

23             PROSPECTIVE JUROR NO. 0449:  Of course.

24             THE COURT:  It's Christmas in September.

25             PROSPECTIVE JUROR NO. 0449:  I mean, every time --
```

1    every day can be Christmas if you really believe it so...

2            THE COURT:  Feel free to slip that lovely mask

3    off, and please speak into the microphone.

4            PROSPECTIVE JUROR NO. 0449:  Phenomenal.

5            THE COURT:  It says here you work as a program

6    analyst with the Office of the Inspector General for the

7    District of Columbia; is that right?

8            PROSPECTIVE JUROR NO. 0449:  That's correct.

9    Technically management and program analyst, but basically

10   the same deal.

11           THE COURT:  All right.  And how long have you done

12   that?

13           PROSPECTIVE JUROR NO. 0449:  I have been in my

14   role since April of 2022; so five, six months.

15           THE COURT:  And what did you do before that?

16           PROSPECTIVE JUROR NO. 0449:  Before that I worked

17   at a trade association based in Alexandria, Virginia.  It

18   was primarily in the HR and employment practices space.

19           THE COURT:  Do you have a significant other?

20           PROSPECTIVE JUROR NO. 0449:  I do not.

21           THE COURT:  And we ask that just because we like

22   to know.

23           PROSPECTIVE JUROR NO. 0449:  You're totally good.

24   I figured.

25           THE COURT:  It's none of my business.

1          All right.  You answered yes to a number of my

2     questions.  Let's see.

3          PROSPECTIVE JUROR NO. 0449:  I did.

4          THE COURT:  You probably forgot it's been so long

5     now.

6          PROSPECTIVE JUROR NO. 0449:  I remember some of

7     them.  Some of them you may have to jog my memory.

8          THE COURT:  Yes, I will.

9          All right.  Let's start with No. 4.  Do you live

10    or work -- or know someone who does -- near the Capitol?

11         PROSPECTIVE JUROR NO. 0449:  Yes.  So not during

12    the -- so I interned on Capitol Hill.  I worked for the

13    office of U.S. Senator John Hogan.  He's a Republican

14    senator from North Dakota.  I worked there and was paid from

15    2014 to 2015.

16         And then one of my close friends used to live like

17    a block or two off of the Capitol Mall during the time in

18    question and now lives in a similar area.

19         THE COURT:  Okay.  Have you spoken to that friend

20    about the experiences that he or she had that day?

21         PROSPECTIVE JUROR NO. 0449:  I mean, probably

22    directly after.  I don't think we've spoken since about

23    that.

24         THE COURT:  Okay.  So anything about his or her

25    experience would affect your ability to be fair in this

```
 1    case?
 2              PROSPECTIVE JUROR NO. 0449:  No.
 3              THE COURT:  Okay.  Anything about having worked on
 4    the Hill previously affect your ability to be fair?
 5              PROSPECTIVE JUROR NO. 0449:  Absolutely no.
 6              THE COURT:  Okay.  Do you have former colleagues
 7    from that period of time that still work there?
 8              PROSPECTIVE JUROR NO. 0449:  If they are still
 9    there, I have lost touch, so I'm not sure.
10              THE COURT:  Fair enough.
11              PROSPECTIVE JUROR NO. 0449:  I mean, the senator
12    is still in office, so technically.
13              THE COURT:  Right.  So you've obviously seen video
14    of the events of January 6th.
15              PROSPECTIVE JUROR NO. 0449:  Yes.
16              THE COURT:  And you've seen at least some of the
17    coverage of the January 6th hearings?
18              PROSPECTIVE JUROR NO. 0449:  Yes, that's correct.
19              THE COURT:  Would you say you follow it closely or
20    occasionally, and, you know --
21              PROSPECTIVE JUROR NO. 0449:  I would say I follow
22    it fairly closely.  I'll try to catch a hearing or catch a
23    recap, if I miss a hearing.
24              THE COURT:  Right.  And do you have strong
25    feelings about what happened on January 6th as a result of
```

1   that or any other exposure to it?

2              PROSPECTIVE JUROR NO. 0449:  No more so than just

3   seeing it.  I wouldn't characterize my feelings as strong.

4              THE COURT:  Okay.  You or an immediate family

5   member or close friend has been the subject of an

6   investigation by a government agency, or do you have a case

7   pending in state or federal court?

8              PROSPECTIVE JUROR NO. 0449:  I recognize now I may

9   have misunderstood this.  Both of my nieces -- actually all

10  three of my nieces were victims in a case, so I may have

11  answered that question incorrectly.

12             THE COURT:  Okay.  Anything about their

13  experiences as victims make you hesitate to become involved

14  as a juror in a criminal trial?

15             PROSPECTIVE JUROR NO. 0449:  It was a very

16  different case, so I don't think so.

17             THE COURT:  Okay.  Anything about how their case

18  was handled, either by the prosecution, by their defense

19  lawyers, by the police, by law enforcement, make you --

20             PROSPECTIVE JUROR NO. 0449:  No.

21             THE COURT:  -- hesitate to serve?

22             PROSPECTIVE JUROR NO. 0449:  No.

23             THE COURT:  So you've had some legal training.

24             PROSPECTIVE JUROR NO. 0449:  I took -- sorry, I

25  took a constitutional law class my senior year of college,

```
1    so that would have been in fall of 2016.

2              THE COURT:  Okay.

3              PROSPECTIVE JUROR NO. 0449:  That is the extent of

4    it though.

5              THE COURT:  Okay.

6              Ms. Ayers-Perez.

7              MS. AYERS-PEREZ:  I have no follow-up questions,

8    Your Honor.

9              THE COURT:  Mr. Brennwald.

10             MR. BRENNWALD:  Good afternoon, Ms. Oster.

11             PROSPECTIVE JUROR NO. 0449:  Oster, but you're

12   good.  Good afternoon.

13             MR. BRENNWALD:  Do you feel that everybody or

14   anybody who went into the Capitol on that day who wasn't an

15   employee there must be guilty of something?

16             PROSPECTIVE JUROR NO. 0449:  I guess I don't know

17   the -- like all of the facts and the details, so I would

18   hesitate to make a characterization as to the guilt or lack

19   thereof of someone.

20             I mean, this may be not answering your question so

21   if I'm not answering your question correctly, I would say

22   like everyone is entitled to a fair hearing of the case as

23   presented.

24             MR. BRENNWALD:  Okay.  That's how it's supposed to

25   work.
```

```
 1              PROSPECTIVE JUROR NO. 0449:  Okay, great.
 2              MR. BRENNWALD:  So thank you so much.  Thank you.
 3    Appreciate it.
 4              That's all.
 5              THE COURT:  Thank you very much for your service.
 6    You can go back to the other courtroom.
 7              PROSPECTIVE JUROR NO. 0449:  Great.  Thank you.
 8              THE COURT:  All right.  Ms. Jenkins, I think we're
 9    going to take a -- Ms. Jenkins, we're going to take a break.
10              All right.  Any challenge to 449?
11              MS. AYERS-PEREZ:  No challenge from the
12    government.
13              MR. BRENNWALD:  No, Your Honor.
14              THE COURT:  All right.  She is qualified.
15              So we've got 22 by my count, so we need ten more.
16    Let's take about a 15-minute break, okay?
17              (Recess taken)
18              THE COURT:  Okay.  Counsel, we're going to start
19    by bringing back 1241.
20              THE COURTROOM DEPUTY:  Your Honor, Juror No. 1241.
21              THE COURT:  Okay.  Welcome back, ma'am.  Thank you
22    for your patience.
23              I believe when you were on the stand before we
24    asked you about your cousin, who is -- and you can take your
25    mask off -- your cousin that was in law enforcement.
```

```
 1                 PROSPECTIVE JUROR NO. 1241:  Yes.

 2                 THE COURT:  And what part of law enforcement does

 3        she work for?

 4                 PROSPECTIVE JUROR NO. 1241:  She's with the

 5        Marshals right now.

 6                 THE COURT:  The Marshals?

 7                 PROSPECTIVE JUROR NO. 1241:  Yes.

 8                 THE COURT:  And you were saying that she was

 9        affected by January 6th?

10                 PROSPECTIVE JUROR NO. 1241:  No.

11                 THE COURT:  Tell me --

12                 PROSPECTIVE JUROR NO. 1241:  She was not.  I said

13        that -- you asked me if -- what did you ask me?  About me

14        making a decision.

15                 THE COURT:  Right.  Whether your relationship with

16        her would cause you to sort of have concerns about hearing a

17        case about January 6th?

18                 PROSPECTIVE JUROR NO. 1241:  Right.

19                 THE COURT:  And you said that it might.

20                 PROSPECTIVE JUROR NO. 1241:  Right.

21                 THE COURT:  I think some of the lawyers would like

22        a little follow-up questioning on that topic.

23                 PROSPECTIVE JUROR NO. 1241:  Okay.

24                 THE COURT:  Ms. Ayers-Perez, you can start, if

25        you'd like, or follow up after Mr. Brennwald.
```

1           MS. AYERS-PEREZ:  If I could, I would follow up

2     after Mr. Brennwald.

3           THE COURT:  Okay.  Mr. Brennwald.

4           MR. BRENNWALD:  Good afternoon, ma'am.

5           PROSPECTIVE JUROR NO. 1241:  Yes.

6           MR. BRENNWALD:  I'm over here.

7           If you found out that Mr. Strand is not accused of

8     assaulting any police officer at all, would that change your

9     view of whether you could be fair to him, or not?

10          PROSPECTIVE JUROR NO. 1241:  Yes.

11          MR. BRENNWALD:  Okay.  Would the fact that other

12    people that he didn't know might have committed assault,

13    would that spill over on to Mr. Strand, in your view, or

14    would you be able to keep that separate?

15          PROSPECTIVE JUROR NO. 1241:  I'm not sure.

16          MR. BRENNWALD:  In other words, if he's there, and

17    other people are doing things but he's not, would you be

18    able to just look at his case and say okay, this is what I

19    think he did or didn't do?

20          PROSPECTIVE JUROR NO. 1241:  Maybe.

21          MR. BRENNWALD:  Okay.

22          PROSPECTIVE JUROR NO. 1241:  I mean, I'd have to

23    hear.

24          MR. BRENNWALD:  You can't say until you know what

25    happened.

```
 1              PROSPECTIVE JUROR NO. 1241:  Right.

 2              MR. BRENNWALD:  Okay.  All right.

 3              But if there's no evidence that he assaulted

 4     anybody, that would change the way you looked at the whole

 5     association with your relative?

 6              PROSPECTIVE JUROR NO. 1241:  For that situation,

 7     yes.

 8              MR. BRENNWALD:  Sure.  Okay.  Thank you, ma'am.  I

 9     appreciate it.

10              That's all I have.

11              THE COURT:  Ms. Ayers-Perez, anything?

12              MS. AYERS-PEREZ:  Yes, just a brief follow-up,

13     Your Honor.

14              Good afternoon.  Thanks for coming back for us.

15              There are going to be a number of videos and

16     things of that nature played throughout the course of this

17     trial, and some of those may show violent acts just

18     throughout -- contextually throughout the video.  Is that

19     something you'd be able to sit through and watch?

20              PROSPECTIVE JUROR NO. 1241:  It was hard watching

21     it originally like on news and stuff, so maybe, yes.  I

22     mean, I know it will probably affect me, yes.

23              MS. AYERS-PEREZ:  Okay.  And is that because of

24     your cousin and her experiences?

25              PROSPECTIVE JUROR NO. 1241:  Because of my cousin
```

1    and because that's just not my personality.  No, I don't

2    like that kind of stuff.

3            MS. AYERS-PEREZ:  Okay.  And that makes sense, but

4    despite that, can you make a decision based solely on the

5    information, the videos, the testimony, and things that

6    you're going to hear throughout this week, or will those

7    outside influences be affecting that?

8            PROSPECTIVE JUROR NO. 1241:  I would do my best to

9    just use the information that I was given.

10           MS. AYERS-PEREZ:  Okay.  And when you say you'll

11   do your best, is that you can say for sure or that you can't

12   really say with 100 percent confidence?

13           PROSPECTIVE JUROR NO. 1241:  I can't say with 100

14   percent confidence.

15           MS. AYERS-PEREZ:  Okay.

16           THE COURT:  So we can never say anything with 100

17   percent confidence, but -- I don't know if you want to

18   quantify it, but how confident are you?  And just be honest

19   with me.  Is this -- do you think you could be fair in this

20   case?

21           PROSPECTIVE JUROR NO. 1241:  I would -- the only

22   thing I can say right now is I would try.  I'm -- not

23   hearing the information, I can't really say.

24           THE COURT:  Okay.  But if you heard information

25   that led you to believe that the government did not prove

1    its case beyond a reasonable doubt, would you have any

2    trouble finding Mr. Strand not guilty?

3              PROSPECTIVE JUROR NO. 1241:  No.

4              THE COURT:  Okay.  Anything else, Counsel?

5              MS. AYERS-PEREZ:  No, Your Honor.

6              MR. BRENNWALD:  No, Your Honor.  Thank you.

7              THE COURT:  All right.  You can step down.

8              PROSPECTIVE JUROR NO. 1241:  Okay.

9              THE COURT:  All right.  Ms. Ayers-Perez?

10             MS. AYERS-PEREZ:  I do think there's a challenge

11   here, Your Honor.  She throughout said she does -- she's not

12   confident she'd be able to essentially render a verdict and

13   not consider, I guess, her cousin's law enforcement

14   experience.  I do think that it's close enough that I would

15   challenge it, Your Honor.

16             THE COURT:  Okay.  Mr. Brennwald?

17             MR. BRENNWALD:  Without saying something that's

18   out of turn, it is interesting that the government is

19   concerned that she might not be --

20             THE COURT:  Just talk to me about this witness,

21   not their position.

22             MR. BRENNWALD:  Yes.  I submit to you that she

23   said she will try to be fair.  She thinks she can be fair.

24   And she seemed very straightforward, thoughtful, and I think

25   she told the Court she could be fair in the context of this

1    case.

2              She said she hasn't seen anything yet, so she

3    can't decide, but obviously she's going to try.  She seemed

4    very honest.

5              THE COURT:  All right.  Well, if anyone's position

6    is inconsistent, it's yours, but if you want her, I'll keep

7    her on.  Okay?

8              So I will sustain -- or I will overrule the

9    government's challenge.  1241, for the record, is qualified.

10             THE COURTROOM DEPUTY:  Your Honor, out of turn

11   we're going to take Juror No. 1480.

12             THE COURT:  All right.

13             Okay.  Ma'am, step right up.  Good afternoon.

14             PROSPECTIVE JUROR NO. 1480:  Good afternoon.

15             THE COURT:  And you can slip your mask off, if

16   you're comfortable doing so.

17             PROSPECTIVE JUROR NO. 1480:  Sure.

18             THE COURT:  All right.  It says here you're a

19   tutor.

20             PROSPECTIVE JUROR NO. 1480:  Yes.

21             THE COURT:  What kind of tutor?

22             PROSPECTIVE JUROR NO. 1480:  K to 12.

23             THE COURT:  Move a little closer to the mic so

24   everyone can hear you.

25             PROSPECTIVE JUROR NO. 1480:  Okay, sorry.  Test

1    prep, college counseling.

2              THE COURT:  And how long have you been doing that?

3              PROSPECTIVE JUROR NO. 1480:  Since 2009.

4              THE COURT:  You answered yes to a number of my

5    questions, including 41, which is the extreme hardship

6    question.  Is that right?

7              PROSPECTIVE JUROR NO. 1480:  Yes.

8              THE COURT:  Why did you answer yes to that

9    question?

10             PROSPECTIVE JUROR NO. 1480:  I believe it's

11   related to No. 1.  I found out this weekend -- sorry.

12             THE COURT:  Take your time.

13             PROSPECTIVE JUROR NO. 1480:  I just got a call

14   that -- from a county jail in Seattle that my brother had

15   been involuntarily -- you know, put in involuntary hold.

16   Yesterday was the passing and -- sorry, I just --

17             THE COURT:  Don't say anything else.

18             Obviously that's very upsetting to you.

19             PROSPECTIVE JUROR NO. 1480:  Yes.

20             THE COURT:  And would that affect your ability to

21   concentrate in a trial like this?

22             PROSPECTIVE JUROR NO. 1480:  Well, I was still

23   taking phone calls from the hospital while we were waiting

24   outside so...

25             THE COURT:  All right.

```
 1              PROSPECTIVE JUROR NO. 1480:  And I have follow-ups
 2     to do this week for sure.
 3              THE COURT:  That's fine.  You're excused.
 4              PROSPECTIVE JUROR NO. 1480:  Thank you.
 5              THE COURT:  Okay.  The Court will excuse 1480 for
 6     cause.
 7              All right.  And we're back to 659.
 8              THE COURTROOM DEPUTY:  Judge, I'm going to release
 9     her.  Is that okay to release her?
10              THE COURT:  Yes.
11              THE COURTROOM DEPUTY:  Your Honor, Juror No. 0659.
12              THE COURT:  Step right up, sir.  Good afternoon.
13     Thank you for your patience.
14              PROSPECTIVE JUROR NO. 0659:  Uh-huh.
15              THE COURT:  Feel free to slip your mask off, if
16     you like.  You're a Gators fan, I see.
17              PROSPECTIVE JUROR NO. 0659:  Yes.
18              THE COURT:  Did they win on Saturday?
19              PROSPECTIVE JUROR NO. 0659:  Barely.
20              THE COURT:  Barely.  You from that area?
21              PROSPECTIVE JUROR NO. 0659:  Yes, originally.
22              THE COURT:  Whereabout?
23              PROSPECTIVE JUROR NO. 0659:  Gainesville.
24              THE COURT:  What brought you to D.C.?
25              PROSPECTIVE JUROR NO. 0659:  Work.
```

```
 1              THE COURT:  And it says you're a communications
 2    consultant with something called GMMB.
 3              PROSPECTIVE JUROR NO. 0659:  Yes.
 4              THE COURT:  And what is that?
 5              PROSPECTIVE JUROR NO. 0659:  Communications firm,
 6    strategy.  We do -- I mostly handle nonprofits, corporate,
 7    and an electoral or campaign client now and then.
 8              THE COURT:  Okay.  And have you -- what campaigns
 9    have you personally worked on recently?
10              PROSPECTIVE JUROR NO. 0659:  Recently, not a lot
11    of campaigns.  Mine have been more independent expenditures
12    or interest groups, that kind of thing, so not like
13    candidate-specific ones.
14              THE COURT:  Okay.  Any particular interest groups
15    that you can disclose?
16              PROSPECTIVE JUROR  NO. 0659:  That are not NDAs or
17    anything?  Relevant potentially to this, in 2020 we were
18    doing election norming.  So it was kind of the idea of the
19    results are going to come when they come, and everybody
20    should just wait for the results and trust that the process
21    will see itself through.
22              THE COURT:  Let me put it this way.
23              PROSPECTIVE JUROR NO. 0659:  Yes.
24              THE COURT:  The entities that you work for in
25    connection with that part of your business, are they
```

```
 1    affiliated with one party or the other?

 2              PROSPECTIVE JUROR NO. 0659:  Yes, yes.

 3              THE COURT:  Or one?

 4              PROSPECTIVE JUROR NO. 0659:  My firm is mostly

 5    left-leaning.  It's a large Democratic firm.

 6              THE COURT:  Okay.

 7              PROSPECTIVE JUROR NO. 0659:  I don't personally

 8    work on those accounts, but yes, my firm does.

 9              THE COURT:  Okay.

10              PROSPECTIVE JUROR NO. 0659:  Yes.

11              THE COURT:  And do you have a significant other?

12              PROSPECTIVE JUROR NO. 0659:  Yes.

13              THE COURT:  And what do they do?

14              PROSPECTIVE JUROR NO. 0659:  She is an attorney.

15              THE COURT:  What kind of attorney?

16              PROSPECTIVE JUROR NO. 0659:  Regulatory attorney,

17    Department of Energy.

18              THE COURT:  All right.  You answered yes to a

19    number of my questions.

20              16, something about the nature of the case that

21    might prevent you from being fair and neutral in evaluating

22    the evidence.  Why did you answer yes to that?

23              PROSPECTIVE JUROR NO. 0659:  I mostly flagged that

24    one because of the work I had just mentioned.  I was, in

25    2020, very expressly working on making sure people knew
```

1    about the outcome of the election being something that could

2    be trusted, and the results were going to be fair, and that

3    there were a lot of local officials that were doing their

4    job to make sure that the results were that.

5            So that wasn't necessarily in conflict with the

6    beliefs of those that gathered on January 6th, but it was

7    part of the effort in the end.

8            THE COURT:  Okay.  And so if the evidence were

9    that Mr. Strand or folks associated with him questioned the

10   accuracy of the election results, would that make you a

11   little concerned about your ability to be fair?

12           PROSPECTIVE JUROR NO. 0659:  Not necessarily my

13   ability to be fair.  It was more of a -- I didn't know if

14   that would be enough of a conflict that I would want that to

15   be known, to be brought up.  I didn't want that to be a

16   hidden thing.

17           THE COURT:  But you think you could put that

18   aside?

19           PROSPECTIVE JUROR NO. 0659:  Definitely.  I think

20   there were -- I don't know how far I'm supposed to go in

21   this scenario, but I think there were plenty of people that

22   were there that didn't necessarily assume that the results

23   were tainted.

24           It's just that it was something that I was already

25   working on.  And I know there were a lot of people, at least

1     from the reporting, that were there that might have felt

2     that.

3              THE COURT:  Okay.  So you would not hold the views

4     of those people against Mr. Strand regardless of what he may

5     or may not have believed?

6              PROSPECTIVE JUROR NO. 0659:  No.

7              THE COURT:  Is that fair?

8              PROSPECTIVE JUROR NO. 0659:  Yes.

9              THE COURT:  No. 17, you know someone with some

10    connection to the events of January 6th.

11             PROSPECTIVE JUROR NO. 0659:  Just that I have

12    friends that were working in or around the Capitol at the

13    time.

14             THE COURT:  Anyone in the building?

15             PROSPECTIVE JUROR NO. 0659:  I believe only in the

16    staff offices at the time, not in the building itself.

17             THE COURT:  Okay.  And have you spoken to those

18    folks about their experiences?

19             PROSPECTIVE JUROR NO. 0659:  Not in depth.  The

20    day of we had some like text check-ins, are you okay, that

21    kind of thing.  But nothing about anything that happened or

22    their explicit experiences of it.

23             THE COURT:  Okay.  And would what they told you in

24    those texts or, you know, your familiarity with people who

25    may have, you know, been in a predicament that day or

1    struggled with it since, would that affect your ability --

2    and I want you to be honest with me -- to be a fair and

3    impartial juror based on the evidence against this

4    gentleman?

5              PROSPECTIVE JUROR NO. 0659:  I don't think so.

6    Again, they didn't have extreme scenarios that they were

7    involved in.  Most of them were either evacuated or had

8    situations later.  Nobody like had lingering effects that

9    they've talked about with me, so I don't necessarily know

10   that it would.

11             THE COURT:  Okay.  And when you say you think so,

12   are you pretty confident about that?

13             PROSPECTIVE JUROR NO. 0659:  I'm pretty confident

14   about it, yes.

15             THE COURT:  Okay.  You or someone in your

16   immediate family or a close friend has been a victim of a

17   crime?

18             PROSPECTIVE JUROR NO. 0659:  Yes.

19             THE COURT:  All right.  What can you tell me about

20   that?

21             PROSPECTIVE JUROR NO. 0659:  One of my parents,

22   younger age, was a victim of a violent crime.

23             THE COURT:  Anything about that case or the way

24   that it was handled or the experience that they went through

25   make you hesitate to be on the jury in a criminal case?

```
 1                    PROSPECTIVE JUROR NO. 0659:  No.

 2                    THE COURT:  Have you ever been on a jury before?

 3                    PROSPECTIVE JUROR NO. 0659:  No.

 4                    THE COURT:  And you know someone who's worked in

 5      the legal field?

 6                    PROSPECTIVE JUROR NO. 0659:  Yes.  That would be

 7      my wife that I mentioned.

 8                    THE COURT:  Got it.

 9                    PROSPECTIVE JUROR NO. 0659:  And additionally my

10      stepmother is a workers' compensation defense attorney in

11      Florida.

12                    THE COURT:  Okay.

13                    Ms. Ayers-Perez.

14                    MS. AYERS-PEREZ:  I have no follow-up questions,

15      Your Honor.

16                    THE COURT:  Mr. Brennwald.

17                    MR. BRENNWALD:  Thank you, Your Honor.

18                    Good afternoon.

19                    PROSPECTIVE JUROR NO. 0659:  Hi.

20                    MR. BRENNWALD:  Let's go back to the election

21      integrity work that you talked about.

22                    PROSPECTIVE JUROR NO. 0659:  Uh-huh.

23                    MR. BRENNWALD:  If the evidence came out in

24      this case that Mr. Strand -- not just people around, but

25      Mr. Strand -- was extremely confident that the election had
```

1    been stolen, and that he posted messages and texted other

2    people about how this was a rip-off, that this is war, this

3    is a battle, would that change your mind about being able to

4    view him specifically fairly in this case?

5                PROSPECTIVE JUROR NO. 0659:  I don't think so.

6    It's one of those -- I mean, I'm -- my work involves -- it's

7    communications work.  It involves convincing people one way

8    or the other.  Everyone's allowed to have their opinion.

9                So I really don't know that it would necessarily

10   affect my view of his guilt on -- that is not a crime, I

11   guess, to say or to have those opinions or have those views.

12   And it's my job to try to change people's opinions or views.

13               But that wasn't necessarily something that I would

14   think -- if it -- the crime, as far as I can tell, does not

15   involve having views about the election.  It was access and

16   some of these other things based on the charges you

17   mentioned earlier.  So I wouldn't think so.

18               MR. BRENNWALD:  So if he -- well, the lead charge

19   is obstruction of an official proceeding.

20               PROSPECTIVE JUROR NO. 0659:  Uh-huh.

21               MR. BRENNWALD:  So if you're called as a juror and

22   have to decide whether or not he obstructed an official

23   proceeding, and you learned that his views were that the

24   election was stolen and that we have to do this or we have

25   to do that, would that give you pause about being able to be

1    open-minded, given your work?

2              PROSPECTIVE JUROR NO. 0659:  Without knowing what

3    constitutes obstruction of an official proceeding -- I don't

4    know if that is physically stopping something, yelling at

5    people.  Either way, it still seems like having a view

6    wouldn't necessarily actually come in conflict with the --

7    what the charge would be at that point.  It seems like an

8    opinion or a viewpoint as opposed to the admission of a

9    crime.

10             MR. BRENNWALD:  Okay.  Thank you so much.

11   Appreciate your answer.

12             PROSPECTIVE JUROR NO. 0659:  Yeah.

13             THE COURT:  All right.  You can step down and go

14   back to the other courtroom.

15             PROSPECTIVE JUROR NO. 0659:  Sounds good.

16             THE COURT:  Any challenge?

17             MS. AYERS-PEREZ:  No challenge from the

18   government.

19             MR. BRENNWALD:  No, Your Honor.

20             THE COURT:  659 is qualified.

21             THE COURTROOM DEPUTY:  Your Honor, Juror No. 1779.

22             THE COURT:  Good afternoon, sir.

23             PROSPECTIVE JUROR NO. 1779:  Good afternoon.

24             THE COURT:  Step right up.  Thank you for your

25   patience.  You can slip your mask off, if you'd like.

```
1              PROSPECTIVE JUROR NO. 1779:  Thanks.
2              THE COURT:  You're Mr. Yerokun?
3              PROSPECTIVE JUROR NO. 1779:  Yes.
4              THE COURT:  All right.  Nice to meet you.  And
5     you're a physician?
6              PROSPECTIVE JUROR NO. 1779:  Yes.
7              THE COURT:  What kind of physician?
8              PROSPECTIVE JUROR NO. 1779:  A wound and burn
9     specialist.
10             THE COURT:  Okay.  Come a little closer so
11    everyone can hear you.
12             PROSPECTIVE JUROR NO. 1779:  Sorry, wound and burn
13    specialist.
14             THE COURT:  You do emergency medicine?
15             PROSPECTIVE JUROR NO. 1779:  No.  I mean, mostly
16    outpatient wounds and burns.  Sometimes acute, but rarely in
17    the ER.  I let the trauma surgeons take care of it
18    afterwards.
19             THE COURT:  All right.  Okay.  And do you have a
20    significant other?
21             PROSPECTIVE JUROR NO. 1779:  I do.  I have a wife.
22             THE COURT:  What does she do?
23             PROSPECTIVE JUROR NO. 1779:  She's an educational
24    consultant.  Yes, she was educated for ten years, and then
25    now is in the consulting world.
```

1          THE COURT:  Great.  All right.  You answered yes

2     to a number of my questions.

3          Let me start with your work as a doctor.  There

4     may be evidence in this case about COVID vaccines --

5          PROSPECTIVE JUROR NO. 1779:  Uh-huh.

6          THE COURT:  -- and people's views on the efficacy

7     of the vaccine and the vaccine mandate.

8          PROSPECTIVE JUROR NO. 1779:  Uh-huh.

9          THE COURT:  If you were to hear testimony that

10    either the defendant or people associated with him did not

11    share your views on that subject, as a physician, would

12    you -- would that bias you in any way?

13          PROSPECTIVE JUROR NO. 1779:  No.  You know, I

14    dealt with that in my regular practice.  I have plenty of

15    patients who had varying opinions.

16          From a medical standpoint, you can only say what

17    the science says.  From a personal standpoint, I know in

18    this particular position I'd have to put my own personal

19    views, whether they're for or against the vaccine, to the

20    side.

21          THE COURT:  Okay.  Well, if you learn that

22    Mr. Strand worked for an organization that was comprised of

23    doctors who may hold an opposite view on the science, would

24    that affect your ability to assess the charges in this case,

25    do you think?

1          PROSPECTIVE JUROR NO. 1779:  No.  I honestly

2    think, based on what you said the charges were, those are

3    two completely separate issues.

4          THE COURT:  Okay.  All right.  You've seen video

5    footage obviously of January 6th, and you say that you

6    followed at least somewhat the congressional hearings.

7          PROSPECTIVE JUROR NO. 1779:  Uh-huh.

8          THE COURT:  Would you say you follow it closely or

9    just as a --

10          PROSPECTIVE JUROR NO. 1779:  No.  Whatever NPR

11    said about it is what I followed.

12          THE COURT:  Okay.  And if you've seen video

13    footage of events that do not relate to Mr. Strand, and you

14    see evidence here of things that do relate to him somehow,

15    would you be able to put the former to the side and consider

16    only the evidence you hear here in trial?

17          PROSPECTIVE JUROR NO. 1779:  Sure.

18          THE COURT:  Okay.  So someone in your family or a

19    close friend has worked in the legal profession?

20          PROSPECTIVE JUROR NO. 1779:  Yes.  My first cousin

21    worked for the International Trade Commission.

22          THE COURT:  Okay.  But no criminal work?

23          PROSPECTIVE JUROR NO. 1779:  No, he did not do any

24    criminal.

25          THE COURT:  All right.  Same question with respect

1      to law enforcement.

2                  PROSPECTIVE JUROR NO. 1779:  Yes.  My brother-in-

3      law is a police officer.

4                  THE COURT:  Where is he a police officer?

5                  PROSPECTIVE JUROR NO. 1779:  In Dallas, Texas.

6                  THE COURT:  Okay.  So you will -- if you were on

7      the jury, you would hear testimony from law enforcement

8      officers in this case.  Obviously law enforcement officers

9      were affected by what happened on January 6th.

10                 PROSPECTIVE JUROR NO. 1779:  Uh-huh.

11                 THE COURT:  Would your relationship to your

12     brother or his work affect your impartiality in this case

13     because of that law enforcement connection?

14                 PROSPECTIVE JUROR NO. 1779:  No, I don't think so.

15                 THE COURT:  Okay.  Either you or a family member

16     or close friend has been involved in a legal action with an

17     agency of the United States and been subject to an

18     investigation by a government agency.

19                 PROSPECTIVE JUROR NO. 1779:  Yes.  So I was named

20     in an investigation against telemedicine companies.  I was

21     doing telemedicine work.  Of course, as the prescribing

22     physician, these companies were involved in fraudulent

23     activity, but because my name is on the charts I've been

24     implicated.

25                 THE COURT:  Okay.  Anything about that experience

```
1    make you hesitate to get involved in another legal

2    proceeding?

3               PROSPECTIVE JUROR NO. 1779:  No.  I wouldn't

4    say --

5               THE COURT:  Or I should say this legal proceeding?

6               PROSPECTIVE JUROR NO. 1779:  No, not in this

7    legal -- no.

8               THE COURT:  Okay.  Ms. Ayers-Perez.

9               MS. AYERS-PEREZ:  I have no follow-up questions,

10   Your Honor.

11              THE COURT:  Mr. Brennwald.

12              MR. BRENNWALD:  Thank you.

13              Good afternoon, Doctor.

14              PROSPECTIVE JUROR NO. 1779:  Good afternoon.

15              MR. BRENNWALD:  Have you heard of America's

16   Frontline Doctors?

17              PROSPECTIVE JUROR NO. 1779:  I haven't.  I haven't

18   actually.

19              MR. BRENNWALD:  Okay.  As the judge talked about

20   earlier, it's an organization that they're not antivaccine,

21   they just don't think people should be forced to get a

22   vaccine to do certain things.  A lot of mainstream doctors

23   likely, like yourself, find them to be spreading

24   disinformation.

25              Would you be able to keep that separate from your
```

1     judgment of Mr. Strand in this case and whether he committed

2     a crime in the Capitol on January 6th?

3                   PROSPECTIVE JUROR NO. 1779:  I mean, based on what

4     I heard the charges to be, they seem like completely

5     separate issues, so I don't think that that would influence

6     whether or not, you know, I think he was guilty or not

7     guilty of the charges.

8                   MR. BRENNWALD:  Okay.  I appreciate that.  Thank

9     you, sir.

10                  THE COURT:  Thank you, sir.  You can step down.

11                  PROSPECTIVE JUROR NO. 1779:  All right.

12                  THE COURT:  All right.  Any challenge?

13                  MS. AYERS-PEREZ:  No challenges from the

14    government.

15                  MR. BRENNWALD:  No challenges from the defense.

16                  THE COURT:  1779 is qualified.

17                  THE COURTROOM DEPUTY:  Your Honor, Juror No. 0032.

18                  THE COURT:  Good afternoon, sir.

19                  PROSPECTIVE JUROR NO. 0032:  Good afternoon, Your

20    Honor.

21                  THE COURT:  Thank you for your patience.  Feel

22    free to slip your mask off, if you'd like.

23                  You're Mr. Arrojo?

24                  PROSPECTIVE JUROR NO. 0032:  That's me.

25                  THE COURT:  All right.  Pleasure to meet you.

 1          You're an attorney with The House of

 2   Representatives committee on something.  My form is cut off.

 3   So where do you work?

 4          PROSPECTIVE JUROR NO. 0032:  It's the committee on

 5   ethics.

 6          THE COURT:  On ethics, all right.

 7          You answered yes to a number of questions,

 8   including 42.  Why don't we start there.  That's the extreme

 9   hardship question.  Why did you answer yes to that?

10          PROSPECTIVE JUROR NO. 0032:  As I understand that

11   question, it was to make you aware of anything else that I

12   felt might impact my ability to serve, so I apologize if I

13   selected --

14          THE COURT:  Oh, you're absolutely right.  I'm

15   incorrect.  It was my catch-all question.

16          Why did you answer yes to that?

17          PROSPECTIVE JUROR NO. 0032:  Sure.  In connection

18   with my work, I've had the opportunity to advise my

19   employer, who is Chairman Deutsch of the ethics committee,

20   on the conduct of certain members of staff in relation to

21   the January 6th events.

22          I have no prejudgments about the defendant.  I

23   don't know anything in particular about the charges that he

24   is facing, but I have spent a considerable amount of time in

25   my professional life evaluating the events in and around the

1   6th.

2          THE COURT:  Okay.  So those ethics -- potential

3   ethics charges relate to the 6th?

4          PROSPECTIVE JUROR NO. 0032:  Correct, whether or

5   not conduct by members or staff implicates House rules or

6   potential federal laws.

7          THE COURT:  Okay.

8          All right.  Let's go to -- first of all, do you

9   have a -- how long have you been an attorney with the House?

10          PROSPECTIVE JUROR NO. 0032:  With the House?

11  Eight years.

12          THE COURT:  And what did you do before that?

13          PROSPECTIVE JUROR NO. 0032:  I worked for a law

14  firm here in D.C. as a litigator.

15          THE COURT:  Did you do any criminal work?

16          PROSPECTIVE JUROR NO. 0032:  I did not.

17          THE COURT:  Did you do election-related work?

18          PROSPECTIVE JUROR NO. 0032:  I did not.

19          THE COURT:  Okay.  Anything touching on, you know,

20  the events of January 6th or the 2020 election?

21          PROSPECTIVE JUROR NO. 0032:  Prior to my current

22  service in the House, no.

23          THE COURT:  Okay.  And -- okay.

24          And are you -- you're career staff?

25          PROSPECTIVE JUROR NO. 0032:  The committee is a

```
1    bit strange for the Hill.

2              THE COURT:  Yes.

3              PROSPECTIVE JUROR NO. 0032:  The first four years

4    I was on the nonpartisan staff, which stays with the

5    committee regardless of the change in the majority and

6    minority.

7              In my current role, I serve for Chairman Deutsch.

8    I'm at his discretion.  So I'm less career staff than I was

9    before.

10             THE COURT:  Okay.  But you started out as career

11   staff?

12             PROSPECTIVE JUROR NO. 0032:  That's right.

13             THE COURT:  All right.  So obviously you work at

14   the Capitol.  Were you there that day?

15             PROSPECTIVE JUROR NO. 0032:  I was working

16   remotely that day, so I was not there.

17             THE COURT:  All right.  Did you have any of your

18   colleagues there that day?

19             PROSPECTIVE JUROR NO. 0032:  Yes.  My Republican

20   counterpart who worked for the ranking member was in the

21   office that day.

22             THE COURT:  Are you close to that person?

23             PROSPECTIVE JUROR NO. 0032:  Professionally.  We

24   interact frequently, but I wouldn't characterize her as a

25   close colleague.
```

```
1            THE COURT:  So obviously people who were there

2     were affected.  Many deeply.  And I want you to be honest,

3     how would you feel sitting on a jury that had to sort of

4     recount and go over all of those events from that day given

5     how proximate it was to your place of business and your co-

6     workers?

7            PROSPECTIVE JUROR NO. 0032:  Sure.  I understand

8     the importance of jury service, and I think, as an attorney,

9     I understand evaluating facts as they apply to specific

10    individuals who are charged with certain offenses, but the

11    individual who I work for was not in the chamber that day,

12    but he was, as all the members were, scrambling as the

13    events were happening, and I was scared for him as I was a

14    number of other people who I knew to be there that day.

15           So...

16           THE COURT:  I appreciate your candor.

17           PROSPECTIVE JUROR NO. 0032:  Sure.

18           THE COURT:  Thank you for your service.  You can

19    go back to the other courtroom.

20           PROSPECTIVE JUROR NO. 0032:  Thank you.

21           THE COURT:  Okay.

22           Okay.  The Court will strike Juror No. 32 for

23    cause.  Just a little close to home.

24           THE COURTROOM DEPUTY:  Juror No. 2181.

25           THE COURT:  Okay.  Step right up, ma'am.  Thank
```

 1    you for your patience.  You are Ms. Branner; is that

 2    correct?

 3              PROSPECTIVE JUROR NO. 2181:  Yes.

 4              THE COURT:  And feel free to take your mask off,

 5    if you'd like.

 6              PROSPECTIVE JUROR NO. 2181:  Okay.  Thank you.  I

 7    have such a headache right now.

 8              THE COURT:  So it says here you're a graphic

 9    artist.

10              PROSPECTIVE JUROR NO. 2181:  Yes.

11              THE COURT:  What type?

12              PROSPECTIVE JUROR NO. 2181:  All types of

13    illustrations and graphics, mostly for exhibit design,

14    museums.

15              THE COURT:  And you're self-employed?

16              PROSPECTIVE JUROR NO. 2181:  Yes.

17              THE COURT:  Did you work for a museum on other art

18    organizations?

19              PROSPECTIVE JUROR NO. 2181:  No, I've been

20    freelance for like 25 years.

21              THE COURT:  And do you have a significant other?

22              PROSPECTIVE JUROR NO. 2181:  No.

23              THE COURT:  Okay.  You answered yes to a couple of

24    my questions.  You've seen video of January 6th obviously,

25    and you've seen some of the congressional hearings.

```
1              PROSPECTIVE JUROR NO. 2181:  Yes.

2              THE COURT:  Would you say you follow January 6th

3      closely or occasionally or...?

4              PROSPECTIVE JUROR NO. 2181:  Closely, yes.

5              THE COURT:  Uh-huh.  And do you have strong

6      feelings one way or the other about it?

7              PROSPECTIVE JUROR NO. 2181:  I'm very angry about

8      it.  I'm angry that it happened.

9              THE COURT:  Obviously, if you were a juror in this

10     case, you couldn't be angry.

11             PROSPECTIVE JUROR NO. 2181:  Right.

12             THE COURT:  Do you think that you could put that

13     anger aside?  And I want you to be -- I want you to be

14     honest.  It's okay if you say no.

15             PROSPECTIVE JUROR NO. 2181:  Yes, I can.

16             THE COURT:  Okay.  And how do you know that?

17             PROSPECTIVE JUROR NO. 2181:  Because I know -- I

18     can separate my feelings from the facts.

19             THE COURT:  Okay.  Obviously a lot of people came

20     to Washington that day.  They came for different reasons.

21     They did different things.

22             You would be asked to assess Mr. Strand's

23     individual culpability based on what he did that day and why

24     he was here.  And are you sure you could do that?

25             PROSPECTIVE JUROR NO. 2181:  Yes.
```

1            THE COURT:  Okay.  Ms. Ayers-Perez.

2            MS. AYERS-PEREZ:  Good afternoon, ma'am.

3            As part of this case, you're going to, in all

4    likelihood, see a number of videos, hear testimony, hear

5    from law enforcement officers.  I just want to make sure

6    that you can render a verdict and deliberate based on what

7    you hear this week and not have what you've heard over the

8    last 19 months or what you heard back on the 6th take any

9    part in that.

10           So can you do that?

11           PROSPECTIVE JUROR NO. 2181:  Yes, I can.

12           MS. AYERS-PEREZ:  Okay.  That's the only question

13   I had, Your Honor.

14           THE COURT:  Mr. Brennwald.

15           MR. BRENNWALD:  Thank you, Your Honor.

16           Ms. Branner, good afternoon.  Do you feel that

17   anybody who went into the building that day who wasn't an

18   employee or staff of the Capitol is probably guilty of

19   something based on what you've seen on coverage and

20   everything else?

21           PROSPECTIVE JUROR NO. 2181:  I mean, I've lived in

22   this city for most of my life so I know the protocols about

23   going into government buildings, and the fact that they were

24   let in was shocking to me.  And I don't know whose fault

25   that is.  Is it the people who were told to go there or the

1     people who were supposed to be security in keeping them out?

2     That's my dilemma.

3               MR. BRENNWALD:  Thank you.

4               I can't answer that question so thank you.

5               PROSPECTIVE JUROR NO. 2181:  Did I answer your

6     question?  I don't know --

7               MR. BRENNWALD:  You answered my question.  I just

8     can't answer your question about the dilemma.

9               PROSPECTIVE JUROR NO. 2181:  Yes.  It's a very

10    complicated issue.

11              THE COURT:  All right, ma'am.

12              PROSPECTIVE JUROR NO. 2181:  Are we done?

13              THE COURT:  You can step down.

14              Any challenges?

15              MS. AYERS-PEREZ:  None from the government, Your

16    Honor.

17              MR. BRENNWALD:  Your Honor, I would move to strike

18    for cause.  She said she follows it closely.  She's very

19    angry about it, which I know that people can be angry about

20    it and still try to be fair, but she clearly has very strong

21    feelings about it, and we don't need any kind of doubts or

22    questions about the type of juror who would be listening to

23    the evidence in this case given all that we've discussed

24    before in the change of venue motion and elsewhere.

25              THE COURT:  All right.  I will overrule your

```
 1    objection.  She was confident in her ability to be fair and
 2    to consider the evidence as to Mr. Strand only.  So 2181 is
 3    qualified.
 4           Obviously feel free to use one of your
 5    peremptories.  And I should note, those are the only two
 6    questions she answered so...
 7           THE COURTROOM DEPUTY:  Your Honor, Juror No. 1002.
 8           THE COURT:  Okay.  Good afternoon, ma'am.
 9           PROSPECTIVE JUROR NO. 1002:  Good afternoon.
10           THE COURT:  Step right up.  Thank you for your
11    patience.  Feel free to slip your mask off.
12           PROSPECTIVE JUROR NO. 1002:  Sure.  Thanks.
13           THE COURT:  All right.  You are Ms. Myers; is that
14    correct?
15           PROSPECTIVE JUROR NO. 1002:  That's correct.
16           THE COURT:  And you work at Miller & Chevalier?
17           PROSPECTIVE JUROR NO. 1002:  Yes.
18           THE COURT:  And what do you do for them?
19           PROSPECTIVE JUROR NO. 1002:  I'm a legal
20    administrative assistant.
21           THE COURT:  Okay.  And how long have you done
22    that?
23           PROSPECTIVE JUROR NO. 1002:  Since March 28th, and
24    before that I worked for Willkie Farr & Gallagher for about
25    13 years.
```

```
 1              THE COURT:  Same role?

 2              PROSPECTIVE JUROR NO. 1002:  Same role, yes.

 3              THE COURT:  And do the folks you work with -- did

 4     you work in a particular department?

 5              PROSPECTIVE JUROR NO. 1002:  No.  No, we just

 6     support various attorneys who are in all different

 7     departments.

 8              THE COURT:  Okay.  Do you support the attorneys in

 9     the criminal -- that do criminal work?

10              PROSPECTIVE JUROR NO. 1002:  I currently do, yes.

11              THE COURT:  Okay.  And what kind of work?

12              PROSPECTIVE JUROR NO. 1002:  I'm not actually

13     totally sure.

14              THE COURT:  No problem.

15              PROSPECTIVE JUROR NO. 1002:  I'm pretty new there.

16              THE COURT:  Do you have a significant other?

17              PROSPECTIVE JUROR NO. 1002:  No.

18              THE COURT:  No, okay.  And we ask that only

19     because, if you do, we need to know what they do as well.

20     That's all.

21              PROSPECTIVE JUROR NO. 1002:  Okay.

22              THE COURT:  All right.  You answered yes to a

23     number of questions starting with No. 4.  You or someone you

24     know live or work on Capitol Hill.

25              PROSPECTIVE JUROR NO. 1002:  Yes.  So when I first
```

```
 1      moved to D.C. I sold postcards in the Capitol building.
 2                  THE COURT:  Okay.
 3                  PROSPECTIVE JUROR NO. 1002:  So I knew that
 4      building pretty well.
 5                  THE COURT:  All right.  How long did you do that?
 6                  PROSPECTIVE JUROR NO. 1002:  It must have been
 7      less than a year.
 8                  THE COURT:  Okay.  Do you have any friends or
 9      acquaintances who worked at the Capitol on January 6th?
10                  PROSPECTIVE JUROR NO. 1002:  No, no.
11                  THE COURT:  Okay.  You think you might recognize
12      another member of the jury panel?
13                  PROSPECTIVE JUROR NO. 1002:  Oh, just because I
14      was here last week.
15                  THE COURT:  Okay.
16                  PROSPECTIVE JUROR NO. 1002:  And so from that.
17                  THE COURT:  But not before that?
18                  PROSPECTIVE JUROR NO. 1002:  Right, not before
19      that, no.
20                  THE COURT:  You've obviously seen video of January
21      6th.
22                  PROSPECTIVE JUROR NO. 1002:  I have.
23                  THE COURT:  At the time, or have you followed the
24      stories related --
25                  PROSPECTIVE JUROR NO. 1002:  No, just at the time.
```

1          THE COURT:  Okay.  Have you or a relative or a

2     close friend been the victim of a crime?  And you don't have

3     to go into detail, just give me a general sense of --

4          PROSPECTIVE JUROR NO. 1002:  I was mugged in 2003.

5          THE COURT:  Okay.  Anything about that experience

6     make you hesitate to be a juror in a criminal case?

7          PROSPECTIVE JUROR NO. 1002:  No.

8          THE COURT:  Including the way it was handled by

9     the police or by the prosecutor?

10          PROSPECTIVE JUROR NO. 1002:  No.

11          THE COURT:  Okay.  And obviously you and you know

12     other folks who have worked in the legal field.

13          Same with law enforcement.  Who do you know in law

14     enforcement?

15          PROSPECTIVE JUROR NO. 1002:  So my ex-husband, who

16     I'm still pretty close to, is a university police officer at

17     George Washington University.

18          THE COURT:  Okay.  You will -- if you were a

19     juror, you would hear testimony from law enforcement

20     officers.  Does your ex-husband's experience or, you know,

21     anything you might know about your relationship with him, do

22     you think that would bias you either for or against a law

23     enforcement officer?

24          PROSPECTIVE JUROR NO. 1002:  No.

25          THE COURT:  Same question.  Some of the officers

1    that you hear from may or -- or you may see videos from

2    officers who had a tough time that day.  Do you think that

3    would -- do you think your ex-husband's profession would

4    make it difficult for you to assess this case because of

5    that type of testimony?

6              PROSPECTIVE JUROR NO. 1002:  No, I don't think so.

7              THE COURT:  Okay.

8              All right.  Counsel.

9              MS. AYERS-PEREZ:  I have no follow-up questions,

10   Your Honor.

11             THE COURT:  Mr. Brennwald.

12             MR. BRENNWALD:  Thank you.

13             Ms. Myers?

14             PROSPECTIVE JUROR NO. 1002:  That's right.

15             MR. BRENNWALD:  Hi.  There are going to be some

16   videos played.  You said you saw some videos that day or you

17   watched the events that day, right?

18             PROSPECTIVE JUROR NO. 1002:  Yes.

19             MR. BRENNWALD:  There are going to be some

20   videos played in this trial that are going to come across

21   pretty loud, lots of people, lots of shoving, commotion,

22   screaming.  Do you think that that, coupled with what you

23   saw on January 6th, would make it difficult for you to be

24   fair to Mr. Strand?

25             PROSPECTIVE JUROR NO. 1002:  I think I would be

 1    fair.

 2              MR. BRENNWALD:  Okay.  Thank you.  I appreciate

 3    that.

 4              THE COURT:  Okay.  Ma'am, you can step down.

 5              PROSPECTIVE JUROR NO. 1002:  Oh, thank you.

 6              THE COURT:  Yes.

 7              Any challenges?

 8              MS. AYERS-PEREZ:  None from the government, Your

 9    Honor.

10              MR. BRENNWALD:  None, Your Honor.

11              THE COURT:  Okay.  1002 is qualified.

12              Okay.  Step right up, sir.  Please have a seat,

13    and you can slip your mask off, if you'd like.

14              Mr. Hutson, correct?

15              PROSPECTIVE JUROR NO. 1884:  Yes, sir.

16              THE COURT:  It says you are a defense contractor

17    with something called Technique Solutions.

18              PROSPECTIVE JUROR NO. 1884:  Yes.

19              THE COURT:  And tell us what you do, to the extent

20    you can.

21              PROSPECTIVE JUROR NO. 1884:  I work for the SDC,

22    Secretary of Defense Communications, and their mission is to

23    supply secure communications to the secretary of defense

24    wherever he goes in the world.

25              THE COURT:  And how long have you been doing that?

```
 1                    PROSPECTIVE JUROR NO. 1884:  I started there June

 2      16th.

 3                    THE COURT:  What did you do before that?

 4                    PROSPECTIVE JUROR NO. 1884:  I worked for the

 5      Space Force.

 6                    THE COURT:  Okay.  Do you have a significant

 7      other?

 8                    PROSPECTIVE JUROR NO. 1884:  Yes.

 9                    THE COURT:  And what do they do?

10                    PROSPECTIVE JUROR NO. 1884:  She's a labor union

11      official.

12                    THE COURT:  All right.  And -- okay.  You answered

13      yes to a number of questions starting with No. 3.  You think

14      you may be familiar with America's Frontline Doctors.

15                    PROSPECTIVE JUROR NO. 1884:  Yes.

16                    THE COURT:  How so?

17                    PROSPECTIVE JUROR NO. 1884:  I saw them give a

18      press conference in front of the Capitol about different

19      issues of handling the COVID virus.

20                    THE COURT:  You saw that live, or you saw it on

21      TV?

22                    PROSPECTIVE JUROR NO. 1884:  I can't remember.  I

23      don't think it was live.  I think it was a recording.

24                    THE COURT:  Okay.  And do you have any views one

25      way or the other about America's Frontline Doctors or the
```

1    opinions that they express?

2              PROSPECTIVE JUROR NO. 1884:  They seemed pretty

3    reasonable, what they were saying.  I couldn't say I had one

4    view one way or the other.  I was just seeing them.

5              THE COURT:  All right.  Question 4, you work or

6    live near the Capitol.

7              PROSPECTIVE JUROR NO. 1884:  I used to, yes.

8              THE COURT:  I'm sorry?

9              PROSPECTIVE JUROR NO. 1884:  I used to.

10             THE COURT:  You used to?

11             PROSPECTIVE JUROR NO. 1884:  Yes.

12             THE COURT:  Okay.  Did you work there on January

13   6, --

14             PROSPECTIVE JUROR NO. 1884:  No, I did not.

15             THE COURT:  -- 2021?

16             You've obviously seen videos of the events of that

17   day.

18             PROSPECTIVE JUROR NO. 1884:  Yes, I have.

19             THE COURT:  Okay.  Is it something that you've

20   continued to follow, or just when it happened?

21             PROSPECTIVE JUROR NO. 1884:  Just how it's been

22   progressing in the news.

23             THE COURT:  Okay.  You say you've also -- you're

24   familiar with Dr. Simone Gold.

25             PROSPECTIVE JUROR NO. 1884:  Yes.

1           THE COURT:  And, again, how so?

2           PROSPECTIVE JUROR NO. 1884:  I believe she was one

3     of the doctors that was in the front line giving the press

4     conference in front of the Capitol.

5           THE COURT:  Okay.  It will likely come out at

6     trial that the defendant works for America's Frontline

7     Doctors and is an associate of Dr. Gold's and may share some

8     of that organization's beliefs.  Do you think that you could

9     put your opinions about her and that organization aside --

10    and I want you to be honest with me -- in assessing his

11    individual guilt or innocence?

12          PROSPECTIVE JUROR NO. 1884:  Yes.  I wouldn't -- I

13    wouldn't say I had a strong opinion one way or another about

14    that organization.

15          THE COURT:  Okay.  All right.  You, a member of

16    your immediate family, or a close friend has been a witness

17    in a judicial proceeding in the past?

18          PROSPECTIVE JUROR NO. 1884:  Yes.

19          THE COURT:  Tell me about that.

20          PROSPECTIVE JUROR NO. 1884:  Like I said, my wife

21    works for a labor union, and it was something involving the

22    labor union she was a witness in.

23          THE COURT:  Okay.  And a member of that group has

24    been the victim of a crime?

25          PROSPECTIVE JUROR NO. 1884:  Yes.

```
1              THE COURT:  All right.  Is that you?

2              PROSPECTIVE JUROR NO. 1884:  No.  When you're

3      saying "the group," like we have been the victim of the

4      crime, not the labor union.

5              THE COURT:  That's right.

6              PROSPECTIVE JUROR NO. 1884:  Yes.

7              THE COURT:  Whether you or an immediate family or

8      a close friend have been the victim.

9              PROSPECTIVE JUROR NO. 1884:  Yes, we have been

10     victims of crimes.

11             THE COURT:  What type of crime?

12             PROSPECTIVE JUROR NO. 1884:  My house was broken

13     into twice.

14             THE COURT:  Anything about the way that case was

15     handled by the police, by the prosecutor, make you hesitate

16     to be involved in a criminal trial?

17             PROSPECTIVE JUROR NO. 1884:  No.

18             THE COURT:  And you know someone -- either you or

19     someone you know has been employed by law enforcement?

20             PROSPECTIVE JUROR NO. 1884:  Yes.

21             THE COURT:  Who is that?

22             PROSPECTIVE JUROR NO. 1884:  Who do I know that's

23     been employed by law enforcement?

24             I've had friends that have been employed by law

25     enforcement.
```

```
1              THE COURT:  Close friends?

2              PROSPECTIVE JUROR NO. 1884:  I would say not

3    extremely close, but people I went to school with.

4              THE COURT:  Okay.  MPD?  Capitol Police?  Secret

5    Service?  Anyone that was involved in January 6th?  Do you

6    know folks --

7              PROSPECTIVE JUROR NO. 1884:  I do know a police

8    officer that was involved in January 6th.

9              THE COURT:  Have you talked to him or her about

10   it?

11             PROSPECTIVE JUROR NO. 1884:  No, I've never talked

12   to him about it.

13             THE COURT:  Okay.  And have you had any legal

14   training or legal coursework?  You said yes.

15             PROSPECTIVE JUROR NO. 1884:  No, no real training

16   or legal coursework.

17             THE COURT:  Okay.

18             PROSPECTIVE JUROR NO. 1884:  I mean, I did work in

19   the Senate, and so I worked on legislation, if you consider

20   that legal training or legal coursework, but I never went to

21   law school or anything of that nature.

22             THE COURT:  How long ago did you work for the

23   Senate?

24             PROSPECTIVE JUROR NO. 1884:  I worked for the

25   Senate -- can I say who in the Senate I worked for?
```

```
 1                  THE COURT:  Sure.

 2                  PROSPECTIVE JUROR NO. 1884:  I worked for Senator

 3      Bond from the Senate from --

 4                  THE COURT:  From Missouri.

 5                  PROSPECTIVE JUROR NO. 1884:  Missouri, yes.

 6                  THE COURT:  Okay.

 7                  PROSPECTIVE JUROR NO. 1884:  I worked in his

 8      district office in St. Louis.  I started in 1999.

 9                  And then I moved to Washington, D.C., to work in

10      his personal office.  And then I worked for him on the small

11      business committee and entrepreneurship through 2003.

12                  And I had other jobs in the Senate.  Can I?

13                  THE COURT:  Sure.

14                  PROSPECTIVE JUROR NO. 1884:  I worked for Senator

15      Snowe for a short while while she took over the committee,

16      and then I did work for the Senate Sergeant-At-Arms for a

17      short time.

18                  THE COURT:  Okay.  So having worked for a number

19      of positions in the Senate, what was your reaction to the

20      events of January 6th as they affected that institution?

21                  PROSPECTIVE JUROR NO. 1884:  Well, I was -- you

22      know, I spent a lot of late nights in the Capitol, and I --

23      I really expect -- you know, I really knew a lot about the

24      beauty and the artwork and everything there, and so I was

25      very sad because I -- you know, I have children, and I would
```

1    like to, you know, tell them about it the way like people

2    told me about it to pass along.

3              So I was sad that that was, you know, a part of

4    the history of the Senate and the Capitol.

5              THE COURT:  Were any of your former Senate

6    colleagues there that day?

7              PROSPECTIVE JUROR NO. 1884:  I don't believe so,

8    no.

9              THE COURT:  Have you talked to any of them about

10   their experiences that day?

11             PROSPECTIVE JUROR NO. 1884:  No one that was

12   there.  I talked to people I used to work with about that

13   day.

14             THE COURT:  Okay.  Counsel?

15             MS. AYERS-PEREZ:  Good afternoon.  Can you remind

16   me, I'm not sure I could hear you all that -- where did you

17   hear about America's Frontline Doctors?

18             PROSPECTIVE JUROR NO. 1884:  They -- it was a

19   press conference on -- I can't remember if it was TV or the

20   Internet.

21             MS. AYERS-PEREZ:  Okay.

22             PROSPECTIVE JUROR NO. 1884:  But it wasn't like a

23   specific show.  I think it was just a -- like a press

24   conference.

25             MS. AYERS-PEREZ:  Okay.  But you said you know

```
 1    Dr. Simone Gold.  Do you know her by name?
 2              PROSPECTIVE JUROR NO. 1884:  I remember that name,
 3    too.  If it's the person I'm thinking of.
 4              MS. AYERS-PEREZ:  Right.  Had you only heard it
 5    that one time, or is that something you've heard about more
 6    frequently?
 7              PROSPECTIVE JUROR NO. 1884:  I don't think I've
 8    heard about it frequently, no.  It was during the pandemic.
 9              MS. AYERS-PEREZ:  Okay.  Did you know anybody who
10    was in the building on January 6th?
11              PROSPECTIVE JUROR NO. 1884:  I don't believe so,
12    no.
13              MS. AYERS-PEREZ:  Okay.
14              PROSPECTIVE JUROR NO. 1884:  I mean, there might
15    have been people I knew, but not people I've kept in touch
16    with.
17              MS. AYERS-PEREZ:  Okay.  So nobody you contacted
18    afterwards?
19              PROSPECTIVE JUROR NO. 1884:  No, no.
20              MS. AYERS-PEREZ:  All right.  I have no other
21    questions, Your Honor.
22              THE COURT:  Mr. Brennwald.
23              MR. BRENNWALD:  Good afternoon, Mr. Hutson.
24              PROSPECTIVE JUROR NO. 1884:  Yes.
25              MR. BRENNWALD:  Having worked in the Senate and
```

1    having seen what happened on the video about January 6th, if

2    I can put it this way, did you feel sort of personally

3    violated watching people go into the Capitol and do what

4    certain people did?

5              PROSPECTIVE JUROR NO. 1884:  Personally violated?

6    No.  I just -- sometimes I felt like I was living in an

7    alternative universe that this could happen in there where I

8    was.

9              MR. BRENNWALD:  Do you think that -- given all of

10   your experience in the Senate and the fact that you had

11   friends there and have friends there and everything else

12   you've discussed today, including law enforcement

13   connections, do you believe, in your heart of hearts, that

14   you could be fair to Mr. Strand listening and watching

15   videos and evidence and reading about text messages he may

16   have sent that are political in nature?  Do you think you

17   could be fair and render a judgment just based on the

18   evidence?

19             PROSPECTIVE JUROR NO. 1884:  Yes, I think I can.

20   I mean, obviously I can't -- things I don't know about -- I

21   mean, I don't think I would be prejudicial one way or the

22   other.  I think I could be fair just based on your comments.

23             MR. BRENNWALD:  All right.  I appreciate that.

24   Thank you.

25             PROSPECTIVE JUROR NO. 1884:  Okay.  Thank you.

```
1              THE COURT:  Okay.  You can step down.

2              Any challenge?

3              MS. AYERS-PEREZ:  None from the government, Your

4    Honor.

5              MR. BRENNWALD:  Reluctantly no, Your Honor.

6              THE COURT:  1884 is qualified.

7              THE COURTROOM DEPUTY:  Your Honor, Juror No. 0981.

8              THE COURT:  All right.  Step right up, sir.

9              You can remove your mask, yes.  Mr. Callahan?

10             PROSPECTIVE JUROR NO. 0981:  Correct.

11             THE COURT:  All right.  And you are a director

12   with the National Association of Chemical Distributors; is

13   that right?

14             PROSPECTIVE JUROR NO. 0981:  Correct, yes.

15             THE COURT:  Okay.  Just tell us briefly what you

16   do for them.

17             PROSPECTIVE JUROR NO. 0981:  I'm a congressional

18   lobbyist for the organization, so I talk to members of

19   Congress about different policy issues.

20             THE COURT:  All right.  You answered yes to a

21   number of questions, including 14 and 15.

22             PROSPECTIVE JUROR NO. 0981:  Your Honor, there's

23   one question I did not answer yes to on my sheet but have

24   since realized I need to answer yes, so whenever that's

25   appropriate.
```

1              THE COURT:  You let me know.

2              PROSPECTIVE JUROR NO. 0981:  Sure.

3              THE COURT:  14, the fact that Mr. Strand was

4     charged with an indictment might make it difficult for you

5     to apply the presumption of innocence?

6              PROSPECTIVE JUROR NO. 0981:  Yes, I think -- I'm a

7     little concerned about my ability to be impartial in this

8     particular case.

9              THE COURT:  Okay.

10             PROSPECTIVE JUROR NO. 0981:  So I think I just

11    answered yes to that for that particular reason.  There's

12    nothing in particular about an indictment that makes me

13    think --

14             THE COURT:  Okay.

15             PROSPECTIVE JUROR NO. 0981:  -- a person is

16    guilty.

17             THE COURT:  And that's just because of the subject

18    matter?

19             PROSPECTIVE JUROR NO. 0981:  Yes.

20             THE COURT:  And you don't think that -- you might

21    not be able to put those feelings to the side?

22             PROSPECTIVE JUROR NO. 0981:  I'm not sure, just to

23    be completely honest.  I'm happy to discuss why with you,

24    but --

25             THE COURT:  Well, just give me a 20-second

```
 1    version.

 2               PROSPECTIVE JUROR NO. 0981:  You see from a number

 3    of my answers I live, well, approximately six blocks from

 4    the Capitol.  I have a number of friends who work in

 5    Congress.  I was an intern in Congress.  So it's -- that's

 6    some of the reasons that I'm a little concerned about my

 7    ability to be impartial.

 8               THE COURT:  That's natural, and we ask these

 9    questions in order to get those types of responses.  And so

10    I appreciate your candor, and we'll let you go back to the

11    courtroom.

12               PROSPECTIVE JUROR NO. 0981:  Okay.  Thank you.

13               THE COURT:  All right.  The Court will strike 981

14    for cause based on his answers.

15               THE COURTROOM DEPUTY:  Your Honor, Juror No. 1920.

16               THE COURT:  Step right up.

17               Good afternoon.  Thank you very much for your

18    patience.

19               PROSPECTIVE JUROR NO. 1920:  Yes.

20               THE COURT:  You are Ms. Biercevicz?

21               PROSPECTIVE JUROR NO. 1920:  Yes, Biercevicz.

22               THE COURT:  Pleasure to meet you.  You can slip

23    your mask off, if you'd like.

24               And you work at the Department of Energy?

25               PROSPECTIVE JUROR NO. 1920:  Yes.
```

```
 1                 THE COURT:  You're a statistician.

 2                 PROSPECTIVE JUROR NO. 1920:  Yes.

 3                 THE COURT:  Give us a little sense of what you

 4       do.

 5                 PROSPECTIVE JUROR NO. 1920:  Well, I studied

 6       statistics.  I don't actually do that there.  But I

 7       basically work on the surveys that we send out to companies

 8       about their energy consumption and things like that.

 9                 THE COURT:  Okay.  Do you have a significant

10       other?

11                 PROSPECTIVE JUROR NO. 1920:  I do.

12                 THE COURT:  And what do they do?

13                 PROSPECTIVE JUROR NO. 1920:  They're in geospatial

14       intelligence systems.

15                 THE COURT:  Say no more.

16                 PROSPECTIVE JUROR NO. 1920:  Yes.

17                 THE COURT:  All right.  You answered yes to a

18       couple of questions.

19                 Number 18, you've obviously seen videos of January

20       6th.

21                 PROSPECTIVE JUROR NO. 1920:  Yes, yes.

22                 THE COURT:  Was that back at the time, or have you

23       continued --

24                 PROSPECTIVE JUROR NO. 1920:  Yes, pretty much --

25                 THE COURT:  So I need to finish so that she can
```

1    pick you up, okay?  I know this can -- this is a weird

2    setting.

3              Was that back at the time, or have you continued

4    to follow the events surrounding January 6th?

5              PROSPECTIVE JUROR NO. 1920:  Back at the time.

6              THE COURT:  Okay.  You or an immediate family

7    member or a close friend has been the victim of a crime.

8              PROSPECTIVE JUROR NO. 1920:  My mom was held up

9    like 40 years ago.

10              THE COURT:  Anything about her experience or your

11    hearing about that experience make you hesitate to get

12    involved as a juror in a criminal case?

13              PROSPECTIVE JUROR NO. 1920:  No.

14              THE COURT:  And you know someone or someone in

15    that group has been employed by law enforcement.

16              PROSPECTIVE JUROR NO. 1920:  My sister's husband

17    is a local police officer in Connecticut.

18              THE COURT:  Okay.  There will -- if you were on

19    this jury, you'd hear from law enforcement officers.  You'd

20    hear about the experience of law enforcement officers that

21    day.  Would anything about your relationship with your

22    brother-in-law affect your ability to assess the testimony

23    in this case or Mr. Strand's guilt or innocence?

24              PROSPECTIVE JUROR NO. 1920:  No.

25              THE COURT:  Okay.  Counsel.

1              MS. AYERS-PEREZ:  I have no follow-up questions,

2     Your Honor.

3              THE COURT:  Mr. Brennwald.

4              MR. BRENNWALD:  I just want to try my hand at

5     this, so -- Ms. Biercevicz?

6              PROSPECTIVE JUROR NO. 1920:  Biercevicz.

7              MR. BRENNWALD:  Biercevicz, okay.  I actually do

8     have a question besides that.

9              What was your mental reaction to watching the

10    events on January 6th?

11             PROSPECTIVE JUROR NO. 1920:  Upset, sad, angry.

12             MR. BRENNWALD:  All right.  And maybe the judge

13    asked you this, but I don't recall.  Did you -- have you

14    watched the hearings after that, some or all of the January

15    6th hearings either directly or indirectly since then?

16             PROSPECTIVE JUROR NO. 1920:  I haven't followed

17    them.  I've seen a couple of things come up on social media,

18    but not -- not a lot.

19             MR. BRENNWALD:  Do you have an opinion about the

20    people who went into the Capitol that day, whether they're

21    guilty of some crime or...?

22             PROSPECTIVE JUROR NO. 1920:  Yes; about the people

23    that did go in, yes.

24             MR. BRENNWALD:  Okay.  And what would be that

25    opinion?

```
1              PROSPECTIVE JUROR NO. 1920:  That it wasn't good.

2              MR. BRENNWALD:  Okay.  Do you have an opinion

3    about -- whether it was good or not, do you have an opinion

4    about whether they're criminally guilty or not because they

5    went in?

6              PROSPECTIVE JUROR NO. 1920:  Yes.  Yes.

7              MR. BRENNWALD:  Okay.  Because you saw the police

8    officers there, and you saw people pushing in?

9              PROSPECTIVE JUROR NO. 1920:  Right, right.

10             MR. BRENNWALD:  Okay.  And then you saw people

11   inside screaming, shouting, pushing officers, et cetera?

12             PROSPECTIVE JUROR NO. 1920:  Yes.

13             MR. BRENNWALD:  Okay.

14             Okay.  Thank you.

15             THE COURT:  Okay.  Obviously lots of people came

16   to D.C. that day.  They did different things.  They came

17   here for different reasons.  You will be instructed, if you

18   were on the jury, what the elements of each charge against

19   Mr. Strand is.  You would have an opportunity to hear any

20   defense that Mr. Strand chooses to put on.

21             Despite what you may think generally about all of

22   the people who were here, are you confident that you could

23   assess that evidence and make a decision about his guilt and

24   find him guilty only if the government met their burden to

25   show it beyond a reasonable doubt?
```

1          PROSPECTIVE JUROR NO. 1920:  Yes.

2          THE COURT:  Okay.  Thank you.  You can step down.

3          Any challenges?

4          MS. AYERS-PEREZ:  No challenges from the

5    government, Your Honor.  I think she was sufficiently

6    rehabilitated by Your Honor's questions, and the questions

7    by Mr. Brennwald were more fact-specific and not specific as

8    to the overall allegations, Your Honor.

9          THE COURT:  Mr. Brennwald.

10         MR. BRENNWALD:  Your Honor, she thought that

11   people who went into the Capitol that day were guilty.

12   Mr. Strand went into the Capitol that day.  Her answer

13   was more likely due to the fact that she didn't know if he

14   had gone in or not, but it seems quite clear that if she

15   thought -- or if she had known he had gone in, that she

16   would believe that he's guilty.  And so I'd move to strike

17   her for cause.

18         THE COURT:  All right.  I'll overrule your

19   objection.  She said that she could be fair and assess the

20   evidence against him individually.  1920 is qualified.

21         THE COURTROOM DEPUTY:  Your Honor, Juror No. 1031.

22         THE COURT:  All right.  Step right up, ma'am.  You

23   are Ms. Rosenthal?

24         PROSPECTIVE JUROR NO. 1031:  Yes.

25         THE COURT:  Okay.  You can take your mask off, if

```
 1      you'd like.

 2               And you are an attorney with Mintz Levin.

 3               PROSPECTIVE JUROR NO. 1031:  Yes.

 4               THE COURT:  What kind of law do you practice?

 5               PROSPECTIVE JUROR NO. 1031:  Technology and

 6      communications.

 7               THE COURT:  Do any criminal work?

 8               PROSPECTIVE JUROR NO. 1031:  No.

 9               THE COURT:  No.

10               All right.  You answered yes to a number of

11      questions, including No. 1, which is the scheduling

12      question.

13               PROSPECTIVE JUROR NO. 1031:  Yes.

14               THE COURT:  Why did you answer yes to that?

15               PROSPECTIVE JUROR NO. 1031:  Monday's a Jewish

16      holiday.

17               THE COURT:  Excuse me?

18               PROSPECTIVE JUROR NO. 1031:  I observe Rosh

19      Hashanah, which would be on Monday, so if deliberations went

20      into Monday --

21               THE COURT:  It would be next -- Rosh Hashanah

22      would be next Monday?

23               PROSPECTIVE JUROR NO. 1031:  Yes.

24               THE COURT:  Okay.  Let me just discuss that with

25      counsel real quick.
```

```
 1                    (The following is a bench conference

 2                     held outside the hearing of the gallery)

 3              THE COURT:  How do you all want to handle this?

 4              MR. MANNING:  Your Honor, this is Jason Manning

 5      for the government.  I was hoping to cross that bridge when

 6      we get to it.  I'm hoping we don't get to it because I

 7      observe that holiday as well.  But given the pace that we're

 8      moving, I don't think that there's any distractor

 9      necessarily.  We can start with the evidence tomorrow.

10              THE COURT:  Well, who knows how long they're going

11      to deliberate?  They can deliberate without your presence,

12      but they couldn't deliberate without her presence, so it's a

13      slightly different scenario.  It would mean that we would

14      have to take Monday off, if they are still out, and since,

15      you know -- I'm confident that the evidence will be in by

16      then, but I'm not as confident that we won't need Monday for

17      deliberations so I think I'm going to excuse her.

18              Mr. Brennwald, do you have a view?

19              MR. BRENNWALD:  I agree with Your Honor.

20              THE COURT:  Okay.  Thanks.

21              (This is the end of the bench conference)

22              THE COURT:  All right, ma'am, you can be excused.

23      We simply don't know if we'll need you Monday or not, and I

24      don't want to take the chance, all right?

25              PROSPECTIVE JUROR NO. 1031:  Thank you.
```

1          THE COURT:  All right.  The Court will strike for

2     cause 1031.

3          All right.  Step right up, sir.  Thank you very

4     much for your patience.  Please have a seat, and you can

5     take your mask off, if you'd like.

6          So you're a portfolio advisor with Morgan Stanley;

7     is that right?

8          PROSPECTIVE JUROR NO. 1511:  That is correct.

9          THE COURT:  Okay.  You can take your mask off, if

10    you'd like.

11         How long have you been doing that?

12         PROSPECTIVE JUROR NO. 1511:  A little over 20

13    years.

14         THE COURT:  Okay.  This market's killing me.

15         PROSPECTIVE JUROR NO. 1511:  Not a good place to

16    be here today.

17         THE COURT:  All right.  You answered yes to a

18    number of questions, including No. 1, which is the schedule

19    questions.

20         PROSPECTIVE JUROR NO. 1511:  We can disregard

21    that.

22         THE COURT:  Okay.  Do you have a significant

23    other?

24         PROSPECTIVE JUROR NO. 1511:  I do.

25         THE COURT:  What do they do?

1          PROSPECTIVE JUROR NO. 1511:  She works for the

2     Department of Commerce.

3          THE COURT:  And what does she do?  Does she have a

4     career job or a political job?

5          PROSPECTIVE JUROR NO. 1511:  Career job.

6          THE COURT:  All right.  And you answered yes to a

7     number of questions starting with 15.  The question where I

8     will instruct you to avoid all media coverage about the

9     case.  Would you -- do you have trouble doing that?

10         PROSPECTIVE JUROR NO. 1511:  Maybe you can expand

11    upon what you mean by that, but there was another --

12    watching the news on a regular basis.

13         THE COURT:  So if you watch the news, and there's

14    a story about Mr. Strand's case, I would instruct you to

15    turn it off and disregard it or skip over that article in

16    the *Washington Post*.

17         PROSPECTIVE JUROR NO. 1511:  If I'm instructed to

18    do so, then I would do that, but I prefer to not have to be

19    involved in this situation to have to do that in the first

20    place.

21         THE COURT:  Do you want to be on this jury or you

22    don't want to be on this jury?

23         PROSPECTIVE JUROR NO. 1511:  I'd prefer not to be.

24         THE COURT:  Okay.  You can be excused.

25         PROSPECTIVE JUROR NO. 1511:  Thank you.

```
1              MR. BRENNWALD:  Are we at 27, Your Honor?

2              THE COURT:  Hold on, Mr. Brennwald.  I haven't

3      counted.

4              All right.  The Court will strike Juror 1511 based

5      on his answers to the -- all of the questions, in addition

6      to the media one that we asked, as well as his general

7      attitude about being on the jury.

8              THE COURTROOM DEPUTY:  Your Honor, Juror No. 2052.

9              THE COURT:  Step right up, ma'am.  Feel free to

10     remove your mask.

11             How are you?  Thank you for your patience.

12             PROSPECTIVE JUROR NO. 2052:  I'm good, thank you.

13     So I can have a seat?

14             THE COURT:  Yes.

15             PROSPECTIVE JUROR NO. 2052:  Thanks.

16             THE COURT:  It says you're an imaging scheduler

17     for the Washington Hospital Center.

18             PROSPECTIVE JUROR NO. 2052:  That is correct.

19             THE COURT:  Okay.  So you work in the imaging

20     department?

21             PROSPECTIVE JUROR NO. 2052:  Yes.

22             THE COURT:  And how long have you been doing that?

23             PROSPECTIVE JUROR NO. 2052:  Probably -- I've been

24     at the hospital all together 40-plus years.

25             THE COURT:  Okay.  And do you have a significant
```

 1   other?

 2            PROSPECTIVE JUROR NO. 2052:  I do.

 3            THE COURT:  And what does he do?

 4            PROSPECTIVE JUROR NO. 2052:  He's an auto

 5   salesperson.

 6            THE COURT:  Okay.  You answered yes to a number of

 7   questions.  You think you may have heard of America's

 8   Frontline Doctors?

 9            PROSPECTIVE JUROR NO. 2052:  No.

10            THE COURT:  No?

11            PROSPECTIVE JUROR NO. 2052:  That's the one I put

12   the question mark.

13            THE COURT:  You had a question mark on that one.

14            PROSPECTIVE JUROR NO. 2052:  Yes.

15            THE COURT:  Do you live or work near the Capitol,

16   or someone you know does?

17            PROSPECTIVE JUROR NO. 2052:  When you say "near,"

18   I work -- I live in Northeast D.C., and that could be

19   considered near it depending on what part of D.C. you're

20   speaking of.

21            THE COURT:  You're not right on Capitol Hill?

22            PROSPECTIVE JUROR NO. 2052:  I do not live in

23   Capitol Hill.

24            THE COURT:  Okay.  And you've seen videos of the

25   events of January 6th, and you've followed at least some of

```
 1      the congressional hearings.

 2                  PROSPECTIVE JUROR NO. 2052:  Say that again.

 3                  THE COURT:  You remember watching video of January

 4      6th?

 5                  PROSPECTIVE JUROR NO. 2052:  I have seen it, yes.

 6                  THE COURT:  Uh-huh.  And do you follow it?

 7                  PROSPECTIVE JUROR NO. 2052:  No, I don't follow

 8      it.

 9                  THE COURT:  Okay.  Do you have strong feelings one

10      way or the other about what happened on January 6th?

11                  PROSPECTIVE JUROR NO. 2052:  No.

12                  THE COURT:  Okay.  Counsel?

13                  MS. AYERS-PEREZ:  I have no follow-up questions,

14      Your Honor.

15                  THE COURT:  Mr. Brennwald.

16                  MR. BRENNWALD:  I have nothing, Your Honor.  Thank

17      you.

18                  THE COURT:  All right.  Ma'am, you can go back to

19      the other courtroom.  Thank you.

20                  PROSPECTIVE JUROR NO. 2052:  Thank you.

21                  THE COURT:  Okay.  Hold on.

22                  Any challenges?

23                  MS. AYERS-PEREZ:  None from the government, Your

24      Honor.

25                  MR. BRENNWALD:  No, Your Honor.
```

```
 1                    THE COURT:  All right.  2052 is qualified.

 2               I have 30.

 3                    MS. AYERS-PEREZ:  I have 30, Your Honor.

 4                    THE COURT:  Mr. Brennwald?

 5                    MR. BRENNWALD:  Yes, Your Honor.

 6                    THE COURT:  Okay.  We'll try to get to 34 because

 7          I think we're not going to have time to do peremptories

 8          today given the time.  So we'll get to about 34.  That will

 9          give us a buffer of two in case folks don't come back in the

10          morning.

11                    All right.  And maybe we'll do 35, if we can fit

12          an extra one in.

13                    MR. BRENNWALD:  That makes sense.

14                    THE COURT:  Okay.

15                    THE COURTROOM DEPUTY:  Your Honor, Juror No. 2173.

16                    THE COURT:  Good afternoon, sir.

17                    PROSPECTIVE JUROR NO. 2173:  Good afternoon, Your

18          Honor.  How are you?

19                    THE COURT:  Thank you for your patience.

20                    PROSPECTIVE JUROR NO. 2173:  No problem.

21                    THE COURT:  You're Mr. Aiello?

22                    PROSPECTIVE JUROR NO. 2173:  Aiello.

23                    THE COURT:  And you work at the American Dental

24          Association?

25                    PROSPECTIVE JUROR NO. 2173:  Yes, I do.
```

```
1                  THE COURT:  All right.  How long have you been

2        doing that?

3                  PROSPECTIVE JUROR NO. 2173:  Seven years.

4                  THE COURT:  Do you have a significant other?

5                  PROSPECTIVE JUROR NO. 2173:  No.

6                  THE COURT:  All right.  You answered yes to a

7        number of questions.

8                  PROSPECTIVE JUROR NO. 2173:  Uh-huh.

9                  THE COURT:  You live or work near Capitol Hill?

10                 PROSPECTIVE JUROR NO. 2173:  I do not personally

11       live or work there, but I have friends that live up there or

12       used to live up there during this.

13                 THE COURT:  So you know folks who lived on Capitol

14       Hill on January 6th?

15                 PROSPECTIVE JUROR NO. 2173:  Yes.  She has since

16       moved, but she did live up there.

17                 THE COURT:  Okay.  Have you talked to her about

18       her experience?

19                 PROSPECTIVE JUROR NO. 2173:  I work with her, so

20       yes.

21                 THE COURT:  Was she particularly affected by it?

22                 PROSPECTIVE JUROR NO. 2173:  Just scared.

23                 THE COURT:  You think you might know another

24       member of the jury panel?

25                 PROSPECTIVE JUROR NO. 2173:  Yes, because of being
```

1    here.

2               THE COURT:  Just from being here?

3               PROSPECTIVE JUROR NO. 2173:  Yes.

4               THE COURT:  Not before then?

5               PROSPECTIVE JUROR NO. 2173:  No.

6               THE COURT:  You answered yes to 16.  Is there

7    something about the nature of the case that gives you pause

8    about your ability to be fair?

9               PROSPECTIVE JUROR NO. 2173:  Yes.  I want to say

10   first I have a great respect for this process and

11   everything, but my background is all Democratic politics so

12   it's just -- it's a little -- I have a -- I have a lot of

13   friends that are lobbyists, Hill staffers.  I've been on the

14   races of four Democratic members that are currently in

15   Congress.  I -- through my work at the American Dental

16   Association I work with four Republican members that are

17   currently in, and I just know a lot of -- this is what I've

18   been doing.  Prior to the American Dental Association, I

19   spent six years doing campaign work.

20              THE COURT:  So just a little too close to home?

21              PROSPECTIVE JUROR NO. 2173:  Yes, it's very close

22   to home.

23              THE COURT:  And it would be hard to put that

24   aside?

25              PROSPECTIVE JUROR NO. 2173:  I'd like to believe I

```
1    could put it aside, but I believe my bar might be a little

2    lower than where you guys would need it to be.

3              THE COURT:  You can go ahead and step down.  Thank

4    you.  I appreciate your candor.

5              PROSPECTIVE JUROR NO. 2173:  No problem.

6              THE COURT:  All right.  The Court will strike 2173

7    for cause.

8              THE COURTROOM DEPUTY:  Your Honor, are you ready?

9              THE COURT:  Yes.

10             THE COURTROOM DEPUTY:  Juror No. 0099.

11             THE COURT:  Good afternoon, ma'am.  Step right up.

12             Good afternoon, and thank you for your patience.

13   You're Ms. Dawson; is that right?

14             PROSPECTIVE JUROR NO. 0099:  Yes.

15             THE COURT:  You can slip your mask off, if you'd

16   like.

17             And you're an engineer for PBS Distribution?

18             PROSPECTIVE JUROR NO. 0099:  Yes.  Well, support

19   engineer.  Help desk stuff.  Helping people order equipment,

20   tech issues, and programming; just general tech and stuff.

21             THE COURT:  So you're an IT person?

22             PROSPECTIVE JUROR NO. 0099:  Yes.

23             THE COURT:  How long have you been doing that?

24             PROSPECTIVE JUROR NO. 0099:  25 years or so.

25             THE COURT:  And do you have a significant other?
```

```
 1                    PROSPECTIVE JUROR NO. 0099:  No.

 2                    THE COURT:  You answered yes to a number of

 3          questions.  You've obviously seen videos about January 6th

 4          and followed at least some of the congressional hearings.

 5                    PROSPECTIVE JUROR NO. 0099:  Yes.  Not all, just

 6          one of the hearings.

 7                    THE COURT:  Have you followed the events of

 8          January 6th closely or just --

 9                    PROSPECTIVE JUROR NO. 0099:  Just stuff that's

10          usually on Twitter --

11                    THE COURT:  Okay.

12                    PROSPECTIVE JUROR NO. 0099:  -- or the news.

13                    THE COURT:  And either you, a member of your

14          immediate family, or close friend has been charged or

15          arrested for an offense?

16                    PROSPECTIVE JUROR NO. 0099:  My brother got

17          charged with graffiti.

18                    THE COURT:  Okay.  Any member of that group

19          applied for employment or been employed by law enforcement?

20                    PROSPECTIVE JUROR NO. 0099:  I worked for the FBI

21          when I was right out of high school for a couple of years.

22          This is back in '93.

23                    THE COURT:  For a couple of weeks?

24                    PROSPECTIVE JUROR NO. 0099:  Couple of years.

25                    THE COURT:  Couple of years.
```

1          PROSPECTIVE JUROR NO. 0099:  Yes.

2          THE COURT:  And what did you do?

3          PROSPECTIVE JUROR NO. 0099:  I was a mail and file

4     clerk in the ident division before I moved to West Virginia.

5          THE COURT:  Okay.  So a member of the FBI is on

6     the trial team.  Is there anything about your experience

7     working there -- how many years ago?

8          PROSPECTIVE JUROR NO. 0099:  It was '93, so I

9     guess almost 30 years now.

10          THE COURT:  Okay.  Do you think that would affect

11     your ability to be fair in this case given that a member of

12     the FBI is part of the prosecution team?

13          PROSPECTIVE JUROR NO. 0099:  Yes, I can be fair.

14          THE COURT:  Any doubt about that?

15          PROSPECTIVE JUROR NO. 0099:  No.

16          THE COURT:  Okay.  All right.  And someone has

17     served in the military that you know?

18          PROSPECTIVE JUROR NO. 0099:  My father, but he

19     passed away last year.

20          THE COURT:  Okay.  Counsel?

21          MS. AYERS-PEREZ:  How old was your brother when he

22     had his graffiti incident?

23          PROSPECTIVE JUROR NO. 0099:  Oh, gosh, I don't

24     know.  Twenty-something.

25          MS. AYERS-PEREZ:  Okay.  I have no follow-up

1    questions from there, Your Honor.

2             MR. BRENNWALD:  Good afternoon, Ms. Dawson.

3             PROSPECTIVE JUROR NO. 0099:  Hi.

4             MR. BRENNWALD:  You watched the videos -- I'm

5    sorry, the initial event on January 6th, were you watching

6    it live on television?

7             PROSPECTIVE JUROR NO. 0099:  Here and there, but

8    not like -- I mean, it was hard to ignore it.

9             MR. BRENNWALD:  Right.

10            PROSPECTIVE JUROR NO. 0099:  But, no, I wasn't

11   like plastered to the TV or anything.

12            MR. BRENNWALD:  Was it pretty shocking to see all

13   that happen?

14            PROSPECTIVE JUROR NO. 0099:  Well yes, of course.

15            MR. BRENNWALD:  All right.  And did you -- in this

16   case you're going to see, if you serve as a juror, videos

17   that are loud, people pushing, shoving, all kinds of stuff

18   happening.  Combined with the initial coverage and any

19   coverage you've seen since then, do you think that would

20   cause you to have a problem being fair to Mr. Strand in this

21   case?

22            PROSPECTIVE JUROR NO. 0099:  No.

23            MR. BRENNWALD:  Okay.  You talked about seeing

24   things posted on Twitter.  If you saw that Mr. Strand had

25   posted things on Twitter or reTweeted things or had text

```
 1    messages with people with very strong political views that
 2    may be the opposite of your views, would that cause you to
 3    be unable to --
 4              PROSPECTIVE JUROR NO. 0099:  No.
 5              MR. BRENNWALD:  -- look at this case fairly?
 6              PROSPECTIVE JUROR NO. 0099:  No.  I mean, that's
 7    Twitter.
 8              MR. BRENNWALD:  Sorry?
 9              PROSPECTIVE JUROR NO. 0099:  I mean, that's
10    Twitter, so no.
11              MR. BRENNWALD:  Okay.  Thank you very much,
12    Ms. Dawson.
13              THE COURT:  Okay.  Thank you, ma'am.  You can step
14    down.
15              All right.  Any challenge?
16              MS. AYERS-PEREZ:  None from the government, Your
17    Honor.
18              MR. BRENNWALD:  I would just note that she used to
19    work for the FBI.  I know it was a while back, but -- you
20    know, for several years, and, again, with her experience
21    with January 6th and the videos and everything else, we'd
22    ask the Court to strike her for cause.
23              THE COURT:  Your objection's overruled.  She was a
24    file clerk many, many, many years ago, and she said that
25    that wouldn't affect her.
```

```
 1                THE COURTROOM DEPUTY:  Your Honor, Juror No. 857.

 2                THE COURT:  Step right up, ma'am.

 3                PROSPECTIVE JUROR NO. 0857:  Okay.

 4                THE COURT:  Thank you very much for your patience.

 5      You can slip your mask off, if you'd like.

 6                PROSPECTIVE JUROR NO. 0857:  Sure.

 7                THE COURT:  All right.  And you're Ms. Holmes?

 8                PROSPECTIVE JUROR NO. 0857:  Yes.

 9                THE COURT:  And you work at Wegmans.

10                PROSPECTIVE JUROR NO. 0857:  Yes.

11                THE COURT:  Do you work at the new Wegmans on

12      Wisconsin Avenue?

13                PROSPECTIVE JUROR NO. 0857:  No.

14                THE COURT:  Have you been there?

15                PROSPECTIVE JUROR NO. 0857:  Not yet.

16                THE COURT:  All right.  Ms. Holmes, do you have a

17      significant other?

18                PROSPECTIVE JUROR NO. 0857:  No, sir.

19                THE COURT:  All right.  Are you from D.C.?

20                PROSPECTIVE JUROR NO. 0857:  Yes, sir.

21                THE COURT:  All right.  You answered yes to

22      Question 18, which is have you seen videos about January

23      6th?

24                PROSPECTIVE JUROR NO. 0857:  Yes.

25                THE COURT:  Scoot up a little bit so that everyone
```

1    can hear you.

2              Did you just see it at the time that it happened,

3    or have you followed the story around January 6th?

4              PROSPECTIVE JUROR NO. 0857:  Have I followed up

5    with the story?

6              THE COURT:  Yes.  Have you seen stuff since it

7    happened?

8              PROSPECTIVE JUROR NO. 0857:  No.

9              THE COURT:  No.  When I said that this case

10   involved the events of January 6th, did you have a reaction

11   one way or the other?

12             PROSPECTIVE JUROR NO. 0857:  No, I did not.  I did

13   not.

14             THE COURT:  Okay.  You wouldn't have a problem

15   being on the jury?

16             PROSPECTIVE JUROR NO. 0857:  No, I would not.

17             THE COURT:  You'd give this gentleman a fair

18   trial?

19             PROSPECTIVE JUROR NO. 0857:  I will.

20             THE COURT:  All right.

21             Counsel?

22             MS. AYERS-PEREZ:  No follow-up questions from the

23   government, Your Honor.

24             MR. BRENNWALD:  Ms. Holmes, right?

25             PROSPECTIVE JUROR NO. 0857:  Yes.

```
1              MR. BRENNWALD:  Okay.  There will be videos in

2     this case that are pretty loud, showing a lot of rough

3     things going on inside the Capitol.  I know you've seen some

4     of those things.  Given how agitated and how loud and how

5     much pushing and shoving there was and breaking windows, do

6     you think that you'll be able to put -- not put that out of

7     your mind, obviously, but still judge Mr. Strand fairly?

8              PROSPECTIVE JUROR NO. 0857:  Yes, I will.

9              MR. BRENNWALD:  Okay.  Thank you.

10             THE COURT:  Okay.  Ma'am, you can step down.

11             You're cold, huh?

12             PROSPECTIVE JUROR NO. 0857:  Yes.

13             THE COURT:  Okay.  Any challenges?

14             MS. AYERS-PEREZ:  None from the government.

15             MR. BRENNWALD:  None, Your Honor.

16             THE COURT:  857 is qualified.

17             THE COURTROOM DEPUTY:  Your Honor, Juror No. 72.

18             THE COURT:  Okay.  Step right up, ma'am.

19             PROSPECTIVE JUROR NO. 0072:  Hello.

20             THE COURT:  Hi.  Thank you for your patience.

21             PROSPECTIVE JUROR NO. 0072:  Sure.

22             THE COURT:  And you can take your mask off, if

23     you'd like.

24             PROSPECTIVE JUROR NO. 0072:  Okay.

25             THE COURT:  You're Ms. Yu?
```

```
 1                    PROSPECTIVE JUROR NO. 0072:  Yes.

 2                    THE COURT:  All right.  Nice to meet you.

 3                    PROSPECTIVE JUROR NO. 0072:  Nice to meet you,

 4      too.

 5                    THE COURT:  All right.  So tell us what the

 6      Beaumont Foundation is.

 7                    PROSPECTIVE JUROR NO. 0072:  The Beaumont

 8      Foundation is a private foundation based in Bethesda,

 9      Maryland, focused on supporting public health infrastructure

10      in the U.S.

11                    THE COURT:  Okay.  I have a follow-up question

12      about that.

13                    PROSPECTIVE JUROR NO. 0072:  Sure.

14                    THE COURT:  But before I get there, you answered

15      yes to the first question, which relates to the schedule for

16      the case or something that might impair your ability to

17      serve.

18                    PROSPECTIVE JUROR NO. 0072:  Yes.  I just launched

19      a start-up company, so I am the sole person running the

20      start-up company, and I have a seven-year-old who I have to

21      take care of, so I figured I'd put 1 yes.

22                    THE COURT:  Okay.  So that's in addition to your

23      work at the Beaumont?

24                    PROSPECTIVE JUROR NO. 0072:  That's in addition --

25      correct, correct.
```

```
 1                  THE COURT:  And that would be an extreme hardship
 2        for you?
 3                  PROSPECTIVE JUROR NO. 007:  I did not label it as
 4        an extreme hardship per your definition.
 5                  THE COURT:  Okay.  All right.  I'm going to
 6        discuss that with counsel for one second.
 7                     (The following is a bench conference
 8                      held outside the hearing of the gallery)
 9                  THE COURT:  All right.  Usually what I would do
10        with folks like this is, you know, provisionally strike
11        them, and only go back to them if we really needed them.
12        We're not going to need her because we have plenty of folks,
13        but I'll take my guidance from you.
14                  MS. AYERS-PEREZ:  I'm fine with that, especially
15        with her having a young child.  I have no issue with that.
16                  THE COURT:  Mr. Brennwald?
17                  MR. BRENNWALD:  I agree.  I mean, she has way too
18        much on her plate.
19                     (This is the end of the bench conference)
20                  THE COURT:  Okay.  Good luck with the start-up.
21        We're going to have you go back to the main jury room.
22                  PROSPECTIVE JUROR NO. 0072:  Okay.  Thank you very
23        much.
24                  THE COURT:  Thank you.
25                  THE COURTROOM DEPUTY:  Your Honor, Juror No. 1122.
```

```
1              THE COURT:  All right.  Step right up, sir.

2              PROSPECTIVE JUROR NO. 1122:  Excuse me?

3              THE COURT:  Step right up.

4              PROSPECTIVE JUROR NO. 1122:  Okay.

5              THE COURT:  Thanks very much for your patience,

6      and you can slip your mask off, if you'd like.  You're

7      Mr. Post?

8              PROSPECTIVE JUROR NO. 1122:  I am, right.

9              THE COURT:  And you work at AU.

10             PROSPECTIVE JUROR NO. 1122:  That's correct.

11             THE COURT:  And you do budgeting?

12             PROSPECTIVE JUROR NO. 1122:  Yes, I do.

13             THE COURT:  It's a big job.  How long have you

14     been there?

15             PROSPECTIVE JUROR NO. 1122:  I've been there about

16     20 years in different functions.

17             THE COURT:  Do you have a significant other?

18             PROSPECTIVE JUROR NO. 1122:  I do.

19             THE COURT:  And what do they do?

20             PROSPECTIVE JUROR NO. 1122:  She's right now not

21     employed.

22             THE COURT:  Okay.  And what's her profession?

23             PROSPECTIVE JUROR NO. 1122:  She was a director of

24     communications for a nonprofit before.

25             THE COURT:  And what was the nonprofit?
```

1           PROSPECTIVE JUROR NO. 1122:  It was the National

2     Council for the Social Studies.

3           THE COURT:  Okay.  You answered yes to a couple of

4     questions.  You think you might know someone else on the

5     jury panel?

6           PROSPECTIVE JUROR NO. 1122:  Yes.  I saw one

7     gentleman who was part of a family with whom we had a nanny

8     share several years ago.

9           THE COURT:  Okay.  So you know him fairly well?

10          PROSPECTIVE JUROR NO. 1122:  I mean, from -- it

11    was more than ten years ago, so it's been a while.

12          THE COURT:  The reason we ask that question is

13    because if two people who know each other are on the same

14    jury, one might exert, you know, undue influence over the

15    other.  Would that be an issue here?

16          PROSPECTIVE JUROR NO. 1122:  Probably not, no.  I

17    mean, we weren't socially friends or anything like that.

18          THE COURT:  Okay.  And you've watched videos of

19    January 6th, and you've followed at least some of the

20    congressional hearings.

21          PROSPECTIVE JUROR NO. 1122:  Well, the

22    congressional hearings, I heard them on the radio like as,

23    you know, on NPR driving in.  Snippets of it, I would say.

24    I didn't really sit or hear -- or watch the hearings

25    themselves.

```
1              THE COURT:  Okay.  So is it fair to say you

2       didn't -- you haven't followed the events of January 6th

3       closely since it happened?

4              PROSPECTIVE JUROR NO. 1122:  Not too much, no, no.

5       I mean, like, apart from general media coverage.

6              THE COURT:  You or members of your family or a

7       close friend has been the victim of a crime.

8              PROSPECTIVE JUROR NO. 1122:  I was assaulted like

9       several years ago outside of the Metro.

10             THE COURT:  Okay.  Was the case solved?

11             PROSPECTIVE JUROR NO. 1122:  No.  It went to the

12      grand jury, but the one witness they had was unreliable so

13      they had to dismiss the case.

14             THE COURT:  Okay.  Is there anything about how

15      that case was handled by the police or by the prosecutor

16      that makes you hesitate to get involved in a criminal case

17      again?

18             PROSPECTIVE JUROR NO. 1122:  I can't think of

19      anything, no.

20             THE COURT:  Okay.

21             PROSPECTIVE JUROR NO. 1122:  Again, it also was, I

22      believe, 2006, so it's a long time.

23             THE COURT:  Okay.  Do you have strong feelings one

24      way or the other about the events of January 6th?

25             PROSPECTIVE JUROR NO 1122:  Well, I mean, just,
```

 1   you know, seeing it on the TV.  It was pretty unusual, so,

 2   you know, yes, it was definitely a bit concerning.

 3              THE COURT:  Would that keep you from giving this

 4   fellow a fair trial, if you were on the jury?

 5              PROSPECTIVE JUROR NO. 1122:  I don't think so, no.

 6   I'm a fairly factual person, so...

 7              THE COURT:  Okay.  And are you confident about

 8   that?  Give me an honest answer.

 9              PROSPECTIVE JUROR NO. 1122:  I am, yes.

10              THE COURT:  Okay.  Counsel.

11              MS. AYERS-PEREZ:  I have no further -- or no

12   follow-up questions, Your Honor.

13              THE COURT:  Mr. Brennwald.

14              MR. BRENNWALD:  Germanic or Scandinavian accent

15   I'm hearing?

16              PROSPECTIVE JUROR NO. 1122:  Yes, I'm from the

17   Netherlands originally.

18              MR. BRENNWALD:  Oh, okay, Dutch.

19              I have no further questions, Your Honor.

20              THE COURT:  Okay.  Thank you, sir.  You can step

21   down.

22              PROSPECTIVE JUROR NO. 1122:  Okay.  Thank you.

23              THE COURT:  Any challenges?

24              MS. AYERS-PEREZ:  None from the government, Your

25   Honor.

```
 1                MR. BRENNWALD:  No challenge, Your Honor.

 2                THE COURT:  All right.  1122 is qualified.

 3                MR. BRENNWALD:  Just for my information, Your

 4     Honor, are we going to go until we're finished?  Whether

 5     it's 5:15 or 5:20, it doesn't matter.

 6                THE COURT:  Yes, we're close.

 7                MR. BRENNWALD:  Okay.

 8                THE COURTROOM DEPUTY:  Your Honor, Juror No. 1557.

 9                THE COURT:  Good afternoon.

10                PROSPECTIVE JUROR NO. 1557:  Good afternoon.

11                THE COURT:  You are Ms. Beckbridge, correct?

12                PROSPECTIVE JUROR NO. 1557:  Correct.

13                THE COURT:  Okay.  You can slip your mask off, if

14     you'd like.

15                And you work at Mutual Fund Directors Forum.  Tell

16     us what that is.

17                PROSPECTIVE JUROR NO. 1557:  It's a professional

18     association for the independent directors of US registered

19     funds.

20                THE COURT:  How long have you been doing that?

21                PROSPECTIVE JUROR NO. 1557:  I joined the

22     organization in 2015, so a little over seven years.

23                THE COURT:  Okay.  And were you in financial

24     services before that?

25                PROSPECTIVE JUROR NO. 1557:  I mean, I'm sorry,
```

```
 1    financial services?  No, no, no, I come from the nonprofit
 2    space.
 3                THE COURT:  I see, okay.
 4                Do you have a significant other?
 5                PROSPECTIVE JUROR NO. 1557:  Yes.
 6                THE COURT:  And what do they do?
 7                PROSPECTIVE JUROR NO. 1557:  She works in
 8    Arlington for an organization that serves the victims and
 9    families of -- family homelessness and domestic violence.
10                THE COURT:  All right.  You answered yes to a
11    handful of questions.  No. 4, you live on the Hill, or you
12    know someone who lives --
13                PROSPECTIVE JUROR NO. 1557:  Yes, I live on the
14    Hill.
15                THE COURT:  Were you at home on January 6th?
16                PROSPECTIVE JUROR NO. 1557:  I was at home, yes.
17                THE COURT:  And did you observe personally any of
18    the events at the Capitol?
19                PROSPECTIVE JUROR NO. 1557:  No.  I'm not that
20    close.  I'm about a mile away so I was not like within
21    sight.
22                THE COURT:  Was your home vandalized or impacted
23    in any way?
24                PROSPECTIVE JUROR NO. 1557:  No.
25                THE COURT:  All right.  You answered yes to 16,
```

1    which is a question about whether the nature of the charges

2    would affect your ability to be fair and impartial.  Why did

3    you answer yes to that?

4              PROSPECTIVE JUROR NO. 1557:  Can you repeat how

5    the question was phrased just originally?

6              THE COURT:  Sure.  Mr. Strand has been charged

7    with five crimes relating to Congress's meeting at the

8    Capitol on the 6th to certify the Electoral College vote.

9    Is there anything about the nature of these allegations that

10   would prevent you from being neutral and fair in evaluating

11   the evidence surrounding him?

12             PROSPECTIVE JUROR NO. 1557:  I don't think so.  I

13   think I perhaps misheard the question.

14             THE COURT:  Okay.  So you don't think there's

15   anything about the nature of January 6th that would prevent

16   you from being an impartial juror?

17             PROSPECTIVE JUROR NO. 1557:  I don't think so.

18             THE COURT:  Okay.  And you've seen videos of the

19   events of that day, and you followed at least some of the

20   congressional hearings; is that right?

21             PROSPECTIVE JUROR NO. 1557:  So to say I followed

22   it would be an overstatement.

23             THE COURT:  Okay.

24             PROSPECTIVE JUROR NO. 1557:  I have seen some

25   videos.  I saw some videos at the time, and they were kind

 1    of on social media.

 2            When the hearings were on more recently I was

 3    visiting my parents, and so my step dad was watching it.  I

 4    actually did not care to watch it so I was removing myself

 5    to the best of my ability from the rooms where it was on.

 6    But, yes, I was in the dining room; it was on in the living

 7    room.

 8            THE COURT:  Why did you not care to watch it?

 9            PROSPECTIVE JUROR NO. 1557:  I don't know why

10    anyone would want to watch it, to be honest.  It wasn't a

11    great day.  I don't want to relive it.

12            THE COURT:  But notwithstanding that, you don't

13    think that your views about what happened that day generally

14    would affect your ability to give this fellow a fair trial?

15            PROSPECTIVE JUROR NO. 1557:  I think there's a

16    sense for me that there's the group, there's the event, then

17    there are the individuals who were involved.

18            I don't know anything about this individual.  I

19    don't know anything about what his role was or his

20    involvement or anything about that.

21            I know the event, and I know that my personal

22    experience of the event was not great.  But there's a

23    difference between the group and the individual.

24            THE COURT:  Okay.  So the government is going to

25    put on evidence that it believes supports each of the

 1    charges beyond a reasonable doubt.  And Mr. Brennwald is

 2    going to cross-examine their witnesses, and he may put on

 3    evidence on Mr. Strand's behalf.  And at the end of the day

 4    you're going to have to decide whether that evidence proves

 5    the charges beyond a reasonable doubt with respect to what

 6    Mr. Strand did or did not do that day.

 7              I want you to be honest with me.  Do you think you

 8    could do that?

 9              PROSPECTIVE JUROR NO. 1557:  I do.

10              THE COURT:  Okay.

11              PROSPECTIVE JUROR NO. 1557:  I think that's the

12    job.

13              THE COURT:  Counsel.

14              MS. AYERS-PEREZ:  Good afternoon.  Just a quick

15    question.  You said that your experience with the event

16    wasn't great.  When you say "the event," are you referring

17    to January 6th as a whole?

18              PROSPECTIVE JUROR NO. 1557:  Yes, the day and the

19    following weeks after that being -- living on the Hill and

20    in the region, being under curfew and lockdown.

21              I have a young child, so -- I have dogs, so

22    walking around the Hill is part of our daily lives.  And so

23    having that sense of anxiety during that period of time, it

24    was -- it's tense.  It was tense.

25              MS. AYERS-PEREZ:  But living through that last

1    year isn't going to affect the evidence you hear this week

2    and making a decision based upon just what you hear this

3    week?

4              PROSPECTIVE JUROR NO. 1557:  I guess it would be

5    hard to say.  I hope not.  I think -- I think I understand

6    the role of the jury is to be impartial, to hear the

7    evidence as it's presented, and to measure it, I guess,

8    according to its merit.

9              Is the memory of that anxiety real?  Yes.

10             MS. AYERS-PEREZ:  All right.  And I understand.

11             At the end of this trial, should you get on the

12   jury, the judge is going to give you some instructions, and

13   one of those is that you're going to have to deliberate and

14   render a verdict based solely on what you hear this week.

15   Can you follow those instructions?

16             PROSPECTIVE JUROR NO. 1557:  I believe I can.

17   Like I said, I don't know anything about this person or

18   their role in the whole thing or their -- anything they did

19   during the day.  Like I said, I didn't follow the coverage

20   at the time or in the hearings following, so my level of

21   awareness or knowledge of the details of the event aren't

22   great.

23             My memory of it is my memory of I had to be in my

24   home before dark because there's a curfew on my home, and I

25   don't know what that's going to mean, and am I really safe

1    in my home, which is separate from what any individual did

2    on that particular day.

3                MS. AYERS-PEREZ:  Okay.  That's the end of my

4    follow-up questions.

5                THE COURT:  Mr. Brennwald.

6                MR. BRENNWALD:  Thank you.

7                Good evening, Ms. Beckbridge.  You said something

8    about you wouldn't want to relive it.  If you're on this

9    jury, you're going to relive it because you're going to see

10   some pretty loud videos, people pushing, shoving, police

11   officers being pushed aside, barriers being knocked down,

12   flags waving, people screaming.  I mean, it's going to be --

13   if I could use the word "cacophony" in here.

14               You're going to see some text messages from

15   Mr. Strand that are very political, and so you're going to

16   have to unfortunately relive it, unfortunately.  Not through

17   us, but you're going to have to relive it.

18               Do you feel that you could overcome the shock

19   and the trauma that people felt that day and just look at

20   Mr. Strand's behavior?

21               I'm not saying you shouldn't or that you won't,

22   I'm just -- I'll ask the question.

23               PROSPECTIVE JUROR NO. 1557:  Yes.  It's a valid

24   question, and similarly, I can't say with confidence.  I

25   haven't made the attempt.

1           However, I've been called up here today and didn't

2      get the choice in the case I was going to get or the day I

3      was going to get called, and here I am.  And so, you know,

4      whether I choose to watch MSNBC because my step dad is

5      watching it while I'm home because it's my sister's wedding

6      and being called up for a certain responsibility as a

7      citizen, you know, is not a really fair comparison to me.

8           MR. BRENNWALD:  Okay.  I appreciate that.  Thank

9      you.

10          THE COURT:  All right.  Ma'am, thank you very

11     much.  You can step down.

12          All right.  Mr. Brennwald?

13          MR. BRENNWALD:  No challenge, Your Honor.

14          THE COURT:  No challenge?

15          MR. BRENNWALD:  No.

16          THE COURT:  Ms. Perez.

17          MS. AYERS-PEREZ:  No challenge from me.

18          THE COURT:  All right.  1557 is qualified.

19          That brings us to 34.  Why don't we try to get one

20     more to make sure that everybody shows back up in the

21     morning.

22          Thanks, Lauren.

23          THE COURTROOM DEPUTY:  Your Honor, Juror No. 0136.

24          THE COURT:  Good evening, ma'am.  I'm sorry that

25     it has taken us so long, but thank you for your patience.

```
1     You're Ms. Gibson; is that correct?
2               PROSPECTIVE JUROR NO. 0136:  Yes.
3               THE COURT:  Feel free to take your mask off.
4               PROSPECTIVE JUROR NO. 0136:  Thank you.  I
5     appreciate it.
6               THE COURT:  And are you employed, ma'am?
7               PROSPECTIVE JUROR NO. 0136:  Yes, sir.
8               THE COURT:  And what do you do?
9               PROSPECTIVE JUROR NO. 0136:  I work for a large
10    financial institution, and I work on public policy issues.
11              THE COURT:  Okay.  Which institution?
12              PROSPECTIVE JUROR NO. 0136:  JPMorgan Chase.
13              THE COURT:  If you could move a little closer to
14    the microphone so the court reporter can hear you.
15              PROSPECTIVE JUROR NO. 0136:  I beg your pardon.
16              THE COURT:  And how long have you done that?
17              PROSPECTIVE JUROR NO. 0136:  I've been with the
18    firm for about 11 years.
19              THE COURT:  And do you have a significant other?
20              PROSPECTIVE JUROR NO. 0136:  My husband is
21    deceased.
22              THE COURT:  Okay.  I'm sorry to hear that.
23              What did he do before he passed?
24              PROSPECTIVE JUROR NO. 0136:  He worked in public
25    service.  He worked for the Department of Agriculture.
```

1              THE COURT:  Okay.  I'm sorry, I'm not sure that I

2     have your correct card.

3              I'm not sure I have 136.  I'm sorry, ma'am.

4              PROSPECTIVE JUROR NO. 0136:  That's okay.

5              THE COURT:  I want to make sure I've got the right

6     person.

7              (Pause)

8              THE COURT:  I got it.  That's it.  I have it.  I

9     have it.

10             Okay.  You answered yes to three questions, 18 and

11    21, which relate to having seen videos or coverage of

12    January 6th and the congressional hearings.

13             Obviously most people have seen coverage.  Have

14    you followed the events of January 6th closely, or no?

15             PROSPECTIVE JUROR NO. 0136:  I mean, it's hard not

16    to follow it.  It's in the paper every day.  It's on the TV

17    every day.

18             THE COURT:  Okay.  And have you developed strong

19    feelings one way or the other about it having viewed that

20    coverage?

21             PROSPECTIVE JUROR NO. 0136:  Strong feelings?  I

22    think it was -- I think it was an unfortunate chapter in

23    U.S. history.

24             THE COURT:  Okay.  But despite that, do you think

25    that you could give individualized attention to the evidence

1    in this case and give this fellow a fair trial?

2            PROSPECTIVE JUROR NO. 0136:  I mean, I do.  I

3    think, based on facts and circumstances, I could evaluate

4    that fairly.

5            THE COURT:  Okay.  And a member of your family has

6    served in the military?

7            PROSPECTIVE JUROR NO. 0136:  My dad was in the

8    Navy, and my daughter is currently in Army ROTC in college.

9            THE COURT:  Okay.  Counsel.

10            MS. AYERS-PEREZ:  No follow-up, Your Honor.

11            THE COURT:  Mr. Brennwald.

12            MR. BRENNWALD:  Good afternoon -- good evening,

13    Ms. Gibson.

14            PROSPECTIVE JUROR NO. 0136:  Hi.

15            MR. BRENNWALD:  All right.  If you serve on this

16    jury -- you were talking about, you know, what you saw and

17    witnessed.  There's going to be -- there will be a number of

18    loud videos played that are really going to have a lot of

19    noise in the courtroom, a lot of people doing a lot of

20    things.  It's going to be really shocking, emotional, et

21    cetera.

22            You'll see some Tweets or some messages from my

23    client, Mr. Strand, criticizing the election, talking about

24    how it was stolen, et cetera.

25            Knowing all that about the case, do you think that

1    you can judge him fairly, or do you have strong views such

2    that you would just as soon as -- or come into it thinking

3    he must be guilty of something?

4            PROSPECTIVE JUROR NO. 0136:  As I said, I would

5    listen to the facts and the circumstances and form an

6    opinion based on the facts and circumstances.

7            MR. BRENNWALD:  And that's what we want you to do,

8    so I appreciate it.

9            Thank you.

10           THE COURT:  Okay.  Thank you, ma'am.

11           PROSPECTIVE JUROR NO. 0136:  Thank you.

12           THE COURT:  You can step down.

13           Okay.  Any challenge?

14           MS. AYERS-PEREZ:  None from the government, Your

15   Honor.

16           MR. BRENNWALD:  No, Your Honor.

17           THE COURT:  Okay.  136 is qualified.  That brings

18   us to 35 meaning we have a buffer of three.

19           Ms. Jenkins, how do you want to do this

20   mechanically?

21           I would normally bring everyone back into

22   the courtroom and thank them and dismiss the folks that we

23   have -- that we don't need, but given the late hour, it

24   might be easier for Ms. Jenkins to just do that as long as

25   we agree on the -- do you want to run through the numbers

```
 1    just so that we're all on the same page?
 2              Okay.  So, Ms. Jenkins, if you could go through
 3    the numbers who we will excuse.
 4              And, Counsel, follow along and make sure that she
 5    doesn't miss anyone.
 6              THE COURTROOM DEPUTY:  Your Honor, we're excusing
 7    Juror No. 1736, Seat 1; Seat 2, 0124; Seat 9, 1734 --
 8              THE COURT:  Wait, hold on.
 9              MR. BRENNWALD:  Seat 9?
10              THE COURT:  Yes.
11              MR. BRENNWALD:  I'm sorry, we're going from 1 to 2
12    to 9?  What am I missing?
13              THE COURTROOM DEPUTY:  We're excusing these
14    individuals.
15              MR. BRENNWALD:  Oh, you're excusing these folks?
16              THE COURTROOM DEPUTY:  Yes.
17              THE COURT:  These are the folks we're excusing.
18              MR. BRENNWALD:  I'm sorry.  Seat 9 what?
19              THE COURTROOM DEPUTY:  1734.
20              MR. BRENNWALD:  Okay.
21              THE COURTROOM DEPUTY:  Seat 11, 1901; and those
22    are the jurors that will be in the box.
23              The next set of excusals will be 1666, 1519, 0394,
24    0242, 0032, 0981, 1031, 1511, 1480, 2173, Juror No. 72, and
25    the remaining jurors that were not questioned on the Line
```

1    Item 51 through 75.

2         THE COURT:  Okay.  Ms. Jenkins, can you admonish

3    everyone who's coming back tomorrow not to discuss the case

4    or do any research about the case, or should we bring them

5    back for that?

6         THE COURTROOM DEPUTY:  I can do it in the hall.

7         THE COURT:  And have them be ready to go at 9:00

8    a.m. knowing that it will take a while to process everybody.

9         THE COURTROOM DEPUTY:  Yes, Your Honor.

10        THE COURT:  Okay.

11        All right.  And what we'll do in the morning is we

12   will line the 35 up, and we will put the first 14 in the

13   box, the rest in the gallery, and be ready to exercise your

14   strikes efficiently.  So sharpen your pencils tonight and be

15   ready to go in the morning, okay?  And that shouldn't take

16   very long at all.

17        MR. BRENNWALD:  Yes, Your Honor.

18        THE COURT:  All right.  Anything else?

19        MR. BRENNWALD:  No, Your Honor.

20        THE COURT:  Okay.  We will stand in recess, and

21   we'll see you back here at 9:00 a.m. tomorrow.  And

22   hopefully the lines will be less today than they were --

23   less tomorrow than they were today.

24              (Whereupon the hearing was

25               adjourned at 5:19 p.m.)

1          <u>**CERTIFICATE OF OFFICIAL COURT REPORTER**</u>

2

3               I, LISA A. MOREIRA, RDR, CRR, do hereby

4     certify that the above and foregoing constitutes a true and

5     accurate transcript of my stenographic notes and is a full,

6     true and complete transcript of the proceedings to the best

7     of my ability.

8          Dated this 26th day of October, 2022.

9

10                                   <u>/s/Lisa A. Moreira, RDR, CRR</u>
                                     Official Court Reporter
11                                   United States Courthouse
                                     Room 6718
12                                   333 Constitution Avenue, NW
                                     Washington, DC 20001
13

14

15

16

17

18

19

20

21

22

23

24

25