

U.S. Department of Justice

Matthew M. Graves
United States Attorney

*District of Columbia*

---

*Patrick Henry Building*
*601 D Street, N.W.*
*Washington, D.C.  20530*

November 30, 2022

***VIA EMAIL***
Robert Walters
United States Probation Officer
333 Constitution Avenue, NW
Washington, DC 20001

      RE: Sentencing Guidelines in *United States v. John Strand*, 21-cr-085-CRC

Dear Mr. Walters,

      As you requested, below are the government's Sentencing Guidelines calculations for this case.

**I.    Background**

      On September 27, 2022, a jury returned a verdict of guilty on all five counts against John Strand:

- Count One, Obstruction of an Official Proceeding, 18 U.S.C. § 1512(c)(2)

- Count Two, Entering or Remaining in a Restricted Building or Grounds, 18 U.S.C. § 1752(a)(1)

- Count Three, Disorderly and Disruptive Conduct in a Restricted Building or Grounds, 18 U.S.C. § 1752(a)(2)

- Count Four, Disorderly Conduct in a Capitol Building, 40 U.S.C. § 5104(e)(2)(D)

- Count Five, Parading, Demonstrating or Picketing in a Capitol Building, 40 U.S.C. § 5104(e)(2)(G).

The evidence at trial showed that Strand, in personal communications with friends and family and in his social media posts, asserted in the weeks after the 2020 Presidential Election that the election had been stolen and that he was going to do something about it. Strand's own communications further showed, in the days leading up to January 6, 2021, that Strand was determined to "stop the steal" on January 6. For example, on December 1, 2020, Strand posted a tweet on Twitter challenging the results of the 2020 election, "This is MAJOR – full blown warfare to SAVE THE REPUBLIC." In another tweet that Strand posted that same day challenging the results of the 2020 election, he wrote, "THIS. IS. WAR." Strand included the hashtag, "StoptheSteal" in both tweets.

On January 5, 2021, Strand wrote on Twitter: "There's no doubt about the truth of the 2020 election. The only question is: will you act upon that truth? WILL YOU STAND FIRM? This moment will define our country, our generation, & our national destiny. It's now, or never." Strand again included the hashtag, "StoptheSteal" in the tweet.

Strand travelled to Washington D.C. from Florida on January 5, 2021. He attended the Stop the Steal rally on the morning of January 6, 2021, and then marched to the U.S. Capitol, where he joined a crowd of rioters that had breached the security perimeter on the East and North sides of the Capitol. Video evidence and testimony at trial showed Strand deliberately walking up the steps on the East Side of the Capitol and making his way all the way to the front of a large crowd that was trying to breach the East Rotunda Door. The crowd chanted "Stop the Steal" over and over, echoing the same refrain that Strand had been using in his communications for the weeks leading up to January 6.

Within just a few feet of Strand, rioters smashed the windows of East Rotunda Door with flagpoles and rioters assaulted officers with their flag poles. An officer testified at trial that the smell of pepper spray was heavily present in the area, and video showed at trial demonstrated that the sound of the East Rotunda door's alarm was noticeable as well. Officers used a "flash bang" to encourage the crowd to disperse. Strand, however, stood firm and remained toward the front of the mob outside the East Rotunda Door.

Directly in front of Strand and his former co-defendant, Simone Gold, Capitol Police officer Joshua Pollitt was dangerously pulled down into the crowd. Others in the crowd helped the officer to his feet. Strand made no effort to help the officer; moments later, the crowd breached the East Rotunda Door and Strand followed them inside the Capitol Building at approximately 2:27 p.m.

Strand's own communications on January 6 made clear that he intended to breach the Capitol and he was proud to have done so. He wrote to his friends that day, "I was with the first dozen people to breach"; "We stormed the Capitol"; "Simone and I were with the first dozen patriots to breach the Capitol."

Once inside the Capitol Building, Strand and Gold quickly made their way through the Rotunda, through Statuary Hall, and into the hallway leading to the House Chamber Door. Strand, again, worked himself up to the front of the mob, positioning himself within a few feet of a small group of Capitol Police Officers who were trying to hold a line outside the House Chamber Door. This area was one of the most sensitive areas in the entire Capitol Building because the House Chamber was the primary location where the count of the electoral college vote was being held. At the time that Strand and his fellow rioters congregated outside of it, there were still members

of Congress and others sheltering in place in the House Chamber. Former Deputy House Parliamentarian Kyle Jones testified at trial that he was scared for his life while he was sheltering in place in the House Chamber at approximately this time. Capitol Police Officer Benjamin Brockwell testified that the officers on the inside of the House Chamber door had to draw their weapons (as shown by video evidence) in a desperate attempt to prevent rioters from taking the House Chamber.

Strand joined the group of rioters as they pushed past the police line and made their way all the way into the small vestibule outside the House Chamber Door. Officer Nelson Vargas testified at trial that it was the size of the mob, more than the actions of any individual rioter, that caused his police line to be overrun. Vargas further testified that as he attempted to resist the mob while being pushed toward the House Chamber Door, he banged his head against a statue. Strand contributed to the size of the mob that overran Officer Vargas's police line and, furthermore, Strand placed himself at the very front of the mob.

In the vestibule outside the House Chamber door, Strand again was surrounded by rioters chanting the same "Stop the Steal" mantra that Strand had frequently pronounced himself in the weeks leading up to January 6. Video evidence showed that, again, rioters used a flag pole to smash a window within a few feet of Strand (this time, the window of the House Chamber door). Once again, Strand stood his ground with this property-destroying mob. Other rioters nearby Strand, as shown in trial evidence, shouted things like "use your Kevlar" as they attempted to break down the House Chamber Door. Strand's actions showed his support for this conduct: not only did he remain in the vestibule for more than 15 minutes, but he resisted the efforts by officers, including the efforts of trial witness Officer Joseph Pitts, to get him to leave the area.

When reinforcements arrived and eventually cleared the vestibule outside the House Chamber door, Strand and Gold attempted to give two speeches inside the Capitol. Gold first gave a speech in Statuary Hall while Strand filmed her. Officer Austin McGoff testified that Strand and Gold's speech stunt made it more difficult for the officers to clear Statuary Hall. Video evidence showed officers had to forcibly move Gold before she stopped her speech. Strand and Gold then went into the Rotunda. Even though Strand had just seen officers forcibly stop Gold from giving her speech in Statuary Hall, he and Gold chose to give another speech, this time standing on top of a statue of President Dwight Eisenhower to do so. Strand, while standing on top of the statue, placed his hand over his ear in a gesture to get the crowd's attention, as shown in a photograph introduced at trial.

Although Gold's speeches did not attract significant attention, they did attract the interest of some rioters, and Strand and Gold thus made it more difficult for the officers to clear rioters from the Capitol. Officers who had to deal with Strand and Gold were prevented, as a matter of fact and a matter of logic, from assisting their fellow officers elsewhere in the Capitol as many of those officers were under violent assault.

In total, Strand spent more than 49 minutes inside the Capitol. His participation in the riot contributed to the mob's ability to delay the certification proceedings for hours. Members of Congress and the Vice President had to be evacuated and to take shelter while Strand, among other things, stood shoulder to shoulder with rioters who tried to smash down the House Chamber Door, and paraded on top of a statue while his co-defendant gave a speech with a bullhorn.

Shortly after leaving the Capitol, Strand took a selfie on the Capitol steps and publicly declared this on Twitter:

"I am incredibly proud to be a patriot today, to stand up tall in defense of liberty and the Constitution, to support Trump & #MAGAforever, & to send the message: WE ARE NEVER CONCEDING A STOLEN ELECTION."

Strand also made clear that he was knowledgeable of, and proud of, his role in delaying the certification proceedings—and thereby undermining the peaceful transfer of power. He texted his brother within hours of leaving the Capitol and boasted that he had "made history" because "I don't think the US Capitol has been stormed and breached like that and it caused Pence to delay the certification."

Strand testified in his defense at trial. He testified that he had not intended to go into the Capitol. ("I had not wanted to be inside the Capitol at all. That was never my intention . . . the force of the crowd pushing in gave us no option other than to fall in.") He testified that he was forced into the building by the push of the crowd ("we got, you know, pushed inside of the building"). He testified that his only purpose in being inside the Capitol was to protect his co-defendant Simone Gold. ("Q: If I understood your testimony correctly, you stated that your sole purpose in entering the Capitol on January 6th was to provide security for Ms. Gold; is that correct? A. That's correct."). Strand further testified that he did not realize Officer Pollitt was pulled down into the crowd right in front of him; he testified that he thought Officer Pollitt merely tripped because "it was very easy to trip all the time."

Strand also testified that it was not his intention to interfere with the certification of the election. ("Q: [W]as it your intent, as that happened, to interfere with the certification of the election of 2020? A. No, that was not my intent. I didn't even realize that that official certification was happening at that time so that wasn't even in my consciousness.").

The jury, in convicting Strand, necessarily found his testimony not credible: the jury's verdict depended upon, among other things, (1) finding that Strand acted with the intent to obstruct the certification of the official proceeding, and (2) finding that Strand knowingly and willfully demonstrated and picketed in the Capitol building.

## II.   Guidelines analysis

### A.   Analysis for each count

**Count One: 18 U.S.C. § 1512(c)(2) and § 2—attempted to and aided and abetted the obstruction of an official proceeding before Congress**

| Base offense level: | 14 | U.S.S.G. §2J1.2(a) |
|---|---|---|
| Special offense characteristic | +8 | U.S.S.G. §2J1.2(b)(1)(B): "the offense involved causing or threatening to cause physical injury to a person, or property damage, in order to obstruct the administration of justice."<br><br>For purposes of this enhancement, the "administration of justice" is synonymous with "official proceeding" as |

4

| | | |
|---|---|---|
| | | defined in 18 U.S.C. § 1515(a)(1), which in the Capitol riot cases refers to a "proceeding before the Congress, § 1515(a)(1)(B). |
| | | There are multiple theories for application of this offense characteristic based on U.S.S.G. § 1B1.3 which encompasses both the defendant's own acts or omissions and those whom the defendant aided, abetted, counseled, commanded, induced, procured, or willfully caused. It also includes "all harm that resulted" from the defendant's acts or the acts of others engaged in jointly undertaken criminal activity with the defendant. § 1B1.3(a)(3). |
| | | First, Strand, prior to January 6, publicly pronounced "THIS. IS. WAR" and declared "full-blown warfare to save the Republic." Although he himself did not engage in violence, his mindset of supporting violence was present on January 6. |
| | | Second, Strand forced his way to the front of the mob that was attempting to breach the East Rotunda Door. Trial testimony and related video evidence established that this was a violent and dangerous scene, in which rioters assaulted officers with pepper spray and flagpoles, and rioters smashed the windows of the East Rotunda door. The officers were greatly outnumbered by the rioters and each member of the mob drew strength from the other rioters, who contributed to the mob's size and force. |
| | | Third, once inside the Capitol, Strand similarly lent support to another group of rioters outside the House Chamber door who, by virtue of outnumbering the officers, were able to overrun a police line; caused Officer Vargas to injure his head; and smashed the window of the House Chamber Door. |
| Special offense characteristic | +3 | U.S.S.G. §2J1.2(b)(2): "the offense resulted in substantial interference with the administration of justice." |
| | | For purposes of this enhancement, the "administration of justice" is synonymous with "official proceeding" as defined in 18 U.S.C. § 1515(a)(1), which in the Capitol riot cases refers to a "proceeding before the Congress, § 1515(a)(1)(B). |

5

| | | |
|---|---|---|
| | | The official proceeding of Congress's Joint Session, which was required by the Constitution and federal statute, had to be halted while legislators were physically evacuated for their own safety. |
| Adjustment | +2 | U.S.S.G. §3C1.1: "the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense"<br><br>Strand provided materially false testimony under oath. He repeatedly testified that his only purpose in being inside the Capitol was to protect Simone Gold and not to disrupt the election certification. ("Q: Your testimony is that your sole purpose of being inside the Capitol was to be with Ms. Gold to provide her security; is that right? A. Yes, sir."). He insisted that he had no intention to disrupt the certification of the election despite his many communications and social media pronouncements about stopping the steal and "never conceding a stolen election" both before and after January 6. He even claimed that he only realized that the election certification proceeding had been delayed after he left the Capitol Building.<br><br>Strand also testified falsely that he was forced into the building by the push of the crowd, and he had never wanted to enter the building. ("Q; [I]f I understand you correctly, that actually you were physically forced into the Capitol; is that right? A. Yes, sir. We were pushed in by a crowd that became violent and not peaceful at that moment."). This testimony was squarely contradicted by the video evidence that showed Strand remaining at the front of the mob outside the East Rotunda Door while rioters assaulted officers within feet of Strand and smashed the door's window with flag poles. The video evidence then showed Strand entering the building, without being pushed or forced, after the rioters in front of him breached the door.<br><br>Further, as a third example, Strand testified that, despite video evidence of Officer Pollitt being pulled down into the crowd right in front of Strand, Strand believed Pollitt merely tripped. |

|  |  | Strand's testimony was therefore materially false about essential elements of the charged crimes, including whether Strand intended to disrupt and certification, whether Strand acted corruptly, and whether Strand knowingly and willfully entered the Capitol building. |
|---|---|---|
| Total | 27 |  |

**Count Two: 18 U.S.C. § 1752(a)(1)—entering and remaining in a restricted building or grounds**

| Base Offense Level: | 4 | U.S.S.G. §2B2.3(a) |
|---|---|---|
| Special offense characteristic | +2 | U.S.S.G. §2B2.3(b)(1)(A)(vii): the trespass occurred "at any restricted building or grounds."<br><br>On January 6, 2021, the U.S. Capitol was restricted because protectees of the United States Secret Service were visiting. *See* 18 U.S.C. § 1752(c)(1)(B). |
| Cross Reference |  | U.S.S.G. §2B2.3(c)(1): "If the offense was committed with the intent to commit a felony offense, apply §2X1.1 in respect to that felony offense, if the resulting offense level is greater than that determined above." |
| Base Offense Level (adjusted) | 25 (from Count One) | U.S.S.G. §2X1.1(a): "The base offense level from the guideline for the substantive offense, plus any adjustments from such guideline for any intended offense conduct that can be established with reasonable certainty."<br><br>Strand entered the restricted area of the Capitol complex for the purpose of obstructing the official proceeding—that is, stopping Congress from doing its work. The substantive offense is thus Count One, and the base offense level for that offense should be applied. |
| Adjustment | +2 | U.S.S.G. §3C1.1: "the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense"<br><br>See discussion above. |
| Total | 27 |  |

7

### Count Three: 18 U.S.C. § 1752(a)(2)—disorderly and disruptive conduct in a restricted building or grounds

Since there is no applicable Chapter Two Guideline for this offense in the Statutory Appendix, use "the most analogous guideline." U.S.S.G. §2X5.1. Here, that is U.S.S.G. §2A2.4, "Obstructing or Impeding Officers."

| Base Offense Level: | 10 | U.S.S.G. §2A2.4(a) |
|---|---|---|
| Adjustment | +2 | U.S.S.G. §3C1.1: "the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense"<br><br>Strand provided materially false testimony under oath regarding the lawfulness of his entry into the Capitol and the meaning of text messages and content posted on social media condoning violence and storming the Capitol. *See* U.S.S.G. § 3C1.1 n4(B). |
| Total | 12 | |

### Counts Four and Five: 40 U.S.C. § 5104(e)(2)(D) and (G)—disorderly conduct in a Capitol building and parading, demonstrating or picketing in a Capitol building

Counts Four and Five are Class B misdemeanors to which the Sentencing Guidelines do not apply.

### B. Grouping Analysis

Under U.S.S.G. §3D1.2(a) and (c), "closely related counts" group. Counts One, Two, and Three comprise a single group under U.S.S.G. §3D1.2(a) and (b) because the victim of each count is Congress.

Under U.S.S.G. §3D1.3(a), we then determine the offense level for a group of closely related counts, using the highest offense level of the counts in each group.

The highest offense level is 27 (for Counts One and Two); therefore, the combined offense level for the group of all five counts is 27.

### III.  Additional Departure

The government may seek an upward departure under the principle in U.S.S.G. § 3A1.4, cmt. n.4. The offense of obstruction of an official proceeding "was calculated to influence or affect

8

the conduct of government by intimidation or coercion," but that offense is not one of the enumerated crimes of terrorism in 18 U.S.C. § 2332b(g)(5)(B).

        Sincerely,

        */s/ Jason Manning*
        Jason Manning, Detailee
        April Ayers-Perez, Detailee
        Assistant United States Attorneys