**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Criminal No. 21-085 (CRC)** |
| | : | |
| **JOHN STRAND,** | : | |
| | : | |
| **Defendant.** | : | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION
FOR RELEASE PENDING APPEAL AND REDUCTION
OF SENTENCE AS A ZERO POINT OFFENDER**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully opposes Defendant John Strand's motion (ECF 146) seeking release pending appeal in light of the Supreme Court's recent decision to grant *certiorari* in *United States v. Fischer*, No. 23-5572, 2023 WL 860578 (Dec. 13, 2023). Regardless of the outcome in *Fischer*, Strand cannot establish by clear and convincing evidence that he is not a flight risk, and he cannot show that there is any likelihood that the outcome in *Fischer* will result in a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.

Strand's motion for a reduction of sentence as a zero-point offender should also be denied. Strand's participation in the violent attack on the Capitol renders him ineligible and, regardless, the Court should not exercise its discretion to resentence Strand in light of his offense conduct, his obstruction of justice at trial, and his lack of remorse after trial.

## I.   BACKGROUND AND PROCEDURAL HISTORY

On February 5, 2021, a federal grand jury returned an indictment charging Strand with five counts: obstruction of an official proceeding under Title 18, United States Code, Sections 1512(c)(2) and 2 (Count One), entering and remaining in a restricted building or grounds under

Title 18, United States Code, Section 1752(a)(1) (Count Two), disorderly and disruptive conduct in a restricted building or grounds under Title 18, United States Code, 1752(a)(2) (Count Three), disorderly conduct in a Capitol building under Title 40, United States Code, Section 5104(e)(2)(D) (Count Four), and parading, demonstrating, and picketing in a Capitol building under Title 40, United States Code, Section 5104(e)(2)(G) (Count Five).   ECF 13.   On, September 27, 2022, Strand was convicted of those offenses following a jury trial. ECF 108.

Sentencing was held on June 1, 2023.   At sentencing, the Court calculated a guidelines range of 30 to 37 months based on the defendant's zero-point criminal history and an offense level of 19.   *See* Ex. A, Transcript of Sentencing Hearing, 06:22-26:07 (June 1, 2023) ("Tr.").   The Court declined to apply the eight-point enhancement under U.S.S.G. 2J1.2(b)(1)(B) for conduct that involved causing or threatening to cause physical injury to a person, which was recommended by Probation and the Government, while noting that under the facts of the case, it was a "close question."   Tr. 20:13-16.   The Court did apply a two-point enhancement for Strand's false testimony at trial, stating:

> But with respect to his testimony that he was not -- or that he was pushed into the Capitol, you know, I think that that was -- that was false testimony. I think the evidence was clear, the video, that he took advantage of Officer Pollitt either falling or either being pushed in front of him and went in voluntarily. And so on that score, at least, I think there's a basis for the obstruction enhancement.

Tr. 25:06-13.

The Court then evaluated the factors required for consideration under Section 3553(a).   In considering the nature and circumstances of the offense, the Court emphasized the dangerous nature of Strand's conduct in violation of Sections 1752(a)(1)( and (2):

> You know, take the 1752, entering and remaining and disruptive conduct offenses. Those are misdemeanors, right? But the reason that those offenses are on the books is because they involve restricted places, and restricted

places are places where the Secret Service is guarding the president or the vice president or some other protected person. Right? And you might not think that it's -- that it should be illegal to, you know, waltz into the Capitol while the Secret Service is there trying to protect the President of the United States or the Vice President of the United States, but it is. And it's illegal for a very good reason.

People want to assassinate presidents and vice presidents, and we saw that on January 6th. "Hang Mike Pence," right? And unfortunately, sometimes people try to do that, and tragically they've succeeded. And so the Secret Service is there to keep that from happening, and I can't imagine a more difficult job. I mean, one mistake could change the course of history. And it makes their job even harder if any Tom, Dick, or Harry can just enter a restricted building and interfere with their ability to protect the President or the Vice President. *And that's exactly what happened on January 6th. The mob, which you willingly joined, put the Vice President's safety at risk and the safety of the agents protecting him by entering and remaining and engaging in disruptive conduct in the Capitol. And that's exactly what that law is intended to prevent*.

Tr. 74:17-75:20 (emphasis added).

The Court then described the nature and circumstances of the obstruction offense in which, notably, it referenced aspects of Strand's conduct that are equally applicable to his other crimes on January 6:

The same is true for the obstruction offense. It's serious, not only for the delay that it caused and its effect on the police officers that the government referenced, but more importantly the stain that it left on our democracy.

Tr. 76:07-11.  The Court emphasized that Strand was convicted for, among other things, "entering the Capitol, knowing [he was not] supposed to be there  . . . and joining the mob, passing through the police lines."  *Id.* at 76:16-19.

The Court then discussed at length Strand's refusal to accept responsibility, which demonstrated the need for a sentence that would provide specific deterrence for a defendant who remained unrepentant for his serious crimes.  *Id.* at 76:23-81:15.  The Court emphasized that Strand, in his many public statements, repeatedly proclaimed his innocence not just on the felony

obstruction charge but on all charges, even though "the evidence was clear." *Id.* at 77:03-06. The Court found that Strand had "not accepted responsibility in a pretty remarkable way." *Id.* at 77:02.

Further, as relevant to both the history and characteristics of the defendant and the need for the sentence imposed to establish specific and general deterrence, the Court considered Strand's attacks on the judicial system and lack of respect for the rule of law:

> And while we're on the jury, in some of your appearances you complain that you knew the result was going to be guilty from the beginning; that it was all, you know, preordained; that you didn't get a fair trial from a jury of your peers. Let me just say that I think that's hogwash.

*Id.* at 78:09-14; *see also id.* at 80:23-81:01 (describing Strand's efforts to fundraise off of his crimes and stating, "when you take advantage of your notoriety it does go to acceptance of responsibility, which dovetails into deterrence, both specific and general, and the need for the sentence imposed to promote respect for the law.").

The Court sentenced Strand to the following:

Count One – 18 U.S.C. § 1512(c)(2): 32 months of incarceration to run concurrently, 36 months of supervised release to run concurrently, a $10,000 fine, and $100 special assessment,

Counts Two and Three – 18 U.S.C. § 1752(a)(1) and (2): 12 months of incarceration to run concurrently, 12 months of supervised release to run concurrently, and $25 special assessment for each count,

Counts Four and Five – 40 U.S.C. § 5104(e)(2)(D) and (G):  6 months of incarceration to run concurrently and $10 special assessment for each count.

ECF 140.

The Court permitted Strand to surrender voluntarily following sentencing.  He self-surrendered on July 26, 2023.  ECF 146 at 3.

On June 5, 2023, Strand filed his Notice of Appeal.  ECF 135.  On November 28, 2023, the Government moved to hold the appeal in abeyance pending the issuance of the mandates in *United States v. Fischer*, No. 22-3038 (D.C. Cir.), and *United States v. Brock*, No. 22-3045 (D.C.

Cir).  In response, on December 1, 2023, the Court of Appeals suspended the briefing schedule.

On December 13, 2023, the Supreme Court granted *certiorari* to review the Court of Appeals'

*Fischer* decision. *See Fischer v. United States*, No. 23-5572, 2023 WL 8605748 (U.S. Dec. 13,

2023). On December 15, 2023, Strand filed a motion before the Court of Appeals for release

pending appeal.  The Court of Appeals dismissed the motion without prejudice, directing Strand

to proceed before the District Court because "even assuming that resolving that substantial

question of law in appellant's favor will result in 'a reduced sentence to a term of imprisonment

less than the total of the time already served plus the expected duration of the appeal process . . .

[t]he district court is in a better position to determine in the first instance, and on full briefing, what

appellant's likely reduced sentence would be."  Order, *United States v. Strand*, 23-3083 (D.C. Cir.

Jan. 16, 2024).

## II.    STRAND'S MOTION FOR RELEASE PENDING APPEAL

### a.  Legal Standard

Strand moves for release pending appeal under 18 U.S.C. § 3143(b), which provides that a

defendant who has been sentenced to a term of imprisonment "shall . . . be detained" unless the

court finds that two separate requirements are met:

> (1) "clear and convincing evidence that the person is not likely to flee or
> pose a danger to the safety of any other person or the community if
> released," and
>
> (2) that the appeal "raises a substantial question of fact or law likely to result
> in—(i) reversal, (ii) an order for a new trial, (iii) a sentence that does
> not include a term of imprisonment, or (iv) a reduced sentence to a term
> of imprisonment less than the total of the time already served plus the
> expected duration of the appeal process."

18 U.S.C. § 3143(b)(1)(A)-(B).  The requirements for "reversal" and "an order for a new trial"

encompass all counts, not just a single count.  *United States v. Perholtz*, 836 F.2d 554, 557 (D.C.

Cir. 1988) (explaining that defendants "cannot be released unless the appeal raises a substantial question likely to result in reversal of *all counts* on which imprisonment is imposed") (emphasis supplied).  If a judicial officer finds that a defendant is eligible for release because the appeal is "likely" to result in "a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process," the remedy is not immediate release; rather, "the judicial officer shall order the detention terminated at the expiration of the likely reduced sentence."  18 U.S.C. § 3143(b)(1)(B).  It is the defendant's burden to make the requisite showing under 18 U.S.C. § 3143(b)(1)(B).  *Perholtz*, 836 F.2d at 555-56 (referring to "the required showing on the part of the defendant"); *United States v. Libby*, 498 F. Supp. 2d 1, 3 (D.D.C. 2007).

### b.  Strand's Motion for Release Pending Appeal Should Be Denied

Even assuming that the *Fischer* issue raises a "substantial question," Strand fails to make the required showing for release.  First, Strand has not shown by clear and convincing evidence that he is not a flight risk.  Unlike when he was last on release, he now knows the day-to-day reality of confinement in prison.  He has served just over six months of his 32-month sentence leaving the majority of that time – just under 26 six more months – still to serve in the future.  Having this time hanging over his head may make it more likely that he will decide to flee.

Strand would not be the first January 6 defendant to flee, abscond, or fail to appear while facing a hefty charge or sentence.  *See, e.g., United States v. Worrell*, 21-cf-292 (RCL), ECF 295 (after being detained pending trial and then released, defendant absconded before sentencing); *United States v. Bru*, 21-cr-352 (JEB), ECF 66, June 26-July 6, 2023 Minute Entries; *United States v. Burlew* (RDM), 21-cr-647 (RDM), Nov. 30, 2023, Dec. 8, 2023 Minute Entries; *United States v. Olivia Pollock*, 21-cr-447-5 (CJN), ECF 208, March 6, 2023, May 19, 2023, August 7, 2023

Minute Entries; *United States v. Hutchinson*, 21-cr-447-2 (CJN), April 6, 2023, May 19, 2023, August 7, 2023 Minute Entries; *United States v. Giustino*, 23-cr-00016 (JEB), September 29, 2023 Minute Entry; *United States v. Dennison*, 23-cr-00032 (TNM), June 5, 2023 Minute Entry; *United States v. Shawndale and Chilcoat*, 22-cr-00299, September 5, 2023, September 9, 2023, October 5, 2023, October 6, 2023, October 13, 2023 Minute Entries.

Strand's demonstrated lack of respect for the judicial system further increases the risk that he will flout a subsequent court order to appear or surrender. The Government cited a sampling of Strand's public statements showing this lack of respect in the Government's sentencing submission, ECF 131 at 22-24, and at sentencing, the Court admonished the defendant for his frequent public statements disparaging the fairness of his trial. The Court also noted that Strand had failed to provide the Court with a financial affidavit in connection with sentencing even though the financial affidavit would bear on the Court's analysis of the appropriate fine. Tr. 86:06-10 ("And I will say that part of the determination regarding the fine is based on the defendant's failure to submit a financial disclosure that would allow the Court to make any other determination apart from what the government has presented.").

Strand also demonstrated his lack of respect for the judicial process by perjuring himself at trial, as described above. Further, his frequent public statements asserting that he is a "political prisoner" reflect that he does not accept the legitimacy of the Court's judgment against him, which the Court also found to be relevant at sentencing. *See* Tr. at 81:18-24. ("I don't know what sort of following you have, but, you know, there are probably a lot of people out there watching you on all these podcasts and all these conferences and on social media, and you've used that platform to peddle the misconception that you and other J6ers are somehow political prisoners who are being persecuted for their beliefs as opposed to their conduct.").

Strand bears the burden to show that he is not a flight risk.  By eliding over his record of disrespect for the Court's authority and the now lived reality of his incarceration, he has failed to do so.

Strand also fails to meet the second prong of the test under Section 3143(b)(2).  The mere fact that the Supreme Court agreed to hear *Fischer* does not indicate that it was wrongly decided.  *See, e.g.*, *Heath v. Jones*, 941 F.2d 1126, 1131 (11th Cir. 1991) ("[T]he grant of *certiorari* does not necessarily indicate that the position advocated by Heath has any merit, only that it is an important question").  Yet even assuming the appeal raises a "substantial question of law," [1] Strand has not shown that it is "likely" to lead to a reversal on all counts or a reduced sentence of slightly less than a year (which is the amount of time Strand will have served by the time the *Fischer* ruling is expect in June 2024).

Given the broad question presented by *Fischer*, myriad possible rulings could occur—including numerous outcomes that would *not* undermine Strand's conviction on Count One.  And even if the Supreme Court does rule in a way that undermines Strand's conviction on that count, the remedy is not to release the defendant now.  Instead —and unlike with release based on a reversal, likelihood of trial, or non-jail sentence—the statute directs the Court to order the defendant released only once he has served the amount of time that he is likely to serve upon resentencing, not immediately.  18 U.S.C. § 3143(b)(1)(B) ("in the circumstance described in subparagraph (B)(iv) of this paragraph, the judicial officer shall order the detention terminated *at the expiration of the likely reduced sentence*") (emphasis supplied).  Therefore, to release Strand based on the likelihood of a reduced sentence, the Court must calculate that reduced sentence, and he must still serve that amount of time before being released pending appeal.  *See, e.g.,* May 25,

---

[1] The Government did not dispute this point before the Court of Appeals and does not do so here.

2023 Order, *United States v. Brock,* D.C. Cir. Case No. 23-3045 (denying motion for release pending appeal in January 6 case where "the district court did not specifically address what appellant's "likely reduced sentence" would be if his conviction under 18 U.S.C. § 1512(c) is reversed. Nor has appellant made that showing…").

    To start, a decision in *Fischer* is expected in June 2024.  At that point, Strand will not yet have served twelve months, less than the statutory maximum on a single one of the Class A misdemeanors.  As explained below, Strand's conduct would easily merit a 12-month sentence. In any resentencing, however, the Court would not be limited to the statutory maximum on a single count. That is because the four other counts, which are unaffected by *Fischer*, carry an aggregate statutory maximum of three years.  Without the 1512 conviction, the Court could find that, in light of the aggravating facts here, it is appropriate to run defendant's sentences on other counts consecutively, leading to a sentence close to, equal to, or even greater than the current sentence. As detailed below, Strand's conduct was far worse than a typical trespass: he committed it with the intent to disrupt the peaceful transfer of power.  Carefully weighing the 3553(a) factors, the Court previously found that a 32-month sentence was appropriate.  If only misdemeanors remain, the government may argue – and the Court may agree – that the nature of the offense was so egregious, so beyond any kind of garden-variety misdemeanor, that it should not default to concurrent sentences but exercise its discretion to run the sentences consecutively and thereby impose additional incarceration.[2]

---

[2] Sentencing a defendant convicted of violating 18 U.S.C. §§ 1512(c)(2), 231(a)(3), and 1752 (among other offenses), Chief Judge Boasberg recently imposed consecutive penalties on the Section 231(a)(3) and Section 1752 violations, resulting in a total sentence above the statutory maximum for the Section 231(a)(3) violation, and within what the guidelines would have been for a Section 1512(c)(2) conviction.  *United States v. Bru,* Jan. 24, 2024 Minute Entry.  He explained that his sentence would be the same regardless of whether the Section 1512(c)(2) conviction is overturned.

Indeed, in the event of a reversal on §1512, the Government would nonetheless seek a sentence commensurate with the defendant's *conduct*, which features the defendant's intent and actions to obstruct Congress during a Joint Session to determine the next democratically-elected President of the United States.[3]   In other words, the Government would seek a stiff sentence of incarceration, which may include consecutive sentences to account for the aggravators present in this case.

As further detailed above and in the Government's sentencing memorandum, notable aspects of Strand's conduct include the following:

Strand's actions on January 6 followed weeks of social media posts and private communications in which he expressed his anger over the results of the 2020 election and his determination, as he wrote on January 5, to "act" and "stand firm." On December 1, 2020, for example, Strand posted a tweet referencing the Insurrection Act and pronounced, "This. Is. War." On January 6, Strand stormed the Capitol, passing a fallen and injured Capitol Police Officer to be one of the first people through the East Rotunda Doors. Once inside the Capitol, Strand raced through the Rotunda and Statuary Hall before making his way to a hallway just outside the House Chamber doors.  There, he advanced to the front of a mob facing off against a line of police guarding the House Chamber. The mob, with Strand at the very front, violently pushed their way

---

[3] While a reversal of his 1512 conviction would affect the statutory maximum sentence here, it is possible that Strand's guidelines could remain unchanged.  Depending on the ruling in *Fischer,* the Government may still be able to argue that Strand's conviction under 18 U.S.C. § 1752(a)(1) cross references to the obstruction guideline, U.S.S.G. § 2J1.2, because, by a preponderance, Strand acted with the intent to commit obstruction of an official proceeding.  *See* U.S.S.G. 2B2.3(c) (trespass guideline containing cross reference where "the offense was committed with the intent to commit a felony offense").  The cross reference to U.S.S.G. § 2J1.2 would result in a total offense level of 19 (including the obstruction enhancement for Strand's false testimony).  Neither *Adams* nor *Sheppard* considered this possibility, which would support an argument for imposing consecutive sentences on the remaining counts, given the one-year statutory maximum on the 18 U.S.C. § 1752(a)(1) violation.

through the line of Capitol police officers, resulting in a head injury to a Capitol Police Sergeant who was at the front of the police line. Strand remained just outside the House Chamber Doors, watching on as a fellow rioter with a flagpole broke the windows in the House Chamber Doors. Inside the House Chamber, officers drew their weapons and barricaded the doors in a desperate attempt to prevent Strand and the mob from breaching the House Chamber, where members of Congress and others remained inside.  Police officers eventually forced Strand to leave the hallway outside the House Chamber.  Strand then mounted a statute of President Dwight Eisenhower, further fomenting the mob.  After finally exiting the Capitol building (48 minutes after entering), Strand took a series of selfies on the Capitol Steps, made a vulgar gesture at the besieged police officers, and boasted on social media about having stormed the Capitol.  Following his arrest, Strand leveraged his crimes in extensive self-promotion in which he sought money for "legal services," even as taxpayers shoulder the actual burden of his criminal defense.  *See* ECF 131 at 3-12.

Rather than recognizing and accepting true responsibility for his actions and their consequences on others, Strand chose to lie about them under oath at trial.  The Government would argue at any resentencing that his eager participation in a violent and dangerous disruption of the peaceful transfer of power merits a sentence comparable to the one imposed regardless of whether it is made up of the four misdemeanors or all five charges.

Strand contends that, in the event that the Court of Appeals reverses his conviction on Count One, at sentencing he would be similarly positioned to defendants who pleaded guilty to misdemeanor offenses.  Def's Mot. at 7-9.  Not so.  Strand would be distinguished from those misdemeanants in at least three distinct ways:

- The nature and circumstances of Strand's offense—including the intentionality he showed on and before January 6 in his public communications, the sensitive spaces in

the Capitol to which he advanced and remained on January 6, the length of time he spent contributing to the riot inside the Capitol Building, and the manner in which he breached the Capitol Building while taking advantage of a fallen police officer—all make him significantly more culpable than most of the January 6 misdemeanants. Simply put, Strand was charged with a felony for good reason.

- Unlike many of the comparators cited in Strand's motion who pleaded guilty and accepted responsibility, Strand has refused to accept responsibility for *any* of his crimes, and he lied on the stand to try to avoid being held accountable for his crimes. This behavior translates into four additional offense levels under the sentencing guidelines even for a misdemeanor sentence.  More importantly, this behavior, as shown during Strand's original sentencing hearing, would meaningfully impact the Court's considerations under Section 3553(a) related to deterrence and the characteristics of the defendant.

- As set forth *supra*, depending on how the Supreme Court rules in *Fischer* and how the Court of Appeals subsequently resolves Strand's appeal, it is reasonably possible that, if Strand were to be resentenced, the guidelines range would be the same as it was at sentencing because the offense conduct for Count Two could incorporate the intent to obstruct the official proceeding.

In his motion, Strand points to two cases, *United States v. Adams*, 21-cr-354-APM (ECF No. 85) and *United States v. Sheppard*, 21-cr-302-JDB (ECF No. 142).[4]   While the Government respectfully disagrees with the ultimate decisions in *Adams* and *Sheppard* regarding the likely sentences without a 1512 conviction, neither is apposite here in any event.  In *Sheppard*, Judge Bates considered the defendant's youth, his lack of maturity, the absence of any violent or destructive conduct, his history with his family and the community, and some truthful, candid testimony he offered at trial. *Sheppard*, ECF 142, at 7.  In *Adams,* Judge Mehta credited factors including "the obstacles [Adams] overcame in life."  *Adams,* ECF No. 85, at 6.  Those factors in total do not carry the same weight here.  Strand was 37 years old on January 6, 2021.  The PSR did not identify any mitigating factors related to his upbringing or other issues.   *See* ECF 129.

---

[4] The Government does agree, however, with both courts' approach of calculating the defendant's likely reduced sentence and ordering defendant released only at that point (which, in Sheppard's case, is not for several months).

Strand did not provide truthful, candid testimony at trial; rather, he provided a series of incredible excuses for his conduct on January 6, which were apparently rejected by the jury.

It is indeed true that this Court would rightly evaluate a possible reduction in sentence if only the misdemeanors remained, in an adverse, post-*Fischer* world. Yet the Court would still be required to fashion a sentence under the Section 3553(a) factors that addresses the defendant's conduct on that day, including consideration of aggravating circumstances not taken into account by the Sentencing Commission in formulating guidelines for the particular statute. 18 U.S.C. § 3553(a) and (b)(1). As Judge Kelly said, "even if it doesn't meet 1512, wouldn't I be quite entitled -- it would be almost crazy if I didn't, in my view, vary up significantly because there would be no – it's still, I think we can agree, very bad -- a very bad thing if someone tried to obstruct that proceeding." *United States v. Gilbert Fonticoba*, 21-cr-638 (TJK) Sentencing Tr. at 48:6 - 22 (Jan. 11, 2024). Thus, the Government respectfully submits that in such a circumstance, the Court should impose on Strand a higher sentence well beyond the sentences received by defendants who, for example, pled guilty, accepted responsibility, and were convicted of a sole misdemeanor count (which the Court could do by running sentences on the remaining offenses consecutively). A consecutive sentence would correctly reflect the defendant's attack on the rule of law in this country.

The resulting "likely" period of incarceration that would be applied if only the other counts of conviction remained would likely include a sentence of incarceration of 12 months or more. Because Strand only began serving his sentence in July 2023, the resulting "likely" period of

incarceration would extend well beyond the Supreme Court's anticipated decision in *Fischer* in or before June 2024.[5]

### III.     STRAND'S MOTION FOR RESENTENCING UNDER U.S.S.G. § 4C1.1

#### a.  Legal Standard

U.S.S.G. § 4C1.1 provides for a two-level reduction for offenders with no criminal history points who are not subject to certain exclusionary criteria, including:

- § 4C1.1(3):  the defendant did not use violence or credible threats of violence in connection with the offense; and

- § 4C1.1(4):  the offense did not result in death or serious bodily injury.

Section 4C1.1 may be applied retroactively to previously sentenced inmates, pursuant to U.S.S.G. § 1B1.10. Such a reduction may occur as provided in 18 U.S.C. § 3582(c)(2), which provides:

> [I]n the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o), upon motion of the defendant or the Director of the Bureau of Prisons, or on its own motion, the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

Accordingly, a reduction pursuant to U.S.S.G. § 1B1.10 is not mandatory.  Instead, a "court *may* reduce the term of imprisonment, after considering the factors set forth in section 3553(a)." 18 U.S.C. § 3582(c)(2) (emphasis added).  Additionally, any proceeding under Section 3582(c)(2) is not a full resentencing, so a court is not permitted to reconsider other sentencing determinations left unaltered by the Section 4C1.1 amendment. *Dillon v. United States*, 560 U.S. 817, 825-826 (2010); U.S.S.G. § 1B1.10(a)(3).

---

[5] The Court's denial of defendant's motion could be without prejudice to the defendant renewing his motion following the Supreme Court's ruling in *Fischer*.

A court considering a motion for a sentence reduction due to § 4C1.1 must follow a two-step process. *Id.* at 826. First, the court must determine whether the defendant is eligible for a sentence reduction. A defendant is only eligible under § 4C1.1 reduction if: (1) the defendant has no criminal history points; (2) the defendant is not subject to any of the exclusionary criteria; (3) the amended guidelines range is lower than the range applied at the original sentencing hearing; and (4) the defendant did not previously receive a sentence at or below the bottom of the now-amended range other than for providing substantial assistance. *See* U.S.S.G. §§ 1B1.10, 4C1.1; *Dillon v. United States*, 560 U.S. at 827.

Even if step 1 is satisfied, a sentencing reduction is not required. Instead, § 1B1.10 directs that before reducing a defendant's sentence, the court must "consider the factors set forth in 18 U.S.C. § 3553(a) in determining … whether a reduction in the defendant's term of imprisonment is warranted" as well as "the extent of such a reduction" U.S.S.G. § 1B1.10 app. note 1(B)(i), (ii); *see also id.* Background ("The authorization of such a discretionary reduction ... does not entitle a defendant to a reduced term of imprisonment as a matter of right.").

If the court decides in its discretion to grant a reduction in sentence, it generally may not reduce the term of imprisonment to a term that is less than the minimum of the new guideline range. U.S.S.G. § 1B1.10(b)(2)(A). Thus, the Court may not reduce the sentence below the range provided by the amended guideline, and "in no event may the reduced term of imprisonment be less than the term of imprisonment the defendant has already served." U.S.S.G. § 1B1.10(b)(2)(C).[6]

---

[6] § 4C1.1's retroactive application took effect on February 1, 2024. *See* U.S.S.G. § 1B1.10(e)(2).

**b.  No Sentencing Reduction Is Warranted**

Strand is not eligible for the sentencing reduction under the Section 4C1.1 amendment because the January 6 riot was a violent attack that threatened the lives of legislators and their staff, interrupted of the certification of the 2020 Electoral College vote count, did irrevocable harm to our nation's tradition of the peaceful transfer of power, caused more than $2.9 million in losses, and injured more than one hundred police officers, causing serious bodily injury in many cases. Every rioter, whether or not they personally engaged in violence or personally threatened violence, contributed to this harm. *See, e.g., United States v. Rivera*, 21-cr-60 (CKK), ECF No. 62 at 13 ("Just as heavy rains cause a flood in a field, each individual raindrop itself contributes to that flood. Only when all of the floodwaters subside is order restored to the field. The same idea applies in these circumstances. Many rioters collectively disrupted congressional proceedings and each individual rioters contributed to that disruption. Because [defendant's] presence and conduct in part caused the continued interruption to Congressional proceedings, the court concludes that [the defendant] in fact impeded or disrupted the orderly conduct of Government business or official functions").

Further, Strand was not just any rioter. He breached the Capitol by taking advantage of a police officer who, after having just been maced by a rioter, had been pulled to the ground.  Strand then joined a violent mob inside the Capitol Building that overran a police line outside the House Chamber Door, causing injury to a Capitol Police officer.  He then remained with a small group of rioters who threatened to break into the House Chamber itself, causing police officers to draw their weapons on the other side of the House Chamber Door.  Based on this conduct, the Court found that the application of the eight-point enhancement under U.S.S.G. 2J1.2(b)(1)(B) for conduct that involved causing or threatening to cause physical injury to a person was a close

16

question.   Here, the Government submits that Strand's conduct—in which he (1) contributed to the strength of a mob that overran a police line and injured an officer,  (2) joined in the crowd outside the door of the House Chamber that was so threatening that, for example, some lawmakers crouched in the House Gallery for safety; and (3) repeatedly took advantage of the violence of other rioters to advance further into the Capitol and achieve his goal of obstructing the official proceeding and disrupting Government functions—renders him ineligible for reduction under § 4C1.1(3).

Moreover, even if the Court determines that § 4C1.1 applies, it should not reduce Strand's sentence.  "The grant of authority to the district court to reduce a term of imprisonment is unambiguously discretionary," even when the guideline range is actually reduced.  *United States v. Vautier*, 144 F.3d 756, 760 (11th Cir. 1998). A district court has "substantial discretion" in deciding whether to reduce a sentence. *United States v. Young*, 555 F.3d 611, 614 (7th Cir. 2009). Accordingly, many courts have denied sentence reductions even in situations where guideline amendments lowered the sentencing ranges.[7]

---

[7] *See, e.g.*, *United States v. Wilson*, 716 F.3d 50, 53 (2d Cir. 2013) (denial of sentence reduction was not an abuse of discretion, though earlier sentence reduction had been granted despite defendant's prison misconduct, and defendant had not engaged in any new prison misconduct); *United States v. Styer*, 573 F.3d 151, 154-55 (3d Cir. 2009) (denial based on nature of original criminal conduct); *United States v. Stevenson*, 332 F. App'x 261 (6th Cir. 2009) (reduction denied despite eligibility under amendment, based on disciplinary infractions in prison, and lengthy criminal record); *United States v. Dunn*, 728 F.3d 1151, 1159-60 (9th Cir. 2013); *United States v. Arceneaux*, 297 F. App'x 819 (10th Cir. 2008) (reduction denied due to disciplinary record in prison); *United States v. Melton*, 2008 WL 1787045 (W.D.N.C. 2008) (denial based on nature of offense); *United States v. Craig*, 2008 WL 1775263 (W.D.N.C. 2008) (denial based on the facts of the case); *United States v. Suell*, 2008 WL 2845295 (N.D. Tex. 2008) (motion denied because defendant benefitted from a favorable plea agreement in which charges were dismissed and the sentence was reduced); *United States v. Reynolds*, 2008 WL 2367254 (S.D. W. Va. 2008) (motion denied because defendant's criminal conduct was "nothing short of egregious"), aff'd, 309 F. App'x 703 (4th Cir. 2009). *See also United States v. Marion*, 293 F. App'x 731 (11th Cir. 2008) (unpublished) (district court's consideration of the defendant's criminal history was proper, when

The Section 3553(a) factors counsel against granting a sentence reduction here.  Not only did the defendant take advantage of a fallen police officer to breach the Capitol Building, and then join a small group outside the House Chamber Door that collectively engaged in highly dangerous conduct, but his conduct before, during, and after trial demonstrated an astounding lack of remorse and refusal to accept responsibility.

In *United States v. Bauer,* Judge McFadden held that even if the defendant Bauer had been eligible for a sentence reduction, the Court would decline to exercise its discretion to resentence Bauer because, among other things, Bauer "perjured herself on the stand" and "showed a disrespect for the governing institutions of this country that [it] could not ignore."[8]  *United States v. Bauer*, 21-cr-386 (TNM), ECF No. 195 at 9-10.  The court concluded that under these circumstances, the original sentence of 27 months' incarceration remained appropriate.  *Id.*  The court thus stated that if the offense level were reduced by two levels pursuant to § 4C1.1, the court would nevertheless vary upward to "achieve the purposes outlines in 18 U.S.C. § 3553(a)."  *Id.* at 10.

The same result is warranted here: Strand, like Bauer, perjured himself at trial; he has repeatedly and publicly impugned the integrity of the judicial system; and he has tried to enrich himself by fundraising off of his crimes.  To achieve the purposes outlines in 18 U.S.C. § 3553(a), the originally imposed sentence of 32 months' incarceration should remain in place.

In addition, the Government notes that the Sentencing Commission enacted § 4C1.1 based on recidivism data for offenders released in 2010.  *See* U.S. SENT'G COMM'N, RECIDIVISM OF FEDERAL OFFENDERS RELEASED IN 2010 (2021), available at

---

denying a reduction motion, even though this was the same factor it considered at his original sentencing hearing).

[8]     The court also held that Bauer was ineligible for a sentence reduction under § 4C1.1 because she used violence and made credible threats of violence during the riot on January 6.

https://www.ussc.gov/research/research-reports/recidivism-federal-offenders-released-2010.

Given the unprecedented nature of the Capitol attack, there is no reason to believe this historical data is predictive of recidivism for defendants who engaged in acts of political extremism on January 6. This is particularly so given the degree to which individuals, including defendants who have been sentenced, continue to propagate the same visceral sentiments which motivated the attack. That logic applies with particular force to Strand.

Thus, due to the unique nature of the January 6 riot, the harms caused by the January 6 riot, Strand's role in the January 6 riot, and the significant need to deter future mob violence, the Government submits that even if the Court finds that § 4C1.1 applies, the Court should nevertheless deny a sentence reduction. Such treatment would recognize the unique nature of the criminal events of January 6, 2021, coupled with the overwhelming need to ensure future deterrence, despite a person's limited criminal history.

## IV.    CONCLUSION

For the foregoing reasons, the defendant John Strand's motion should be denied.

Respectfully submitted,
MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:    _____/s/ Jason M. Manning_____
JASON M. MANNING
Trial Attorney, Detailee
NY Bar No.: 4578068
1400 New York Avenue NW
Washington, D.C. 20005
Jason.Manning@usdoj.gov
(202) 514-6256