UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>JOHN STRAND,<br><br>Defendant. | )<br>)<br>)<br>)<br>) Case No. 1:21-cr-85-CRC<br>)<br>)<br>)<br>)<br>)<br>) |

**STRAND'S REPLY TO THE GOVERNMENT'S OPPOSITION TO HIS MOTION FOR RELEASE PENDING APPEAL AND MOTION FOR REDUCTION OF SENTENCE AS A ZERO POINT OFFENDER**

The government's opposition does not contest the following points:

(1) Strand has presented a substantial question under 18 U.S.C. § 3143(b)(1) concerning his felony conviction under 18 U.S.C. § 1512(c); and,

(2) He has already served a prison term surpassing every sentence this Court has imposed in Capitol riot cases involving Strand's remaining misdemeanor convictions.  ECF 148.

However, it argues that the Court should deny Strand's release motion on the grounds that every person who has served prison time is a flight risk ipso facto (even where the government itself determined otherwise after their arrest) and that absent his § 1512(c) conviction, the Court would have sent Strand to prison for a term (a) over four times the length of its highest Capitol riot misdemeanor sentence, and (b) months over the top of the Guidelines range.  The Court should reject these claims, just as every judge in this Court has done when presented with the same arguments, word for word.

  A.  **Strand has presented a substantial question under § 3143(b)(1)**

The government appears not to explicitly contest the fact that Strand's appeal of his §

1

1512(c) conviction presents a substantial question under § 3143(b)(1). Gov't Opp., p. 6 ("Even assuming that the *Fischer* issue now raises a 'substantial question. . .'"). However, at some points it seems to invite a contrary finding from the Court. *Id.*, p. 8 ("The mere fact that the Supreme Court agreed to hear *Fischer* does not indicate that the opinions were wrongly decided . . .").

To be clear, the government has conceded, in this very case, that the certiorari grant in *Fischer* means that the substantial question standard in § 3143(b)(1) is satisfied. *United States v. John Strand*, 23-3083 (D.C. Cir.), Doc. #2032976, at 8 ("The government does not dispute that, given that the Supreme Court has granted a petition for a writ of certiorari in *Fischer*, [an] appeal of [a] conviction under 18 U.S.C. § 1512 poses a substantial question within the meaning of 18 U.S.C. § 3143(b)(1)(B)."). The Circuit's order denying Strand's release motion without prejudice approvingly cited that concession. *Strand*, 23-3083, 1/16/2024 Order.

Every district court judge to consider the issue has found the "substantial question" standard satisfied. *United States v. Adams*, 21-cr-354-APM (ECF No. 85); *United States v. Sheppard*, 21-cr-302-JDB (ECF No. 142); *United States v. Bledsoe*, 21-cr-204-BAH (ECF No. 260). Accordingly, Strand's release motion should not be denied on this basis.

B.   **The government's flight risk argument is meritless**

The Circuit has determined that the "record suggests that [Strand] is not a flight risk or a danger to others, 18 U.S.C. § 3143(b)(1)(A). . ." *Strand*, 23-3083, 1/16/2024 Order. And the government acknowledges that the government itself concluded that, after his arrest, Strand was not a flight risk or danger to the community. Gov't Opp., p. 6. However, after the Supreme Court decided to review the government's use of § 1512(c), the government now contends that it sees a flight risk where it once did not.

2

Namely, Strand presents a flight risk, the government argues, because he finally knows what it is like to serve time in a prison. Before a trial, the government suggests, one can only speculate as to the downsides in being confined to a cell. Gov't Opp., p. 6. A robin red breast in a cage may put all heaven in a rage—but that's just theoretical until heaven has done time. If this argument were sufficient to deny a § 3143 motion, virtually all people would be disqualified from relief under the statute, and not because of the individual defendant's characteristics and case facts but on the strength of a general incentive applicable to everyone in society. Surely it is true that people cherish freedom and find its absence disagreeable, but release and detention decisions don't turn on universals but "the specific facts and circumstances of each case." *United States v. Munchel*, 991 F.3d 1273, 1284 (D.C. Cir. 2021).

Similarly, the government notes that approximately six other January 6 defendants have "fle[d], abscond[ed], or fail[ed] to appear while facing a hefty charge or sentence." Gov't Opp., p. 6. That is a share of less than 1% of the relevant set, so it is not clear what point the government is attempting to make about Strand, even if we assume (as the government does here, selectively) the criminal justice system should be making findings about individuals based on perceived group or population characteristics. In any case, narrowing the field of comparison from the universe of criminal defendants to the hundreds of January 6 defendants does not make its argument any more about "the specific facts and circumstances of" Strand's case. *Munchel*, 991 F.3d at 1284.

On their own terms, the government's citations do not avail it. It warns the Court that a January 6 defendant called Chilcoat attempted to "flee." Gov't Opp., p. 7. As it happens, by "flight" the government actually means (but does not say) that the defendant failed to appear for one VTC hearing. And the example is a curious one to interpose in opposition to a § 3143

motion, for the Court recently granted Chilcoat's motion for release pending appeal despite this flight from teleconferencing platforms. *United States v. Chilcoat*, 22-cr-299, ECF 95.

Nothing distinguishes Strand's case from that of the defendants in *Adams*, *Sheppard*, and *Bledsoe* where this Court rejected identical flight arguments from the government. Indeed, Strand presents fewer red flags than the defendant in *Adams*: Adams had "criminal history, including charges for burglary" and "two violations for driving while intoxicated." *Adams*, 21-cr-354-APM, ECF 85, p. 2. By contrast, the former male model Strand has no criminal history.

As Judge Bates noted in rejecting the government's identical flight arguments in *Sheppard*, Strand "is not facing a lengthy sentence from which he might be highly motivated to flee." *Sheppard*, 21-cr-302-JDB, ECF 142, p. 4. And the defendant in Sheppard had served far less time (ten weeks' incarceration) than Strand already has (over six months). *Id.* Judge Bates observed that, contrary to the government's argument, such time served "actually may [make him] more likely to comply with conditions of release." *Id.*

And in *Bledsoe*, the Court granted the § 3143 motion notwithstanding the fact that pretrial services reported that, while on pretrial release, the defendant had an attitude problem with his probation officers. *Bledsoe*, 21-cr-204-BAH, ECF 260, p. 6. In contrast, probation did not report any such problem in Strand's case.

Where the government makes arguments specific to Strand, they have no bearing on the flight question, though they do seek to rouse the Court's anger towards the defendant. The government contends that, before and during trial, Strand made public statements showing a lack of respect for the judicial system. Gov't Opp., p. 7. But the point the government is trying to make is that, although it never claimed Strand was a flight risk until he was incarcerated and the Supreme Court granted certiorari in *Fischer*, the defendant poses such a risk *now*, i.e., that some

4

---

relevant fact has materially changed. As a matter of chronology, then, pointing to pretrial statements does not do the government's work. The government could have moved the Court to revoke Strand's pretrial release bond on the perceived basis that these statements increased the risk of flight. That it did not do so, and only chose to do so after the *Fischer* grant, shows that its flight argument is simple opportunism.

In any event, while Strand's old statements are regrettable and inaccurate, they do not reference or preview any inclination to flee. A defendant's decision to become a fugitive is not just, or even mainly, a reflection of his attitude toward the court but also a measure of his inability to properly weigh risk and reward from a purely self-interested perspective. None of Strand's statements suggests he's incapable of understanding that flight is contrary to his own interest, even if it's stipulated that some betray a mistaken attitude about January 6 cases. If such statements presented a flight risk, then virtually no January 6 defendant would be released pretrial—and yet the vast majority are.[1]

Thus, the government's flight argument is meritless. But if the Court were somehow persuaded that Strand is now a different person than he was a few months ago when the government determined he was not a flight risk, he would be willing to post a cash bond or pledge property as a condition of release. Accordingly, Strand requests that the Court pursue

---

[1] Strand respectfully disagrees with the government's argument—and the Court's finding at sentencing—that he "perjured himself at trial" when he testified that he was "pushed into the Capitol." Gov't Opp., p. 7. A close review of the trial transcript shows that when Strand made this remark, he was referring to a specific moment in the CCTV footage when he unmistakably stumbles as he passes through the doors, propelled forward by a surge of the crowd behind him. GX401.01 (2:27:24-2:27:26). Strand was not claiming that all his steps on the Capitol portico were forced. And why would he, given that many of them were filmed and displayed to the Court? It appears that the defense did not bring this to the Court's attention at sentencing.

Similarly misguided are the government's claims about Strand's failure to cooperate with the Probation Office. Gov't Opp., p. 7. The Court may recall that Strand's counsel represented to the Court that the Probation Officer did not respond to counsel's communications.

those conditions before an outright denial of his motion.

### C. The Court's misdemeanor sentences belie the argument that it would have imposed a 12-month sentence without a felony conviction

The government argues that Strand has not reached "the expiration of the likely reduced sentence," § 3143(b)(1), because the Court would have imposed a sentence of 12 months' incarceration even if Strand had only been convicted of Class A and B misdemeanors. Gov't Opp., p. 9. This argument is replete with flaws.

First, as Judge Mehta noted, the government's argument conveniently ignores the reality that, absent his § 1512(c) conviction, Strand's Guidelines range would not support a 12-month sentence. *Adams*, 21-cr-354-APM, ECF 85, p. 4 ("[T]he applicable guidelines range would look quite different without a § 1512(c)(2) felony conviction."). Namely, under U.S.S.G. §2B2.3(a), his sentencing range would stand at 0-6 months' incarceration—a range Strand has already entirely served, like the defendant in *Adams*. *See also Sheppard*, 21-cr-302-JDB, ECF 142 (same).[2]

Second, even assuming the Court were to consider an above-Guidelines sentence for Strand—something the Court did not do in *Adams*, *Sheppard*, and *Bledsoe*—there are specific "procedures that courts must follow to justify an above Guidelines sentence." *United States v. Brown*, 857 F.3d 403, 405 (D.C. Cir. 2017). "A judge imposing an above-Guidelines sentence must offer in court, and in writing, a 'specific reason' why the defendant's case calls for a more severe sentence than other cases falling within the same Guidelines categories." *Id.* "The

---

[2] The government suggests that even if *Fischer* is reversed, Strand could still be sentenced under the Obstruction of Justice guideline in §2J1.2 via the cross reference in §2B2.3(c). Gov't Opp., p. 10 n. 3. That is so because "Strand acted with the intent to commit obstruction of an official proceeding." *Id.* This argument makes no sense. If *Fischer* is reversed it will be precisely because the Supreme Court has held that one cannot commit the obstruction-of-an-official-proceeding offense in the absence of any evidence impairment or investigation.

judge's explanation must draw on *specific facts* about *the defendant's . . .* conduct." *Id.* (emphasis added).  Here, the government not only fails to show why *Strand's* conduct (as opposed to the mob's) is more culpable than that of all the January 6 misdemeanants this Court has sentenced, it does not even engage with any of those cases.

In all, or virtually all, of the Court's misdemeanor January 6 cases, the defendant entered the Capitol Building, just as Strand did.  The government's entire argument at trial was that Strand's presence in the building alone was obstructive, for no evidence showed the defendant otherwise interfering with members of Congress, entering the Senate or House chambers, going into members' offices, destroying property, or physically engaging law enforcement.

That is, the government does not point to one "specific fact[] about the defendant's . . . conduct," *Brown*, 857 F.3d at 405, that would justify an above-Guidelines sentence in Strand's case but not in every single one of these misdemeanor cases and others: *United States v. Moncada*, 22-cr-366-CRC (36 months' probation); *United States v. Wilkerson*, 21-cr-302-CRC (36 months' probation); *United States v. Sizer*, 21-cr-621-CRC (12 months' probation); *United States v. Lewis*, 21-cr-100-CRC (24 months' probation); *United States v. Ryan*, 21-cr-50-CRC (60 days' incarceration); *United States v. Courtright*, 21-cr-72-CRC (30 days' incarceration); *United States v. Scirica*, 21-cr-457-CRC (15 days' incarceration); *United States v. Sunstrum*, 21-cr-652-CRC (30 days' home detention); *United States v. Gonzalez*, 21-cr-115-CRC (24 months' probation); *United States v. Ivey*, 21-cr-267-CRC (60 days' home detention); *United States v. O'Malley*, 21-cr-704-CRC (24 months' probation); *United States v. Von Bernewitz*, 21-cr-307-CRC (60 days' home detention); *United States v. Kidd*, 21-cr-429-CRC (45 days' incarceration); *United States v. McDonald*, 21-cr-429-CRC (21 days'

home incarceration).[3]

The government's recitation of the facts is often misleading. "The mob," it states, "violently pushed their way through the line of Capitol police officers, resulting in a head injury to a Capitol Police Sergeant. . ." Gov't Opp., p. 11. The government requests that the Court punish Strand for this injury because he was "at the very front" of the mob. *Id.* The Court will notice that although the officer in question has a name and indeed was a witness at trial, the government omits that name and omits any citation to the trial transcript. That may be because Officer Joshua Pollitt's testimony did not link Strand to the officer's injury in any manner whatsoever. It may also be because the government produced records in discovery showing that Officer Pollitt slipped and fell, not that he was knocked over by a protester, much less by Strand. (That did not stop the government from suggesting to the jury and Court that Strand caused the injury.)

The government states that, inside the building, Strand "foment[ed] the mob" as he stood on the plinth of the Eisenhower statue for approximately one minute or less. Gov't Opp., p. 11. No trial evidence supports that representation. Rather, the government's witness testified that it did not "appear [the crowd was] agitated" at that brief moment in time. 9/22/2022 Tr., p. 844.

The government states that, "[i]nside the House Chamber, officers drew their weapons and barricaded the doors in a desperate attempt to prevent Strand and the mob from breaching the House Chamber . . ." Gov't Opp., p. 11. No trial evidence showed that Strand witnessed

---

[3] The government says Strand entered "sensitive spaces in the Capitol," spent a significant amount of time there, and breached the Capitol in a unique "manner." Gov't Opp., p. 12. Since the Court has handled many January 6 misdemeanor cases, it knows that claim is patent nonsense. Unlike dozens or perhaps hundreds of misdemeanants, Strand remained in the public hallways of the Capitol and did not enter members' offices or the House and Senate chambers. His 30 to 45 minutes in the building do not distinguish Strand from dozens of misdemeanants sentenced to under six months in prison. And dozens of under-six-months misdemeanants entered through the same doors as Strand and in the same time period.

officers drawing their weapons inside the House Chamber, for it was undisputed that he did not enter that place.

The government states that outside the Capitol, Strand "made a vulgar gesture at the besieged police officers." Gov't Opp., p. 11. That is misleading. Video evidence depicts Strand pumping his fist in the crowd, and even if one chooses not to credit the defendant's under-oath denial of ill intent, the government's representation of a "vulgar gesture" has no factual basis. 9/23/2023 Tr., p. 1054.

The government represents to the Court that Strand profited from his crime[4] by fundraising on the false premise that he needed money for "legal services" when in fact "taxpayers shoulder the actual burden of his criminal defense." Gov't Opp., p. 11. Of all the government's misstatements, this is likely the most unfortunate. The government is claiming in court filings that Strand committed fraud, a crime. However, it is doing so without evidence and, indeed, without having investigated the matter.[5] But the misrepresentation is more serious than that. Taxpayers are not, in fact, "shoulder[ing] the actual burden of his criminal defense." *Id.* Strand's CJA-appointed lawyer did not continue to represent Strand after sentencing. Strand did use the money he fundraised for legal services. Strand asks the Court to consider what it may mean that the government feels at liberty to lodge serious claims such as this in court that do not survive elementary scrutiny.

Third, the government suggests that, even if it cannot point to "specific facts about the defendant's . . . conduct" that would justify an above-Guidelines sentence, *Brown*, 857 F.3d at

---

[4] Since the government concedes that Strand presents a substantial question under § 3143(b)(1), presumably by "crime" it is not referring to his sole felony conviction under § 1512(c).

[5] We know the government has not investigated the claim it makes in court because it has never inquired with Strand's counsel whether the fundraised money was used to support his criminal defense.

9

405, the Court should still deny the motion because "Strand has refused to accept responsibility for *any* of his crimes. . ." Gov't Opp., p. 12.  Not so.  Strand is not appealing his parading convictions.  And the Court could hardly enhance Strand's punishment for declining to plead guilty to an offense leading to a conviction which all parties simultaneously agree presents a substantial question under § 3143(b)(1), or to an offense whose burden the government may well have failed to satisfy, according to this Court's recent rulings.  *United States v. Groseclose*, 21-cr-311-CRC, ECF 99 (government must prove defendant's knowledge that USSS protectee is present under § 1752).  The Guidelines explicitly recognize the point.  U.S.S.G. §3E1.1 cmt. n. 2 (a defendant may still receive acceptance of responsibility adjustments where he has gone to trial to "challenge [] the applicability of a statute to his conduct").

Fourth and finally, the government claims the defendants in *Adams* and *Sheppard* are in different postures than Strand.  Gov't Opp., pp. 12-13.  Not so.  Adams had served five months at the time of release, fewer than Strand.  *Adams*, 21-cr-354-APM, ECF 85, p. 1.  Sheppard was released after serving six months—again, fewer than Strand.  *Sheppard*, 21-cr-302-JDB, ECF 142, p. 9.  The government's suggestion that those defendants were less culpable than Strand is belied by a review of their facts.

> [Sheppard] was among the first of the rioters to enter the Capitol, and he joined others in overrunning police lines. He recorded a video of himself proudly proclaiming, "I'm here with some goddamn heroes, and we just shut down Congress. Let's fucking go," it ends.
>
> He videotaped fleeing members of Congress and staff, and looked on as other rioters violently punched out the windows of doors mere inches from officers' heads. Serious, serious conduct. And he posted some threatening statements on social media, including threats directed towards Vice President Pence, and frustration with Republican senators who certified the electoral vote. And he has continued to post prolifically on a variety of social media platforms to this day.
> . . .
> He watched members of Congress and staff evacuating the House chamber, and he videotaped their flight, although he has contended that he didn't know who was

10

> evacuating or who was moving in the video that he recorded. He screamed and shouted at the officers who were there as he watched other rioters shatter windows close to the heads of the officers, and that was taking place right in front of him.

*Sheppard*, 21-cr-302-JDB, ECF 142, p. 7.

Unlike Strand, Adams had significant criminal history. *Adams*, 21-cr-354-APM, ECF 85, p. 2. And unlike both Adams and Sheppard, Strand has served nearly all his sentence in solitary confinement, for reasons that have not been explained. Strand does not understand the government to be making light of the harshness of solitary confinement.

In sum, because Strand has served more time already than all or nearly all of the Court's misdemeanor sentences in January 6 cases, he respectfully requests the relief granted in *Adams*, release at the time of decision.

**D.     The government's opposition to a sentence reduction is meritless**

The government opposes Strand's § 3582(c)(2) motion for a sentence reduction as a Zero Point Offender under U.S.S.G. §4C1.1 on two grounds: (1) all January 6 defendants are disqualified from the adjustment in light of its exception for crimes of violence; and (2) "the mob" caused an injury to an officer, Strand "joined the mob," and thus either the adjustment does not apply or the Court should exercise its discretion not to apply it upon consideration of the factors in § 3553(a). Gov't Opp., pp. 16-19. These arguments are inconsistent with basic theories of criminal liability.

Section 4C1.1 provides for a downward two-level adjustment unless (among other things) "*the defendant* . . . use[d] violence or credible threats of violence in connection with the offense." §4C1.1(a)(3) (emphasis added). The government argues that "the January 6 riot was a violent attack" and thus Strand is disqualified, as well elderly protesters and children with their parents who walked into the building without themselves engaging in violence. Gov't Opp. p.

11

16. That is mistaken. The violence exception concerns the defendant's actions, not the actions of thousands of people with whom the defendant may have never come into contact. For that reason, this Court has applied the §4C1.1 adjustment to January 6 defendants convicted under § 1512(c) and other offenses. *United States v. Weyer*, 22-cr-40-JEB, 9/14/2023 Sentencing Tr., p. 20; *United States v. Eicher*, 22-cr-38-BAH.

Second, the government's insinuation that Strand is legally responsible for Officer Pollitt's fall is wrong. Gov't Opp., p. 16. Again, the trial evidence does not support this claim which the government understandably hesitates to make explicit, while discovery records indicate that Pollitt slipped. The government proffers no theory of liability under U.S.S.G. §1B1.3 that would make Strand legally responsible for this incident. Nor is it clear what the government means by the claim that Strand "took advantage" of the episode. Gov't Opp., p. 18. And even if the mob was legally responsible for Pollitt's fall, the Court specifically found at sentencing that it did not "think Mr. Strand was operating with anyone else, in concert with anyone else besides his co-defendant." 6/1/2023 Sentencing Tr., p. 22. If so, Strand cannot be held responsible for Pollitt—or for any other mob conduct cited by the government (Gov't Opp., p. 17)—under §1B1.3.

That leaves the government's argument that, even if §4C1.1's violence exception does not apply, the Court should decline to reduce Strand's sentence under the § 3553(a) factors. Notice what the government is doing here. It does not make an additional argument that Strand should not benefit from the admittedly applicable adjustment. Instead, it claims that the Court should take the very same arguments that fail to establish the violence exception and then use them to deny Strand relief notwithstanding his qualification under the guideline. Gov't Opp., p. 18. To follow that cynical suggestion would not be to impose a sentence

12

sufficient but not greater than necessary to comport with the purposes of § 3553. It would end-run the textual limitations of the violence exception and punish Strand for conduct for which he cannot be held legally responsible under any of the theories of liability recognized by the Guidelines. §1B1.3.

Strand therefore respectfully requests that the Court reduce his sentence.

Dated: February 5, 2024　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　*/s/ Nicholas D. Smith*
　　　　　　　　　　　　　　　　　　　Nicholas D. Smith (D.C. Bar No. 1029802)
　　　　　　　　　　　　　　　　　　　1123 Broadway, Suite 909
　　　　　　　　　　　　　　　　　　　New York, NY 10010 Phone:
　　　　　　　　　　　　　　　　　　　(917) 902-3869
　　　　　　　　　　　　　　　　　　　nds@davidbsmithpllc.com

　　　　　　　　　　　　　　　　　　　*Attorney for John Strand*

## Certificate of Service

I hereby certify that on the 5th day of January, 2024, I filed the foregoing submission with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following CM/ECF user(s): Counsel of record.

And I hereby certify that I have mailed the document by United States mail, first class postage prepaid, to the following non-CM/ECF participant(s), addressed as follows: [none].

　　　　　　　　　　　　　　　　　　　*/s/ Nicholas D. Smith*